**UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION**

WILLIAM LEE LAWSHE,
an individual,

                Plaintiff,

v.

VERIZON COMMUNICATIONS INC., a Delaware
Corporation, and SYNCHRONOSS
TECHNOLOGIES, INC., a Delaware Corporation,

                Defendants.

**Civil Action No. 3:24-cv-00137**

---

**DEFENDANT VERIZON COMMUNICATIONS INC.'S
RULE 12(b)(6) MOTION TO DISMISS**

Defendant Verizon Communications Inc. ("Verizon"), by counsel, pursuant to Federal Rule of Civil Procedure 12(b)(6), hereby moves this Court to dismiss the Amended Complaint ("Amended Complaint") of Plaintiff William Lee Lawshe ("Lawshe" or "Plaintiff"). In support of its Motion, Verizon submits the following Memorandum.

## INTRODUCTION

Plaintiff's Amended Complaint shows that he has no viable claim against Verizon. Plaintiff's claims against Verizon arise out of the fact that Verizon reported images in Plaintiff's Verizon account to the National Center for Missing and Exploited Children ("NCMEC") based on matched hash values with other images previously identified as likely child sexual abuse material ("CSAM").

Even when viewing all facts in the light most favorable to Plaintiff, these claims should be dismissed for two independent reasons. First, Verizon is immune from suit

under multiple statutory provisions that bar actions against providers based on precisely the type of reporting Plaintiff alleges. Second, disclosures to NCMEC are not actionable under 18 U.S.C. § 2702, as 18 U.S.C. §§ 2702(b)(6) and (c)(5) expressly allow for such disclosures.

Plaintiff attempts to overcome these hurdles by reading in a nonexistent statutory requirement for Verizon to determine conclusively whether the images at issue were, in fact, CSAM prior to reporting them to NCMEC. Such a reading would contravene both the text and purpose of the relevant statutes. The applicable statutory scheme empowers NCMEC to maintain a tipline and act as a clearinghouse for suspected images of child pornography. The facts alleged show that Verizon acted precisely in compliance with this statutory scheme: when images in Plaintiff's Verizon account were identified as possible CSAM by means of a hash value match, Verizon complied with the statute and reported that hash match to NCMEC.

NCMEC and law enforcement both reviewed the two images reported by Verizon. In both cases, NCMEC determined that the images were apparent CSAM and referred them to law enforcement. In one case, law enforcement brought criminal charges against Lawshe based on the image Defendants reported. These independent assessments make clear that the images were, at the very least, "apparent" CSAM. As such, Verizon may have been required to report them to NCMEC. Verizon could have potentially faced liability for *failing* to report the matching hash values to NCMEC; it thus cannot be liable for *making* such a report.

Plaintiff contends that Verizon should have first scrutinized the images for signs that they might have been published elsewhere and searched for documentation of the

age of the individuals depicted. However, this obligation is nowhere to be found in the relevant statute. Furthermore, Plaintiff's reading would unduly chill providers from making NCMEC tipline reports and would thus thwart the purpose of the statute—to reduce the proliferation of online child pornography.

### SUMMARY OF RELEVANT FACTS[1] AND PROCEDURAL HISTORY

Plaintiff was a Verizon customer for wireless and internet services. ECF 22 ¶ 7. Verizon and Synchronoss Technologies, Inc. ("Synchronoss;" together with Verizon, "Defendants"), a provider of cloud storage for Verizon, voluntarily implemented a program of screening customer content for apparent CSAM. *Id.* ¶ 21. Though providers such as Defendants are neither obligated to nor prohibited from screening customer content for potential CSAM, federal law requires that providers such as Defendants report to NCMEC when they become aware of any fact or circumstance from which it is apparent that a customer possesses CSAM. *Id.* ¶ 34. Like many other providers, Defendants utilize a database of hash values—digital fingerprints that identify identical or nearly identical images with a high degree of accuracy—of images that have been previously flagged as potential or actual CSAM by others, including law enforcement (the "Hash Database"). *Id.* ¶¶ 21–24, 28, 29. A hash match is not confirmation that a given image is absolutely certain to contain CSAM; rather, it is proof that others have identified that same image as appearing to contain CSAM. *Id.* ¶ 30. Pursuant to their statutory duty to report any fact or circumstance constituting the apparent possession of

---

[1] For purposes of this Motion to Dismiss, Verizon recounts the relevant facts alleged in the Amended Complaint and those that may be judicially noticed by the Court. Verizon disputes most of the alleged facts—indeed, many of the allegations are patently false or misleading—and denies that the facts alleged entitle Plaintiff to any relief.

CSAM, Defendants report to NCMEC those images matching the hash values in the Hash Database. *Id.* ¶¶ 16, 38. Synchronoss made 30,901 such reports to NCMEC in 2022. *Id.* ¶ 86. This is not unusual—NCMEC reported that Google made 2,174,548 and Facebook made 21,165,208 such reports during the same period. *See* https://www.missingkids.org/content/dam/missingkids/pdfs/2022-reports-by-esp.pdf (this appears to be the source for Plaintiff's allegation that Synchronoss made 30,901 reports).

In accordance with this process, on or about October 29, 2022, Synchronoss reported to NCMEC that a certain image possessed by Plaintiff (the "October Image") matched the hash value of an image previously identified as apparent CSAM. ECF 22 ¶ 81. NCMEC reported the image to law enforcement, which investigated and took no further action. *Id.* ¶¶ 81, 85.

On or about January 25, 2023, an image in Plaintiff's possession (the "January Image") matched the hash value of an image on the Hash Database which had been previously identified as apparent CSAM. *Id.* ¶¶ 47, 58. Synchronoss again reported the image to NCMEC, and as with the October Image, NCMEC reported the January Image to law enforcement. *Id.* ¶¶ 58, 100.

Plaintiff contends that, notwithstanding the hash match, the January Image depicted an individual who was at least 18 years old when the image was created. *Id.* ¶¶ 51–53. Plaintiff contends that the January Image was "watermarked" by a website that identifies this specific model as an adult and "claims" compliance with law. *Id.* ¶ 54. Plaintiff fails to describe the alleged "watermark".

After receiving the NCMEC report of the January Image, Detective Mikayla Preston of the St. Johns County Sherriff's Office Special Victim's Unit, a member of the North Florida Internet Crimes against Children Task Force, viewed the image and requested that Dr. Kathleen Dully evaluate the age of the individual depicted in the January Image. Complaint, *Lawshe v. Hardwick*, Case 3:24-cv-44 (M.D. Fla. Jan. 12, 2024) (the "Investigation Complaint"), ECF 1 ¶¶ 10, 11, 45, 69 (attached hereto as Exhibit A).[2] Dr. Dully is a medical doctor board-certified in Pediatrics and Child Abuse Pediatrics, an associate professor at the University of Florida, and the medical director of the UF Child Protection Team. *Id.* ¶¶ 68, 146. In the Investigation Complaint, Plaintiff alleges that "Dr. Dully stated that the model '***appears*** to be younger than the age of 18' estimating that the model was as young as 12 years old." *Id*. ¶ 79 (emphasis added). Detective Preston then secured a warrant to search Plaintiff's digital accounts. *Id.* ¶ 85. This search uncovered at least one additional image which Dr. Dully stated depicted an individual "that was less than or equal to 9–13.5 years old." *Id.* ¶ 93. The St. Johns County Sherriff's Office subsequently arrested Plaintiff on April 12, 2023, and the State of Florida charged him with three counts of violating Fla. Stat. 827.071(5) (concerning the sexual performance by a child; child pornography). *Id.* ¶ 97; ECF 22 ¶ 101; Exhibit B, Criminal Information. The Criminal Information specified that the charges related to three images in Lawshe's possession, specifically:

- "an image which, in whole or in part, file name: 0065(1) depicts a female juvenile bending down on her knees with her legs spread apart exposing her anus and a portion of her vagina . . ."

---

[2] In addition to this action, Plaintiff also filed suit on January 12, 2024, against numerous parties associated with the investigation of the crimes for which he was arrested in April of 2023.

- "an image which, in whole or in part, with file name: 0059, depicts a female juvenile exposing her breasts and vagina . . ." and

- "an image which, in whole or in part, with file name: Screeenshot_20230122_174408_DuckDuckGo depicts, a female juvenile on a bed lifting clothing and exposing her vagina . . ."

Exhibit B.[3] The Assistant State's Attorney ultimately entered a notice of Nolle Prosequi, dropping the charges on December 27, 2023. Exhibit C, Nolle Pros.

Plaintiff filed the instant action in the Circuit Court for the Seventh Judicial Circuit in and for St. Johns County on January 12, 2024. ECF 1 at 1. Verizon timely removed the action to this Court on February 6, 2024. Plaintiff thereafter amended his Complaint on March 12, 2024. ECF 22.

## LEGAL STANDARD

A complaint that "fail[s] to state a claim upon which relief may be granted" must be dismissed. Fed. R. Civ. P. 12(b)(6). In ruling on a Rule 12(b)(6) motion, the court must accept the well-plead factual allegations of the complaint as true. *Hunnings v. Texaco, Inc.*, 29 F.3d 1480, 1484 (11th Cir. 1994) (per curiam). However, pleading mere legal conclusions, or "a formulaic recitation of the elements of a cause of action," does not satisfy the plausibility standard of Rule 12(b)(6). *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *see also Mamani v. Berzain*, 654 F.3d 1148, 1153 (11th Cir. 2011) ("Legal conclusions without adequate factual support are entitled to no assumption of truth.") (citations omitted). Rather, the facts alleged must "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.

---

[3] Notably, the Criminal Information specifies three images, though Plaintiff alleges that Defendants disclosed just two to NCMEC. Presumably, one or more images were discovered in Plaintiff's possession other than the two images at issue here.

Indeed, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice," as the general rules of pleading under Fed. R. Civ. P. 8(a) demand "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); Fed. R. Civ. P. 8(a). Therefore, a court ruling on a motion to dismiss for failure to state a claim must: "reject conclusory allegations, bald legal assertions, and formulaic recitations of the elements of a claim; accept well-pled factual allegations as true; and view well-pled allegations in the light most favorable to the plaintiff." *Armand v. LifeStance Health Grp., Inc.*, No: 6:23-cv-103-PGB-EJK, 2024 WL378417, at *2 (M.D. Fla. Feb. 1, 2024) (citing *Iqbal*, 556 U.S. at 678–79).

The "court is not [always] limited to the four corners of the complaint." *Long v. Slaton*, 508 F.3d 576, 578 n.3 (11th Cir. 2007) (citation omitted). In particular, courts may take judicial notice of publicly filed documents, such as those in state court litigation, at the Rule 12(b)(6) stage. *Lozman v. City of Riviera Beach*, 713 F.3d 1066, 1075 n.9 (11th Cir. 2013) (citing Fed. R. Evid. 201). *See also Halmos v. Bomardier Aerospace Corp.*, 404 F. App'x 376, 377 (11th Cir. 2010) (per curiam) (affirming dismissal where court considered pleadings in another case involving the plaintiff).

## ARGUMENT

### I.    Verizon is Immune from Suit.

#### A.    18 U.S.C. § 2258B Bars any Claim Based on Reports to NCMEC of Apparent CSAM.

Federal law fully immunizes Verizon from all of Plaintiff's claims. Plaintiff's allegations—that Verizon and/or Synchronoss detected images identical to ones that were previously flagged as apparent CSAM within Plaintiff's account and reported them

to NCMEC, and that NCMEC passed on those reports to law enforcement—follow the exact procedure laid out in 18 U.S.C. § 2258A. Section 2258B immunizes Verizon from any state or federal civil or criminal liability stemming from any such report. Furthermore, § 2258C permits providers like Verizon to use hash values to identify potential CSAM in compliance with the statute. Accordingly, Plaintiff's Amended Complaint must be dismissed in its entirety with prejudice.

### (i)    The Statutory Scheme for NCMEC Reporting.

The Protect Our Children Act of 2008 aims to "reduce the proliferation of online child sexual exploitation and to prevent the online sexual exploitation of children." 18 U.S.C. § 2258A(a)(1)(A). To that end, the law establishes a duty for providers to report "any facts or circumstances from which there is an apparent violation" of numerous statutory provisions "that involves child pornography." *Id.* § 2258A(a)(1)–(2). This reporting requirement is mandatory: providers "shall" report when they have "actual knowledge" of "any facts or circumstances" indicating any "apparent violation." *Id.*

In addition to this mandatory reporting obligation, and in order to encourage providers to search for and report material that appears to be child pornography on their systems in accordance with the statute's goal, Congress granted providers broad immunity with respect to such reports. Section 2258B provides that civil claims against a provider "arising from the performance of the reporting or preservation responsibilities of such provider" under § 2258A "***may not be brought*** in any Federal or State court," subject to certain limited exceptions. *Id.* § 2258B(a) (emphasis added). Those exceptions are narrowly circumscribed, covering only circumstances in which the provider (1) engaged in intentional misconduct or (2) acted, or failed to act, with (i)

actual malice, (ii) reckless disregard to a substantial risk of causing physical injury without legal justification, or (iii) for a purpose unrelated to the performance of any responsibility or function under the Protect Our Children Act. *Id.* § 2258B(b). This grant of immunity "was clearly aimed at immunizing civil claims for mistaken and incorrect reports issued to the NCMEC." *United States v. Richardson*, 607 F.3d 357, 367 (4th Cir. 2010) (citing a prior version of the statute). Indeed, in a similar case where an individual was charged with child pornography crimes in connection with an allegedly mistaken report by AT&T, the court cited to § 2258B in holding that AT&T was not liable for disclosing its customer's information to law enforcement. *See Jurek v. Am. Tel. & Tel. Co.*, No. 5:13 CV 1784, 2013 WL 5298347, at *5 (N.D. Ohio Sept. 20, 2013). If § 2258B's grant of immunity did not cover incorrect or mistaken reports, it is hard to imagine why it would be necessary.

Section 2258C expressly authorizes providers to use hash values to identify potential CSAM images. Specifically, it states that NCMEC may provide "elements," including "hash values or other unique identifiers associated with a specific visual depiction," to a provider. 18 U.S.C. § 2258C(a). The law specifies that providers may use such hash values or other unique identifiers "for the purposes described in this section"—namely, to stop online sexual exploitation of children by making reports to NCMEC. *Id.* §§ 2258C(a)(1), (b). Thus, § 2258C expressly permits providers to utilize hash values to identify apparent CSAM.

Critically, the purpose of this statute is not the protection of the privacy of individuals who possess images. Rather, it is "to reduce the proliferation of online child sexual exploitation and to prevent the online sexual exploitation of children." *Id.*

§ 2258A(a). Though providers are not obligated to screen their users' content for CSAM, such screening is permitted under the statute, and many courts have held that providers are not government actors subject to the Fourth Amendment. *United States v. Williamson*, No. 8:21-CR-355-WFJ-CPT, 2023 WL 4056324, at *13 (M.D. Fla. Feb. 10, 2023) (collecting cases). Courts have also acknowledged that providers have excellent reasons for screening user content for CSAM—providers want to keep their systems free from CSAM because the presence of CSAM on their platforms harms their users and damages their public reputations. *See id*. at *14 (collecting cases).

### ii.    Verizon's Duty to Report is Broad and Does Not Require an Investigation of Specific Images or Individuals.

Verizon was at least potentially required by law to report an image with a matching hash value to NCMEC and therefore cannot be liable for doing so. Under § 2258A, Verizon **must** submit a report to NCMEC when it becomes aware (has "actual knowledge") of **any fact or circumstance** of an "apparent" instance of child pornography. 18 U.S.C. § 2258A(a)(2)(A) (emphasis added). A hash match between a Verizon customer's image and the Hash Database indicates that the customer's image is identical to an image that has been previously flagged as potential CSAM. As such, a hash match is a fact or circumstance indicating an apparent violation of law involving child pornography. *See United States v. Montijo*, No. 2:21-CR-75-SPC-NPM, 2022 WL 93535, at *2 (M.D. Fla. Jan. 10, 2022) (describing with approval Facebook's report of apparent CSAM based on a hash match alone without additional human review at the time of the match). A report based on such a match is thus subject to § 2258B's statutory immunity from suit.

Even if a hash match alone does not trigger the reporting obligation and its attendant penalties, a report based on a hash match alone is sufficient to trigger the immunity. Section 2258B attaches to reports made under § 2258A and does not depend upon whether the reported image was actual CSAM. Indeed, the limited exceptions indicate that mistaken reports—those not involving actual malice, reckless disregard for physical injury, or made for a purpose other than reporting potential CSAM—enjoy complete immunity.

This is precisely what Plaintiff alleges: an image in his possession matched hash values with an image previously flagged as being potential (though unconfirmed) CSAM. ECF 22 ¶¶ 47, 48. He does not allege that Verizon reported images that could in no way be construed as apparent CSAM, such as an image of a tree or of a table. Rather, he alleges that the images involved pornographic depictions of individuals who were (allegedly) at least 18 years old. Based on these alleged facts alone, Verizon is immune from suit under § 2258B because it reported to NCMEC based on a fact or circumstance—the hash value match—indicating that Plaintiff possessed what appeared to be CSAM even though the images may have involved individuals who were 18 years old rather than under 18.

Plaintiff demands this Court accept an alternative interpretation of § 2258A that is neither supported by the statute nor by a plain reading of its terms. Plaintiff contends that "apparent" in the statue means "that which is obvious, evident, or manifest." ECF ¶ 17. Plaintiff cites to Black's Law Dictionary, but he omits an additional provision of that definition: "ostensible; seeming." *Apparent*, *Black's Law Dictionary* (11th ed. 2019). Thus, Plaintiff ignores the reading of "apparent" that makes the most sense in context:

something that seems to be, or something that appears likely. The Oxford American Dictionary confirms this reading. It defines "apparent" as: "(1) clearly seen or understood; *it became apparent*, became obvious; (2) seeming but not real, *his reluctance was only apparent.*" Oxford Am. Dictionary (emphasis in original). As used in § 2258A, both definitions apply. This makes sense given the purpose of the statute—to reduce the online proliferation of child pornography. An image may appear to be CSAM but not actually be CSAM in fact, such as when the image involves an 18-year-old who may appear to be 17 years old or younger.[4]

Plaintiff contends that the term "apparent" in § 2258A means only CSAM that has been confirmed by an in-depth investigation. Not so. Section 2258A does not impose a duty to investigate after a provider identifies a hash match with the Hash Database. To the contrary, a provider who acquires actual knowledge of *any fact or circumstance* indicating that user possesses what appears to be CSAM *must* report it to NCMEC; failure to do so can result in penalties such as fines of $150,000 per failure to report. *See* 18 U.S.C. § 2258A(e). Importantly, the statute does not require providers to investigate *all* facts and circumstances. Once it receives a report from a provider like Verizon, NCMEC acts as a clearinghouse and sends reports of "apparent" CSAM to the appropriate law enforcement agency. 18 U.S.C. § 2258A(c). Ultimately, law enforcement is charged with investigating and deciding whether the report involves

---

[4] This definition accords with other legal concepts such as "apparent" agency – a relationship that seems like an agency relationship, but is not in fact a principal-agent relationship. *See Apparent Agency*, *Agency by Estoppel*, *Black's Law Dictionary* (11th ed. 2019) ("An agency created by operation of law when a person's actions have led a third party reasonably to believe that another actor was actually the person's agent").

criminal conduct. Indeed, Plaintiff's Amended Complaint shows how this process works in practice, as law enforcement decided not to charge Plaintiff based on the October Image but charged Plaintiff in connection with the January Image based on their independent investigation.

Courts have interpreted the term "apparent" in federal statutes as consistent with the "appears to be but may not be" definition. As articulated in the case law, something may be "apparent" when it raises a "red flag." When analyzing whether an internet service provider may be liable for copyright infringement notwithstanding the safe harbor of the Digital Millennium Copyright Act, 17 U.S.C. § 512(c) ("DMCA"), because the provider is "aware of facts or circumstances from which infringing activity is apparent," courts apply the "red flag" test to determine if infringing activity is apparent. The similarities in language between § 2258A and the DMCA make this a particularly useful comparison. Under this red flag test, "the question is not 'what a reasonable person would have deduced given all the circumstances.'" *Io Grp., Inc. v. Veoh Networks, Inc.*, 586 F. Supp. 2d 1132, 1148 (N.D. Cal. 2008) (quoting *Corbis Corp. v. Amazon.com, Inc.*, 351 F. Supp. 2d 1090, 1108 (W.D. Wash. 2004)). Rather, "apparent knowledge" of infringement means that a provider was aware of "red flags" and disregarded them. *Id.* (quoting H.R. Rep. No. 105–551, pt. 2, at 57). Indeed, a notice under the DMCA showing a hash match of a file purported to be copyrighted was sufficient to give a service provider actual specific knowledge of copyright infringement. *See Sony Music Ent. v. Cox Commc'ns, Inc.*, 426 F. Supp. 3d 217, 231 (E.D. Va. 2019).

Here, a hash match to an image previously flagged as potential CSAM is similarly a red flag indicating the user has violated child pornography possession laws. It

may not be proof beyond a reasonable doubt, but that is not what the statute requires. Rather, § 2258A required Verizon to report to NCMEC when it became aware of any facts or circumstance that seem to indicate a violation of child pornography laws. That is precisely what the facts alleged by Plaintiff describe here. Accordingly, Verizon's reports to NCMEC are well within the bounds of § 2258A and are thus immunized by § 2258B.[5]

### iii. The Image that Led to Plaintiff's Arrest Was Unquestionably "Apparent" CSAM.

The hash match as alleged by Plaintiff is sufficient to show that Defendants filed a report with NCMEC when they had actual knowledge of a fact or circumstance that an apparent violation of child pornography laws existed. However, the facts alleged by Plaintiff in this matter and in the Investigation Complaint show that the reported image was objectively apparent CSAM, even independent of the hash match. Dr. Dully, a medical doctor and professor board-certified in Pediatrics and Child Abuse Pediatrics, acting as the Medical Director for the UF Child Protection Team, opined that the January Image depicted an individual between twelve and seventeen years old. Investigation Complaint ¶ 79. The St. Johns County Sherriff's Office and the State's Attorney's Office for Seventh Judicial Circuit independently concluded that the images at issue here were CSAM. The Information in the criminal case described the images in detail as depictions of a "juvenile female" in sexually explicit postures. Ex. B (images in Lawshe's possession depicted "a female juvenile bending down on her knees with her legs spread apart exposing her anus and a portion of her vagina" and "a female juvenile

---

[5] To the extent Plaintiff relies upon Verizon's alleged statement that the images involved "pubescent" and "pre-pubescent" minors, § 2258B's immunity covers statements made within the context of a tipline report even if they are not accurate.

on a bed lifting clothing and exposing her vagina"). This was not Verizon's or Synchronoss's judgment. Rather, Dr. Dully, the Sherriff's Office, and the State's Attorney's Office made the determination that Lawshe's possession of these images amounted to crimes constituting the possession of "child pornography" in violation of Fla Stat. § 827.071(5). In other words, local law enforcement and state prosecutors considered the images to contain **actual** CSAM. The fact that the Assistant State's Attorney later entered a notice of Nolle Prosequi does not alone demonstrate that the January Image was, or was not, actual CSAM. Indeed, the only indication in the record of this matter or any related matter that the January Image was *not* actual CSAM is Plaintiff's allegation that it was not. As such, there can be no doubt that they contained at least "apparent" CSAM.

At bottom, it is simply not plausible under the *Twombly* standard that Plaintiff is entitled to relief. Law enforcement, a medical doctor, and state prosecutors all concluded that the January Image and others in Plaintiff's possession contained actual CSAM and prosecutors charged him with child pornography crimes. Thus, it cannot be plausible that the images in question were not at least "apparent" CSAM.

        **iv.   Plaintiff Fails to Allege Facts Showing Actual Malice or Reckless Disregard.**

Plaintiff's conclusory allegations that Verizon acted with "actual malice and/or a reckless indifference to the truth of the accusation and a wanton disregard for the rights of the Plaintiff" cannot overcome Verizon's § 2258B immunity. ECF 22, ¶ 107. While § 2258B excludes actions taken with "actual malice" or "reckless disregard to a substantial risk of causing physical injury without legal justification," the Amended

Complaint fails to allege facts that would bring the alleged conduct within those narrow exceptions to the statute's broad grant of immunity.

Plaintiff makes the conclusory allegation that Verizon acted with "reckless indifference to the truth of the accusation and a wanton disregard for the rights and reputation of the Plaintiff," ECF 22 ¶ 107, but this does not fit within the narrow exemptions to immunity. While the statute exempts scenarios in which providers act with reckless disregard "to a substantial risk of causing physical injury without legal justification," it does not similarly exempt scenarios involving reckless disregard for truth, rights, or reputation. 18 U.S.C. § 2258B(b). None of Plaintiff's allegations even hint at a substantial risk of causing physical injury. This allegation thus fails to establish that Verizon is not immune from suit.

Plaintiff also makes a bare, conclusory assertion that Verizon acted with actual malice, but legal conclusions couched as allegations without facts to support them should not be credited. *See Mamani*, 654 F.3d at 1153. A speaker acts with actual malice only where he "actually entertained serious doubts as to the veracity of the published account, or was highly aware that the account was probably false." *Dershowitz v. Cable News Network, Inc.*, 668 F. Supp. 3d 1278, 1285 (S.D. Fla. 2023). Here, Plaintiff alleges facts that show (at most) that Defendants knew hash value matches ***could*** produce false positives.[6] ECF 22 ¶ 40. This falls well short of plausibly alleging that Verizon or Synchronoss "actually entertained serious doubts as to the

---

[6] This is also true of human review of potential CSAM images, as demonstrated by the alleged fact that Dr. Dully (board certified in the field of child abuse and pediatrics), Detective Preston (who specialized in child exploitation crimes), and state prosecutors concluded that Lawshe's possession of these images amounted to child pornography crimes under Florida law.

veracity" of the two reports that Plaintiff's images included potential CSAM or were "highly aware" that either report was "probably false." Rather, the facts alleged demonstrate that both the October Image and January Image matched the hash values of images that had previously been flagged as potential CSAM. Congress expressly authorized providers, NCMEC, and law enforcement to utilize hash value matches to perform their duties under § 2258A. It thus cannot amount to "actual malice" or "reckless indifference" for Verizon or any other provider to rely on matches to the Hash Database as a fact or circumstance from which there appears to be a violation of CSAM possession laws. Plaintiff's conclusory allegations that Verizon acted with "actual malice" thus should not be credited, and Verizon is immune from suit.

**B.     Verizon Is Immune from Suit Under 18 U.S.C. § 2707(e).**

The facts alleged demonstrate that Verizon relied in good faith on the statutory authorization in §§ 2258A and 2258C when reporting to NCMEC and is therefore immune from suit. Section 2707(e) provides that "[a] good faith reliance on [. . .] a legislative authorization, or a statutory authorization . . . is a complete defense to any civil or criminal action brought under this chapter or any other law." 18 U.S.C. § 2707(e). Plaintiff alleges that Verizon relied on hash value matches to make reports to NCMEC of suspected CSAM—precisely what §§ 2258A and 2258C allow Verizon to do. Verizon accordingly has a complete defense against any claim as a matter of law.

As set forth above, § 2258A not only allows Verizon to make reports of potential CSAM to NCMEC, but affirmatively *requires* Verizon to do so. Section 2258C specifically allows Verizon to utilize hash value matches to identify potential CSAM. As alleged in the Amended Complaint, Verizon used hash matches to identify potential

CSAM, which it then reported to NCMEC. Because the statute allows for the use of hash values to identify potential CSAM, there can be no question that Verizon's reliance on § 2258C was in good faith. Plaintiff alleges no facts to the contrary, such as that Verizon was motivated by personal animus towards Plaintiff or that it did not accurately report hash-matched images. Accordingly, 18 U.S.C. § 2707(e) grants Verizon a complete defense against Plaintiff's § 2702 claims and his state law defamation claims.

### III.    Counts V and VI Fail Because Disclosure to NCMEC Is Permitted.

#### A.    Disclosure to NCMEC Is Authorized Under Section 2702(b).

Plaintiff's claim for unauthorized disclosure under 18 U.S.C. § 2702 fails for an additional reason: Section 2702 specifically allows disclosure to NCMEC. The Stored Communications Act, 18 U.S.C. § 2701, *et seq.* ("SCA"), prohibits disclosure subject to "carefully regulated exceptions." *Crispin v. Christian Audigier, Inc.*, 717 F. Supp. 2d 965, 975 (C.D. Cal. 2010). 18 U.S.C. § 2702(a)(1) lays out a general prohibition on disclosing the contents of communications while in electronic storage. But §§ 2702(b) and (c) specify exceptions to this prohibition, identifying entities and individuals to whom disclosure is expressly permitted. Accordingly, the SCA bars providers from divulging the contents of its users' communications to a third party ***only if*** none of the exceptions apply. In relevant part, these exceptions include disclosures made "to the National Center for Missing and Exploited children, in connection with a report submitted thereto under section 2258A." 18 U.S.C. §§ 2702(b)(2), (6). Section 2702(c)(5) similarly allows providers to disclose records other than the contents of communications to NCMEC and pursuant to Section 2258A. *Id.* § 2702(c)(5). Put another way, if the disclosure was made to any individual or entity in the scope of § 2702(b) or (c), the disclosure is not actionable and there is no valid claim.

Plaintiff alleges that the disclosure was made to NCMEC, an **authorized** third party, which dooms his claim. *See Bayani v. T-Mobile USA, Inc.*, No. 2:23-CV-00271-JHC, 2023 WL 6959287, at *9 (W.D. Wash. Oct. 20, 2023) (to state a claim under § 2702, a plaintiff must "allege that [the provider] plausibly divulged the contents of his communications **to an unauthorized third party**") (emphasis added). Plaintiff specifically alleges that the disclosures were made to NCMEC through cyber tipline reports. ECF 22 ¶¶ 58, 81. Disclosure in the context of such reports is expressly carved out of § 2702(a)'s prohibition on disclosure. As such, Plaintiff has no actionable claim.

To the extent Plaintiff contends that the exception applies only where a report to NCMEC contains actual CSAM, his position is untenable. First, there is nothing in § 2702(b) or § 2258A that indicates a report to NCMEC may only contain actual, confirmed CSAM. Indeed, such is the very purpose of a tipline—to allow providers and the public to give a tip to the relevant authorities that may **or may not** lead to evidence of criminal activity. Moreover, this tortured reading would expose providers to § 2702 liability for any cyber tipline report that does not lead to a criminal conviction, chilling providers from making such reports for fear of liability and thwarting the statute's core purpose. When read together, the relevant statutory provisions allow providers to disclose images and other data to NCMEC as part of a cyber tipline report, regardless of whether the material is ultimately found to be CSAM.

## CONCLUSION

Plaintiff's Amended Complaint cannot state a claim for relief, both because Verizon is immune from suit under federal law and because Verizon's disclosures to NCMEC are otherwise not actionable. These defects are fatal and cannot be cured. Accordingly, Plaintiff's claims against Verizon should be dismissed with prejudice.

## LOCAL RULE 3.01(g) CERTIFICATION

Pursuant to Local Rule 3.01(g), I hereby certify that before filing this motion, I conferred with counsel for the opposing party by telephone on April 10, 2024 in a good faith effort to resolve the issues raised in the motion. Counsel for Plaintiff stated that they oppose the relief sought herein.

Dated: April 12, 2024                    Respectfully submitted,


By: */s/ Nury Siekkinen*
    Nury Siekkinen
    Florida Bar No. 1015937
    **ZWILLGEN PLLC**
    1900 M Street NW, Suite 250
    Washington, DC 20036
    Telephone: (202) 296-3585
    Facsimile: (202) 706-5298
    Primary email: nury@zwillgen.com

    *Attorney for Verizon Communications Inc.*

## <u>CERTIFICATE OF SERVICE</u>

I certify that on April 12, 2024, a true and accurate copy of the foregoing has

been electronically filed with the Clerk of the Court by using the CM/ECF system. I also

certify that the foregoing document is being served this day on all counsel of record

identified on the attached Service List in the manner specified, either via transmission of

Notices of Electronic Filing generated by CM/ECF or in some other authorized manner

for those counsel or parties who are not authorized to electronically receive Notices of

Electronic Filing.

<u>   /s/ *Nury Siekkinen*                        </u>
Nury Siekkinen (Florida Bar No. 1015937)

## <u>SERVICE LIST</u>

LAW OFFICES OF NOONEY, ROBERTS, HEWETT, AND NOWICKI
Michael K. Roberts
mroberts@nrhnlaw.com
Jeffery S. Nooney
jnooney@nrhnlaw.com
1680 Emerson Street
Jacksonville, FL 32207
(904) 398-1992

*Counsel for Plaintiff*