## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## JACKSONVILLE DIVISION

WILLIAM LEE LAWSHE,
an individual,

       Plaintiff,

v.                                                                  Case No. 3:24-cv-00137-WWB-LLL

VERIZON COMMUNICATIONS, INC.,
a Delaware Corporation, and
SYNCHRONOSS TECHNOLOGIES, INC.,
a Delaware Corporation

       Defendants.

_____/

### PLAINTIFF'S RESPONSE TO VERIZON'S
### RULE 12(b)(6) MOTION TO DISMISS

The elimination of online child sexual abuse material (CSAM) is an important objective which deserves attention, resources and support. However, at times, the pursuit of this objective can conflict with important constitutionally guaranteed rights, such as the First and Fourth Amendment, along with certain statutory privacy protections. The advent of cloud-based data storage, and technology which can be used to search this data, have brought this potential conflict into focus. The balancing of these competing interests has led to a proliferation of litigation and debate within federal courts. *United States v. Montijo*, 2022 U.S. Dist. LEXIS 4577 (M.D. Fla. 2022)

This suit arises out of a common law defamation claim and the unlawful disclosure of protected private content. Plaintiff alleges that on January 25, 2023[1], his cell phone service provider (Verizon) and its data storage partner (Synchronoss) produced and published multiple false and defamatory statements accusing Plaintiff, a law enforcement officer, of being in possession of child pornography. ¶58. Not only were these defamatory statements false ¶49, Plaintiff alleges that Defendants had obvious reason to believe that the defamatory statements were false at the time of publication. ¶¶39-42, 54, 68. Verizon's defamatory allegations contained statements that the subject content (1) contained a "pre-pubescent" child and (2) that the content was not available to the public. ¶ 61. These defamatory descriptions were completely fabricated by the Defendant[2].¶62. In fact, the only suggestion that the image was contraband, was a digital flag (hash tag) placed on the image (at some point in the past, by an unknown person) which categorized the image as "unconfirmed" child pornography.[3] ¶ 47,48. In addition to these facts, Plaintiff has alleged that the Defendants knew that use of hash tag technology to screen customer content would

---

[1] The same or similar conduct is alleged to have happened on October 29th, 2022.

[2] Plaintiff alleges that no individual from Verizon ever viewed the subject imagine (¶62a) and yet affirmatively stated that the contents were not available publicly and that the image contained a "prepubescent" child, both false assertions. This set of facts would support an inference that the statements were fabricated.

[3] While the hash value system may be able to ensure that two images are the same image "with almost absolute certainty,"(quoting United States v. Reddick, 900 F.3d 636, 639 (5th Cir. 2018)), it provided no certainty whatsoever regarding the initial determination that the image ... depicted a child. *Queen v. State* 313 So. 3d 931 (Fla. 2nd DCA 2021)

produce errors and false reports of possession of CSAM. ¶¶39-42. Despite this knowledge, Verizon intentionally created and implemented a system that, when functioning as designed, would send false reports of possession of child pornography to the National Center for Missing and Exploited Children (NCMEC). ¶ 39-42, 63. Furthermore, Verizon knew that NCMEC was obligated to forward all such reports to law enforcement. ¶19. Plaintiff alleges that Verizon, knowing the potential harm to its customers ¶73, took no steps to determine, through "actual knowledge," whether the images it reported were apparent child pornography, or not. ¶45. Finally, Plaintiff alleges that, because these disclosures were voluntary and not made pursuant to 18 U.S.C §2258A, the disclosures violated 18 U.S.C. §2702.

In moving to dismiss the Amended Complaint, Verizon argues that they are immune from this conduct pursuant to 18 U.S.C §2258B. Verizon argues that Congress has imposed a "broad" duty to report any content which has been suggested to contain CSAM, irrespective of the source, veracity of or confidence in that suggestion. Likewise, they argue that the "immunity" afforded by the statute is even more broad and extends to activities beyond the scope of the statute, to include activities specifically excluded from its plain language. They also argue that because the false defamatory statements were included in a report to NCMEC, they are immune from suit under 18 U.S.C. § 2707(e), 18 U.S.C. § 2702(b) and 18 U.S.C. § 2707(c). For the reasons stated below, the Motion should be denied.

I.      STANDARD ON A MOTION TO DISMISS

Under Rule 12(b)(6), a court may dismiss a complaint only if it is clear that no relief could be granted under any set of facts that could be proven consistent with the allegations. *See Hishon v. King & Spalding,* 467 U.S. 69, 73, 104 S. Ct. 2229, 81 L. Ed. 2d 59 (1984). In applying this standard, the Court will accept as true all well-pleaded factual allegations and the reasonable inferences to be drawn from those allegations and view those facts and inferences in a light most favorable to the non-moving party. *Cromer-Tyler v. Teitel*, 2005 U.S. Dist. LEXIS 37762 (M.D. Ala. 2005)

a. Misstatement of Alleged Facts

As a procedural matter, Verizon's Motion should be denied, as it has failed to present arguments based on the facts actually alleged in the Amended Complaint. Contrary to the purpose and scope of a 12(b)(6) motion, Defendant consistently argues an outcome based on allegations which are not contained within the Amended Complaint. Verizon states that "On or about January 25, 2023, an image in Plaintiff's possession (the "January Image") matched the hash value of an image on the Hash Database which had been previously identified as *apparent* [emphasis added] CSAM. Id. ¶¶ 47, 58." (Motion P.4) However, this is not the allegation contained in the cited paragraphs. There is not an allegation that the image had been previously identified as "apparent" CSAM. The image had only been labeled "unconfirmed" CSAM. ¶48 Plaintiff specifically alleges that "at no time did the Defendants have "actual knowledge" of an apparent violation of the law regarding CSAM. ¶56.

NCMEC applies the label of "apparent" child pornography to an image when it is "overtly clear" a child is involved in that activity. *United States v. Williamson*, 2023 U.S. Dist. LEXIS 108371 (M.D. Fla 2023) By contrast, NCMEC employs the label of child pornography "unconfirmed" when it believes "there may be [a] question of the age of the individual seen in that particular image." *Id.* NCMEC also uses the terms "age indeterminate" and "age difficult" for this category of content. *Id.* These depictions are *not apparent.* The label "unconfirmed" is just as much of a reason *to doubt* that an image is CSAM, as it is to accept that it is CSAM.

In another example, Verizon contends that Plaintiff "does not allege that Verizon reported images that could in no way be construed as apparent CSAM…" (Motion P. 11) This is not true. Plaintiff alleges that "all of the facts, then available to the Defendants, showed that the image was not CSAM." ¶54a-e. This allegation is made with granular detail. The fact that the image showed a partially nude model does not mean that it can be construed as CSAM, nor does it make it likely or suspicious for CSAM.

   b. Unsupported/False Factual Assertions

Verizon asserts that "NCMEC and law enforcement both reviewed the two images reported by Verizon. In both cases, NCMEC determined that the images were apparent CSAM and referred them to law enforcement." This statement is false. The CyberTip Report states unequivocally that NCMEC ***did not*** review the subject images. (EXHIBIT A). Furthermore, they did not characterize the images

as "apparent" child pornography, but rather, consistent with Plaintiff's allegations, labeled the imagines, through a hash match, "unconfirmed."

Without any support, Verizon contends that "state prosecutors considered the images to contain actual CSAM." However, the only evidence in this case is (and can be confirmed by counsel) that the assistant state attorney ***never viewed*** the images prior to filing the Information. This is evidenced by the affidavit contained in the criminal Information, which states that the charges are based on "testimony of material witnesses." Similarly, Verizon makes factual statements about what Det. Preston or Dr. Dully may have thought or perceived. There are very good reasons to believe that neither Det. Preston nor Dr. Dully believed that it was apparent or "overtly clear" that the image contained a minor. The application of pseudo-scientific and dubious age testing strongly suggests that the depiction was not apparent or obvious.

## II.    THE STATUTORY REPORTING SCHEME

Nothing in the relevant statutory scheme requires a provider to report content based solely on a hash match. In fact, it states the opposite. 18 U.S.C. §2258C(c).[4]

In addition to this, 2258A requires providers to report two (2) pieces of information to NCMEC upon obtaining "actual knowledge" of "facts and

---

[4] Not even Defendants are not convinced that a hash match, in and of itself, creates a duty to report under §2258A. The closest they get to that assertion is that they are "at least potentially" required or "may have been required to report" the subject image. (Motion P. 2) They were not.

circumstances" of an "apparent violation" of laws regarding possession of child pornography: (1) the incident type and (2) the incident time. *United States v. Williamson*, 2023 U.S. Dist. LEXIS 108371 (M.D. Fla 2023) They *are not* required to disclose the identity of their customer or describe details of the content.

   a. Statutory Construction  - Industry Usage of §2258A

  "Apparent" child pornography means images which are "certain," "clear," or "overtly clear" to depict minors.  This narrow interpretation is supported on both factual and statutory construction grounds.

  First, stakeholders understand "apparent" as a term of art within the industry.   NCMEC, service providers and federal courts describe and rely on "apparent" child pornography as only applying to content which is obvious or verified contraband. See *United States v. Williamson*, 2023 U.S. Dist. LEXIS 108371 (M.D. Fla 2023) *United States v. Montijo*, 2022 U.S. Dist. LEXIS 4577 (M.D. Fla. 2022) In *Montijo*, the court bases its Fourth Amendment ruling on the fact that "two contractors on Facebook's Content Review Team *confirmed* [emphasis added] a video file to show apparent child pornography under federal law." The court noted that Facebook's policy that an image would not be labeled and hashed as apparent child pornography unless the nature of the content was "clear" or "certain." *Id.*

  Section 2258A requires "actual knowledge" of facts and circumstances of apparent CSAM.   "Actual knowledge" requires the involvement of a sentient human being. See *United States v. Ackerman* 831 F.3d 1292 (10th Cir 2016) *United*

*States v. Montijo*, 2022 U.S. Dist. LEXIS 4577 (M.D. Fla. 2022) Congress clearly intended this to mean more than a digital match in a computer algorithm. The language of the statute uses restrictive language to set a particular bar for the triggering of the duty to report. Any report made below the bar is voluntary.

### b. Statutory Construction - Constitutional Avoidance

Verizon's "broad" interpretation would conflict with established constitutional rights. Where a statute potentially infringes on a constitutional right, it must be interpreted narrowly to avoid that conflict. *Mize v. Pompeo*, 482 F. Supp. 3d 1317, 1332-1333 (N.D. Ga. 2020) The doctrine of constitutional avoidance provides that, "if an otherwise acceptable construction of a statute would raise serious constitutional problems, and where an alternative interpretation of the statute is fairly possible, [courts] are obligated to construe the statute to avoid such problems." *I.N.S. v. St. Cyr*, 533 U.S. 289, 299-300, 121 S. Ct. 2271, 150 L. Ed. 2d 347 (2001).

The problematic construction need only "give rise to serious constitutional questions." *N.L.R.B. v. Catholic Bishop of Chicago*, 440 U.S. 490, 501, 99 S. Ct. 1313, 59 L. Ed. 2d 533 (1979) A finding of actual unconstitutionality is not required. *United States v. Jin Fuey Moy*, 241 U.S. 394, 401, 36 S. Ct. 658, 60 L. Ed. 1061, T.D. 2340 (1916) "Indeed, one of the canon's chief justifications is that it allows courts to *avoid* the decision of constitutional questions." *Clark v. Martinez*, 543 U.S. 371, 381, 125 S. Ct. 716, 160 L. Ed. 2d 734 (2005)

The consequence of Verizon's "broad" duty to report would necessarily lead to mandatory, government compelled reporting of private constitutionally protected content. Verizon illustrates this point: "An image may appear to be CSAM but not actually be CSAM in fact, such as when the image involves an 18-year-old who may appear to be 17 years old or younger." Motion P 12.  Verizon argues that the subjective opinion that a model "appears" 17 years old (as opposed to 18) would trigger a statutory requirement to report the image to the government.

The private possession of pornographic material is protected by the First Amendment. *Stanley v. Georgia*, 394 U.S. 557 (U.S. 1969) A serious constitutional question would be raised by such a mandatory reporting requirement. It would be content based discrimination and lead to the reporting of large quantities of constitutionally protected speech. The chilling effect such an interpretation would have on the free exercise of expression is obvious.

Conversely, a narrow statutory interpretation, consistent with NCMEC and industry standards (as enunciated in federal case law), lessens or avoids this collision with the free exercise of expression, because the possession of CSAM is not protected by the First Amendment. *New York v. Ferber*, 458 U.S. 747 (U.S. 1982).   Mandatory reporting of  "overtly clear" CSAM is narrowly tailored and strictly construed to minimize intrusion on First Amendment protections, while promoting a compelling governmental interest in protecting children.

The broad interpretation suggested by Verizon also raises a constitutional conflict with the Fourth Amendment. This very concern has been raised in  a

landmark appeals court decision. *United States v. Ackerman* 831 F.3d 1292 (10th Cir 2016). In *Ackerman I*, Judge Gorsuch (still sitting on the Circuit bench) specifically questions the Fourth Amendment consequences if a provider's employee who "identified the original image as child pornography was mistaken in his assessment." *Id*. In posing this rhetorical question, the court cites Richard P. Salgado, *Fourth Amendment Search and the Power of the Hash*, 119 Harv. L. Rev. F. 38, 38-40 (2005). The suggestion, although not answered, by either Judge Gorsuch or Professor Salgado is that the accuracy of a hash database and thoroughness of human verification are factors in applying constitutional scrutiny.

The universal foundation, among reported cases dealing with Fourth Amendment protections in the CSAM/hash context, is that the private search had "verified"[5] or "confirmed" that the images contained clear or overtly clear CSAM at some point prior to the NCMEC report. See See *United States v. Ackerman* 831 F.3d 1292 (10th Cir 2016); *United States v. Williamson*, 2023 U.S. Dist. LEXIS 108371 (M.D. Fla 2023) If Defendants are correct, the outcome of these Fouth Amendment challenges would be seriously undermined, if not outright different.

Further complicating these constitutional implications, Verizon argues that in addition to the "mandatory reporting obligation, and *in order to encourage*

---

[5] Individuals at Yahoo and Google, who are trained on what constitutes child pornography under federal law, verified the illicit content on the files." *United States v. Brillhar*t, 2023 U.S. Dist. LEXIS 79310, *14-15

[emphasis added] providers to search for and report material that appears to be child pornography on their systems in accordance with the statute's goal, Congress granted providers broad immunity with respect to such reports."  In fact, almost every court to consider the question has found that the government *has not* encouraged providers to perform these types of searches. *United States v. Williamson, 2023 U.S. Dist. LEXIS 108371 (M.D. Fla 2023)*

Verizon's position is that it could receive hash values from NCMEC (a government actor), use those hash values to screen completely private customer content, feed the results straight back to the government, without any independent review or action – and then be granted immunity (by the government) for all false reports.  Verizon would function merely as an agent for the government's search.[6]

Courts have uniformly held that service providers are private actors. But, this result is predicated on a finding that the searches were not compelled, encouraged or endorsed by the Government. *United States v. Hart*, 3:CR-20-197, 11 (M.D. Pa. Jun. 14, 2021).  Legal compulsion is not necessary for an otherwise-private search to be subject to the Fourth Amendment's requirements. *United States v. DiTomasso*, 81 F. Supp. 3d 304, 308 (S.D.N.Y. 2015) As observed by the court in *DiTomasso*, "the government's encouragement, endorsement, and participation" are sufficient to implicate the Fourth Amendment."  *Id.* Broader reporting requirements, government endorsement or encouragement of private

---

[6] Compare to Yahoo's protocol in *United States v. Williamson*, 2023 U.S. Dist. LEXIS 108371 (M.D. Fla 2023)

companies to affirmatively search using hash values, "would threaten the very system that enables both NCMEC and law enforcement to open and view previously viewed files without a warrant." Haney, Rachel, *Addressing the Increase of Online Child Sexual Abuse in the Pandemic* ABA Science and Technology Law (December 7, 2021)[7]

### c. Plain Language of §2258B

The plain language of the statute does not support the Defendant's argument that the limitation of liability applies to (1) searching or scanning of customer data (2) the use of hash value technology as the sole basis for a report to NCMEC or (3) the voluntary reporting of information not required by the statute. [8]

The limitation applies to matters "rising from the performance of the reporting or preservation *responsibilities* [emphasis added] of such provider or domain name registrar under this section, section 2258A, or section 2258C." 18 U.S.C §2258B. In other words, the section does not apply to voluntary acts, for which there is no legal responsibility to perform.[9]

---

[7] "There is no clear guidance on whether the government (or NCMEC) can view files detected by hash-matching technology but *not* viewed by a human at the time of reporting without a warrant." Haney, Rachel, *Addressing the Increase of Online Child Sexual Abuse in the Pandemic* ABA Science and Technology Law (December 7, 2021)

[8] Defendant ignores the issue of preemption. Plaintiff has brought a state common law defamation claim. However, the statute contains no preemption clause and Congress did not clearly express its intent to do so. See *Johnson v. MFA Petroleum Co.*, 701 F.3d 243, 247 (8th Cir. 2012); *Lalumfland, LLC v. First Coast Energy, L.L.P.,* 2021 U.S. Dist. LEXIS 235675 (M.D. Fla. 2021)
[9] Any statute in derogation of the common law, must be strictly construed.  Herd & Co. v. Krawill, 359 U.S. 297, 298 (1959)

Sections 2258A and 2258C contain significant exclusionary language in §2258A(f) and §2258C(c). Providers have no responsibility to affirmatively search customer's content and they have no responsibility to use (even if they have received) hash values.[10] The Defendant is accused of implementing a process or system which (1) affirmatively searched customer's content and (2) used hash value technology to automatically generate NCMEC reports.  There was no legal responsibility to do this. Therefore, the limitations contained in 18 U.S.C §2258B do not provide the Defendant protection.

In this regard, Defendant makes a classic straw-man argument: "Section 2258A does not impose a duty to investigate after a provider identifies a hash match with the Hash Database." Of course, this is true. The statute does not impose a duty to investigate a hash match, because the statue explicitly states they ***have no duty to do anything*** with hashing technology. Nevertheless, the rhetorical trick illustrates the voluntary nature of Defendant's actions.

The Defendant argues "the very purpose of a tipline— [is] to allow providers and the public to give a tip to the relevant authorities that may **or may not** lead to evidence of criminal activity." Motion P.19. Of course, when a member of the public makes a report to NCMEC, they are not bound by the obligations of §2258A or §2702. The public is not required to keep the Plaintiff's content private, nor are they afforded the limitations of liability which the Defendant raises.[11]

---

[11] Verizon cites *United States v. Richardson*, in support of their contention that 2258B provides broad immunity for the conduct alleged in the present case. *United States v. Richardson,* 607

III.    THE CONDUCT FALLS WITHIN THE LISTED EXCEPTIONS

Plaintiff has stated a cause of action, even if the limitations of 18 U.S.C §2258B apply. Section 2258B(1) and (2) lists "intentional misconduct," "actual malice" and "reckless disregard" as the exceptions. However, 18 U.S.C §2258A(e) clearly allows a civil claim to be brought for "knowing and willful failure to make a report." It is difficult to understand the effect of this conflict or inconsistent use of legal terms, unless "knowing and willful" is the same as "intentional misconduct."

a.  Intentional Misconduct

The subject defamatory report was not accidentally sent. Verizon intentionally designed and implemented a screening system they knew would falsely identify content as CSAM. It was the known and predictable consequence of a deliberate practice. Where willfulness is a statutory condition of civil liability, it is generally taken to cover not only **knowing violations** of a standard, but reckless ones as well. *Safeco Ins. Co. of Am. v. Burr*, 551 U.S. 47, 52 (2007) These allegations represent "knowing," "willful" and "intentional" conduct.

It is not a defense that the Defendant may not have known that Mr. Lawshe's *particular report* was false. For example, if an individual were to place 10 packages

---

F.3d 357, 367 (4th Cir. 2010). This reliance is unpersuasive for two reasons. First, the case deals with entirely different statute which was repealed and replaced with 2258B. The language of 13032(c) stated that "No provider or user of an electronic communication service or a remote computing service to the public shall be held liable on account of any action taken in good faith to comply with this section." This intent to "immunize" providers extended only to reports made in "good faith." Second, and perhaps more importantly, the court states that this immunity "in no way encourages surreptitious searches." *Id*. This reasoning directly conflicts with Verizon's explicit arguments in this case.

in the mail, having been told that one of the packages contained a bomb, it would not be a defense, to a criminal charge, for that individual to argue he did not know *which* package contained the bomb. Here, the Defendant knew that some reports generated by their system would be false, and yet they continued to send reports, with the almost certain knowledge of harm to some of its customers.

      b.  Actual Malice/Reckless Disregard

The statute enumerates conduct which constitutes "actual malice" as exempt from the limitation of liability. Although this term is undefine in the statute, it is a well-known and much debated concept. Actual Malice can be proved by showing a "reckless disregard for the truth." *Harte-Hanks Communications v. Connaughton*, 491 U.S. 657, 667 (1989) As observed by the Supreme Court, "the meaning of terms such as 'actual malice' -- and, more particularly, 'reckless disregard' ... is not readily captured in 'one infallible definition.' Rather, only through the course of case-by-case adjudication can we give content to these otherwise elusive constitutional standards." *Id.*

The facts which can constitute actual malice are myriad and a "defendant in a defamation action ... cannot automatically ensure a favorable verdict by testifying that he published with a belief that the statements were true. The finder of fact must determine whether the publication was indeed made in good faith." Id.

The Amended Complaint presents a constellation of allegations which, taken together or separately, would satisfy any definition of actual malice, or reckless disregard for the truth, as defined in *New York Times v. Sullivan* and its progeny.

These facts would establish (1) a purposeful avoidance of the truth (2) obvious reasons to doubt the truthfulness of the defamatory statements and (3) fabrication.

> ### i.    Purposeful Avoidance of the Truth

Plaintiff has alleged that the Defendant knew that reliance on hash matching, alone, would result in false positives and false allegations of possession of CSAM. In the face of this knowledge, Defendant put in place a system where no human being reviewed the subject content to confirm that the image, in fact, contained apparent CSAM.  The "failure to investigate will not alone support a finding of actual malice, 'the purposeful avoidance of  the truth is  in  a different category." *Harte-Hanks Communications,* 491 U.S. 657, 667 (1989)

Purposeful avoidance of the truth can be "a product of a deliberate decision not to acquire knowledge of facts that might confirm the probable falsity." *King v. S. Poverty Law Ctr*., Inc., 2023 U.S. Dist. LEXIS 70769 (M.D. Ala. 2023), quoting *Harte-Hanks Communications v. Connaughton*, 491 U.S. 657, 667 (1989). In essence, Verizon cannot argue that it never doubted the veracity of the allegation, when it purposefully avoided forming any opinions about the truth or falseness of the allegation in the first place. Put differently, the manufacturing of plausible deniability is, in effect, evidence of actual malice.

> ### ii.    Obvious Reasons to Doubt

The act of reporting an allegation based solely on a hash tag, generated by an unknown third person, is analogous to the reporting of third-party allegations in the context of public figure defamation cases. That is: someone other than the

defendant has provided the basis for the defamatory allegation. As described in *Harte-Hanks Communications v. Connaughton*, in cases "involving the reporting of a third party's allegations, recklessness may be found where there are obvious reasons to doubt the veracity of the informant or the accuracy of his reports. *Harte-Hanks Communications v. Connaughton*, 491 U.S. 657, 667 (1989). There are multiple facts, enumerated in the Amended Complaint, which would be obvious reasons to doubt the veracity of the subject allegations. The "verified" age of the model, the fact that it was available on a public website, the fact that it appeared to be a copyrighted image, and the lack of any descriptions of the model as a minor, are all obvious reasons to doubt the veracity of the hash match. However, setting that context aside, the very existence of a category of hash values which labeled this and other images as "unconfirmed" child pornography, within the hash database, would be an obvious reason to question the veracity of the allegation.

      iii.    Fabrication

False defamatory statements which are invented or "fabricated" form a basis for the finding of actual malice. *St. Amant v. Thompson*, 390 U.S. 727 (1968) As previously noted, many of the statements in the defamatory communication were indeed fabricated. Certainly, Plaintiff would be entitled to an inference that where no employee ever viewed the images, any characterization of the image would be a fabrication. This is especially so where the characterizations are so patently false.

IV.    STORED COMMUNICATIONS ACT  - 18 U.S.C. §2702

Unlike a member of the public, Verizon is prohibited from disclosing customer content to third parties. 18 U.S.C. § 2702.  First, Verizon claims that §2707(e) immunizes them for "[a] good faith reliance on [. . .] a legislative authorization, or a statutory authorization" to disclose content. Verizon claims that §2258C authorizes them to disclose content based on a hash match.  It does not. In fact §2258C(b) explicitly clarifies that "use [of hash values] shall not relieve the provider from reporting under section 2258A."  Section 2258C authorizes *the use* of hashing technology. It does not provide an alternative method of reporting content outside of 2258A[12]. In any event, accepting the Defendants interpretation of §2258C would render 18 U.S.C. §§ 2702(b)(6) and (c)(5) utterly meaningless. It is a cardinal rule of statutory interpretation that courts should avoid readings that would render part of a statute meaningless. *Cox Enters. v. Pension Benefit Guar. Corp.*, 666 F.3d 697, 699 (11th Cir. 2012)

Next, Verizon argues that "disclosures to NCMEC are not actionable under 18 U.S.C. § 2702, as 18 U.S.C. §§ 2702(b)(6) and (c)(5) expressly allow for such disclosures." Verizon continues that NCMEC is an "authorized" recipient and any disclosure to NCMEC would be protected. The statute does not say this.

The plain language limits the exclusion to matters disclosed "in connection with a report submitted thereto under section 2258A." Not all reports to NCMEC are contemplated by the statute, just those reports submitted pursuant to 2258A.

---

[12] 18 U.S.C. §§ 2702(b)(6) and (c)(5) only reference reporting under §2258A.

This distinction between voluntary and mandatory reporting to NCMEC is not the Plaintiff's invention.  It is a long-standing distinction employed and enforced by the Federal Communications Commission (FCC).  In interpreting the scope of Section 222 of the Communications Act, ruled that the "exception to section 222 applies only to the extent disclosure of CPNI is 'required' and therefore ***would not cover voluntary disclosures*** [emphasis added]." [13]  The footnotes to this Order make clear that there are multiple types of voluntary disclosures. First, as noted above, the mandatory disclosure only requires limited information.  Second, the FCC quotes that the statute "does not impose affirmative obligations on electronic communication service providers or remote computing service providers to monitor users or content."  The implication is that it would be voluntary to disclose information based solely on a hash match search.  Although the Court is not bound to apply the rulings of the FCC to the SCA, it would seem reasonable to do so and would align with the purpose of the statute.[14]

Whether from a reading of the plain language of the statutes or application of the FCC's ruling in address immunity for NCMEC reports in the context of the Telecommunications Act, the subject disclosure voluntary, gratuitous and not required by §2258A. Therefore, the exclusion does not apply.

---

[13] Federal Communications Commission*, In the Matter of Implementation of the Telecommunications Act of 1996: Telecommunications Carriers' Use of Customer Proprietary Network Information and Other Customer Information*, CC Docket No. 96-115, DA No. 10-1956, Released October 12, 2010

[14] Section 222 of the Communications Act is similar in scope and purpose to the Stored Communications Act (SCA, §2702): both are designed to provide privacy protection to consumer's online and digital information.

V.    CONCLUSION

Defendant mischaracterizes Plaintiff's claim arguing there would be "liability for any cyber tipline report that does not lead to a criminal conviction." This is incorrect.  Plaintiff's position is that the law has struck an elegant balance between the protection of privacy and the elimination of child exploitation material: Generally, Electronic Service Providers are required to keep customer's stored content private and are prohibited from disclosing such content to third parties. 18 U.S.C. § 2702. However, recognizing that some bad actors will use those provider's platforms to store or exchange illegal child exploitation material, the government has created an enumerated exception to the general rule. This exception, contained in 18 U.S.C §2258A, requires providers to report instances of criminal conduct under very specific conditions, which must be narrowly tailored to achieve a sustainable balance between myriad competing interests. This provision is the only permissible way a provider can violate the general rule of privacy without fear of liability. However, where a provider voluntarily chooses to operate outside of that statutory exception and reports content without attempting meet the specific conditions of disclosure, they may be held liable for the consequences of their actions.  Plaintiff has stated such a cause of action.

WHEREFORE, Plaintiff requests an Order denying Defendant's Motion.

Dated this 3rd day of May 2024.

**LAW OFFICES OF NOONEY, ROBERTS, HEWETT, AND NOWICKI**

/s/ Michael K. Roberts

_____

**Michael K. Roberts, Esquire**
Florida Bar No. 00779741
**Jeffery S. Nooney, Esquire**
Florida Bar No. 1011565
1680 Emerson Street
Jacksonville, FL 32207
(904) 398-1992
(904) 858-9943 facsimile
mroberts@nrhnlaw.com
jnooney@nrhnlaw.com
Attorneys for Plaintiff

## CERTIFICATE OF SERVICE

I        HEREBY CERTIFY that a true and correct copy of the foregoing was filed with the Clerk of Court using the CM/ECF system on May 3rd, 2024, and the foregoing document is being served this day on all counsel or parties of record on the Service List below, either via transmission of Notice of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive Notices of Electronic Filing.

/s/ Michael K. Roberts

_____

**Michael K. Roberts, Esquire**