## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## JACKSONVILLE DIVISION

WILLIAM LEE LAWSHE,
an individual,

       Plaintiff,

v.                             Case No. 3:24-cv-00137-WWB-LLL

VERIZON COMMUNICATIONS, INC.,
a Delaware Corporation, and
SYNCHRONOSS TECHNOLOGIES, INC.,
a Delaware Corporation

       Defendants.

_____/

## AMENDED COMPLAINT

    Plaintiff, WILLIAM LEE LAWSHE ("Plaintiff"), sues the Defendant, VERIZON COMMUNICATIONS, INC ("Verizon"), and SYNCHRONOSS TECHNOLOGIES INC. ("Synchronoss"), and alleges:

## COMMON ALLEGATIONS

1. This is an action for damages in excess of $75,000.00.

2. Plaintiff, is a resident of St. Augustine, St. Johns County, FL.

3. Plaintiff is a veteran and former Florida statewide law enforcement officer.

4. Defendant, Verizon, is a corporation engaged in the business of providing cell phone and internet services to the public.

5. Defendant Synchronoss Technologies, Inc is a corporation engaged in the business of cloud-based data storage.

6.      At all times material, Defendant Verizon contracted with Defendant Synchronoss Technologies to provide cloud-based data storge for its customers.

7.      At all times material, Plaintiff, as a customer, contracted with Verizon for internet and/or cellular phone service.

8.      This contract and service plan was entered into in the State of Florida.

9.      As a part of this service contract, Verizon provided data storage services to Plaintiff through Synchronoss Technologies, Inc.

10.     Defendant Verizon and/or Synchronoss Technologies, pursuant to the terms of their agreement, stored content downloaded and/or otherwise possessed by Plaintiff.

11.     This content was private and protected by law from disclosure to third parties.

12.     The private possession of adult or pornographic material is protected by the First Amendment of the Constitution of the United States.

13.     Content, which is not otherwise illegal, is private and dissemination of such content by a service provider is prohibited by 18 U.S. Code § 2702.

14.     Defendants Verizon and Synchronoss each had a non-delegable statutory duty of reasonable care to protect Plaintiff's legally protected content from disclosure to third parties.

15.     Child sexual abuse material (CSAM) is not protected by the Frist Amendment.

16.     Where a service provider, such Defendants, have "actual knowledge" of facts or circumstances which constitute "apparent" possession of CSAM, they have a statutory duty to report such information to the National Center for Missing and Exploited Children (NCMEC), pursuant to 18 U.S. Code Sec. 2258A.

17.  Apparent "is that which is obvious, evident, or manifest."[1]

18.  18 U.S. Code 2258A is the only statutory provision that creates an affirmative duty on the part of providers to report "apparent" possession of CSAM.

19.  NCMEC has a published policy, which was known to Defendants, that all reports of possession of CSAM would be sent to applicable law enforcement agencies.

20.  As a "Protection of Privacy," Congress, in enacting 18 U.S. Code Sec. 2258A, explicitly intended that "nothing in this section shall be construed to require a provider to –

   a.  Monitor any user, subscriber, or customer of that provider

   b.  Monitor the content of any communication of any person subscriber

   c.  Affirmatively search, screen, or scan for facts or circumstances of apparent possession of CSAM.

21.  Despite no legal or statutory obligation to do so, Defendants voluntarily implemented a plan to monitor, screen and affirmatively search all subscribers' content for apparent possession of CSAM using a database of "hash" values.

22.  A "hash" is a digital marker for a particular image and any image can be hashed.

23.  Various entities, including the Defendants, collect and disseminate hash values of images which are, or have been, categorized as containing alleged CSAM.

---

[1] Blacks Law Dictionary

24.     Defendants used a database of previously categorized (CSAM) hash values to compare with all customer data uploaded to the cloud. When an uploaded image's "hash" value matched one of the hash values in the existing database of alleged CSAM, a "hash match" was generated.

25.     There is no threshold for determining what constitutes CSAM for purposes of "hashing."

26.     The creation of hash values, in the context of CSAM, is largely unregulated.

27.     For example, some hash values originate from subjective customer or user complaints, while others may come from law enforcement.

28.     A "hash match" is highly accurate at flagging the same or similar image within a large database.

29.     However, a "hash match" contained no information regarding the content of that image, other than someone, at some point, categorized (correctly or incorrectly) the image as possible CSAM.

30.     A hash match is not confirmation that the particular content is in fact apparent CSAM.

31.     NCMEC acknowledges this fact by identifying categories of hash matched images as "unconfirmed" CSAM.

32.     Providers can voluntarily use these hash values to aid in the detection of CSAM.

33.     However, providers are not required to use hash values to detect or report apparent possession of CSAM.

34.     The only permissible manner of disclosing content which constitutes apparent possession of CSAM, pursuant to 18 U.S Code § 2702, is through Sec. 2258A, where the provider has "actual knowledge" of facts and circumstances of an apparent violation of laws regarding CSAM.

35. This systematic monitoring and scanning of substantially all subscribers' content, including that of the Plaintiff, was entirely voluntarily and specifically excluded from the statutory scheme created and regulated by 18 U.S. Code Sec. 2258A or Sec 2258C.

36. As such, the actions described in this Amended Complaint constituted a private search, not carried out under color of law or as an agent of the government.

37. By voluntarily undertaking the monitoring and screening of Plaintiff's data, Defendants assumed a legal duty to do so with reasonable care, including but not limited to the duty to protect the privacy rights of Plaintiff and all those similarly situated.

38. In practice and/or in policy, all or substantially all of the content flagged by a "hash match" was disclosed to NCMEC.

39. This practice and/or policy produced errors which incorrectly identified private constitutionally protected content as containing CSAM.

40. Specifically, some "hash matches" flagged images which depicted consenting professional adult models.

41. As a result of Defendant's practice or policy, images containing consenting adult models were reported to NCMEC as CSAM.

42. Defendants Verizon and Synchronoss knew or should have known that the use of this technology carried the substantial risk of misidentification of content as CSAM.

43. If Defendants did not know that the monitoring and screening program falsely identified CSAM, then it was due to a willful indifference to the veracity of the screening program's results.

44. As for example, the images involved in this case were easily identifiable as adults by the barest of review and/or investigation.

45.   Despite this risk of misidentification, Defendants Verizon and Synchronoss had in place no plan or process to determine the veracity of whether or not the flagged (hash matched) content was in fact an apparent violation of the law regarding CSAM.

46.   In the alternative, if such a plan existed, during all times relevant to this Amended Complaint, it was not utilized.

47.   On January 25, 2023, this monitoring and screening plan, implemented by the Defendants, incorrectly flagged, through the use of hash value technology, content (a single still image) possessed by Plaintiff as containing CSAM.

48.   This content, based on the hash match, was categorized by NCMEC as "unconfirmed."

49.   In fact, the file did not contain CSAM.

50.   Furthermore, there was nothing contained within the image which suggested that it was CSAM.

51.   The model was, in fact, an adult.

52.   The adult model was not portrayed or described as a minor in the image itself.

53.   The adult model was not acting or pretending to be a minor.

54.   To the contrary, all of the facts, then available to the Defendants, showed that the image was not CSAM:

   a.   The image was watered-marked by a public domain website, denoting a copyrighted image.

   b.   The website, from which the image came, explicitly identifies the model as an adult.

  c. The website, from which the image came, explicitly claims compliance with Federal Law regarding age verification of models.

  d. The website, from which the image came, provides a link to a legal representative who can provide age verification compliance information.

  e. The verification information kept by the website, proves the model was over the age of 18 at the time of the professionally produced photo shoot.

55. At all times material, this file was protected and private content, which could not be disclosed to third parties.

56. At all times material the Defendants did not have "actual knowledge" of an apparent violation of the law regarding CSAM.

57. At all times material the Defendants conducted no investigation into the veracity of the hash match for the purpose of gathering "facts or circumstances" which would constitute "actual knowledge" of apparent possession of CSAM.

58. On January 25, 2023, the Defendant Synchronoss disclosed the subject content in a "Cyber Tipline" report to NCMEC alleging that the Plaintiff was in possession of CSAM.

59. The disclosure of the subject image to NCMEC, accusing Plaintiff of possession of CSAM, was entirely voluntary and was made outside of the requirements of 18 U.S. Code Sec. 2258A.

60. In making the disclosure, Defendants made multiple additional false statements to NCMEC.

61. The subject disclosure stated that:

     a) The service provider had viewed the entire contents of the uploaded file.

     b) That the entire content of the uploaded file was not available publicly.

     c) That the image contained the lascivious exhibition of a "pre-pubescent" minor.

62.   All three of these statements were false at the time they were made:

     a) No officer, director, manager, or employee of either Defendant actually viewed the image in question prior to its disclosure as CSAM.

     b) The entire content of the subject file was available publicly.

     c) The adult model in the image was unequivocally pubescent.

63.   The monitoring system, then in place, was designed or functioned to electronically generate and send NCMEC reports instantly, upon flagging of a hash matched image.

64.   At the time of the disclosure, neither Defendant had "actual knowledge" that the content contained CSAM.

65.   At the time of the disclosure neither Defendant had "actual knowledge" that the Plaintiff had committed an "apparent" violation of law regarding the possession of CSAM.

66.   At no time did the Defendants attempt to investigate or obtain "actual knowledge" of facts or circumstances that the content was, in fact, CSAM.

67.   In fact, Defendant Verizon and/or Synchronoss did not have a subjective belief that the content was CSAM.

68. Under the totality of the circumstances, the Defendants had ample and obvious reason to believe that the allegation was false.

69. Under 18 U.S. Code Sec. 2258A and 18 U.S. Code § 2702, Defendants Verizon and Synchronoss are responsible for making the determination, based on "actual knowledge," of "facts and circumstances" that there has been an apparent violation of law regarding CSAM.

70. The extra-statutory scanning system, as planned and/or implement by Defendant, does not attempt to obtain "actual knowledge" of the violation of laws regarding CSAM but rather abdicates that responsibility to the individual or organization that created the original hash value, NCMEC or law enforcement.

71. These other individuals or organizations do not have any obligation to protect the Defendant's customers' privacy.

72. Based on the false allegations contained within the January 25, 2023 disclosure, law enforcement obtained a subpoena to search virtually all of Plaintiff's personal digital information and content.

73. Defendants knew that the allegation of possession of CSAM carried a substantial risk of search and seizure by the State, arrest, loss of employment, devastating social stigma, and ostracization from friends and family.

74. The misidentification of Plaintiff as possessing CSAM was not an accident. Rather, it was the predictable and expected outcome of the system put in place and executed by the Defendants.

75. The monitoring and screening system put in place by the Defendants, or programs which are substantially similar, have falsely reported this same content (hash value) to either NCMEC, or some other organization, in the past as CSAM.

76.     The system, unless it has been modified by Defendants since the origination of the present case, will falsely report this content in the future. It is just a matter of time, as the content is publicly available and completely legal.

77.     A simple "Google Images" search of the model's name, who has now been a professional model for over 13 years, will return the subject image.

78.     There are other images which have been reprted, in the past, and will be falsely reported by the Defendants as CSAM, in the future.

79.     In fact, a substantial percentage of similar service provider reports through NCMEC are found to be false, unsubstantiated, or otherwise not actionable.

80.     Unknown to Plaintiff until his arrest, Defendant had falsely flagged and disclosed content of the Plaintiff in the past as "unconfirmed" CSAM.

81.     On October 29, 2022, Defendant Synchronoss disclosed private content that was flagged as apparent CSAM to NCMEC.

82.     In making this disclosure, Defendant Synchronoss made the false factual allegation that Plaintiff was in possession of CSAM.

83.     That file or content was not CSAM.

84.     Despite the fact that it was not CSAM, the disclosure and false allegations were communicated to law enforcement by NCMEC.

85.     Law enforcement determined that it was not apparent, obvious or manifest CSAM and refused to take further action on the report from Defendants and NCMEC.

86.     In the year 2022, Defendant Synchronoss made 30, 901 separate reports to NCMEC.

87.     It is not statistically probable that these two files are the only false positives flagged by the Defendant's monitoring and screening program.

88.     In 2023, Law enforcement officials in Georgia were forced to drop charges of possession of CSAM based on a NCMEC hash match from another

service provider.  That particular content was published by verified models on Pornhub.com.  The content had been viewed millions of times. The models had verified adult profiles on that website, and yet, somehow, the content had been "hashed" as CSAM.

89.  In essence, the Defendants have created a monitoring and screening system that plays a game of Russian Roulette with the privacy and liberty of their customers: although many of the reports to NCMEC may be justified, when the game is played long enough, a customer will be subjected to a false allegation, catastrophic and irreparable injury to their reputation, illegal search and seizure, arrest and destruction of the society they enjoyed.

90.  Such conduct is malicious, reckless and demonstrates a wonton disregard for the rights and liberty of their own customers.

91.  Defendants have a subjective belief that they are immune from civil liability for this conduct.

92.  Defendants have a subjective belief that they are immune from civil liability for any conduct relating to the disclosure of pornographic content, whether it is apparent CSAM or not, to NCMEC.

93.  They believe that this immunity extends to acts and omissions which are not required and explicitly beyond the scope of Sec 2258A or C, including the voluntary monitoring and screening of customers' private content.

94.  This subjective belief has fueled the impunity with which the Defendants expose their customer's private content to third party disclosure, unreasonable government search and seizure and false defamatory allegations.

95.  This belief has led to the complete abdication of responsibility, indifference to the truth of their accusations and disregard for the consequence of their actions.

96. In making this disclosure, the Defendants published and communicated a false, factual, defamatory statement identifying the Plaintiff as being in possession of CSAM.

97. Specifically, Defendant communicated and published the statement that Plaintiff was in possession of an image which depicted the "lascivious exposition" of a "prepubescent minor" to NCMEC.

98. This statement was false.

99. The knowing possession of such an image would constitute a felony in the State of Florida.

100. Ultimately, this defamatory statement was communicated to law enforcement in the State of Florida.

101. The false factual defamatory statement resulted in the arrest of Plaintiff.

## COUNT I- VERIZON COMMUNICATIONS, INC – DEFAMATION

102. Plaintiff re-incorporates and realleges paragraphs 1-101.

103. At all times material Defendant Synchronoss was an agent of Defendant, Verizon.

104. At all times material Defendant Synchronoss was acting within the course and scope of its agency with Defendant Verizon.

105. At the time of the publication, the Defendant knew or should have known, by the exercise of reasonable diligence, the defamatory statement published by Synchronoss on January 25, 2023 was false.

106. At the time of the publication, Verizon was completely indifferent to the veracity of the false defamatory statement made on January 25, 2023.

107. The publication of the defamatory statement was made with actual malice and/or a reckless indifference to the truth of the accusation and a wanton disregard for the rights and reputation of the Plaintiff.

108. Defendants knew or should have known that Defendant Synchronoss was making serious and defamatory allegations against its customers, on a regular basis.

109. Defendant Verizon had a duty of reasonable care to ensure that Synchronoss had verified, or at the very least investigated, the veracity of these defamatory statements.

110. Defendant Verizon knew or should have known that the defamatory allegations would be disseminated to additional parties, including but not limited to law enforcement.

111. As a result of the acts and/or omissions described herein, the Plaintiff suffered actual damages, including a violation of privacy, the public disclosure of private facts, arrest, the deprivation of liberty, the loss of wages, the loss of the ability to earn money, monetary damages in the form of attorney's fees, the loss of ability to enjoy life, emotional distress, mental anguish and irreparable damage to his reputation.

WHEREFORE, Plaintiff, WILLIAM LEE LAWSHE demands judgment for compensatory and punitive damages against Defendant, VERIZON COMMUNICATIONS, INC., and demands a jury trial.

## **COUNT II- VERIZON COMMUNICATIONS, INC – DEFAMATION**

112. Plaintiff re-incorporates and realleges paragraphs 1-101.

113. At all times material Defendant Synchronoss was an agent of Defendant, Verizon.

114. At all times material Defendant Synchronoss was acting within the course and scope of their agency with Defendant Verizon.

115. At the time of the publication, the Defendant knew or should have known, by the exercise of reasonable diligence, the defamatory statement published by Synchronoss on October 29, 2022 was false.

116. At the time of the publication, Verizon was completely indifferent to the veracity of the false defamatory statement made on October 29, 2022.

117. The publication of the defamatory statement was made with actual malice and/or a reckless indifference to the truth of the accusation and a wanton disregard for the rights and reputation of the Plaintiff.

118. Defendants knew or should have known that Defendant Synchronoss was making serious and defamatory allegations against its customers, on a regular basis.

119. Defendant Verizon had a duty of reasonable care to ensure that Synchronoss had verified, or at the very least investigated, the veracity of these defamatory statements.

120. Defendant Verizon knew or should have known that the defamatory allegations would be disseminated to additional parties, including but not limited to law enforcement.

121. As a result of the acts and/or omissions described herein, the Plaintiff suffered actual damages, including a violation of privacy, the public disclosure of private facts, arrest, the deprivation of liberty, the loss of wages, the loss of the ability to earn money, monetary damages in the form of attorney's fees, the loss of ability to enjoy life, emotional distress, mental anguish and irreparable damage to his reputation.

WHEREFORE, Plaintiff, WILLIAM LEE LAWSHE demands judgment for compensatory and punitive damages against Defendant, VERIZON COMMUNICATIONS, INC., and demands a jury trial.

## <u>COUNT III- SYNCHRONOSS TECHNOLOGIES, INC-</u><br><u>DEFAMATION</u>

122. Plaintiff re-incorporates and realleges paragraphs 1-101.

123. At the time of the publication on January 25, 2023, the Defendant Synchronoss knew or should have known, by the exercise of reasonable diligence, the defamatory statement was false.

124. The publication of the defamatory statement was made with actual malice and/or a reckless indifference to the truth of the accusation and a wanton disregard for the rights of the Plaintiff.

125. Defendant Synchronoss knew or should have known that the publication would be disseminated to additional parties, including but not limited to law enforcement.

126. As a result, the Plaintiff suffered actual damages, including a violation of privacy, the public disclosure of private facts, arrest, the deprivation of liberty, the loss of wages, the loss of the ability to earn money, monetary damages in the form of attorney's fees, the loss of ability to enjoy life, emotional distress, mental anguish and irreparable damage to his reputation.

WHEREFORE, Plaintiff, WILLIAM LEE LAWSHE demands judgment for compensatory and punitive damages against Defendant, SYNCHRONOSS TECHNOLOGIES, INC, and demands a jury trial.

## COUNT IV- SYNCHRONOSS TECHNOLOGIES, INC-DEFAMATION

127.   Plaintiff re-incorporates and realleges paragraphs 1-101.

128.   At the time of the publication on October 29, 2022, the Defendant Synchronoss knew or should have known, by the exercise of reasonable diligence, the defamatory statement was false.

129.   The publication of the defamatory statement was made with actual malice and/or a reckless indifference to the truth of the accusation and a wanton disregard for the rights of the Plaintiff.

130.   Defendant Synchronoss knew or should have known that the publication would be disseminated to additional parties, including but not limited to law enforcement.

131.   As a result, the Plaintiff suffered actual damages, including a violation of privacy, the public disclosure of private facts, arrest, the deprivation of liberty, the loss of wages, the loss of the ability to earn money, monetary damages in the form of attorney's fees, the loss of ability to enjoy life, emotional distress, mental anguish and irreparable damage to his reputation.

WHEREFORE, Plaintiff, WILLIAM LEE LAWSHE demands judgment for compensatory and punitive damages against Defendant, SYNCHRONOSS TECHNOLOGIES, INC, and demands a jury trial.

## COUNT V- VERIZON COMMUNICATIONS, INC –VIOLATION OF 18 U.S. CODE § 2702 - VOLUNTARY DISCLOSURE OF CUSTOMER COMMUNICATIONS OR RECORDS

132.  Plaintiff re-incorporates and realleges paragraphs 1-101.

133.  At all times material, Defendant Verizon was subject to the requirements of 18 U.S. Code § 2702.

134.  Specifically, that Verizon shall not knowingly divulge to any person or entity the contents of a communication or record while in electronic storage by that service.

135.  Pursuant to 18 U.S Code § 2702, Verizon had a non-delegable duty to maintain the privacy of Plaintiff's private content as described by that statute.

136.  On or about January 25, 2023, Verizon knowingly divulged Plaintiff's private content to a third party, in violation of 18 U.S. Code § 2702.

137.  On or about January 25, 2023, Defendant Synchronoss knowingly divulged Plaintiff's private content to a third party, in violation of 18 U.S. Code § 2702.

138.  At all times material Defendant Synchronoss was an agent of Defendant Verizon.

139.  At all times material Defendant Synchronoss was acting within the course and scope of their agency with Defendant Verizon.

140.  As a result, the Plaintiff suffered actual damages, including a violation of privacy, the public disclosure of private facts, arrest, the deprivation of liberty, the loss of wages, the loss of the ability to earn money, monetary damages in the form of attorney's fees, the loss of ability to enjoy life, emotional distress, mental anguish and irreparable damage to his reputation.

WHEREFORE, Plaintiff, WILLIAM LEE LAWSHE demands judgment for compensatory and punitive damages, including reasonable attorney's fees pursuant

to 18 U.S. Code § 2702 against Defendant, VERIZON COMMUNICATIONS, INC, and demands a jury trial.

### COUNT VI- VERIZON COMMUNICATIONS, INC –VIOLATION OF 18 U.S. CODE § 2702 - VOLUNTARY DISCLOSURE OF CUSTOMER COMMUNICATIONS OR RECORDS

141.  Plaintiff re-incorporates and realleges paragraphs 1-101.

142.  At all times material, Defendant Verizon was subject to the requirements of 18 U.S. Code § 2702.

143.  Specifically, that Verizon shall not knowingly divulge to any person or entity the contents of a communication or record while in electronic storage by that service.

144.  Pursuant to 18 U.S Code § 2702, Verizon had a non-delegable duty to maintain the privacy of Plaintiff's private content as described by that statute.

145.  On or about October 29, 2022, Verizon knowingly divulged Plaintiff's private content to a third party, in violation of 18 U.S. Code § 2702.

146.  On or about October 29, 2022, Defendant Synchronoss knowingly divulged Plaintiff's private content to a third party, in violation of 18 U.S. Code § 2702.

147.  At all times material Defendant Synchronoss was an agent of Defendant, Verizon.

148.  At all times material Defendant Synchronoss was acting within the course and scope of their agency with Defendant Verizon.

149.  As a result, the Plaintiff suffered actual damages, including a violation of privacy, the public disclosure of private facts, arrest, the deprivation of liberty, the loss of wages, the loss of the ability to earn money, monetary

damages in the form of attorney's fees, the loss of ability to enjoy life, emotional distress, mental anguish and irreparable damage to his reputation.

WHEREFORE, Plaintiff, WILLIAM LEE LAWSHE demands judgment for compensatory and punitive damages, including reasonable attorney's fees pursuant to 18 U.S. Code § 2702 against Defendant, VERIZON COMMUNICATIONS, INC, and demands a jury trial.

## COUNT VII- SYNCHRONOSS TECHNOLOGIES, INC – VIOLATION OF 18 U.S. CODE § 2702 - VOLUNTARY DISCLOSURE OF CUSTOMER COMMUNICATIONS OR RECORDS

150. Plaintiff re-incorporates and realleges paragraphs 1-101.

151. At all times material, Defendant Synchronoss Technologies was subject to the requirements of 18 U.S. Code § 2702.

152. Specifically, that Synchronoss Technologies shall not knowingly divulge to any person or entity the contents of a communication or record while in electronic storage by that service.

153. On or about January 25, 2023, Synchronoss Technologies knowingly divulged Plaintiff's private content to a third party, in violation of 18 U.S. Code § 2702.

154. As a result, the Plaintiff suffered actual damages, including a violation of privacy, the public disclosure of private facts, arrest, the deprivation of liberty, the loss of wages, the loss of the ability to earn money, monetary damages in the form of attorney's fees, the loss of ability to enjoy life, emotional distress, mental anguish and irreparable damage to his reputation.

WHEREFORE, Plaintiff, WILLIAM LEE LAWSHE demands judgment for compensatory and punitive damages, including reasonable attorney's fees pursuant to 18 U.S. Code § 2702, against Defendant, SYNCHRONOSS TECHNOLOGIES, INC, and demands a jury trial.

## COUNT VIII- SYNCHRONOSS TECHNOLOGIES, INC – VIOLATION OF 18 U.S. CODE § 2702 - VOLUNTARY DISCLOSURE OF CUSTOMER COMMUNICATIONS OR RECORDS

155.  Plaintiff re-incorporates and realleges paragraphs 1-101.

156.  At all times material, Defendant Synchronoss Technologies was subject to the requirements of 18 U.S. Code § 2702.

157.  Specifically, that Synchronoss Technologies shall not knowingly divulge to any person or entity the contents of a communication or record while in electronic storage by that service.

158.  On or about October 29, 2022, Synchronoss Technologies knowingly divulged Plaintiff's private content to a third party, in violation of 18 U.S. Code § 2702.

159.  As a result, the Plaintiff suffered actual damages, including a violation of privacy, the public disclosure of private facts, arrest, the deprivation of liberty, the loss of wages, the loss of the ability to earn money, monetary damages in the form of attorney's fees, the loss of ability to enjoy life, emotional distress, mental anguish and irreparable damage to his reputation.

WHEREFORE, Plaintiff, WILLIAM LEE LAWSHE demands judgment for compensatory and punitive damages, including reasonable attorney's fees pursuant

to 18 U.S. Code § 2702, against Defendant, SYNCHRONOSS TECHNOLOGIES, INC, and demands a jury trial.

Dated on this  29th day of May 2024.

**LAW    OFFICES    OF    NOONEY, ROBERTS, HEWETT, AND NOWICKI**

*/s/ Michael K. Roberts*

_____

**Michael K. Roberts, Esquire**
Florida Bar No. 00779741
**Jeffery S. Nooney, Esquire**
Florida Bar No. 1011565
1680 Emerson Street
Jacksonville, FL 32207
(904) 398-1992
(904) 858-9943 facsimile
mroberts@nrhnlaw.com
jnooney@nrhnlaw.com
Attorney for Plaintiff