UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

WILLIAM LEE LAWSHE,
an individual,

                       Plaintiff,

v.

VERIZON COMMUNICATIONS INC., a Delaware Corporation, and SYNCHRONOSS TECHNOLOGIES, INC., a Delaware Corporation,

                       Defendants.

Civil Action No. 3:24-cv-00137

## DEFENDANTS VERIZON COMMUNICATIONS INC. AND SYNCHRONOSS TECHNOLOGIES, INC.'S JOINT REPLY IN SUPPORT OF RULE 12(b)(6) MOTIONS TO DISMISS

One of the actions Congress has taken to fight the distribution of CSAM online is to place a duty on service providers like Defendants to report CSAM they encounter to NCMEC, so that purveyors of such material can be investigated and arrested. In response to that duty, providers reported 105,632,162 data files to NCMEC in 2023. *See* https://www.missingkids.org/gethelpnow/cybertipline/cybertiplinedata. Congress allowed for the possibility that not every image reported would be an illegal one by offering broad immunity to providers for any civil claim "arising from the performance of the reporting or preservation responsibilities of such provider." And such immunity is crucial because providers are required to report "apparent violations" of the law to NCMEC, not just actual ones. "Apparent violations" is not term of art related to "apparent CSAM," but rather a plain English term requiring providers to report whenever the statute appears to have been violated. To this day, it remains unclear whether Plaintiff possessed or distributed illegal images, but because charges against him were dropped, Plaintiff seeks to pierce Defendants' statutory immunity. If permitted to proceed, Plaintiff's suit would have a chilling effect on CSAM reporting by forcing providers to make an impossible choice: either ignore images of abuse where the age of the victim cannot be determined with certainty and risk

violating 18 U.S.C. § 2258A, or proceed with such reporting and risk lawsuits from individuals trading in pornography that features persons who appear to be children but may actually be 18 years old. To avoid exactly this outcome, and to encourage providers to engage in the entirely voluntary activity of searching for CSAM on their platforms, Congress created the broad immunity that Defendant asks this Court to dismantle. Here, Defendants fulfilled their duty to report apparent violations of the law, and the entities to which they reported Plaintiff's conduct found the images sufficiently troubling to initially charge Plaintiff. Based on the allegations of the Amended Complaint, no cause of action can be maintained.

I. **The Statute Immunizes Defendants for Reporting Apparent CSAM Violations.**

   a. **Defendants reported an "apparent violation" as required by statute.**

Plaintiff conflates two distinct uses of the word "apparent" in support of his position that Defendants cannot rely on statutory immunity. He notes that NCMEC and other entities describe "apparent" CSAM as only "obvious or verified contraband." Opp. at 7. This argument conflates "apparent" CSAM with an "apparent" violation of the law. Providers "shall" report when they have "actual knowledge" of "any facts or circumstances" indicating any "apparent violation." 18 U.S.C. § 2258A(a)(1)–(2). While NCMEC employs a taxonomy to label images in its hash database, including "apparent child pornography, child pornography unconfirmed, child clothed, child unclothed, and anime," and the "apparent" category includes only "overtly clear" CSAM, *United States v. Williamson*, No. 8:21-CR-355-WFJ-CPT, 2023 WL 4056324, at *3 (M.D. Fla. Feb. 10, 2023), NCMEC's use of "apparent" does not govern the statutory meaning of "apparent violation." *Williamson* makes this clear, as the provider in that case (Yahoo) reported seven images to NCMEC, and NCMEC classified four as "unconfirmed" CSAM and subsequently provided ***all seven*** images to local law enforcement. *Id.* at *4–*6. Regardless of whether the images constituted "apparent" CSAM under the NCMEC taxonomy, the hash matches constituted facts and circumstances indicating an "apparent violation" of child pornography laws.

### b. Defendants' position does not raise constitutional concerns.

Plaintiff wrongly asserts that Defendants' reading of their statutory duty to report apparent violations to NCMEC creates potential constitutional issues, invoking both the First and Fourth Amendments to the U.S. Constitution. Opp. at 8–12. He asserts that, under Defendants' reading of the statutory scheme, Verizon "would function merely as an agent for the government's search." Opp. at 11. Whether the government "encourages" providers like Defendants to screen user content for CSAM (via statutory immunity) has no bearing on whether the images at issue constituted apparent CSAM. If Plaintiff were correct that any tacit "encouragement" of CSAM screening converted provider screening into a private search under the Fourth Amendment, then the entire statutory scheme for reporting CSAM would be constitutionally suspect. But courts have regularly rejected that premise. E.g., *United States v. Williamson*, No. 8:21-CR-355-WFJ-CPT, 2023 WL 4056324, at *13 (M.D. Fla. Feb. 10, 2023). This has no bearing on how the Court should interpret the definition of an "apparent" violation, and by extension, whether Defendants were immune from suit.

While the private *possession* of pornographic material is generally protected by the First Amendment, obscenity is entitled to no First Amendment protection as a matter of speech or expression. *Reno v. American Civil Liberties Union*, 521 U.S. 844, 883 (1997). Any chilling effect resulting from platforms reporting suspected CSAM to NCMEC would be minimal. By contrast, Plaintiff's view that providers must determine with absolute certainty that content is CSAM before reporting to NCMEC would chill both CSAM screening and reporting to NCMEC.

### c. Defendants acted within the scope of their reporting obligations.

Plaintiff contends that, because Defendants were not obligated to screen customer content for CSAM, § 2258B does not immunize them from liability, as that grant of immunity extends only to providers' "performance of the reporting or preservation responsibilities" under the applicable statutory scheme. Opp. at 12–13. However, although Defendants were not obligated to screen customer content in the first instance, they were obligated to report apparent legal violations once they engaged in such monitoring. § 2258A(a)(1)–(2).

3

Defendants thus acted within the scope their reporting responsibilities under the statute and are immune from liability.

## II. § 2258B's Narrow Exceptions Do Not Apply.

Plaintiff asserts that Defendants engaged in "intentional misconduct" by reporting to NCMEC and that § 2258B therefore does not shield Defendants from immunity. Opp. at 14–15. However, the complaint alleges no facts to support a claim of intentional misconduct by Defendants. Instead, in his brief, Plaintiffs attempts to stretch the definition of "intentional misconduct" to include any process that might have produced an error, citing no authority for this strained proposition. The CyberTipline Report Plaintiff attached to his responses to the Motions [Doc. 28-1] is a standard, garden variety report to NCMEC and shows no evidence of "intentional misconduct" by Defendants.

Plaintiff also contends that Defendants acted with "actual malice" in reporting to NCMEC and thus fall outside § 2258B's grant of immunity. Opp. at 15–17. But his allegations do not support a conclusion that Defendants "actually entertained serious doubts as to the veracity of the published account, or w[ere] highly aware that the account was probably false." *Dershowitz v. Cable News Network, Inc.*, 668 F. Supp. 3d 1278, 1285 (S.D. Fla. 2023). Plaintiff alleges only that Defendants were aware of the hypothetical possibility that any given hash match could be a false positive. This falls far short of showing that Defendants "entertained serious doubts" as to the veracity of these specific reports to NCMEC. The CyberTipline Report also shows no evidence of actual malice on Defendants' part; Defendants merely reported to NCMEC based on hash value matches with other images in the NCMEC database. The additional facts Plaintiff relies on are too vague and speculative to establish that Defendants "entertained serious doubts" about their reports— for example, Plaintiff does not describe the watermark or identify the website that purportedly identified the model as an adult, nor does he allege any facts showing that this unidentified website was credible. ECF 22 at ¶ 54. Indeed, CSAM has been posted on popular pornography websites countless times; the fact that images were downloaded from a public

4

website is in no way evidence that such content is not CSAM. *Cf. Doe #1 v. MG Freesites, LTD*, 676 F. Supp. 3d 1136 (N.D. Ala. 2022).

Plaintiff also asserts that Defendants "fabricated" statements made to NCMEC. Opp. at 17 (citing *St. Amant v. Thompson*, 390 U.S. 727, 732 (1968)). Plaintiff appears to interpret "fabricated" as meaning simply that a statement was false—but actual malice involves more than a mere falsehood. *See New York Times Co. v. Sullivan*, 376 U.S. 254, 280 (1964). In effect, Plaintiff argues that Defendants should have investigated further prior to reporting to NCMEC—but that is not what the law requires. *See St. Amant*, 390 U.S. at 733.

### III.  Defendants Are Immune From Liability Under the SCA.

Any reporting provisions in the Communications Act are irrelevant here. Plaintiff appears to argue that Defendants' reports to NCMEC were not submitted pursuant to § 2258A based on a purported distinction between "voluntary" and "mandatory" reporting in an entirely different statute that has no bearing on the SCA. *Id.* at 18–19. Looking to a confidentiality provision in the Communications Act, 47 U.S.C. § 222, Plaintiff highlights a distinction between voluntary and mandatory disclosures in the context of information about consumers' telecommunications service use. Opp. at 19. These are in fact two entirely separate statutory schemes, and Plaintiff identifies no authority for relying on the Communications Act to interpret the SCA. Whether the Communications Act recognizes a distinction between "voluntary" and "mandatory" disclosure of telecommunication customer data is irrelevant to this dispute. Moreover, the statutory scheme governing reports to NCMEC specifically anticipates and authorizes voluntary CSAM monitoring by providers. *See* § 2258A(f). When providers opt to engage in such monitoring, however, they are required to report any apparent violations. *Id.* § 2258A(a)(1)(A)(i). The SCA immunizes providers such as Defendants for disclosures made to NCMEC under § 2258A (as Plaintiff acknowledges, *see* Opp. at 18); because Defendants did so, they are immune from liability.

5

Case 3:24-cv-00137-MMH-LLL     Document 40     Filed 06/03/24     Page 6 of 7 PageID 289

| | |
|---|---|
| Dated: June 3, 2024 | Respectfully submitted, |
| **BOND, SCHOENECK & KING, PLLC** | **ZWILLGEN PLLC** |
| *Attorneys for Synchronoss Technologies, Inc.* | *Attorneys for Verizon Communications, Inc.* |
| By: /s/ Andrew H. Reiss<br>Andrew H. Reiss, Esq.<br>Florida Bar 116955<br>Katherine V. Ramos-Bigley, Esq.<br>Florida Bar 1048878<br>Northern Trust Building, Suite 105<br>4001 Tamiami Trail North<br>Naples, Florida 34103-3555<br>Telephone: (239) 659-3800<br>areiss@bsk.com<br>kramosbigley@bsk.com<br>knettles@bsk.com | By: /s/ Nury Siekkinen<br>Nury Siekkinen<br>Florida Bar No. 1015937<br>1900 M. Street NW, Suite 250<br>Washington, DC 20036<br>nury@zwillgen.com |

## CERTIFICATE OF SERVICE

I certify that on June 3, 2024, a true and accurate copy of the foregoing has been electronically filed with the Clerk of the Court by using the CM/ECF system. I also certify that the foregoing document is being served this day on all counsel of record identified on the attached Service List in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to electronically receive Notices of Electronic Filing.

      /s/ Andrew H. Reiss
      Andrew H. Reiss

17904985.1 6/3/2024

## **SERVICE LIST**

LAW OFFICES OF NOONEY, ROBERTS, HEWETT, AND NOWICKI
Michael K. Roberts
mroberts@nrhnlaw.com
Jeffery S. Nooney
jnooney@nrhnlaw.com
1680 Emerson Street
Jacksonville, FL 32207
(904) 398-1992

*Counsel for Plaintiff*