## UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF FLORIDA
## JACKSONVILLE DIVISION

WILLIAM LEE LAWSHE,
an individual,

                Plaintiff,

v.

VERIZON COMMUNICATIONS INC., a
Delaware Corporation, and
SYNCHRONOSS TECHNOLOGIES,
INC., a Delaware Corporation,

                Defendants.

**Civil Action No. 3:24-cv-00137-MMH-LLL**

---

### DEFENDANT VERIZON COMMUNICATIONS INC.'S
### MOTION FOR RECONSIDERATION OF ORDER DENYING
### RULE 12(b)(6) MOTIONS TO DISMISS

       Defendant Verizon Communications Inc. ("Verizon"),[1] by counsel, hereby moves this Court to reconsider the Order (ECF 45) (the "MTD Order") denying Verizon's Motion to Dismiss the Amended Complaint ("Amended Complaint") of Plaintiff William Lee Lawshe ("Lawshe" or "Plaintiff"). In support of its Motion, Verizon submits the following Memorandum.

### I.  Introduction and Summary

       This Court's MTD Order is based on an erroneous assumption—that Verizon was informed by NCMEC that one of the two images at issue was tagged "CSAM—

---

[1] Verizon moves this Court on its own behalf and not on behalf of Synchronoss. However, because Plaintiff has alleged that Synchronoss acted as Verizon's agent, Verizon will at times refer to both Defendants since Plaintiff has alleged essentially identical facts against both and has also alleged that Synchronoss acted as Verizon's agent.

unconfirmed."[2] In footnote 10 of its Order, the Court acknowledged that Plaintiff had not pled this but explicitly made this assumption in Plaintiff's favor. In doing so, respectfully, the Court erred. Verizon therefore files this motion for reconsideration to request that the Court correct this error now, as not doing so may chill providers' participation in the framework created by Congress to stem the sexual exploitation of children.

In 2008, by statute, Congress authorized NCMEC, a private nonprofit, to disseminate "hash values or other unique identifiers associated with a specific visual depiction, including an Internet location and any other elements provided in a CyberTipline report that can be used to identify, prevent, curtail, or stop the transmission of child pornography and prevent the online sexual exploitation of children." 18 U.S.C. § 2258C(a)(2). In turn, Congress encouraged providers, like Verizon, to "reduce the proliferation of online child sexual exploitation and to prevent the online sexual exploitation of children" by providing immunity for their identification of "apparent violation[s]" of the child sexual abuse laws to NCMEC. *Id.* §§ 2258A and B.

NCMEC and Verizon followed standard processes for the identification and transmittal of the alleged CSAM at issue in this case to NCMEC.[3] Plaintiff's Amended Complaint does not allege otherwise. Accordingly, Verizon is entitled to the statutory

---

[2] By this Motion, Verizon does not concede that Section 2258B immunity is dependent on Verizon's ignorance of the CSAM "unconfirmed" tag. The fact that the image was included in NCMEC's CSAM database -- but that it wasn't plainly obvious as CSAM -- is not enough to compromise the statutory immunity even if Verizon had been aware of NCMEC's judgment (which it was not). As set forth in Verizon's motion to dismiss and reply, "apparent" in 18 USC 2258A does not mean— nor can it mean—"plainly obvious" or "confirmed." Rather, it must mean "seems to be."

[3] The image reported was not of a chair or of a table, but a pornographic image that matched one of the hash values in NCMEC's CSAM database. As this Court is aware, Plaintiff alleged in the related case that this same image was viewed by two additional individuals, not associated with Verizon, who either reported or averred under oath that the Second Image depicted a minor. ECF 27-1 ¶¶11, 49, 68, 79, 82. At best, Verizon reported an image mistakenly categorized as CSAM in the NCMEC database, one that also convinced two experts in the field that image was actual CSAM worthy of prosecution. Under these alleged facts, it is particularly unjust to allow this cause of action to go forward.

immunity created by Congress to protect it and all providers from vexatious litigation and the expense of discovery. The Court should reconsider the MTD Order because it erred in basing its ruling on the unalleged fact that Verizon had knowledge of the "unconfirmed" CSAM designation by NCMEC. While the Court characterized its reliance on this unalleged fact as a favorable inference of the facts pled, it is instead an impermissible assumption of facts not pled in the Amended Complaint (*Equal Emp. Opportunity Comm'n v. STME, LLC*, 309 F. Supp. 3d 1207, 1211 (M.D. Fla. 2018), *aff'd*, 938 F.3d 1305 (11th Cir. 2019)) and the court should grant Verizon's motion for reconsideration.

The burden and expense caused by this error of fact on Verizon, and other providers, will undermine the public policy encouraging providers to help stem the sexual exploitation of children.[4] Statutory immunity protects providers' good-faith compliance with the mandatory task of reporting images that they have actual knowledge constitute apparent CSAM, and should not be abandoned on the facts alleged, and not alleged, in the Amended Complaint. To do otherwise risks chilling provider efforts to help prevent, curtail, or stop the transmission of child pornography by detecting and reporting child sexual abuse, including through matching to hash values provided by NCMEC. Indeed, the MTD Order is the only reported case to hold that statutory immunity did not shield providers from suit in connection with a NCMEC report. The only two reported cases to have considered provider immunity in connection with a NCMEC report are (1) *Jurek v. Am. Tel. & Tel. Co.*, No. 5:13 CV 1784, 2013 WL 5298347, at \*5 (N.D. Ohio Sept. 20, 2013), appeal dismissed, No. 13-4180 (6th Cir. Feb. 11, 2014) and (2) *Rosenow v. Facebook, Inc.*, No. 19-CV-1297-WQH-

---

[4] *See* Riana Pfefferkorn, *Verizon and Its Cloud Vendor Must Face Lawsuit for Reporting "CSAM" That Wasn't – Lawshe v. Verizon*, Tech. & Mktg. L. Blog (Mar. 11, 2025), https://blog.ericgoldman.org/archives/2025/03/verizon-and-its-cloud-vendor-must-face-lawsuit-for-reporting-csam-that-wasnt-lawshe-v-verizon-guest-blog-post.htm. (noting that the MTD Order is the first to find that immunity did not apply and warning that the decision is likely to lead to providers avoiding content moderation for CSAM via hash matching).

MMP, 2024 WL 5265312, at *1 (S.D. Cal. Mar. 25, 2024). Both upheld provider immunity in connection with provider reports made to NCMEC. The MTD Order is the first to hold otherwise.

The MTD Order bases its momentous conclusion on the incorrect assumption about the information available to the providers as part of the hash matching process. The Court's decision plainly turned on the unpled and incorrect assumption that Verizon was aware of the tags that NCMEC associated with various images reported by Verizon to it. *See* ECF 45 at 15 n.10. But Plaintiff never alleged, suggested, or implied in the complaint that the designations made by NCMEC are given to the providers, like Verizon -- because they are not. Rather, the Amended Complaint specifies that NCMEC made the designation after the image was received (*see* Am. Compl. ¶ 48). *See* ECF 28-1 at 1, 7. The Amended Complaint does not provide any basis to support the inference that NCMEC had communicated the designation of "apparent" or "unconfirmed" to Verizon or that Verizon was contemporaneously aware of them through any means.[5] Rather, what is pled is that Verizon relied on a hash value submitted to it by NCMEC, the entity authorized by Congress to disseminate such hash values to "prevent, curtail, or stop the transmission of child pornography." The Court should have decided the motion based solely on Plaintiff's allegation that the Second Image matched the hash value provided by NCMEC, as Congress authorized it to do, of an image previously flagged as CSAM and that hash matches are "highly accurate" at flagging the same or similar image within a large database. *See* Am. Compl. ¶¶ 24, 28. For these reasons, and as set forth below, the

---

[5] Indeed, the reason that the Court could find no decisions regarding the effect of an "unconfirmed" tag on a providers' reporting responsibilities is that no such tag is given to the providers in advance of reporting. The NCMEC hash database, by their own statement, contains 6.3 million hash values (with no tags) each of which has been "tripled vetted" to be sure that it contains CSAM. *See* NCMEC, CyberTipline 2022 Rep., https://www.missingkids.org/test/cybertiplinedata-draft (last visited March 22, 2025) ("When a triple vetted image or video is identified as containing CSAM, NCMEC adds the hash value to a list that is shared with technology companies.").

court should reconsider the MTD Order and dismiss the Amended Complaint based on statutory immunity.

## II.   Standard for Motions for Reconsideration

Motions for reconsideration should be granted where the Court has made errors of fact or law. Thus, "a motion for reconsideration is appropriate where the Court has patently misunderstood a party or has made a decision outside of the adversarial issues presented to the Court by the parties, or has made an error not of reasoning, but of apprehension." *Sanzone v. Hartford Life & Accident Ins. Co.*, 519 F. Supp. 2d 1250, 1255–56 (S.D. Fla. 2007), on reconsideration (Oct. 16, 2007) (granting motion for reconsideration due to the court's misreading of plaintiff's pleadings). Courts "should not assume that the plaintiff can prove facts that were not alleged." *Equal Emp. Opportunity Comm'n v. STME, LLC,* 309 F. Supp. 3d 1207, 1211 (M.D. Fla. 2018), aff'd, 938 F.3d 1305 (11th Cir. 2019) (citing *Quality Foods de Centro Am., S.A. v. Latin Am. Agribusiness Dev. Corp., S.A.*, 711 F.2d 989, 995 (11th Cir. 1983)); *Monaco Exch., Inc. v. SJ Int'l Brokers, LLC*, No. 12-23447-CIV, 2012 WL 12868294, at *2 (S.D. Fla. Nov. 28, 2012) ("While on a motion to dismiss the Court must take all well-pled facts as true, the Court should not make inferences and assumptions and it will not do so here."); *Marshall v. Aryan Unlimited Staffing Sol.*, No. 12-81404-CIV, 2013 WL 4759050, at *1 (S.D. Fla. Sept. 3, 2013) ("the court shall not supply additional facts or construct a legal theory for plaintiff that assumes facts that have not been pleaded*"), aff'd sub nom. Marshall v. Aryan Unlimited Staffing Sol./Faneuil Inc./MacAndrews Holding*, 599 F. App'x 896 (11th Cir. 2015). That is precisely what has happened here. This error of fact caused the Court to deny the Motion to Dismiss and should be corrected due to the chilling effect the MTD Order may have on Verizon and other providers who may decide to reduce their litigation risk and stop monitoring for child sexual abuse materials reported by NCMEC in its wake.

III.    **The Court's Ruling Depends on Facts Not Alleged in the Amended Complaint and Improper Inferences**

In denying Verizon's Motion to Dismiss, the Court relied heavily on an assumption, characterized as an inference, that cannot properly be drawn in Plaintiff's favor. *See Marshall*, 2013 WL 4759050, at *1. In finding that Verizon should not have relied solely on the hash match before reporting the Second Image to NCMEC, the Court specified that NCMEC's tag of the image as "unconfirmed" should have prompted Verizon to conduct a visual inspection of the image.[6] ECF 45 at 22. However, Plaintiff did not allege or suggest that Verizon or Synchronoss received or was otherwise aware of the "unconfirmed" designation from NCMEC. To be sure, Plaintiff alleged that NCMEC tagged the image as such but nowhere did he allege that the label was disclosed to or known by Verizon or Synchronoss or contained in the hash value database itself as the Court assumed. Am. Compl. ¶¶ 31, 47-48. In fact, the Amended Complaint and Plaintiff's exhibits show otherwise – that the tag was added by NCMEC after it was reported to NCMEC by Verizon. *See* Am. Compl. ¶ 31.[7] The CyberTipline report associated with the Second Image which included the "unconfirmed" tag on the first page in three places—once as "CP (unconfirmed)" and twice as "Apparent Child Pornography (unconfirmed)"—makes clear that the tag was applied by NCMEC in a section labeled "Additional Information Provided by NCMEC." ECF 28-1 at 1, 7. This report was issued to law enforcement, not to Verizon or Synchronoss. Still, the Court incorrectly assumed as fact for purposes of ruling on the motion to dismiss that Verizon and Synchronoss received that "tag" when they did not. Providers like Verizon receive only the hash values when they access the hash

---

[6] To be clear, Verizon and/or its agents routinely performed visual inspections of hash matched images and did so in this instance, as discovery in this matter will demonstrate if necessary.

[7] The Court may have been misled by the Plaintiff's decision to follow Paragraph 31 with the allegation that "Providers can voluntarily use these hash values to aid in the detection of CSAM." But the reference to "these hash *values*" in Paragraph 32 refers to the *values* described in Paragraph 24 and not the tags or categories described in Paragraph 31.

database from NCMEC that is intended to be used by providers to identify apparent CSAM and to report it (as Verizon did here). A match indicates that an image is identical to one flagged on that database maintained by NCMEC for the purpose of identifying CSAM pursuant to 18 U.S.C. § 2258C (authorizing NCMEC to disseminate hash values to provider for the "purpose of permitting that provider to stop the online sexual exploitation of children").

The Court relied on this unpled assumption, and not a reasonable inference based on facts actually pled, that Verizon or Synchronoss received the "unconfirmed" designation when it held "the Court cannot say that [Verizon's or Synchronoss's] knowledge of an 'unconfirmed' CSAM tag match is 'knowledge of the facts or circumstances from which there is an apparent violation' of CSAM laws." ECF 45 at 19. The Court's erroneous factual inference that Verizon received any information from NCMEC that would undermine the fact of the hash match was not supported by the allegations in the Amended Complaint or Plaintiff's arguments or exhibits. Indeed, the Court should have drawn the opposite inference when the "tag" was shown -- by Plaintiff's own exhibits -- to have been contained in the report issued by NCMEC to law enforcement.[8]

Here, where Plaintiff alleged that the only information Verizon knew was (1) the image itself and (2) that the image matched a hash value of the "triple vetted" images in NCMEC's hash value database – Verizon is placed in an impossible position.[9] The law requires Verizon to report apparent violations of the statute of

---

[8] Though dismissal with prejudice is warranted based on the statutory immunity, the Court could allow Plaintiff to amend his complaint again if he can make this allegation. But he will not be able to do so consistent with Rule 11 because those tags are not included by NCMEC in the hash database made available to providers. Rather, those tags are deployed *only* in NCMEC's reports to law enforcement. *See* ECF 28-1.

[9] NCMEC's website notes that NCMEC has 6.3 million hash values of child sexual abuse material, and that images are "triple vetted" before being placed in the database. *See* NCMEC, CyberTipline 2022 Rep., https://www.missingkids.org/test/cybertiplinedata-draft (last visited March 23, 2025).

which it has actual knowledge (whether they derive from user reports or the provider's own detection), so Verizon's report would likely be deemed mandatory under the statute in any other court. Indeed, it could be fined over $850,000 for failing to report a single image, and $1,000,000 for every image thereafter. *See* 18 USC 2258A(e). But this Court has now denied immunity to Verizon for making that mandatory report, forcing Verizon to potentially defend expensive litigation for every report it makes. Further, where Verizon had a statutory duty to report a hash matching image, it cannot amount to actual malice for Verizon to report that image, even if the report contained incorrect statements as alleged by Plaintiff. To hold otherwise would undermine the statute's purpose and exacerbate the catch-22 the MTD Order creates for providers. This predicament illustrates why the ruling threatens to effectively end the practice of hash value matching, a practice engaged in by 89% of the 44 companies making up the Technology Coalition and specifically permitted by Congress under Section 2258C.[10]

Because the Court made an unsupportable assumption not pled in the Amended Complaint, one that results in a manifest injustice that is against public policy, the Court should reconsider and reverse its ruling, allowing Plaintiff to amend his complaint only if he has facts from which he can make an allegation that Verizon had information other than the image itself (which it examined) that undermined a conclusion that it had a duty to report. Until then, all claims against Verizon should be dismissed with prejudice.[11]

Moreover, the Court must apply common sense and logic when evaluating the sufficiency of a pleading under Rule 12(b)(6). *See Ashcroft v. Iqbal*, 556 U.S. 662, 679

---

[10] *See* https://www.technologycoalition.org/knowledge-hub/update-on-voluntary-detection-of-csam and https://www.technologycoalition.org/about.

[11] Plaintiff must tread carefully before repeating his unsupported and false allegation that the image was not personally viewed before it was reported.

(2009) (the Twombly standard "requires the reviewing court to draw on its judicial experience and common sense"). Claims based on internally inconsistent or implausible allegations must be dismissed.

## IV.    Conclusion

The Court's error in relying on facts not plead in Plaintiff's Amended Complaint undermines the statutory immunity created by Congress. As a result, it issued an order that threatens to significantly chill providers' efforts to monitor and report suspected CSAM under Section 2258A. That chilling effect is not hypothetical—it will inevitably hamper lawful reporting and lead to increased proliferation of CSAM across online platforms. Plaintiff's position, which appears to require providers to individually investigate and confirm the ages of the individuals depicted in millions of images matching known CSAM hashes, is neither feasible nor supported by law. Rather, as set forth in *United States v. Williamson*, No. 8:21-cr-355-WFJ-CPT, 2023 WL 4056324, at *1–3 (M.D. Fla. Feb. 10, 2023), *report and recommendation adopted*, No. 8:21-cr-355-WFJ-CPT, Doc. 144 (M.D. Fla. Mar. 21, 2023), it is up to law enforcement to investigate and determine whether a given image violates applicable law. Because the MTD Order relied upon errors of misapprehension, the Court should reconsider and reverse it with respect to the Second Image. For these reasons, Verizon's Motion for Reconsideration should be granted and this Court should dismiss all of Plaintiff's claims against Verizon with prejudice.

### Local Rule 3.01(g) Certification

Pursuant to Local Rule 3.01(g), I hereby certify that before filing this motion, I conferred with counsel for the parties by email on March 26, 2025, and by phone with Plaintiff's counsel on March 27, 2025, in a good faith effort to resolve the issues raised in the motion. Counsel for Synchronoss does not oppose the relief sought. Counsel for Plaintiff opposes the relief sought.

Dated: March 28, 2025

Respectfully submitted,

**ZWILLGEN PLLC**

*Attorneys for Verizon*
*Communications, Inc.*


By: /s/ Nury Siekkinen
Nury Siekkinen
Florida Bar No. 1015937
1900 M. Street NW, Suite 250
Washington, DC 20036
nury@zwillgen.com

**CERTIFICATE OF SERVICE**

I certify that on March 28, 2025, a true and accurate copy of the foregoing has been electronically filed with the Clerk of the Court by using the CM/ECF system. I also certify that the foregoing document is being served this day on all counsel of record identified on the attached Service List in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to electronically receive Notices of Electronic Filing.

                                    /s/ Nury Siekkinen
                                    Nury Siekkinen (Florida Bar No. 1015937)

**SERVICE LIST**

LAW OFFICES OF NOONEY, ROBERTS, HEWETT, AND NOWICKI
Michael K. Roberts
mroberts@nrhnlaw.com
Jeffery S. Nooney
jnooney@nrhnlaw.com
1680 Emerson Street
Jacksonville, FL 32207
(904) 398-1992

*Counsel for Plaintiff*