UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

WILLIAM LEE LAWSHE,
an individual,

       Plaintiff,

v.                                Case No. 3:24-cv-00137-WWB-LLL

VERIZON COMMUNICATIONS, INC.,
a Delaware Corporation, and
SYNCHRONOSS TECHNOLOGIES, INC.,
a Delaware Corporation

       Defendants.
_____/

## PLAINTIFF'S RESPONSE TO DEFENDANT VERIZON'S MOTION FOR RECONSIDERATION

    Verizon's Motion for Reconsideration (Doc. 50) should be denied. A motion for reconsideration is appropriate where a court "has patently misunderstood a party or has made a decision outside of the adversarial issues presented to the Court by the parties, or has made an error not of reasoning, but of apprehension." *Sanzone v. Hartford Life &Accident Ins. Co.*, 519 F. Supp. 2d 1250, 1255-56 (S.D. Fla 2007).

1

## I. The Court has not Misapprehended the Allegations of the Case.

The court has not misunderstood or misapprehended the allegations of Plaintiff's Amended Complaint or the dispute between the parties.  Rather, the Court has drawn an inference that Verizon knew that the Second Image was tagged as "unconfirmed" prior to sending the subject NCMEC report. (Order MTD P.45, Doc. 45) As recently stated by the Eleventh Circuit, when considering a motion to dismiss, the court should "accept as true the facts as set forth in the complaint and draw all reasonable inferences in the plaintiff's favor.'" *Barat v. Navy Fed. Credit Union,* 127 F.4th 833, 835 (11th Cir. 2025). (quoting *Randall v. Scott*, 610 F.3d 701, 705 (11th Cir. 2010).

In partially denying Verizon's Motion to Dismiss, the Court ruled that "at this early stage in the proceedings, the Court cannot say that knowledge of an "unconfirmed" CSAM tag match is 'knowledge of the facts or circumstances from which there is an apparent violation' of CSAM laws." (Order P.19) The Court has clearly identified the issue: whether or not Verizon had enough information *to constitute knowledge of an apparent violation of CSAM laws.*

Verizon does not credibly argue that the Court has misunderstood the issues in this case.  Rather, Verizon argues that the inference in question is

not a "reasonable inference based on the facts actually pled." (Motion P.7) Verizon also argues that the inference is "erroneous" and "incorrect." (Motion P.4) These are not appropriate arguments for a motion for reconsideration. Nevertheless, the inference is reasonable and arises out of the heart of Plaintiff's allegations.

The issue presented is whether Verizon had "actual knowledge" of "facts and circumstances" of an "apparent" violation of CSAM laws pursuant to Section 2258A. Plaintiff has explicitly alleged that "a hash match is not confirmation that the particular content is in fact *apparent* [emphasis added] CSAM." (Amended Complaint ¶30) As observed in the Court's Order, the parties agree that "apparent CSAM" and "unconfirmed" CSAM are terms of art which described two different categories of images contained within the NCMEC database. (Order P.15)

Building upon this fact, Plaintiff has specifically alleged that Defendants Verizon and Synchronoss "knew or should have known that the use of this technology [hash matching images against the NCMEC database] carried the substantial risk of misidentification of content as CSAM."[1] (Amended

---

[1] It has been over a year since Plaintiff made this allegation. During that time, discovery has proceeded in the related case *Lawshe v. Preston and Dully*, Case No. 3:24-cv-00044-MMH-MCR. Sworn testimony by a St. Johns County ICAC investigator estimates that as much as 50% of NCMEC reports are not actionable by just looking at the image.

3

Complaint ¶42) There are a number of reasonably implied and inferred facts which could support this allegation. One such inference is that Verizon knew the image was being labeled "unconfirmed," and, therefore, may not actually be apparent CSAM.

The Court has acknowledged that the facts need to be developed in order to ultimately determine the outcome of this dispute. Furthermore, the Court explicitly recognized that the facts may turn in Verizon's favor. (Order MTD P.20, footnote 13) However, if the facts reveal that all Verizon knows about a customer's image is "that it depicts an individual of indeterminate age, some level of further investigation is appropriate before a provider is shielded from liability for reporting its customer's private information to the government." (Order MTD P.22)

---

A recently published Stanford observational study states that "One officer told us that there are 'a lot' of CyberTipline reports that are images of adults." *The Strengths and Weaknesses of the Online Child Safety Ecosystem: Perspectives from Platforms, NCMEC, and Law Enforcement on the CyberTipline and How to Improve It,*" Standford Internet Observatory Cyber Policy Center at P.28

Even the Blog article cited by Defendant Verizon (Motion for Reconsideration, P.3, footnote 4) acknowledges the problem of false reports:
> On the plus side, many parties and interests will benefit if providers send less chaff to the CyberTipline. As my prior research notes, a "kick the can down the road" approach diverts NCMEC and law enforcement time and resources from real kids in real danger.

Riana Pfefferkorn, *Verizon and Its Cloud Vendor Must Face Lawsuit for Reporting "CSAM" That Wasn't – Lawshe v. Verizon,* Tech. & Mktg. L. Blog (March 11, 2025)

Verizon, in an unusual strategy, argues that they had less knowledge than the court inferred.[2] Their position is that they had no information about the NCMEC tag, whether "apparent" or "unconfirmed". (Motion for Reconsideration, P.4) Verizon claims the only actual knowledge they had was that both images matched an image in the NCMEC database *which clearly contains both confirmed ("apparent") and "unconfirmed" images of CSAM*.[3] Even if this were an appropriate argument in a motion for reconsideration (and these assertions were true) such a circumstance could not constitute "actual knowledge of facts and circumstances of apparent" CSAM.

## II.  Verizon's arguments do not support the relief requested.

The requested relief of dismissal of all claims with prejudice is unsupported. Verizon incorrectly states that the Order is "based on the erroneous assumption - that Verizon was informed by NCMEC that one of the two images at issue was tagged "CSAM – unconfirmed." (Motion for Reconsideration, P.1-2) The inference drawn by the Court is only relevant

---

[2] Verizon benefits greatly from the inference that they may have known that the First Image was tagged "apparent," as it was the basis for dismissal of multiple counts. Despite this, it takes the position that "the Amended Complaint does provide any basis to support the inference that NCMEC had communicated the designation of "apparent" or "unconfirmed" to Verizon or that Verizon was contemporaneously aware of them through any means." (Motion for Reconsideration, P. 4)

[3] Plaintiff does not concede that that this information is not available to ESPs such as Synchronoss or Verizon

5

to the issue of whether Verizon's reporting was mandatory and, therefore, subject to the limited liability enumerated under 2258B.

This inference is not a basis or predicate for the Court's ultimate determination that the Plaintiff's Amended Complaint states a plausible claim. As stated by the Court, "even if Defendants were arguably obligated to disclose Lawshe's possession of Image Two on the hash match to "unconfirmed" CSAM, Lawshe has adequately alleged facts to support application of the "actual malice" exception to 2258B immunity." (Order MTD, P.23) Verizon's only argument in this regard is that "where Verizon had a statutory duty to report a hash matching image, it cannot amount to actual malice for Verizon to report that image, even if the report contained incorrect statements as alleged by Plaintiff." (Motion for Reconsideration P.8)

As recognized by the Court, Plaintiff is not alleging that Verizon made a good-faith mistake or simply made "incorrect statements." Rather, the Court found that Plaintiff had alleged facts which, if true, "would plausibly support a finding that Defendants willfully disregarded the risk that the contents of the Second CyberTip were defamatory." (Order P. 24) Verizon does not articulate a reason why it believes the Court erred in making this

finding and, so, it is impossible for the Plaintiff to respond substantively to this argument, beyond stating that this is plainly not the law.

## III. Verizon's Public Policy Arguments are not Supported by the Law or Allegations in this Case.

While it is true that Congress has expressed a policy "to reduce the proliferation of online child sexual exploitation and to prevent the online sexual exploitation of children" (Sec. 2258A(a)(1)(A)), it also recognized and legislated the need for the "protection of privacy." (Sec. 2258A(a)(5)(f)) Both are important interests and must be balanced against one another.

Verizon has failed to address the greater implications of Plaintiff's allegations. Communicating false and untruthful statements to NCMEC, not only injures its customers, it places victims at risk and perpetuates criminal conduct. It unnecessarily burdens limited law enforcement resources and takes valuable time away from investigating actual criminal conduct.[4]

For example, Verizon reads Plaintiff's allegation that the subject NCMEC report failed to accurately communicate that the contents of the file were available on the public internet as simply an "incorrect statement."

---

[4] See, as quoted above, Riana Pfefferkorn, *Verizon and Its Cloud Vendor Must Face Lawsuit for Reporting "CSAM" That Wasn't – Lawshe v. Verizon,* Tech. & Mktg. L. Blog (March 11, 2025)

And certainly, it was incorrect. And certainly, as the Court recognized, this allegation also suggests (in combination with additional facts), that Verizon was not truthful about its purported human review of the image. (Order MTD, P.23)

However, the deeper implications of this allegation are far more disturbing. Whether Verizon viewed the Second Image or not, they have completely missed that 2258A requires them to report the publication and publishers of online CSAM, just as much as it *arguably* requires them to report the customer who has downloaded that content.[5]

The "online proliferation" of CSAM occurs when illegal content is published and remains on public websites far more than it does when an image is downloaded to a cloud-based backup server for a customer's cell phone. Failure to identify the publishing website to NCMEC and law enforcement actually thwarts the purpose of 2258A: to reduce proliferation of "online" child sexual abuse material.

---

[5] Section 2258A(a)(1)(A) reads as follows:

> (A)Apparent violations.—
> The facts or circumstances described in this subparagraph are any facts or circumstances from which there is an apparent violation of
> section 2251, 2251A, 2252, 2252A, 2252B, or 2260 that involves child pornography, of section 1591 (if the violation involves a minor), or of [1] 2422(b).

These sections include the publication and sale of CSAM.

An accurate report would have notified NCMEC and Law enforcement of the publisher of the suspected content. These reports should lead to taking down or blocking access to the illegal content. In a very tangible sense, the result of Plaintiff's claim should be the *improved* detection and removal of actual CSAM from the internet. Such changes should lead to the prosecution of those who actually exploit minors by photographing and publishing CSAM – thus stemming child victimization.

Failure to identify the content as publicly available also has serious privacy and Fourth Amendment implications. Had Verizon simply indicated that the content was available publicly and given the URL of the specific image, there would be no need for a search warrant to view the image. Law enforcement could have simply gone to the website, viewed the image, and taken whatever actions were reasonable from that review.

Conversely, Verizon's position in this case threatens to destroy all privacy protections put in place by other providers conducting human review and content moderation.[6] Verizon asks this Court to rule – as a

---

[6] The court notes in its ruling that other providers conduct human review. (Order MTD, P.21.) It should be noted that although Synchronoss employed a fully automated process to send CyberTips in the past [United States v. Crawford, No. 3:18 CR 435, 2019 WL 3207854, at *2 (N.D. Ohio July 16, 2019)], Plaintiff believes that Verizon and Synchronoss now employ human review, or at least tell customers and the public that they perform human review. Contrary to Verizon's insistence, in this case, that they are required to report any image which "seems to be" CSAM, as opposed to "confirmed" CSAM (Motion for Reconsideration, P.2, footnote 2), in its customer facing documents, Verizon's published policy is "we also make extensive use of human reviewers, who

9

matter of law – that all service providers are required (under threat of fine[7]) to report any and all hash matched images to NCMEC.

Under Verizon's theory of the case, providers would be legally required to report all hash matched images – irrespective of a human review process and despite policies which are intended to protect customer privacy.  The results of any human review would be useless, as all matched images would have to be reported to NCMEC. Whether they acknowledge it or not, such a ruling would effectively annihilate privacy protections in the monitoring and scanning of customer content for Child Sexual Abuse Material.

In conclusion, Verizon has not articulated any basis for the Court to Reconsider its Order regarding the Motion to Dismiss.  Therefore, the Plaintiff asks this Court to deny Defendant Verizon's Motion for Reconsideration.

---

evaluate the images detected through automated scanning and ensure that all *confirmed* [emphasis added] CSAM is reported to NCMEC." *Verizon's Efforts to Combat Online Child Exploitation FAQ's* https://www.verizon.com/about/our-company/company-policies/verizons-efforts-combat-online-child-exploitation-faqs (last visited on March 28, 2025).

[7] Verizon's position regarding the risk of civil penalties is not rational.  Any company concerned about regulatory risk would seek to narrow the circumstances in which they could be found liable.  In other words, taking the position that "apparent" means anything that "seems to be" CSAM vastly expands the type of content for which they could be fined.   Under Verizon's theory, they could be fined for failing to report any and all images of legal pornography, where the model (despite being adult) appears to someone to be subjectively 17.  This would be an impossibly difficult standard to meet and clearly not what Congress intended.  In this way, the extreme nature of the penalty, in and of itself, suggests that lawmakers mean willfully failing to report obvious CSAM – not images that depict indeterminate, age difficult models.

Dated this 7th day of April 2025.

                    **LAW OFFICES OF NOONEY, ROBERTS, HEWETT, AND NOWICKI**

                    */s/ Michael K. Roberts*
                    _____

                    **Michael K. Roberts, Esquire**
                    Florida Bar No. 00779741
                    **Jeffery S. Nooney, Esquire**
                    Florida Bar No. 1011565
                    1680 Emerson Street
                    Jacksonville, FL 32207
                    (904) 398-1992
                    (904) 858-9943 facsimile
                    mroberts@nrhnlaw.com
                    jnooney@nrhnlaw.com
                    Attorney for Plaintiff

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that a true and correct copy of the foregoing was filed with the Clerk of Court using the CM/ECF system on 7th day of April 2025, and the foregoing document is being served this day on all counsel or parties of record on the Service List below, either via transmission of Notice of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive Notices of Electronic Filing.

*/s/ Michael K. Roberts*
_____

**Michael K. Roberts, Esquire**