# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## JACKSONVILLE DIVISION

WILLIAM LEE LAWSHE,
an individual,

        Plaintiff,

v.                                  Case No. 3:24-cv-00137-MMH-LLL

VERIZON COMMUNICATIONS, INC.,
a Delaware Corporation, and
SYNCHRONOSS TECHNOLOGIES, INC.,
a Delaware Corporation

        Defendants.

_____/

## MOTION FOR LEAVE TO AMEND COMPLAINT

On February 28, 2025, this Court entered an Order (Doc. 45) granting, in part, and denying in part Defendant's Motion to Dismiss. Defendant Verizon subsequently filed a Motion for Reconsideration (Doc. 50). In the interest of justice and to better align the allegations to the facts so far discovered, Plaintiff moves this honorable Court for leave to amend its operative complaint. Verizon and Synchronoss oppose the Motion.

This case arises out of the disclosure and publication of false allegations of criminal conduct relating to child pornography. (see generally Plaintiff's Amended

Complaint) Plaintiff has alleged that Defendants were engaged in a voluntary scheme of scanning uploaded customer content using hashing technology. Plaintiff specifically alleged that:

23. Various entities, including the Defendants, collect and disseminate hash values of images which are, or have been, categorized as containing alleged CSAM.

24. Defendants used a database of previously categorized (CSAM) hash values to compare with all customer data uploaded to the cloud. When an uploaded image's "hash" value matched one of the hash values in the existing database of alleged CSAM, a "hash match" was generated.

Contrary to Defendant's assertions, Plaintiff never alleged that the National Center for Missing and Exploited Children submitted the hash values in question.[1]

In their Motion for Reconsideration, Verizon makes certain factual representations to support their arguments that the Court had erroneously ruled on the Motion to Dismiss. Specifically, Verizon claims:

1. "A match indicated that an image is identical to one flagged on the database maintained by NCMEC for purpose of identifying CSAM pursuant to 18 U.S.C. § 2258C (authorizing NCMEC to disseminate hash values to provider for the "purpose of permitting that provider to stop the online exploitation of children"). (Verizon's Motion for Reconsideration P. 7)

---

[1] "Rather, what is pled is that Verizon relied on a hash value submitted to it by NCMEC, the entity authorized by Congress to disseminate such hash values to "prevent, curtail, or stop the transmission of child pornography." (Verizon's Motion for Reconsideration P. 4)

2. "The image reported was not of a chair or of a table, but a pornographic image that matched one of the hash values in NCMEC's CSAM database." (Verizon's Motion for Reconsideration P. 2, footnote 3)

3. "The fact that the image was included in NCMEC's CSAM database – but that it wasn't plainly obvious as CSAM – is not enough to compromise the statutory immunity even if Verizon had been aware of NCMEC's judgment (which it was not). (Verizon's Motion for Reconsideration P.2, footnote 2)

4. "To do otherwise risks chilling provider efforts to help prevent, curtail, or stop the transmission of child pornography by detecting and reporting child sexual abuse, including through matching to hash values provided by NCMEC." (Verizon's Motion for Reconsideration, P. 3)

5. "The NCMEC hash database, by their own statement, contains 6.3 million hash values (with no tags) each of which has been "triple vetted" to be sure that it contains CSAM… (When a triple vetted image or video is identified as containing CSAM, NCMEC adds the hash value to a list that is shared with technology companies." (P.4, footnote 5)

6. "At, best, Verizon reported an image mistakenly categorized as CSAM in the NCMEC database." (P.2, footnote 3)

7. "Providers like Verizon receive only the hash values when they access the hash database from NCMEC that is intended to be used by providers to identify apparent CSAM and to report it (as Verizon did here)." (P. 7)

None of these statements are true as they pertain to arguments in this case.[2]

Since the filing of the Motion for Reconsideration, Plaintiff has conducted initial discovery in this matter. Specifically, Plaintiff has deposed a corporate representative of NCMEC[3] and Cara Blaszka[4] the senior executive in charge of Synchronoss's (on behalf of Verizon) CSAM scanning and reporting process.[5]

As the attached Second Amended Complaint explains, Defendants were using a database call the "Non-Profit Database."[6] (Attached as Exhibit A) Multiple worldwide non-profit entities, including NCEMC, contributed their individual organization's hash lists to the NPO database. NCMEC was just one of several lists

---

[2] Plaintiff is not accusing Verizon's counsel of intentionally misrepresenting facts. However, the allegations and facts will reveal, at the very least, Verizon and Synchronoss did not know the source, substance or veracity of the hash database it was using to scan customer content. Ultimately, Plaintiff believes that ignorance cannot form a basis for "actual knowledge."

[3] The deposition of Fallon McNulty (NCMEC) was taken on June 12, 2025. This deposition was taken in the related case *Lawshe v. Preston, et al.* Case No. 3:24-cv-00044-MMH-MCR. Plaintiff attempted to coordinate this deposition in the present case with counsel for Verizon and Synchronoss. Furthermore, undersigned provided a copy of the Subpoena for Deposition Duces Tecum to opposing counsel, inviting comment or objection. Verizon and Synchronoss did not object to, participate in or attend the deposition.

[4] Ms. Blaska's deposition was taken June 13, 2025.

[5] Plaintiff has not attached or filed these transcripts. Alvarado v. Khandekar, 2023 U.S. Dist. LEXIS 220551, *6 (N.D. Ga. 2023) (The Court's role at this stage of the proceedings is to determine only the appropriateness of the motion to amend and not to make any factual findings as to the inferences that can be drawn from evidence.) However, Plaintiff can file these depositions should the Court require them at this stage.

[6] There are many different CSAM hash databases.

4

available through the NPO database. Each hash value and/or list was submitted with the organization's name and categorization.[7] NCMEC did not control, review, vet or have any visibility into the submissions of other NPOs. The nature of the database is clearly laid out in the access agreement for the database. Importantly, Synchronoss (acting on behalf of Verizon) was warned, and acknowledged, that there were no warranties about the accuracy or veracity of the information contained in the NPO database.

The images which were the subject of both CyberTip reports [the first and second images, as referred to by the Court in its Order (Doc. 45)] were never included or found on NCMEC's CSAM hash sharing list. Although NCMEC had seen these images previously, they had refused to include them in their list of confirmed, "triple vetted" CSAM. NCMEC does not maintain or have access to the other contributing NPO hash lists and has no knowledge of where or what hash list the content was "matched" against. They only have access to their (NCMEC) CSAM hash list.

Synchronoss and Verizon do not know what list (or what organization contributed the list) that the images "matched" against. They also do not know

---

[7] This information was included in the database. The system designed by Verizon and Synchronoss was not recording or aware of the source information.

what standards or criteria that organization applied in adding content to the NPO list.

Additionally, Verizon and Synchronoss were utilizing technology (PhotoDNA) which does not produced "identical" matches, but flags content that is only visually similar.  The Plaintiff has discovered that, at least regarding the October CyberTip report, ***the image was never categorized as CSAM on any hash list***. Rather, the image was what is referred to as a "near match" to another image which had been digitally altered.  The October image, which clearly shows an adult, had been modified by someone, somewhere, to superimpose a child's face over the adult body.  Neither the original nor the modified versions were included on the NCMEC hash list.[8] The Plaintiff never possessed the modified version of the image.

Apart from these issues, the Second Amendment Complaint (Proposed) contains additional factual allegations learned through initial discovery and continuing review of evidence. These allegations contain additional facts which

---

[8] As alleged in the Second Amended Complaint (Proposed), NCMEC only includes confirmed (what they term "apparent") CSAM on their hash list.  Therefore, because the images were never on a NCMEC hash list, Defendants would not have simultaneously been given NCMEC's categorizations.  However, as alleged in the Complaint, participating ESPs do have the ability to communicate with NCMEC (as part of an investigation) to inquire about NCMEC's prior review and categorizations of a given image.  Both images had been seen by NCMEC previously and categorized on their internal list of all reported content.

Plaintiff contends would support a finding of both intentional misconduct and actual malice in the reporting of both images.

## **Memorandum of Law**

Federal Rule of Civil Procedure 15 requires a court to "freely give leave" to a party to amend its pleadings "when justice so requires." Fed. R. Civ. P. 15(a)(2). As the Supreme Court has explained, "[i]n the absence of any apparent or declared reason—such as undue delay, bad faith, or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc.—the leave sought should, as the rules require, be 'freely given.'" *Bright v. Argos Cement USA, LLC,* 2024 U.S. Dist. LEXIS 138431, *4-5 (M.D. Fla 2024) citing *Foman v. Davis*, 371 U.S. 178, 182, 83 S. Ct. 227, 9 L. Ed. 2d 222 (1962).

The Plaintiff has filed this Motion within the deadline (July 15, 2025) enumerated in the Court's Case Management and Scheduling Order (Doc. 49). The purpose of the amendment is to align the operative complaint with the facts as they have been discovered to this point. The amendment will not result in undue prejudice to any party.

Wherefore, Plaintiff requests an order granting leave to amend his operative complaint as shown in the attached Exhibit A.

7

## <u>Local Rule 3.01(g) Certification</u>

The undersigned hereby certifies that he met and conferred with counsel for Verizon and Synchronoss regarding the subject of the current Motion to Amend. The meeting occurred by zoom on July 1, 2025.  Defendants oppose the motion.

Dated this 14th day of July 2025.

**LAW OFFICES OF NOONEY, ROBERTS, HEWETT, AND NOWICKI**

*/s/ Michael K. Roberts*

**Michael K. Roberts, Esquire**
Florida Bar No. 00779741
**Jeffery S. Nooney, Esquire**
Florida Bar No. 1011565
1680 Emerson Street
Jacksonville, FL 32207
(904) 398-1992
(904) 858-9943 facsimile
mroberts@nrhnlaw.com
jnooney@nrhnlaw.com
Attorney for Plaintiff

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that a true and correct copy of the foregoing was filed

with the Clerk of Court using the CM/ECF system on July 14, 2025 , and the

foregoing document is being served this day on all counsel or parties of record on

the Service List below, either via transmission of Notice of Electronic Filing

generated by CM/ECF or in some other authorized manner for those counsel or

parties who are not authorized to receive Notices of Electronic Filing.


*/s/ Michael K. Roberts*
_____

**Michael K. Roberts, Esquire**