# UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF FLORIDA
## JACKSONVILLE DIVISION

WILLIAM LEE LAWSHE,
an individual,

       Plaintiff,

v.

VERIZON COMMUNICATIONS INC., a
Delaware Corporation, and SYNCHRONOSS
TECHNOLOGIES, INC., a Delaware
Corporation,

       Defendants.

**Civil Action No. 3:24-cv-00137-MMH-LLL**

_____/

## DEFENDANT VERIZON COMMUNICATIONS INC.'S OPPOSITION TO MOTION FOR LEAVE TO AMEND COMPLAINT

# TABLE OF CONTENTS

INTRODUCTION ................................................................................................1

RELEVANT BACKGROUND ........................................................................5

LEGAL STANDARD ......................................................................................9

ARGUMENT.................................................................................................11

1.    The proposed amendments are futile because CSAM reporting law does not require the actions Verizon allegedly did not take. .......................................11

   a.    Federal law provides broad immunity to incentivize voluntary CSAM reports.............................................................................................................11

   b.    Verizon is not required to undertake a factual investigation of each hash-matched image it reports. ...............................................................................12

   c.    The PSAC is futile because CSAM reporting law does not require Verizon to know the source of a hash match........................................................14

2.    Plaintiff's remaining allegations are not enough to demonstrate actual malice, including as they are knowingly false and made in bad faith. ...............16

   a.    The January Image plainly does not depict an adult.................................17

   b.    The January Image was visually inspected before it was reported..........18

3.    The PSAC confirms Verizon's Motion for Reconsideration.........................20

CONCLUSION ...............................................................................................20

## INTRODUCTION

Plaintiff's motion to file a Second Amended Complaint should be denied based on futility and bad faith. The proposed amendment is futile because, when considered with evidence adduced in discovery, it demonstrates only that no claim against Defendants can succeed.[1] It also evinces bad faith because it repeats material allegations from the prior complaint that Plaintiff now knows to be false, including (1) a baseless allegation that Verizon does not employ human reviewers to evaluate images flagged a potential CSAM; (2) a knowingly false allegation that the images reported by Verizon were "easily identifiable as adults by the barest of review and/or investigation"; and (3) a plainly erroneous allegation that law enforcement relied on Defendants' report in deciding to prosecute.[2] *Compare, e.g.*, ECF 59-1 ¶¶ 63, 101-102 *with* Declaration of Nury Siekkinen ("Siekkinen Decl."), Ex. A. Leave to amend should therefore be denied.

However, the motion for leave to amend (ECF 59) and the Proposed Second Amended Complaint (ECF 59-1, "PSAC") *do* underscore why Verizon's pending motion for reconsideration should be granted, as Plaintiff has made clear that the inferences on which the Court based its ruling were incorrect: NCMEC's evaluation of the reported images as "apparent" or "unconfirmed" CSAM was *not* shared with Verizon. Absent the inference that Verizon knew

---

[1] Courts can consider evidence adduced to date in evaluating a motion for leave to amend. *See Cockrell v. Sparks*, 510 F.3d 1307, 1310 (11th Cir. 2007).

[2] Ironically, Plaintiff's motion for leave to amend the complaint claims that one purpose of the amendment is to "better align the allegations to the facts discovered," while leaving out or ignoring any of the facts that show that his claims are without basis. *See* ECF 59 at 1.

there was legitimate factual debate about the age of the person in either photo, neither the original complaint nor the PSAC contains well-pled facts that could support a finding of actual malice sufficient to vitiate Defendants' entitlement to statutory immunity.

This case concerns an attempt to hold Defendants Verizon and Synchronoss Technologies, Inc. ("Synchronoss") liable for reporting a pornographic image of a teenager to the National Center for Missing and Exploited Children ("NCMEC") pursuant to federal child sexual abuse material ("CSAM") reporting laws. **This is an image of a teenager that was previously reported over 200 times by other providers like Verizon**. *See* Siekkinen Decl., Ex. B at 15:12-16. Plaintiff claims that liability should attach because, according to an unverified picture from the adult website where he downloaded the photo, the Ukrainian teenager in the image was seven months past her 18th birthday. Verizon had no awareness of this information and was not required to discover it—if it is even correct. There is also a second image that was reviewed and reported in October 2022 (the "October Image"); the Court already dismissed claims based on this image.

The Court's prior decision to allow claims based on the January Image to proceed was based on an incorrect inference that Defendants knew how NCMEC had categorized those images (i.e., as "apparent" or "unconfirmed" CSAM) *before* they made reports to NCMEC. *See* ECF 45 ("MTD Order") at 15, n. 10. The MTD Order concluded that although federal law broadly immunizes providers from liability for reporting "apparent" CSAM, an "actual malice" exception to general

immunity could apply *if Defendants knew at the time of reporting* that NCMEC had tagged the January Image as "unconfirmed" CSAM but reported it without any further investigation. *See id*. at 19-23. But Plaintiff never expressly alleged that Defendants knew how NCMEC tagged the October and January Images (and, in fact, Defendants did not know). *See* ECF 50 at 7, n. 8. The motion for leave to amend and the PSAC now acknowledge that the MTD Order's assumption was incorrect. Plaintiff concedes that "Defendants would not have simultaneously been given NCMEC's categorizations." ECF 59 at 6, n.8, and that NCMEC's tags of images are *only* contained on NCMEC's "internal hash list." PSAC ¶¶ 85, 86.

Because Defendants did not have actual notice of any information giving rise to a reason to investigate further, Plaintiff can only proceed if the Court makes the unprecedented finding that Verizon has a duty to investigate every image that is hash matched with NCMEC's hash list, even if it has no notice of any reason to do so. That is not the law. (And discovery confirmed that Verizon's process does include a visual human review of every image.) By decimating immunity for reports of "apparent" CSAM, this holding would forever alter the Internet's child safety ecosystem and create a moral hazard by incentivizing providers *not* to scan for CSAM on their platforms.[3] The law precludes immunity only in rare and extreme cases, such as—relevant here—when "actual malice" exists. And amendment is futile because there is no basis from the pled

---

[3] To the extent that the MTD Order holds that *any* mistaken report is "optional" report based on a narrow interpretation of what is "apparent" CSAM, that, too, contravenes Congress' intent to immunize providers except in extreme cases of willful misconduct. *See* MTD Order at 8.

allegations to support a claim that Defendants behaved with "actual malice," such that statutory immunity would not apply.

Beyond this, the PSAC contains bad-faith allegations that Plaintiff knows are false. In a fruitless attempt to plead actual malice, Plaintiff alleges that the January Image clearly depicts an adult and was not reviewed by a human being. Ample evidence already disproves these allegations, including the January Image itself. Law enforcement has also testified that it did not rely on Defendants' NCMEC reports in deciding to prosecute Plaintiff, who was not charged with *any* offenses related to the images Verizon reported. The PSAC likewise contains no basis to find that Plaintiff's alleged injuries are "fairly traceable to" Defendants, rather than to law enforcement, such that he has standing here. *Berrocal v. Att'y Gen. of United States*, 136 F.4th 1043, 1049 (11th Cir. 2025) (citations omitted).[4]

Although the standard for granting leave to amend is permissive, the Court retains discretion to prevent plaintiffs from amending complaints to add allegations that, like these, are destined to fail on legal and factual grounds and are interposed for an improper purpose. It would be contrary to Congress' clear intent that reporting CSAM should be a straightforward and low-risk

---

[4] The lack of proximate causation provides an independent basis to deny the amendment and dismiss this case now, given the independent decision by the police department to arrest and prosecute the Plaintiff. *See, e.g., Tristar Prods., Inc. v. Telebrands Corp., Whele LLC*, No. 3:24-CV-238-MCR-HTC, 2025 WL 1111513, at *13 (N.D. Fla. Apr. 14, 2025) (governmental agency's "duty to conduct an independent investigation into the merits of" a report from defendants "negates proximate cause.") (citations omitted); *Cordoba v. DIRECTV, LLC*, 942 F.3d 1259, 1271 (11th Cir. 2019) ("An injury is not fairly traceable to the actions of a defendant if it is caused by the independent action of some third party not before the court." (citations omitted)).

undertaking to force Defendants to undergo the time, expense, and burden of litigating untrue and legally specious amended claims when the law and evidence already makes clear that those claims must ultimately fail. Such burdens are supposed to be reserved for the rare cases involving the highest standard of intentional misconduct and actual malice, not the reporting of a teenager posed as a minor that had been visually confirmed and previously reported 200 times. Accordingly, the Court should deny Plaintiff's motion for leave to amend and grant Verizon's for reconsideration of the initial dismissal.[5]

## RELEVANT BACKGROUND

Plaintiff filed his initial complaint in state court, and Verizon removed the action on February 6, 2024. *See* ECF 1; 4. He subsequently amended and refiled the complaint after a meet and confer with Verizon's counsel pursuant to L. Civ. R. 7 to comply with applicable rules. *See* ECF 22 and 39 (the "FAC"). Defendants moved to dismiss.[6] *See* ECF 27. The MTD Order assumed, mistakenly, that Defendants knew how NCMEC tagged the January Image and the October Image at the time it learned of the hash matches, and its holdings stem from that assumption. *See* MTD Order at 15, n. 10; *see also* ECF 50 at 4. The Court held that Verizon properly reported the October Image because NCMEC tagged it as "apparent" CSAM, but NCMEC's "unconfirmed" tag on the January Image created a duty for Verizon to investigate further before reporting. *See* MTD Order

---

[5] Alternatively, if the Court allows the amendment, the Court should reset the existing case schedule so that Verizon can make a new motion to dismiss the new complaint.

[6] For a summary of the factual background underlying Plaintiff's prosecution for CSAM and the allegations in his complaints, please see Verizon's Motion to Dismiss, ECF 27.

at 17; *see id.* at 22 (Verizon's *assumed* receipt of the "unconfirmed" tag creates a plausible claim that it did not "possess[] actual knowledge of facts or circumstances constituting an apparent violation of CSAM laws."). It dismissed the October Image counts but allowed the January Image claims to proceed. *See* MTD Order at 17-23, 27.

In reaching these conclusions, the Court was required to treat as true Plaintiff's allegation that there was no "human review." *Id*. The Court, which had not been provided the January Image (though it was incorporated by reference in the FAC) also had to credit Plaintiff's allegation that the girl "w[as] easily identifiable as [an] adult[ ] by the barest of review[.]" *Id*. at 5. In doing so, the Court did not take judicial notice of, and therefore did not consider, either (1) the January Image itself, which is incorporated by reference, or (2) the sworn testimony of the pediatrician who identified that the person in the January Image was a minor and on whose expert assessment the police relied in deciding to arrest Plaintiff. *See* Siekkinen Decl., Ex. A and Ex. C at 53:2-6. Now, however, the Court can refer to the image itself, as well as the sworn testimony of Dr. Dully, in determining that granting the motion for leave to amend is not in the interests of justice. *See, e.g.*, *Cockrell*, *supra*, 510 F.3d at 1310 (courts can consider evidence adduced in evaluating motion for leave to amend).

Proceeding from the incorrect assumption that Verizon knew NCMEC had tagged the January Image as "unconfirmed" and crediting the allegation that no one reviewed the January Image, the Court denied Verizon's motion as to the January Image counts. *See* MTD Order at 19-23. Verizon moved for

6

reconsideration of the MTD Order because the Order was based on an incorrect assumption; that motion remains pending. *See* ECF 50.

Discovery in this case has now confirmed that (1) human review of the January Image and the October Image *did* occur; (2) the "barest of review" does not show that the January Image depicts an adult; and (3) law enforcement did not rely on Verizon's NCMEC reports or its representations about its CSAM practices in deciding to prosecute Plaintiff. PSAC ¶ 63, *see id.* at ¶¶ 101-102. The January Image itself depicts a girl with a child-like face and the musculature of an older child or a young teen, with no pubic hair, wearing infantilizing and sexual clothing (e.g., frilly ankle socks, lingerie) in a sexually explicit pose that reveals her genitals. Plaintiff has adduced extensive testimony from witnesses, including the pediatrician whose analysis law enforcement relied on, who explained how and why they assess the January Image to depict a minor. *See* Siekkinen Decl., Ex. C at 53:2-6; Ex. D at 8:8-19, 24:5-6, 34:2-10, 92:21-23, 177:24-178:9, 183:2-10; Ex. E at 11:18-22, 15:13-25, 16:8-19, 17:8-13; Ex. F at 65:7-13; Ex. G at 138:3-4. NCMEC testified that the January Image has been reported as CSAM approximately 200 times—not by Verizon or Synchronoss. *See id.*, Ex. B at 15:12-16. And Plaintiff produced evidence from Met-Art, the adult website where he supposedly found the image, which confirms that the "model" in the January Image has been the subject of investigations and prosecutions for possible CSAM in at least England, France, Holland, and Iowa. *See id.*, Ex. H. Clearly, even if the

image depicts an 18-year-old, it has fooled a lot of professionals into thinking otherwise.[7]

Verizon also provided verified responses to Plaintiff's interrogatories that affirm there was human review of the January Image before it was reported to NCMEC. *See* Siekkinen Decl., Ex. I. Verizon further produced a declaration from WebPurify that attests that the January Image was visually reviewed before it was reported. *See id.*, Ex. J. Synchronoss' corporate representative testified there was human review of the January Image. *See id.*, Ex. G at 20:2-21:2; 22:7-14, 42:3-12, 52:4-10, 119:4-6, 129:21-25, and 133:22-25. Law enforcement officers also testified that they relied on their own investigation and analysis, *not* Verizon's NCMEC reports (or any other statements), to determine whether the October and January Images were actionable CSAM. *See* Siekkinen Decl., Ex. D at 34:18-23, 177:24-178:9, 183:2-10; Ex. E at 9:19-10:7, 10:21-11:2, 15:13-25. This testimony also revealed that the St. Johns Sheriff's Office does not act upon approximately 50% of the reports it receives per week upon its own initial review and investigation. *See id.*, Ex. D at 34:22-35:19. This comports with NCMEC's testimony that law enforcement must—and does—independently review all material escalated via a provider's report. *See id.*, Ex. B at 44:10-12 (law enforcement's "independent review" comes after receiving a report) and 84:23-85:3 (same). Finally, law

---

[7] Because the law only asks Verizon to report "apparent" CSAM, whether or not the girl in the photo is actually 18 is not material here given the extensive evidence that a human being reviewed the image and concluded she was not—the same conclusion as over 200 other entities that thought she was not. *See* 18 U.S.C. § 2258A. But in any event, Plaintiff's evidence that the "model" was over 18 is an unverified photo of a Ukrainian teenager (supposedly the girl in the January Image) holding a passport (supposedly her own) showing that she would have been over 18 if the January Image was actually taken at the time Plaintiff says it was.

enforcement did not charge Plaintiff with offenses related to the January Image. Rather, they found three *other* images on Plaintiff's phone, pursuant to a search warrant, which they determined to be actionable. *See id.*, Ex. D at 203:19-204:13.

## LEGAL STANDARD

Although leave to amend a complaint under Federal Rule of Civil Procedure 15 can be granted liberally, district courts also have numerous grounds for denying leave to amend when amendment would not be in the interests of justice, including because amendment would be futile or would be made in bad faith. *See Maynard v. Bd. of Regents of Div. of Universities of Fla. Dep't of Educ. ex rel. Univ. of S. Fla.*, 342 F.3d 1281, 1287 (11th Cir. 2003). Denying leave to amend due to futility "is justified . . . when the complaint as amended is still subject to dismissal." *Burger King Corp. v. Weaver*, 169 F.3d 1310, 1320 (11th Cir. 1999) (citations omitted); *see U.S. ex rel. Heesch v. Diagnostic Physicians Grp., P.C.*, No. 11-0364, 2014 WL 1410412, at *1 n. 1 (S.D. Ala. Apr. 11, 2014) (assessing futility entails "the same analysis as a Rule 12(b)(6) motion to dismiss for failure to state a claim."). Bad faith also suffices to deny leave to amend; bad faith can be shown by alleging meritless claims with "no support." *Rogers v. Nacchio*, 241 Fed.Appx. 602, 610 (11th Cir. 2007) (affirming denial of leave to amend).

In evaluating a motion for leave to amend, courts can consider evidence adduced to date and evaluate whether the proposed amendment would be immediately subject to a successful summary judgment motion. *See Cockrell*, 510 F.3d at 1312 ("[T]he district court did not err in denying [plaintiff's] motion to amend as futile because [defendant] would have been entitled to summary

9

judgment on the claim against him if the amendment were allowed."); *accord Diagnostic Physicians Grp.*, 2014 WL 1410412, at *1 n. 1 (in assessing whether amended complaint would be subject to dismissal under Rule 12(b)(6), "the Court has discretion to either allow evidence beyond the pleadings and convert the motion to one for summary judgment or decline to consider the evidence.").[8]

Here, the evidence described above bears directly on the futility and bad faith of the proposed amendment, and the interests of justice require the Court to consider it. It would be unjust to *not* consider this evidence, treat the allegations as true, and allow further litigation that could be avoided or expedited by weighing available facts. Indeed, it would be impossible for Verizon to demonstrate that the PSAC alleges meritless claims with "no support" (*Rogers*, 241 Fed.Appx. at 610) without citing evidence. The Court should review the evidence attached to the Siekkinen Declaration in connection with Plaintiff's motion, and if it finds that Verizon would be entitled to summary judgement based on the evidence already adduced, it should deny the motion for leave to amend. *See Cockrell*, 510 F.3d at 1310.

---

[8] One court in this District has disagreed that *Cockrell* automatically requires that there be "an examination of the evidentiary record" or a Rule 56 analysis "simply because the parties have engaged in discovery." *Andrade v. Marceno*, No. 2:19-CV-887-JES-NPM, 2021 WL 1848988, at *3 (M.D. Fla. Mar. 29, 2021). But *Andrade* does not hold that evidence must never be considered in these circumstances.

## ARGUMENT

1. **The proposed amendments are futile because CSAM reporting law does not require the actions Verizon allegedly did not take.**

The proposed amendments to reinstate the October Image counts are futile because Verizon's obligation to report "apparent" CSAM of which it has "actual knowledge" does not include a duty to conduct a factual investigation of *every* hash-matched image, regardless of any actual or constructive knowledge about the matched image. Such a duty does not exist in the CSAM reporting statutes, the Court's MTD Order, or any other caselaw. That the NCMEC list allegedly contains hash values of two other international child protection organizations besides NCMEC—the Canadian Center for Child Protection, and the Internet Watch Foundation—is not sufficient to find actual malice. *See* PSAC ¶ 38.

### a. Federal law provides broad immunity to incentivize voluntary CSAM reports.

Federal CSAM reporting law incentivizes scanning and reporting CSAM by lowering the legal risk of doing so. It allows providers to *voluntarily* scan their services for CSAM and requires them to report any "apparent" CSAM. 18 U.S.C. § 2258A(a)(2)(A). Providers are broadly shielded from civil or criminal liability for making a report; statutory immunity can only be pierced in cases of "intentional misconduct," "actual malice," or "reckless disregard to a substantial risk of causing physical injury without legal justification." 18 U.S.C. § 2258B (a), (b). This immunity "was clearly aimed at immunizing civil claims for mistaken and incorrect reports issued to the NCMEC"—i.e., to encourage providers to report by removing liability for situations where a report was ultimately

11

mistaken in some way. *United States v. Richardson*, 607 F.3d 357, 367 (4th Cir. 2010) (citing a prior version of the statute).

Accordingly, the law does not require that Verizon knew whether the October or January Image *actually* depicted someone under the age of 18 for immunity to apply. This comports with its use of "apparent." Courts in the Eleventh Circuit parsing the meaning of "apparent" have defined it as "reasonably ascertainable or evident" and "seemingly real or true, *but not necessarily so.*"*Caffrey v. Comm'r of Soc. Sec.*, No. 8:23-CV-1855-SPF, 2024 WL 4117240, at *3 (M.D. Fla. Sept. 9, 2024) (emphasis added) (citation omitted).[9] This also matches dictionary definitions of the term, such as "ostensible; seeming," (Black's Law Dictionary (11th ed. 2019)), or "seeming but not real" (New Oxford Am. Dictionary). As the Court has noted, Plaintiff cannot plead that Verizon mistakenly assessed an image; he must plausibly allege that Verizon acted with "actual malice," i.e., "with knowledge that [the statement] was false or with reckless disregard of whether it was false or not." MTD Order at 23 (quoting *New York Times Co. v. Sullivan*, 376 U.S. 254, 280 (1964)).

### b. Verizon is not required to undertake a factual investigation of each hash-matched image it reports.

Amendment to revive the October Image counts is futile because Plaintiff's allegations would only state actionable claims if the law required Verizon to investigate each hash-matched image before reporting—but no such

---

[9] In those cases, courts adjudicated what qualified as an "apparent conflict" and based on the term's plain meaning adopted the rule that "a conflict is apparent if a reasonable comparison . . . suggests that there is a discrepancy, *even if, after further investigation, that turns out to not be the case.*" *Washington v. Comm'r of Soc. Sec.*, 906 F.3d 1353, 1365 (emphasis added) (11th Cir. 2018).

duty exists. The PSAC does not allege that Verizon had any information that could trigger a duty to investigate at the time it became aware of the hash match, so instead, Plaintiff invents a new rule from whole cloth. He proposes that Section 2258B immunity should not apply because Defendants "had the ability to query the content with NCMEC in order to obtain additional information about the particular content" in a hash match, but did not "communicate or liaison with NCMEC regarding any of the subject content to further any investigation into the nature of the content." PSAC ¶¶ 87-89; *see id.* ¶¶ 106-107.

These allegations cannot resuscitate the October Image counts because no authority demands an investigation in these circumstances. The MTD Order at best holds that if Verizon has notice of uncertainty about whether an image is CSAM—e.g., *knowing* about an "unconfirmed" tag—it must look into the question before reporting. *See* MTD Order at 17 and 22. But the MTD Order does not hold that before reporting any image, Verizon must *always* undertake investigative steps such as calling NCMEC or trying to research the person in the image, including when it has no notice of any uncertainty or ambiguity. Indeed, Verizon went above the law's requirements by having someone manually review the October and January Images before they were reported. *See* Section 2(b), *infra*. Further investigation is law enforcement's responsibility after receiving a report. *See, e.g.*, Siekkinen Decl., Ex. B at 44:10-12 (law enforcement's "independent review" comes after receiving a report), *and* 84:23-85:3 (provider may "focus" on the lascivious exhibition of genitalia and "ultimately making th[e] [legality] determination to leave it for law enforcement for their review").

Adopting Plaintiff's rule would frustrate Congress' goal of encouraging providers to detect and combat CSAM proliferation. Providers like Verizon report hundreds of thousands of images per year; spending even 30 or 40 minutes per image on the investigation Plaintiff contemplates would grind the system to a halt. Because scanning for CSAM is voluntary but reporting CSAM, once found, is not (*see* 18 U.S.C. § 2258A(a)), providers would have every incentive to stop scanning rather than undertake a massive investigative burden and face liability for every mistaken report. Otherwise, they would be subject to the burden and expense of defending lawsuits like this one, causing the very harm that Congress was trying to immunize against. Accordingly, interpreting Sections 2258A and 2258B to require the investigation Plaintiff invents in the PSAC would result in a situation where less CSAM is found or reported. That outcome would only make sense if Congress enacted the reporting laws to protect the privacy of suspects in CSAM cases, *not* to help law enforcement discover and prosecute CSAM crimes. But that's not the case.

### c. The PSAC is futile because CSAM reporting law does not require Verizon to know the source of a hash match.

Plaintiff's proposed amendments are also futile to the extent they allege Verizon is not entitled to immunity because it did not know whether the October or January Image hash matches originated from NCMEC's own hash list or a list by NCMEC and generated by a different nonprofit, as he cannot allege actual malice based on those facts. *See* PSAC ¶¶ 25-28, 91, 149 (claiming that the hash values Defendants received from NCMEC were originally identified as CSAM by

14

the Canadian or UK counterparts of NCMEC—the only other two entities who contribute hash values to the NCMEC nongovernmental organization list). But this does not show actual malice. Congress specifically contemplated using hash values to screen for and report CSAM at 18 U.S.C. § 2258C, which makes clear Congress' expectation that identified matching images be reported. "Any provider that receives elements relating to any CyberTipline report from NCMEC under this section may use such information only for the purposes described in this section, *provided that such use shall not relieve the provider from reporting under section 2258A*." 18 U.S.C. § 2258C (b) (emphasis added). Not knowing the original source of the hash value certainly would not relieve Verizon of its reporting obligation.[10]

The law demands that Verizon report "apparent" CSAM it becomes aware of, without regard to *how* it becomes aware. 18 U.S.C. § 2258A(a)(2)(A). Awareness could come from a match with a list provided by NCMEC, regardless of the organization that originally identified the apparent CSAM (as was the case here), but nothing in the statute says it *must*; any time Verizon learns of "apparent" CSAM *from any source*, the reporting requirement is triggered. By the same token, Plaintiff wrongly suggests that Verizon must confirm that a hash match is not actually a "near match"—an image containing *elements* of a file

---

[10] Verizon has learned since filing the Motion for Reconsideration that the hash value for this image in particular was contributed to the NCMEC NGO list by one of the other two participants in that program  and was not triple vetted by NCMEC. *See* Siekkinen Decl., Ex. B at 21:24-22:4, 110:17-21). As discussed herein, this is immaterial under the law's "apparent" requirements, including because, at Verizon's direction, WebPurify staff views all images before reporting them. *See* Siekkinen Decl., Ex. J.

previously flagged as CSAM—but this too lacks any legal basis. *See* PSAC ¶¶ 44, 54, 73. If an image is a "near match" and previously associated with CSAM, it cannot reflect actual malice to flag it via NCMEC report for law enforcement's review and confirmation that the near match is not itself illegal. Otherwise, all reports of the October Image—and there are approximately 100—would reflect actual malice. *See* Siekkinen Decl., Ex. B at 84:23-85:3; *id*. Ex. G at 146:4-8.

### 2. Plaintiff's remaining allegations are not enough to demonstrate actual malice, including as they are knowingly false and made in bad faith.

Leave to amend should also be denied because Plaintiff's other bases for pleading actual malice depend on false, bad-faith allegations or allegations that cannot meet the high standard "actual malice" demands. Most egregiously, Plaintiff claims that (1) the "barest of review" would have revealed the January Image depicted an adult; (2) no human review of the image occurred; and (3) Verizon distributed information about its hash matching system that law enforcement relied on in deciding to prosecute. PSAC ¶¶ 63, 76, 109-110, 128, 164. These allegations have "no support" and meet the standard for bad-faith pleading. *Rogers*, 241 Fed.Appx. at 610. Likewise, Plaintiff's allegations about minor discrepancies in Defendants' January Image report are at *best* irrelevant (although evidence also disproves them): law enforcement did not rely on the report in deciding to prosecute. This is not enough to plead actual malice, and Plaintiff should not be permitted to litigate false claims by taking advantage of the inferences normally accorded to complaints at this stage.

16

### a. The January Image plainly does not depict an adult.

First, evidence refutes Plaintiff's claims that the "barest of review" would have revealed that (1) the January Image depicts an adult, (2) the person in the image was not "portrayed" as or "pretending to be" a minor, and (3) the image did not contain a "lascivious exposition" of a minor. PSAC ¶¶ 63, 101-102. The Court can see from the January Image itself that these statements are false.[11] *See* Siekkinen Decl., Ex. A. Moreover, Plaintiff's contention that an in-depth investigation would have been necessary to determine the "model's" age (*see* PSAC ¶¶ 87-89) implicitly concedes that "the barest of review" *is not* enough.

Further, Plaintiff has adduced extensive testimony from witnesses who assess the January Image to depict a minor. *See* "Relevant Background," *supra*. Plaintiff relatedly claims that Defendants falsely categorized the "model" as "prepubescent" in their NCMEC Report, but law enforcement testified that they "went forward with the investigation" based on the opinion of their independent expert, Dr. Dully, that this "model" in fact "appeared to be a child." Siekkinen Decl., Ex. E at 15:23-25. Law enforcement unambiguously made clear that they decided to prosecute based on this doctor's analysis, not Verizon's. *See id.*, Ex. D at 73:23-74:3, 91:4-19, 96:7-21, 105:19-106:7. Plaintiff's best evidence to show that

---

[11] The Court can consider the January Image here because it is incorporated into the PSAC by reference. *See Sprengle v. Smith Mar. Inc.*, 660 F. Supp. 3d 1337, 1350–51 (M.D. Fla. 2023) (material is incorporated by reference when "(1) the documents are referred to in the complaint; (2) the evidence is central to the plaintiff's claim; and (3) the evidence's authenticity is not in question.") (citations omitted and cleaned up). All of *Sprengle*'s criteria are met here. The January Image is referenced throughout the FAC and PSAC, and Counts I and III allege that Verizon defamed Plaintiff and violated the SCA by reporting it to NCMEC. Nor is there any dispute about the January Image's authenticity. Because the image is sensitive, Verizon presents it with redactions in the exhibits to this Opposition.

the teenager was not a minor is a self-interested claim from the website where the pictures were purportedly obtained, and this same website also acknowledges that the "model" in the January Image has been the subject of investigations for possible CSAM in England, France, Holland, and Iowa. *See id.*, Ex. H. Even taking all this evidence in the light most favorable to Plaintiff, it is clear that the January Image does not *obviously* depict an adult, undercutting the allegation on which Plaintiff's "actual malice" claim rests.

### b.  The January Image was visually inspected before it was reported.

Similarly, several pieces of evidence prove that the January Image *was* reviewed by a human being prior to reporting, while no evidence supports the PSAC's contrary allegations. Verizon's verified responses to Plaintiff's interrogatories affirm that there was human review of the January Image before it was reported to NCMEC, as does the declaration from WebPurify. *See* Siekkinen Decl., Exs. I and J. A Synchronoss employee with knowledge also testified there was human review of the January Image. *See id.*, Ex. G at 20:2-21:2; 22:7-14, 42:3-12, 52:4-10, 119:4-6, 129:21-25, and 133:22-25. Plaintiff has no contrary evidence, only his unwillingness to believe this testimony.

The PSAC's remaining allegations are false, but given the evidence of human review and the image itself, they are also futile: they fail to show actual malice *or* that Defendants proximately caused Plaintiff's alleged injuries. Specifically, Plaintiff alleges that the "incident time," "private content," and "manufacture and distribution" statements in the NCMEC Report were incorrect. *See* PSAC ¶¶ 108, 113, 120. But the PSAC offers only conclusory recitations on

18

these points, which are not enough. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (complaint must allege sufficient factual matter to state a claim). Indeed, there is already countervailing evidence that they are false.[12] He also alleges that Verizon's "Legal Process of Service" document made false representations that Verizon subjected flagged content to human review before reporting, but this is disproven by the substantial evidence that Verizon's standard practice was to subject *every* image to human review before making a report to NCMEC. *Compare* Siekkinen Decl., Ex. J *with* PSAC ¶¶ 64-77.

In any event, none of these alleged mistakes, even if true, affected the outcome of law enforcement's investigation because officers relied on their own investigation and analysis, *not* Verizon's reports. *See* Siekkinen Decl., Ex. D at 34:18-23, 177:24-178:9, 183:2-10; *id.*, Ex. E at 9:19-10:7, 10:21-11:2, and 15:13-25. No officer identified *any* representations by Verizon about its NCMEC reports or CSAM reviewing practices that were relied upon. And because law enforcement correctly undertook its own independent investigation, Plaintiff cannot trace any of his injuries back to Defendants. *See Cordoba*, 942 F.3d at 1271. Given the clear evidence that law enforcement treated Verizon's report as a tip but made decisions based on its own expert's analysis of the January Image, Verizon's report cannot be the cause of various consequences Plaintiff claims he suffered as a result of prosecution. *See Tristar Prods*, 2025 WL 1111513, at *13 (defendants'

---

[12] "Incident time" is used differently by various providers (Siekkinen Decl., Ex. B at 57:13-58:5 and 69:18-20; *id.*, Ex. G at 101:20-102:7), and law enforcement only uses "incident time" as the starting point for a search warrant (*id.*, Ex. D at 15:13-25). "Not publicly available" refers to the fact that reported content was stored on Plaintiff's private cloud account, not that it could not be found anywhere on the Internet. *Id.*, Ex. G at 111:24-113:16.

report to governmental agency was *not* the proximate cause of any injuries plaintiff suffered because the agency's investigation and decisions broke the chain of causation). The lack of any connection between alleged damages and Verizon's reports is particularly glaring because law enforcement charged Plaintiff based on three completely *different* images it found when it searched Plaintiff's phone—not the ones at issue in this case against Verizon. *See* Siekkinen Decl., Ex. D at 203:19-204:13; ECF 27-2. And any supposed minor mistakes in the report are mooted by the fact of human review and the appearance of the teenager in the January Image. Permitting Plaintiff to further litigate these moot theories contravenes Congress' intent that providers should not face the burden and expense of defending lawsuits absent egregious, willful misconduct.

### 3. The PSAC confirms Verizon's Motion for Reconsideration.

The PSAC's allegations confirm that the basis for Verizon's previously filed motion for reconsideration remains viable and should be granted, and the entire case should be dismissed with prejudice. As discussed above, the motion for leave to amend and the PSAC admit that Verizon *did not* receive the NCMEC "unconfirmed" tag before it reported the January Image, undercutting a key rationale in the Court's holding, and the other allegations that could support an actual malice claim in the PSAC are made in bad faith and are false. *See* MTD Order at 22-23 and n. 10; ECF 50 at 4.

### CONCLUSION

Accordingly, the motion for leave to amend should be denied.

Dated: August 29, 2025          Respectfully submitted,

By: */s/ Nury Siekkinen*
    Nury Siekkinen
    Florida Bar No. 1015937
    ZWILLGEN PLLC
    1900 M Street NW, Suite 250
    Washington, DC 20036
    Telephone: (202) 296-3585
    Facsimile: (202) 706-5298
    Primary email: nury@zwillgen.com

    *Attorneys for Defendant*
    *Verizon Communications Inc.*

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that a true and correct copy of the foregoing was filed with the Clerk of Court using the CM/ECF system on August 29, 2025, and the foregoing document is being served this day on all counsel or parties of record on the Service List below, either via transmission of Notice of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive Notices of Electronic Filing.

/s/ *Nury Siekkinen*
Nury Siekkinen

### SERVICE LIST

LAW OFFICES OF NOONEY,
ROBERTS, HEWETT, AND
NOWICKI
Michael K. Roberts
mroberts@nrhnlaw.com
Jeffery S. Nooney
jnooney@nrhnlaw.com
1680 Emerson Street
Jacksonville, FL 32207
(904) 398-1992

*Counsel for Plaintiff*

BOND, SCHOENECK & KING,
PLLC
Andrew H. Reiss, Esq.
Northern Trust Building, Suite 105
4001 Tamiami Trail North
Naples, Florida 34103-3555
Telephone: (239) 659-3800
areiss@bsk.com
eservicefl@bsk.com

*Counsel for Defendant*
*Synchronoss Technologies, Inc.*