# EXHIBIT D

```
                  UNITED STATES DISTRICT COURT
                   MIDDLE DISTRICT OF FLORIDA
                      JACKSONVILLE DIVISION


WILLIAM LEE LAWSHE, an
individual,
                                          CASE NO.:
              Plaintiff,                  3:24-cv-44-MMH-MCR

    vs.

MIKAYLA PRESTON, in her
individual capacity as a
detective for St. Johns County
Sheriff's Office, and KATHLEEN
DULLY, in her individual
capacity as medical director
of the UF Child Protection
Team,

              Defendants.
_____

              VIDEO-RECORDED DEPOSITION OF

                     MIKAYLA PRESTON

              Taken on behalf of Plaintiff


    DATE TAKEN:    Thursday, March 13, 2025

    TIME:          1:01 p.m. - 6:38 p.m.

    PLACE:         St. Augustine Court Reporters
                   1260 North Ponce De Leon Boulevard
                   Suite E
                   St. Augustine, Florida 32084




         Examination of the witness taken before:

                       Nicole Medlock
           Registered Professional Reporter and FPR-C
```

1  Synchronoss.
2       Q    Okay.  That was the first search warrant that
3  you sought in this matter?
4       A    Yes, sir.
5       Q    Okay.  Now, do you understand that the charges
6  against Mr. Lawshe were dropped?
7       A    Yes, sir, I do.
8       Q    Okay.  As we sit here in today in March of
9  2025, do you agree that the models that were the subject
10 of this case were, in fact, adults at the time these
11 photographs were taken?
12      A    Do I agree --
13           MS. SHEVLIN:  Form.
14 BY MR. ROBERTS:
15      Q    From time to time, somebody may object.  You
16 still have to answer the question but --
17      A    Okay.  Do I agree that they were adults?
18      Q    Yes.
19      A    In my opinion, no, I don't.
20      Q    Okay.  So as we sit here today, you believe
21 that the models depicted in the charged images -- there
22 were three charged images; correct?
23      A    Yes, sir.
24      Q    -- were minors at the time that these
25 photographs were taken?

```
 1         Q    And did you --
 2         A    In this case.
 3         Q    And did you receive and review that
 4   photograph?
 5         A    Yes, sir.
 6         Q    I see that the incident type is described as
 7   child pornography on Page 2 of the cyber tip line
 8   report?
 9         A    Yes, sir.
10         Q    And there's an incident time.  What is that?
11         A    That is the date and time that the ESP
12   documented as when the crime would have occurred.
13         Q    Okay.  What's important about the incident
14   date and time for you?
15         A    It gives us, I guess in laymen's terms, kind
16   of like a starting point of when we think that the crime
17   would have occurred.
18         Q    So you see the incident date and time as the
19   date that he uploaded the file or when the crime
20   occurred.
21         A    Yes, sir.  That's what it goes off.
22         Q    And so when you went to seek for a subpoena, I
23   think you asked for seven days before and after that
24   date.
25         A    If I'm not mistaken.
```

```
 1   answer?
 2        A    If I had an answer, I would be --
 3        Q    Do you really --
 4        A    -- able to explain it.
 5        Q    Do you really believe that these are minors?
 6        A    Yes, sir, I do.
 7        Q    So there's a child victim out there.  Have you
 8   made any attempt to identify who that is?
 9        A    We have attempted, but I have been
10   unsuccessful.
11        Q    You have a copy of her passport, both of them.
12        A    I have a redacted form.
13        Q    And you also have a name of the record
14   custodian who has a presumably non-redacted copy of
15   that?
16             MR. CARSON:  Object to form.
17   BY MR. ROBERTS:
18        Q    Correct?
19             MR. CARSON:  Object to form.
20             THE WITNESS:  Well, I can't say correct
21        because I can't assume that he would have an
22        un-redacted.
23   BY MR. ROBERTS:
24        Q    But you're an investigator.  It's your job to
25   find out if he has an un-redacted copy; right?
```

```
 1   starting.
 2       Q    And to be fair, you think this is CSAM, these
 3   images.  You think these images are CSAM?
 4       A    Yes, sir.
 5       Q    Okay.  So you wouldn't categorize these
 6   images, these -- this one image, anyway, that was the
 7   cyber tip report image with the met-art.com.  You would
 8   not characterize that as a false report of child
 9   pornography?
10       A    No, sir, I wouldn't.
11       Q    But there was another cyber tip that -- that
12   was associated with this.  It was a prior cyber tip;
13   correct?
14       A    Yes, sir.
15       Q    And you looked at that image, and you did
16   determine that that appeared to be an adult?
17       A    Yes, sir.
18       Q    Okay.  So from an investigative standpoint,
19   you would agree with me that as an investigator, you --
20   you do have to exercise caution when getting a NCMEC
21   report to make some determination that this is actually
22   child pornography and not a mistaken report?
23       A    Yes, sir.
24       Q    All right.
25            You immediately -- or I -- let me say, between
```

```
 1         Q    Do you have the freedom to investigate crimes
 2   as you see fit?
 3         A    I don't understand your question.  Like, can I
 4   pick and choose?  Is that what you're --
 5         Q    Well, do you have to get permission?  If -- if
 6   we leave here today and you say, you know what; he's
 7   right, you know; this is a child on this website and
 8   they're most likely telling people that it's an adult,
 9   we should do something about that.  I mean, how would
10   you make that happen?
11         A    I would contact one of our federal agencies,
12   whether it be the FBI or, like, HSI.
13         Q    Okay.  But you haven't done that?
14         A    No, sir.
15         Q    All right.  You don't have a reason why?
16         A    No, sir.
17         Q    All right.  So the sole basis of you believing
18   that this was a minor was just your personal opinion
19   about this model looked young?
20              MR. CARSON:  Object to form.
21              THE WITNESS:  No, sir.
22   BY MR. ROBERTS:
23         Q    ==What was the basis of your opinion when you==
24   ==looked at this image to determine that this was a minor==
25   ==or not?==
```

```
 1        A     Based off my personal experience and obviously
 2   me being a female, that, and then also going the extra
 3   step and getting it certified by Dr. Dully.
 4        Q     What do you mean by that?
 5        A     By which part?
 6        Q     You -- let -- let's just go to -- if I can
 7   direct your --
 8        A     Yeah.
 9        Q     -- attention to your -- your deposition.  And
10   I'm just going to have you read your testimony on
11   Page 38.
12        A     Okay.  Just one second.  Sorry.
13              MR. ROBERTS:  And, Matt, I'm not trying to be
14        rude.  I'm having her read her testimony from a
15        deposition.  It is awkward.  But I did not make
16        this to be awkward.
17   BY MR. ROBERTS:
18        Q     I'd like you to read Line 14 --
19        A     14?
20        Q     Yep, on 38.  Can you -- can you read your
21   answer?
22        A     Yes.  Yes, sir.  And obviously, the main
23   difference with me is, which is also super weird to say,
24   if you were to get me naked and I was to be photographed
25   naked, you would be able to tell.  Okay.  Even though
```

```
 1      Q    We'll go through this.
 2      A    Okay.
 3      Q    So we can -- yeah.
 4           It says you have viewed the image attached to
 5  the cyber tip.  And then additionally, on February 22nd,
 6  2023, your affiant consulted with Dr. K. Dully of the
 7  First Coast Child Protection Team --
 8      A    Yes, sir.
 9      Q    -- who also reviewed the offending image.
10           Did I read that sentence correctly?
11      A    Who also reviewed the -- yes, sir.
12      Q    Yeah.
13           You actually did not express -- and you can
14  take a minute if you would like -- your opinion in this
15  affidavit that this was a minor or an adult.
16      A    No.  So usually, we put what the image
17  depicts.  But in this one, I did not put my opinion of
18  what the image depicts.  I just put Dr. Dully's
19  statement.
20      Q    When the -- and unfortunately -- right? -- I
21  mean, unfortunately, sometimes you see images of what is
22  obviously a child; correct?
23      A    Yes, sir.
24      Q    And when it is obviously a child, you don't
25  consult with Dr. Dully usually, do you?
```

```
 1        A    That would be correct.
 2        Q    And so --
 3             MS. SHEVLIN:  Form.
 4   BY MR. ROBERTS:
 5        Q    -- in those cases where it's obviously a
 6   child, you would express your opinion in the affidavit
 7   that this is obviously a child of, you know, a certain,
 8   I guess, age range?
 9        A    We describe the --
10             MS. SHEVLIN:  Form.
11             THE WITNESS:  Sorry.
12   BY MR. ROBERTS:
13        Q    Yeah.
14        A    We describe the photograph and what it depicts
15   and I say, like, for example, it appears to depict CSAM,
16   which is just the child sexual abuse material.
17        Q    And in those cases, it's just obvious?
18        A    Yes, sir.
19        Q    Right?
20        A    Uh-huh.
21        Q    You'll agree that this case, it was not just
22   obvious that this was a minor?
23        A    In my opinion, it was.
24        Q    But you didn't treat it like other cases where
25   it is obvious, and you would have not consulted with
```

```
 1       Q    You had done other investigations?
 2       A    Yes, sir.
 3       Q    And those other investigations included
 4  obvious child pornography that you did not need to go to
 5  a doctor; correct?
 6       A    Yes, sir, correct.
 7       Q    All right.  And so was -- tell me about that
 8  conversation.  Did Dr. -- why did it come up that
 9  Dr. Dully should or could be involved in this case?
10       A    So with this one, I reviewed it.
11            MS. SHEVLIN:  Form.
12            THE WITNESS:  I -- oh, sorry.  The background
13       is making me -- I viewed it as being CSAM.  I don't
14       remember for certain who it was.  I know it wasn't
15       Sergeant Tolbert because he also reviewed the image
16       before he assigned it to me, and he also viewed it
17       as CSAM.  But I believe that there was somebody
18       else in the office who thought that it could be
19       age-difficult.  So that's when we decided, just to
20       make sure we covered our bases, to have it
21       verified.
22  BY MR. ROBERTS:
23       Q    And when you say age-difficult, what you mean
24  is this could -- somebody believed that it could
25  potentially be an adult?
```

```
 1                THE WITNESS:  You're saying scientifically?
 2          That's the thing.  I don't know, I guess, how to
 3          answer it based off, like, that term being used.
 4   BY MR. ROBERTS:
 5       Q    So --
 6       A    I don't want to misspeak.
 7       Q    -- you -- you were the -- ultimately
 8   responsible for this investigation; correct?
 9       A    Yes, sir.
10       Q    And you understand that when you apply for a
11   search warrant, you have the obligation of only
12   presenting reliable information to the court; correct?
13       A    Yes, sir.
14       Q    All right.  So we've talked about, you know,
15   whether or not it was reliable that this website
16   actually has a history of -- of child pornography.
17   We've talked about that; correct?
18       A    Yes, sir.
19       Q    All right.  What I'm asking you is how did you
20   satisfy yourself, being in charge of the investigation,
21   that Dr. Dully's opinion about the age was reliable such
22   that you could present it to a court?
23                MS. SHEVLIN:    Form.
24                MR. CARSON:    I'll join.
25                You can answer.
```

```
 1              THE WITNESS:  And I'm sorry.  I'm thinking
 2       back to obviously when I went to her office, just
 3       because I don't recall specifically what she used
 4       to determine the age.  But her being a doctor in
 5       the medical field working with children, I think
 6       that also played into why I felt comfortable
 7       utilizing her.
 8   BY MR. ROBERTS:
 9       Q    So you met with her twice?
10       A    Yes, for this case.
11       Q    Okay.  The first time you met with her on
12   February 22nd, did -- did she tell you that she could --
13   yeah, I can accurately, reliably estimate the age of the
14   individual in this digital photograph?
15       A    I don't remember verbatim what she said.
16       Q    Do you remember getting that sense from her,
17   that she was going to give you reliable information
18   about the age?
19       A    Yes.
20       Q    Okay.
21            MS. SHEVLIN:  Form.
22   BY MR. ROBERTS:
23       Q    All right.  Now, prior to showing her the
24   image, you told her that this image came from a cyber
25   tip; correct?
```

```
 1   you, what I'm asking you is -- and let's just frame it
 2   as a hypothetical.  All right?  If Mr. Lawshe viewed
 3   this on a website and was told that it was a verified
 4   adult, wouldn't you agree that it would be very
 5   difficult for you to show or believe that he thought
 6   that it was a minor?
 7        A    That I don't know because I can't speak on a
 8   hypothetical what if because there are so many other
 9   variables that can be hypothetically brought into it.
10   So I can't answer that.  Like, I don't know.
11        Q    Was there any evidence that you -- you had of
12   what he believed about this image?
13        A    What do you mean?
14        Q    Like, so you agree, like, in order for him to
15   be guilty of this crime, he would have to have no -- he
16   would have to know that the person is a minor?
17             MR. CARSON:  Object to form.
18             THE WITNESS:  Like, knowingly and
19       intentionally possessing it.  Like, that person in
20       his mind is a minor.
21   BY MR. ROBERTS:
22        Q    That's your understanding?
23        A    That's -- yes.
24        Q    And so the only basis, if I'm understanding
25   you correctly, is your personal belief that this was a
```

```
1    minor.  That's the only reason that you have to think
2    that he might have thought that it was a minor?
3         A    No, sir.
4         Q    What's the other basis?
5         A    I'm going based off the totality of it.
6    Obviously, my viewpoint and viewing as CSAM, having a
7    doctor certify that as CSAM, having multiple other
8    people in the office have the same viewpoint that yes,
9    this is CSAM.  Obviously, it is opinions.
10        Q    Okay.  So that's a great point.  You don't --
11   you had no idea -- I mean, you don't believe -- or did
12   you believe at the time that Mr. Lawshe was an expert in
13   aging individuals?
14             MR. CARSON:  Object to form.
15             THE WITNESS:  I don't know anything about him,
16       so I couldn't tell you.
17   BY MR. ROBERTS:
18        Q    Well, you know that he was a Florida Fish and
19   Wildlife officer; correct?
20        A    That was learned after I started this
21   investigation.  I didn't know prior to this
22   investigation who he was or what his job class was.
23        Q    But at the beginning of the investigation, you
24   were told that he was a Florida Fish and Wildlife
25   officer.
```

```
 1            MR. CARSON:  Object to form.
 2            THE WITNESS:  That's not what I'm saying.  I'm
 3       not saming -- excuse me -- saying that I'm the
 4       judge and executioner of what is a crime.  What I'm
 5       saying is that I felt that this depicted a child,
 6       and I had that probable cause.  I had it reviewed
 7       by another doctor.  I had it reviewed by a state
 8       attorney, and that is why we proceeded with the
 9       investigation.  But I'm not saying that I am the
10       end all/be all, no, sir.
11  BY MR. ROBERTS:
12       Q    Do you think that you conducted a reasonable
13  investigation prior to arresting my client?
14       A    Yes, sir, I do.
15       Q    And why -- explain to me why that
16  investigation did not include going to the website
17  met-art.com.
18       A    Because at that point in my investigation,
19  when I am trying to obtain probable cause for an arrest,
20  going to MetArt was not during that point in my
21  investigation.
22       Q    You knew that med-art.com potentially had
23  exculpatory information.
24            MR. CARSON:  Object to form.
25            THE WITNESS:  No, I did not.
```

```
 1   BY MR. ROBERTS:
 2        Q    And there was agreement between some people
 3   that it -- that it depicted a -- a child -- and there
 4   was some dissent from someone -- and you cannot remember
 5   that person's name -- that it may not be a child and it
 6   may be age-difficult?
 7        A    Yes, if I'm recalling correctly.
 8        Q    After that, the decision was made, and you
 9   were introduced to Dr. Dully by Sergeant Tolbert?
10        A    Yes, sir.
11        Q    You took the image, on February 22nd, to
12   Dr. Dully?
13        A    Yes.
14        Q    You've already described the meeting that
15   you've had with her.  You went back to the office, and
16   sometime between then and February 28th, you executed an
17   affidavit in support of a search warrant; correct?
18        A    Yes, sir.
19        Q    All right.  Search warrant was issued;
20   correct?
21        A    Yes, sir.
22        Q    That was served on Verizon?
23        A    Synchronoss.
24        Q    Synchronoss?
25        A    Yes, sir.
```

1     Q     And they returned the data that you requested.
2     A     Yes, sir.
3     Q     You downloaded that data with Detective
4  Greene, his assistance?
5     A     I don't recall.  He may have assisted.  I just
6  don't recall for certain if he did or didn't.
7     Q     Okay.  You reviewed some of the pornographic
8  images on the phone once the download was complete?
9     A     Yes.
10    Q     You chose three images that were not -- one of
11 the -- those three images were not the original NCMEC
12 tip report; correct?
13    A     That is correct.
14    Q     You -- you -- you made the determination that
15 these appeared to be minors, in your opinion?
16    A     Yes, after reviewing them with Dr. Dully.
17    Q     Well, you made that determination, and then
18 you took them to Dr. Dully.
19    A     Yes, sir.
20    Q     Right?
21    A     Uh-huh, yes.
22    Q     Now, there are images in Dr. Dully's report,
23 and I'm glad we're talking about this.  Let's go to the
24 second report.
25    A     Okay.