UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

WILLIAM LEE LAWSHE,
an individual,

       Plaintiff,

v.                                     Case No. 3:24-cv-00137-MMH-LLL

VERIZON COMMUNICATIONS, INC.,
a Delaware Corporation, and
SYNCHRONOSS TECHNOLOGIES, INC.,
a Delaware Corporation

       Defendants.
_____/

## PLAINTIFF'S REPLY TO MEMORANDUM IN OPPOSITION

Defendant argues the "proposed amendment is futile because, when considered with evidence adduced in discovery, it demonstrates only that no claim against Defendants can succeed." (Opposition P.1) Verizon cites the lone case of *Cockrell v. Sparks* for the proposition that in "evaluating a motion for leave to amend, courts can consider evidence adduced to date and evaluate whether the proposed amendment would be immediately subject to a successful summary judgment motion." *Cockrell v. Sparks*, 510 F.3d 1307, 1310 (11th Cir. 2007) (Opposition P. 9) However, in *Cockrell*, the case had already been dismissed on Summary Judgment at the time of the proposed amendment. *Id.* "*Cockrell* lends no support to the proposition that the futility of a proposed amendment should involve an examination of the evidentiary

1

record simply because the parties have engaged in discovery. *Andrade v. Marceno*, No. 2:19-CV-887-JES-NPM (M.D. Fla. Mar. 29, 2021).

In denying, in part, Verizon's original Motion to Dismiss (ECF Doc. 45), the Court ruled that "unfounded" reports are not afforded statutory immunity. (Order P.22-23) Plaintiff has added multiple allegations in the proposed second amended complaint that directly support the contention that both of the subject CyberTip reports were unfounded. The PSAC is not futile.

Verizon has repeatedly argued that the basis for "actual knowledge" of "apparent" CSAM was that the subject images "matched a hash value of the 'triple vetted' NCMEC CSAM Hash list" and that "a match indicates that an image is identical to one flagged on that database maintained by NCMEC." (Reconsideration P.7, see also footnote 9) These statements are not true.

Plaintiff has alleged (and Verizon concedes) that the subject images were not contained on the NCMEC CSAM hash list. (PSAC ¶¶79,80; ¶148). NCMEC does not know the source of the subject hash values. NCMEC has no visibility, control, or vetting of other entities' contributions to the NPO list. (PSAC ¶ 90) Defendants did not know the source of the hash match at the time the two reports were generated (PSAC ¶¶91,149) Defendants did not know the criteria or definitions used by the unknown entity to place the content on the unknown list[1]. **(¶93)**

At the time of this CyberTip report, Defendants did not know if a match was a "near match" or an exact match to an image contained in a CSAM hash list. (PSAC ¶

---

[1] The evidence has not established the identity of the entity which contributed this content to a list or database.

2

92) The fact that a "match" can occur between materially different images undermines the reliance on a "match." (PSAC ¶ 45)

As to the October image, the PSAC alleges that the content was not contained on *any* CSAM hash list. (PSAC ¶ 148) Rather, the content was a "near match" to another image that had been materially altered to contain a minor. (PSAC ¶¶ 150-152) Even then, the altered image was not contained on the NCMEC CSAM hash list. (PSAC ¶ 153) Moreover, Defendants were (1) explicitly warned of potential errors in the NPO hash database (2) contractually accepted the database with a disclaimer of warranties of any kind as to the information contained therein and (3) accepted all risk and liability associated with using the information contained in the NPO database. (PSAC ¶¶33,34,35)

The ultimate fact is that the NPO database is full of false and "unconfirmed" content. Defendants maintained a block-list of previously reported false reports. (PSAC ¶57)  NCMEC and providers receive hundreds of thousands of reports from law enforcement indicating false CyberTip reports annually. The hash scanning ecosystem produces up to a 50% error rate. (PSAC ¶¶58,59,60, 61,62)

The Court has previously ruled that the Plaintiff has sufficiently pled facts which could raise an inference that the false claims were communicated with actual malice as to the January image. The PSAC adds similar allegations as to the October image.[2] However, there are multiple additional allegations regarding information in the CyberTip reports that Defendants knew was not accurate. As alleged in the PSAC (1)

---

[2] Plaintiff only had testimony regarding the content and appearance of the October image at the time of filing, not the image itself. Additional discovery supports the new allegations.

3

the incident type contained knowingly false allegations of *manufacture and distribution of CSAM* (PSAC ¶¶ 108,113,114, 155, 156, 157) and (2) the "incident time" was willfully and knowingly inaccurate. (PSAC ¶¶116-119; 158-160) Verizon had been warned and asked to make the reports more accurate by NCMEC, as the information was material and important. (PSAC ¶ 121)

Obviously, the characterization of the two models as minors and/or prepubescent was false[3]. Plaintiff has again alleged that Verizon gave false information that the entire contents of the uploaded file were not available publicly. (PSAC ¶¶ 125, 162) Verizon claims in their Opposition that they meant that the image was saved on the cloud and therefore, it was not publicly available. (Opposition P.19, footnote 12) But this statement is not true. The content was never saved on the cloud. Rather it was detected and removed, prior to ever reaching the client's account. (Deposition of Blaska P.20 Ln. 2-4). When asked what the publicly available field meant or was intended to communicate to NCMEC, the head of Synchronoss's scanning and reporting stated "You'll have to ask NCMEC, it's their field.· I don't know." (Deposition of Blaska P.113 Ln.2-6) The language of the question is not vague or ambiguous: "were the entire contents of the file publicly available?" (Deposition of McNulty NCMEC Corp. Rep. P. 60 Ln. 3-7) In fact, NCMEC provides a field where the ESP can add information on the URL where file was uploaded from. (Deposition of McNulty NCMEC Corp. Rep. P. 71 Ln. 3-8) Either way, the statement made in the CyberTip report was false, or at the very least, made with a conscious disregard for its accuracy.

---

[3] Verizon published the pornographic image on the Court's docket. They cannot take the position in good faith that it depicts a minor.

4

Virtually none of the substantive information in either of the subject reports in this case was accurate. Indeed, Plaintiff has alleged that the "incident time" and "incident type" was incorrect on *every* CyberTip report produced by Defendants. (PSAC ¶ 179) "A series or pattern of errors" or "multiple mistakes" can create an inference of "a reckless indifference to the truth." *Gargula v. Poole* (In re Poole), 2021 Bankr. LEXIS 3203, *29 (Bankr' N.D. Ga 2021)

Further supporting actual malice, at least as of June of 2025, the subject content had not been placed on the Defendants' "block list." (PSAC ¶ 188) The Defendants simply don't care if this adult content is, has been, or will be reported again as child pornography. When asked if it bothered her that an image of an adult had been reported as child pornography, Blaska testifies that "No.· I mean, I think it's unfortunate and nothing is perfect and it's a consequence.· But no, it does not bother me. **People who do nothing wrong have nothing to hide.**" (Deposition of Blaska P. 93 Ln. 6-8) Mr. Lawshe's case proves otherwise. This is direct evidence of a reckless disregard for the accuracy of Defendants' reporting system.

As to bad faith, Verizon argues that Plaintiff has repeated "a baseless allegation that Verizon does not employ human reviewers to evaluate images flagged as potential CSAM." (Opposition P. 1) and that "discovery confirmed that Verizon's process does include a visual human review of every image." (Opposition P.3) This is a classic straw-man argument. Plaintiff does not allege that there is no ***process*** for human review. In fact, Defendants ***have always claimed*** that there was human review. However, there is no evidence *based on direct or personal knowledge* that the subject images were actually viewed. Neither the corporate representative answering

5

interrogatories, Cara Blaska or Joshua Buxbaum[4] have direct or personal knowledge that the images were actually viewed. To the contrary, the evidence will show:

1. From the barest review, Aaron Weiss (a forensic investigator) and Crawford Peirce (Mr. Lawshe's lawyer) immediately thought that the model was over 18 years old when they initially viewed the image at the SJSO facility.[5] (Affidavit of Peirce Exhibit H to Plaintiff's MPSJ filed in the related case Doc. 67).
2. This impression was correct. After the most basic investigation, 20-30 minutes and an email. They were able to confirm that the model was an adult. *Id.*
3. However, Verizon did not simply claim that the January model was a minor. They claimed that the model was "prepubescent." (PSAC ¶125(c))
4. Pre-pubescent by every definition discovered in this case means that the individual has not begun to develop pubic hair.
5. Every witness who has viewed the January image, in this or the related case, has testified that there was pubic hair present and therefore, the model was not prepubescent. This includes Det. Preston and Dr. Dully. Even Cara Blaska, the Synchronoss lawyer, acknowledges that the model has pubic hair and had experienced the onset of puberty. (Deposition of Blaska P.139 ln 18-20; P.140 Ln. 7-9)
6. Furthermore, NCMEC viewed the image and determined that the model was obviously not prepubescent. Otherwise, the image would have been confirmed as "Apparent" CSAM under their guidelines.

The fact that Defendants incorrectly described the image as appearing to be a minor *and* prepubescent raises an inference that no one from Verizon actually looked at the January image. This same inference arises from the circumstances of the October image. No witness *who has actually viewed the October image*, has testified that the

---

[4] The undated "Declaration" was served on Plaintiff on July 31, 2025. Mr. Buxbaum's deposition is currently set for October 20, 2025.
[5] Verizon claims that it is bad faith to allege that "the barest of review and/or investigation" revealed that the models were 18 or over. But these are the facts of the case. The fact that another may interpret the model's image differently does not mean that Mr. Peirce was wrong, it only means that these things are subjective.

model appears to be a minor. Blaska acknowledges this. (Deposition of Blaska P 91) There is a reasonable inference that no one from Verizon viewed the October image.[6]

As to the allegations of reliance[7], law enforcement clearly relied on CyberTip to open the investigation. They clearly relied on identifying information and the incident time to seek a search warrant. The CyberTip is quoted in both search warrants and the Arrest and Booking Report. For proximate cause, Florida applies a cause in fact analysis along with foreseeability. "An intervening cause relieves a tortfeasor from liability only if it is completely independent of, and not in any way set in motion by, the tortfeasor's negligence." *Townsend v. Westside Dodge*, 642 So. 2d 49, 50 (Fla 1st DCA 1994)

The PSAC is not futile and has been made in good faith.

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing was filed with the Clerk of Court using the CM/ECF system on September 9, 2025.

> */s/ Michael K. Roberts*
> **Michael K. Roberts, Esquire**
> Florida Bar No. 00779741
> 1680 Emerson Street
> Jacksonville, FL 32207
> (904) 398-1992
> mroberts@nrhnlaw.com
> Attorney for Plaintiff

---

[6] Verizon certainly did not look at the "entire contents of the file." (PSAC ¶130) Discovery has revealed that the contract with WebPurify requires the use of a program called "Montage." This program significantly modifies images by making them black and white *and blurring* the image. "Faces Behind the Filters" available at https://www.webpurify.com/resources/faces-behind-the-filters/ Additionally, there are multiple factual issues with the agreement between Verizon and WebPurify to suggest that the agreement was not being followed.

[7] Summary judgement would not be appropriate, as under Florida law, in cases of defamation per se, damages are presumed. *Lawnwood v. Sadow*, 43 So.3rd 710,727 (Fla 4th DCA 2010)