# UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF FLORIDA
### JACKSONVILLE DIVISION

WILLIAM LEE LAWSHE,
an individual,

      Plaintiff,

v.

VERIZON COMMUNICATIONS INC., a
Delaware Corporation, and SYNCHRONOSS
TECHNOLOGIES, INC., a Delaware
Corporation,

      Defendants.

**Civil Action No. 3:24-cv-00137-MMH-LLL**

---

## DEFENDANT VERIZON COMMUNICATIONS INC.'S OPPOSITION TO PLAINTIFF'S MOTION TO QUASH AND RESPONSE TO NONPARTY ST. JOHNS COUNTY SHERIFF'S OFFICE'S MOTION FOR PROTECTIVE ORDER

# TABLE OF CONTENTS

INTRODUCTION.................................................................................................1

RELEVANT BACKGROUND............................................................................2

LEGAL STANDARD .........................................................................................5

ARGUMENT ......................................................................................................6

    I.    The Subpoena Seeks Relevant Information .......................................6

    II.   Proposed Production Protocol. ........................................................16

CONCLUSION .................................................................................................19

Verizon Communications Inc. ("Verizon") respectfully submits this memorandum of law (i) opposing Plaintiff William Lee Lawshe's ("Plaintiff") motion to quash Verizon's document subpoena to the St. Johns County Sheriff's Office ("SJSO") (ECF 75 ("Mot.")) and (ii) responding to the SJSO's Motion for a Protective Order (ECF 76 ("SJSO PO Mot.")).

## INTRODUCTION

Plaintiff seeks to deny Verizon highly relevant discovery based on a jumble of conclusory assertions and flawed reasoning.[1]  Verizon seeks from the SJSO certain categories of data forensically extracted from Plaintiff's devices shortly after Plaintiff's arrest in 2023.  Verizon requested the same data from Plaintiff (who also has a copy of it), but Plaintiff has declined to produce it.  The SJSO, for its part, is prepared to comply with Verizon's subpoena, subject only to a Court order specifying the conditions under which production will occur.  *See generally* SJSO PO Mot.  The SJSO seeks such an order because, in its view, Plaintiff's devices contain not only the images of teenagers that were the subject of Plaintiff's criminal prosecution—images that some SJSO staff continue to believe constitute child sexual abuse material ("CSAM")—but also other sexually explicit images and *thousands* of images of age-indeterminate individuals that may also constitute CSAM.  Of course, Plaintiff is resisting this production at all costs because it shows that he could not have been defamed by

---

[1] Verizon maintains that discovery should be stayed entirely until this Court rules on two potentially case-dispositive motions.  *See* ECF 71, Verizon Mot. to Stay Disc. (Sept. 5, 2025).  But while Verizon's stay motion is pending, Verizon will continue to press its defense.

Verizon's report of apparent CSAM to the National Center for Missing and Exploited Children ("NCMEC"), since his phone was teeming with apparent CSAM.

Given the SJSO's position, Plaintiff's attempt to dispute the relevance of the sought materials—especially given Plaintiff's sworn testimony in his companion case—falls flat. As discussed further below, the information Verizon seeks is highly relevant to **(i)** Verizon's defense to Plaintiff's defamation claim, which alleges that Verizon defamed Plaintiff by identifying him as someone in possession of apparent CSAM; **(ii)** Plaintiff's credibility, given, for example, that Plaintiff testified to having sought out only "tasteful" pornographic material from "professional" websites that claimed compliance with age-verification laws; and **(iii)** Verizon's immunity defense that the January Image constitutes apparent CSAM.

Recognizing the sensitivity associated with producing potential CSAM of the same type involved in the NCMEC report at issue, and the SJSO's burden concerns, Verizon proposes *infra* a protocol to govern the review of the forensic extractions of Plaintiff's devices. Verizon requests that the Court deny Plaintiff's motion to quash and order that the SJSO comply with Verizon's subpoena in accordance with Verizon's proposed protocol.

## **RELEVANT BACKGROUND**

This case concerns Plaintiff's attempt to hold Defendants Verizon and Synchronoss Technologies, Inc. ("Synchronoss") liable for reporting in January 2023 a pornographic image (the "January Image") of a teenager to NCMEC pursuant to

federal CSAM reporting laws.  That image was previously reported over 200 times by other providers like Verizon.  *See* ECF 67, Verizon's Opp'n to Mot. for Leave to Amend Compl. at 2 (Aug. 29, 2025).[2]  Plaintiff argues liability should attach because, according to self-serving and unverified evidence (including an unverified, undated picture of an individual holding images of a Ukranian passport), the teenager in the image was seven months past her 18th birthday.  Verizon had no awareness of this information and was not required to discover it—if it is even correct.  A second image was reviewed and reported in October 2022, but the Court already dismissed claims based on it.  *See* ECF 45, Order on Motions to Dismiss at 17 (Feb. 28, 2025).

Pending before the Court are Verizon's motion to reconsider the Court's order denying Verizon's motion to dismiss as to the January Image (ECF 50 (Mar. 28, 2025)) and Plaintiff's motion for leave to amend his complaint (ECF 59 (July 14, 2025)).  If the Court grants Verizon's motion to reconsider and denies Plaintiff's motion for leave to amend, the case will end.  For that and other reasons, Verizon has moved to stay discovery pending the resolution of both motions (ECF 71 (Sept. 5, 2025)).  All three motions have been fully briefed and are awaiting a decision.

---

[2] Plaintiff misleadingly asserts that a Synchronoss witness "conceded that both of the subject images reported depict adults."  Mot. at 4.  But in an excerpt of her testimony that Plaintiff does not cite, the witness testified she believed the teenager in the January Image "looks under 18."  *See* Declaration of Nury Siekkinen ("Siekkinen Decl."), Ex. A at 138:1-5.  Plaintiff similarly distorts the record when he asserts that Verizon "filed" the January Image on the Court's public docket, "indicating that they also concede that the image does not portray a minor."  Mot. at 4.  Verizon did not file the January Image on the Court's public docket; it filed a redacted version of that image.  In any event, even if the teenager in the January Image was seven months past her 18th birthday when the January Image was taken, that says nothing about whether the January Image nonetheless constituted "apparent" CSAM for purposes of Verizon's immunity defense.

Plaintiff's motion to quash arises from the following circumstances. On June 27, 2025, Verizon propounded its first set of Requests for Production ("RFPs") on Plaintiff. *See* Siekkinen Decl. ¶ 3 & Ex. B. RFP No. 10 requested "[a] full image backup of each mobile phone and computer owned or operated by You." *See id.*, Ex. B. Plaintiff served responses and objections on July 30, 2025 and declined to produce in response to RFP No. 10. *See id.* ¶ 4 & Ex. C at pdf p. 6. On September 11, 2025, Verizon sent Plaintiff a letter identifying deficiencies in Plaintiff's discovery responses. Verizon explained why discovery revealing whether Plaintiff searched for, viewed, stored, or shared material depicting or seeming to depict minors in sexual situations was relevant as potential impeachment evidence and to the reasonableness of the challenged CyberTip reports. *See id.* ¶ 5 & Ex. D at 3-4.

On September 12, 2025 Verizon notified Plaintiff that it would be serving on the SJSO the subpoena at issue here, and, later that day, served the subpoena. *See id.*, Ex. E at 11. On September 18, 2025, counsel for Verizon and Plaintiff conferred about Verizon's subpoena, Verizon's related RFPs to Plaintiff, and Plaintiff's anticipated motion to quash Verizon's subpoena. *See id.* ¶ 7. Verizon's counsel agreed not to seek certain categories of information from a forensic extraction of Plaintiff's devices and stated they would revert with a proposal for potentially withdrawing the subpoena if Plaintiff agreed to a framework whereby a neutral third party would exfiltrate agreed-upon categories of information from Plaintiff's devices, as produced by Plaintiff, and share them with Verizon. On September 20, Verizon memorialized this proposal in

4

an email, identifying 11 categories of information it sought from the extraction (*see* Mot. at 2) and explaining:

> If you [Plaintiff's counsel] are amenable to having a neutral third-party promptly extract and produce the material described above (from, as noted, unaltered forensic backups of Plaintiff's devices) in response to party discovery, we can withdraw our subpoena to the St. Johns County Sheriff's Office. Otherwise, we will proceed to seek the backups from the Sheriff's Office through our outstanding subpoena so that we can undertake a similar extraction of relevant evidence with a reputable forensic provider we select. To the extent you move to contest the Sheriff's Office's production, it should be with this proposed protocol in mind. Please also note that in a court dispute over that subpoena, we would agree to only extract and use the materials described above. Furthermore, the parties' operative NDA would apply and prevent further disclosure of the materials.

*See* Siekkinen Decl., Ex. E at 2. On September 22, 2025, without responding to Verizon's September 20 correspondence, Plaintiff filed its motion to quash. *See id.* ¶ 7; ECF 75.

## **LEGAL STANDARD**

The scope of discovery is the same for parties and nonparties. *See, e.g.*, *Caravels LLC v. City of Gainesville, Fla.*, 2020 WL 10758492, at *3 (N.D. Fla. July 13, 2020) ("That the subpoenas here are directed to nonparties makes little difference in terms of the scope of the subpoenas are permitted to sweep.") That scope encompasses any nonprivileged matter that is relevant to a party's claim or defense and proportional to the needs of the case. *See id.*; Fed. R. Civ. P. 26(b)(1). Courts construe relevance "broadly to encompass any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case." *Marbury v. Warden*, 2022 WL 17175549, at *2 (11th Cir. Nov. 23, 2022) (per curiam) (citation omitted).

To the extent Plaintiff suggests discovery must be tailored to seek only admissible "evidence" (Mot. at 3), that is incorrect. For approximately a decade, Rule 26 has not "require[d] that a discovery request be reasonably calculated to lead to the discovery of admissible evidence so long as the request otherwise falls within the scope of discovery." *Lorenzano v. Sys., Inc.*, 2018 WL 3827635, at *3 n.3 (M.D. Fla. Jan. 24, 2018); Fed. R. Civ. P. 26, Advisory Committee Notes, 2015 Amendment.

"The moving party bears the burden of establishing that the subpoena must be quashed." *Rodgers v. Herbalife Int'l of Am., Inc.*, 2020 WL 263667, at *1 (M.D. Fla. Jan. 17, 2020). "When the relevancy of a discovery request is not apparent, the burden is on the party seeking discovery to show the relevancy of the discovery request," a burden Verizon can readily sustain here. *Widener v. Rumbles Document Sols., LLC*, 2022 WL 22937643, at *2 (N.D. Fla. July 20, 2022).

## ARGUMENT

Each category of information Verizon seeks falls well within the scope of discovery. Plaintiff's cursory arguments otherwise are meritless.

### I. The Subpoena Seeks Relevant Information.

The disputed categories of information Verizon seeks fall into five buckets: **(i)** images and videos depicting nudity, pornography, or sexual activity of any kind; **(ii)** webpages Plaintiff visited; **(iii)** documents related to pornography or pornographic material, including those related to the age, or seeming age, of any individuals in the images or videos on Plaintiff's devices, and search terms used for web searches; **(iv)** a

6

list of applications installed on Plaintiff's devices; and **(v)** information regarding data in any of the preceding categories that was deleted before the forensic extractions were created, and any such deleted data.

The sought material is relevant for at least three overarching reasons.

*First*, it bears on Verizon's defense to Plaintiff's defamation claims. The crux of those claims is that Defendants allegedly falsely disclosed to NCMEC that Plaintiff possessed *apparent* CSAM, resulting in the characterization of Plaintiff as someone in possession of apparent CSAM. *See, e.g.*, ECF 39 (Am. Compl.) ¶ 65 ("At the time of the disclosure neither Defendant had 'actual knowledge' that the Plaintiff had committed an 'apparent' violation of law regarding the possession of CSAM."). The question, then, is not merely whether the individual in the January Image was 18 or older when the photo was taken. After all, Verizon must report "any facts or circumstances from which there is an ***apparent*** violation" of statutory provisions "that involves child pornography." 18 U.S.C. § 2258A(a)(1)–(2) (emphasis added).

But truth is a defense to defamation (setting aside whether a statement reflecting a *belief* that an image constitutes apparent CSAM is even actionable). *See Basulto v. Netflix, Inc.*, 2023 WL 7129970, at *20 (S.D. Fla. Sept. 20, 2023) (under Florida law, "[t]rue statements, statements that are not readily capable of being proven false, and statements of pure opinion are protected from defamation actions") (cleaned up); *see also Razner v. Wellington Reg'l Med. Ctr., Inc.*, 837 So. 2d 437, 442 (Fla. 4th DCA 2002) (statements "were not actionable because they were either true or opinion"). To be

clear, Verizon believes the January Image alone and on its face establishes the "truth" of its status as apparent CSAM, but other images on Plaintiff's device—whether from a photo shoot of the same or other individuals—also go to the "gist" of whether Plaintiff is someone who possessed apparent CSAM. *See Marder v. TEGNA Inc.*, 2020 WL 3496447, at *5 (S.D. Fla. June 29, 2020) (discussing "substantial truth doctrine" under Florida defamation law). If Plaintiff possessed pornographic images of teenagers or age-indeterminate individuals—and the SJSO has already stated that Plaintiff's device contained sexually explicit images and thousands of images of age-indeterminate individuals—Verizon cannot have defamed Plaintiff, because the "gist" or "sting" of Verizon's statement would be substantially true. At a minimum, any such possession would be relevant to Plaintiff's damages.

Consider the following scenario: if an eyewitness stated that a suspect robbed a bank because the eyewitness saw the suspect robbing a Wells Fargo bank on Tuesday, it would be a defense to a defamation claim, or at least go to the appropriate damages, if, in fact, the suspect robbed a Chase bank on Wednesday. Courts have recognized as much. In *Marder*, for example, a physician and his practice sued newspaper companies for defamation. 2020 WL 3496447, at *1. One of allegedly defamatory statements was that the federal government brought a criminal complaint against the physician on or about November 2014. *See id.* at *2. Even though the government had <u>not</u> brought the complaint at the point in time reported in the article, the Court dismissed the plaintiffs' defamation claim, explaining that, "in Florida, under the substantial truth doctrine, a statement does not have to be perfectly accurate if the 'gist'

8

or the 'sting' of the statement is true." *Id.* at *5 (cleaned up).  Applying that rule, the Court explained:

> [A]t the time TCPalm published the statement, Marder had already committed the crimes he later was charged with and convicted of. Thus, TCPalm's statement that the government had filed a criminal complaint, at a time when it had not, was substantially true. Had the reader known the truth, that Marder had already engaged in substantial fraudulent billing of Medicare, the truth would not have produced a different effect on the reader than the statement about the criminal complaint. Consequently, this statement was substantially true and the claim based on this statement is dismissed.

*Id.*  So too here: if the forensic extractions of Plaintiff's devices reveal that he possessed other apparent CSAM, Plaintiff's defamation claims fail as a matter of law.  *Cf. Bustos v. A & E Television Networks*, 646 F.3d 762, 764 (10th Cir. 2011) (explaining that "the truth, whenever discovered, serves as a complete defense" to defamation).[3]  Plaintiff should not have brought defamation claims in the first place if he was intent on hiding the truth related to the nature of his possession and collection of pornographic images of teenagers.  He could have simply brought his other statutory claims.

*Second*, and even apart from the defamation claim, the sought discovery bears on Plaintiff's credibility.  As set forth further below, in his deposition in his companion case, Plaintiff offered internally inconsistent or otherwise not credible testimony about most of the subjects about which Verizon seeks information through the forensic extractions.  *See Lawshe v. Hardwick ("Hardwick")*, No. 3:24-cv-00044 (M.D. Fla.); Siekkinen Decl., Ex. F. And it is well settled that potential impeachment evidence is

---

[3] Plaintiff, to avoid producing the requested forensic extractions, has not offered to stipulate that he had thousands of pictures of age-indeterminate individuals on his phone.  But even if he had, Verizon would be entitled to gather information about how he came to possess those pictures, including what searches he performed to find them and whether their hash values are on any NCMEC or NGO lists.

9

discoverable.  *See Caravels*, 2020 WL 10758492, at \*4 (communications involving a party to the case were "plainly relevant as possible sources of impeachment evidence").

*Third*, the sought discovery bears on whether the January Image constitutes "apparent CSAM" (it does) and whether it obviously depicts an adult, as Plaintiff claims (it does not).  On those questions, other photos of the same model (which are reportedly present on the extraction) would bear on her apparent age, especially if from the same photo shoot as the January Image.  *See* Fed. R. Civ. P. 26(b)(1) (material is discoverable if relevant to a party's "claim or *defense*") (emphasis added).

That Verizon seeks only relevant material and not unrelated content from Plaintiff's devices refutes Plaintiff's baseless suggestion that Verizon seeks access to the information to embarrass or harass him.  *See* Mot. at 7.  Below, Verizon explains further why each category of information it seeks is relevant.

***Sexually Explicit Images and Videos***.  Images and videos on Plaintiff's devices that depict nudity, pornography, or sexual activity—of which there are as many as thousands (*see* SJSO PO Mot. at 2)—are relevant to Verizon's truth defense, as explained *supra*.  They are also critical to testing Plaintiff's credibility.  Plaintiff emphasized that he only sought out "tasteful" pornographic material from "professional" websites (akin to Playboy and Penthouse) that complied with age-verification requirements.  *See* Siekkinen Decl., Ex. F at 55:20-22 ("And this site and the Hegre Art site was familiar with and looked just like Playboy and Penthouse. **It**

was what I called **tasteful**."); *id.* 56:22-25 ("**I just look for tasteful pictures**. And if you go to either one of those sites these are tasteful pictures in my opinion. **They don't demoralize women or anything like that**."); *id.* at 79:13-16 ("And I tried to just go to the ones [websites] that looked **professional**. **And all of the ones that looked professional have that age verification on it**.") (emphases added).

But the SJSO has represented that Plaintiff's cell phone contained *thousands* of images of age-indeterminate individuals, including sexually explicit images that could constitute CSAM. *See* SJSO PO Mot. at 2. The SJSO's representations cast doubt on Plaintiff's testimony about the type of content he sought and possessed. Only access to the forensic extraction of Plaintiff's phone can confirm to what extent the thousands of images of age-indeterminate individuals on that device are from the few "professional"-seeming websites Plaintiff claims to have visited. *Cf. Hernandez v. Thomas*, 2024 WL 3511640, at *5 (S.D. Ga. July 23, 2024) (relying in part on inconsistencies in plaintiff's testimony to grant Defendant's request for "unfettered access to [p]laintiff's cell phone").[4]

*Internet browsing history*: The websites Plaintiff visited are relevant to probing related inconsistencies in Plaintiff's testimony. Plaintiff initially testified to only

---

[4] Plaintiff suggests that the fact that criminal charges were dropped or that the SJSO did not pursue charges as to certain images on his phone means that "[t]here is no CSAM on Plaintiff's devices." Mot. at 6. That is a non-sequitur. The decision whether to bring charges or not is an exercise of prosecutorial discretion—not a declaration of innocence. *Cf. In re Wild*, 994 F.3d 1244, 1260 (11th Cir. 2021) ("The core of prosecutorial discretion, though—its essence—is the decision whether or not to charge an individual with a criminal offense in the first place.").

11

visiting two pornographic websites, Met-Art and Hegre-Art, and could not recall visiting others. *See* Siekkinen Decl., Ex. F at 57:4-10 ("Best of my memory those were pretty much my -- where I went."); *id.* 52:1-2 ("I mean, I just would -- I went to one or two sites usually and that was it, because I wanted to be careful."). Undermining that testimony, however, he later identified another site he would visit, "Amour Angels," which he claimed was a "sister site" of the two he previously identified. *See id.* at 72:14-20. Given Plaintiff's patchy memory on this subject, Verizon is entitled to know all the sexually explicit or pornographic websites Plaintiff visited. That browsing history bears, in turn, on whether Plaintiff regularly sought out content featuring teens or underage girls—contrary to his insistence that he only visited sites that appeared "professional" and displayed age-verification certifications. *See id.* at 52:1-2 ("I mean, I just would -- I went to one or two sites usually and that was it, because I wanted to be careful."); *id.* at 53:16-19 (Plaintiff describing one of the sites he visited as "an adult site for all intents and purposes. **It had all the USC's down at the bottom of the website. It was all models were legal under the United States law**.") (emphasis added); *id.* at 55:7-12 (**Q**: "If it [a website] didn't have the USC [c]ites at the bottom, would you have still looked at the photographs?" **A**: "Probably not. . . . I mean, I tried to stay with what I considered to be legitimate sites.").

Plaintiff's web-browsing history bears on his credibility for yet another reason. Plaintiff testified that, to avoid paying for a subscription, he leveraged short, free trial periods (lasting two to three days) offered by the few websites he visited. *See id.* at

54:4-14, 72:21-25. The sheer volume of images on his phone, however, makes that testimony inherently not credible. If Plaintiff's testimony is to be believed, the forensic extraction should show that the thousands of images on his phone, including those that constitute possible CSAM, were downloaded within few-day-long periods, during which Plaintiff was leveraging a free trial. Undermining that possibility, however, Plaintiff testified that, between October 2022 and April 2023, he was "sure" he would delete photos from his phone "because memory would run out and stuff," adding that "I think there were programs on my phone that would clean up memory and do stuff, I mean, yeah." *See id.* at 67:4-11. That Plaintiff deployed programs to clean up his phone's memory suggests he was continuing to download photos at a regular cadence, not just on isolated occasions when he was using a free trial on one of the few websites he claims to have visited. The only discovery that could allow Verizon to meaningfully probe Plaintiff's testimony is the forensic extraction of Plaintiff's devices.

Plaintiff claims Verizon is not entitled to a list of every webpage Plaintiff visited. *See* Mot. at 3, 6. While Plaintiff may have visited websites not relevant to this case, website names do not necessarily facially reveal their subject matter. That is true at least for the two websites Plaintiff claims to have primarily visited, Met-Art and Hegre-Art. Accordingly, Verizon would need to visit the websites in Plaintiff's browsing history to determine their contents and test whether, as Plaintiff testified, he only downloaded sexually explicit photos from the few websites he referenced. The content of those pages is also relevant to see how the models in the pictures were described (*e.g.*, a description of the models as "teens", "young," or "under age" would be

13

relevant). Courts have recognized that "a broader disclosure" is sometimes required to avoid the perils associated with entrusting a self-interested party to exercise its "judgment" about what qualifies as responsive material "when that judgment might not have lined up with [the requesting party's] judgment." *Caravels*, 2020 WL 10758492, at *3-4. That risk is acute here.

*List of applications on Plaintiff's devices*: Verizon seeks a list of the apps installed on Plaintiff's devices to understand if any were designed to allow Plaintiff to browse the Internet anonymously, in ways that would erase Plaintiff's viewing history, or would otherwise delete content from his phone. Again, Plaintiff's testimony on this score is equivocal. Plaintiff testified he did not recall ever deleting his search history and was not "aware" of having used a search engine or browser that "does not save your search history." Siekkinen Decl., Ex. F at 45:15-21. He also denied ever downloading a VPN and did not "believe" he had downloaded anything that would conceal his identity as he browsed the internet. *Id.* at 44:25-45:6. Yet, as noted, Plaintiff testified to using programs that would clean up the memory on his phone and seemingly delete pictures on it. Again, Verizon requires the forensic extraction to determine the truth and probe any inconsistencies.

*Search terms and documents related to pornography*: Documents related to pornography and search terms Plaintiff used in seeking out such material are relevant to Plaintiff's credibility and Verizon's truth and immunity defenses.

As to the latter, if Plaintiff's search terms or other notes or communications indicate that Plaintiff believed that the January Image—or other content like it—

14

depicted underage or age-indeterminate girls, those documents would bear on the reasonableness of Verizon's conclusion that the January Image was apparent CSAM. They would also be relevant to the truth of whether Plaintiff possessed apparent CSAM, and, therefore, Verizon's defenses to defamation liability and damages. There is reason to believe that the forensic extraction might reveal that Plaintiff used such search terms. Although Plaintiff has described the Met-Art site as one of the few "professional"-seeming ones that includes "tasteful" content and claims compliance with age-verification laws, testimony in Plaintiff's companion case indicates that the phrase "Met" in Met-Art may refer to "most erotic teens"[5] and that the Met-Art website suggests search terms like "teen amateurs" and "petite teens naked."[6] That Plaintiff recognized the face of the teenager apparently depicted in the January Image when showed her picture at his deposition also indicates that Plaintiff's device may contain relevant documents about her, including other pictures and information that would be relevant to her apparent age. *See* Siekkinen Decl., Ex. F at 47:6-9, 13-17 (Plaintiff testifying that he "recognize[d] the face" of the individual in Deposition Exhibit 8B, whose file name ends in f6a487); *See* ECF 28-1 at internal p. 4 (CyberTipline Report for the January Image identifying the "Filename" of the January Image as ending in f6a487).

---

[5] *See* Siekkinen Decl., Ex. G at 76:12-20 (**Q**: "Okay. Do you know what the MET in Metart stands for?" **A**: "I do not." **Q.** "If I told you it stood for most erotic teens, would that surprise you, based on the content that you saw?" **A**: "No, there's often, like in ICAC investigations, there's often hidden meanings in different terms.").
[6] *See* Siekkinen Decl., Ex. H at 278:23-279:5.

As to impeachment, Plaintiff's sworn interrogatory responses state that "[m]any witnesses have and will testify that the image [the January Image] appears to depict an adult." *See* Siekkinen Decl., Ex. I at pdf p. 9.  But any statements *Plaintiff* made about that Image, the teenager it depicts, or similar images and individuals, could reflect Plaintiff's view of the apparent age of the teenager in question and serve as valuable impeachment evidence.

***Deleted content***:  Verizon's request for content that may have been deleted from Plaintiff's devices is plainly relevant, given Plaintiff's testimony that he was "sure" he deleted photos from his phone between October 2022 and April 2023 and believed he ran "programs" on his phone that would "clean up memory and do stuff."  *See* Siekkinen Decl., Ex. F at 67-8:11.  If any of the deleted content falls within the categories described *supra*, it would be relevant for the reasons described and because of the fact of its deletion.

## II.    Proposed Production Protocol.

Because the forensic extractions of Plaintiff's devices could include apparent CSAM and given the potential burden on the SJSO associated with isolating responsive material within the extractions, Verizon proposes that the Court adopt a specialized protocol consistent with one ordered in another case to govern the production of responsive information from the extractions.

To Verizon's knowledge, only one district court has established a protocol for the review of actual and potential CSAM in the context of civil discovery.  *See generally Doe v. Bd. of Educ. of Pecos Indep. Sch. Dist.*, 2023 WL 7299311, at *4 (D.N.M. Nov. 6,

16

2023).  In *Pecos Independent School District*, a plaintiff subpoenaed the New Mexico Department of Public Safety ("DPS") seeking information in DPS's custody related to "the New Mexico State Police Department's criminal investigation of Defendant Rico, excepting pornographic images of Plaintiff and other minor victims." *Id.* at *1.  DPS complied with the subpoena, withholding the potential CSAM.  Plaintiff then coordinated with the parties to seek "a mechanism to permit her expert and an expert designated by Defendants to review the images in the custody of DPS." *Id.* Recognizing Plaintiff's legitimate need for discovery, and finding no federal statute "that speaks to the procedure for discovery containing pornographic material of minor in a civil case," the Court fashioned a protocol that permitted the parties' experts to review the potential CSAM. *Id.* at *2, *4.  The experts could review the material at a designated location, with a DPS representative present if DPS wished; the experts could not copy or otherwise reproduce the unaltered images; and the experts could author reports based on their review, so long as those reports did not compromise the privacy of minors other than the plaintiff. *See id.* at *4.

In another case, a plaintiff sought civil discovery from defendants, operators of adult websites, that would include both confirmed CSAM (material defendants had already reported to NCMEC) and suspected CSAM (material defendants had not reported to NCMEC because they maintained it was not CSAM but the plaintiff believed it could be). *See Doe #1 v. MG Freesites, LTD*, 2023 WL 5313081, at *2 (N.D. Ala. Aug. 17, 2023).  The Court permitted the defendants to produce both categories of material directly to the Alabama Attorney General's Office, a law enforcement

17

agency, for the Office to hold in repository, but declined to address "the issue of the manner and means by which CSAM and suspected CSAM—actual imagery—is to be reviewed by parties to this lawsuit." *Id.* at *6. The Court briefly identified potential options for the review—*i.e.*, whether the Attorney General's Office "may provide sanitized images for review by the parties and actual images for an *en camera* review by this Court if necessary"; whether "Attorney General should be allowed to testify as a witness at trial regarding what that office discovers in their review"; or "whether Plaintiff can legally hire experts to review such material"—but did not analyze their viability. *Id.*

Verizon respectfully submits that the protocol below, informed by the guidance in *Peco Independent School District* and *MG Freesites*, would adequately balance the SJSO's concerns and Verizon's right to relevant, proportional discovery:

First, Verizon's expert, PNG-Cyber,[7] will review the forensic extractions of Plaintiff's devices on a secure computer furnished by the SJSO or, at the SJSO's election, on site at the SJSO.

Second, PNG-Cyber will isolate and exfiltrate only the categories of information Verizon seeks. For any responsive material in those categories that would not potentially constitute CSAM (for example, documents and other non-image or video information), PNG-Cyber will promptly produce it to Verizon. For responsive

---

[7] PNG-Cyber has over 30 years of expertise in cyber forensics matters, and its personnel include a former state government official who performed digital forensic examinations in support of CSAM investigations and other criminal matters. *See* Siekkinen Decl. ¶ 12 & Ex. J.

18

material that may constitute CSAM, PNG-Cyber will first redact and/or sanitize any such material to obscure any sexually explicit portions or conduct and produce only the redacted/sanitized images to Verizon or, alternatively (or together with the redacted images), if the Court prefers, describe in a report the images PNG-Cyber believes constitute apparent CSAM, along with the grounds for that conclusion.

## **CONCLUSION**

For the reasons discussed, Verizon respectfully requests that the Court deny Plaintiff's motion to quash and order the SJSO to comply with the subpoena in accordance with Verizon's proposed protocol.

Date: October 6, 2025

/s/ *Nury Siekkinen*

Nury Siekkinen
Florida Bar No. 1015937
Email: nury@zwillgen.com
**ZWILLGEN PLLC**
1900 M Street NW, Suite 250
Washington, DC 20036
Telephone: (202) 296-3585
Facsimile:  (202) 706-5298

*Attorney for Defendant*
*Verizon Communications Inc.*

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that a true and correct copy of the foregoing was filed with the Clerk of Court using the CM/ECF system on October 6, 2025, and the foregoing document is being served this day on all counsel or parties of record on the Service List below, either via transmission of Notice of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive Notices of Electronic Filing.

/s/ *Nury Siekkinen*

Nury Siekkinen

LAW OFFICES OF NOONEY, ROBERTS, HEWETT, AND NOWICKI
Michael K. Roberts
mroberts@nrhnlaw.com
Jeffery S. Nooney
jnooney@nrhnlaw.com
1680 Emerson Street
Jacksonville, FL 32207
(904) 398-1992

*Counsel for Plaintiff*

BOND, SCHOENECK & KING, PLLC
Andrew H. Reiss, Esq.
Northern Trust Building, Suite 105
4001 Tamiami Trail
North Naples, Florida 34103-3555
Telephone: (239) 659-3800
areiss@bsk.com

*Counsel for Defendant Synchronoss Technologies, Inc.*