# Exhibit F

WILLIAM LAWSHE vs MIKAYLA PRESTON, et al.
Lawshe, William Lee on 03/14/2025

UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF FLORIDA

JACKSONVILLE DIVISION

CASE NO. 3:24-cv-00044-MMH-MCR

WILLIAM LAWSHE,

        Plaintiff,

vs.

MIKAYLA PRESTON, in her individual
capacity as a detective for St. Johns
County Sheriff's Office, and
KATHLEEN DULLY, in her individual capacity
as medical director of the UF Child Protection
Team,

        Defendants.
_____

                  VIDEO RECORDED

DEPOSITION OF:     WILLIAM LEE LAWSHE

DATE TAKEN:       Friday, March 14, 2025

PLACE TAKEN:      1260 North Ponce de Leon Boulevard
                  Suite E
                  St. Augustine, Florida 32084

TIME:              9:16 a.m. - 12:16 p.m

BEFORE:           LAURA DWYER PIERLE, RPR
                  STENOGRAPHIC COURT REPORTER
                  AND NOTARY PUBLIC - STATE
                  OF FLORIDA AT LARGE
**********************************************

ST. AUGUSTINE COURT REPORTERS
1260 NORTH PONCE DE LEON BOULEVARD, SUITE E
ST. AUGUSTINE, FLORIDA  32084
904-825-0570

APPEARANCES:


    On behalf of the Plaintiff:
        NOONEY AND ROBERTS, P.A.
        1680 EMERSON STREET
        JACKSONVILLE, FLORIDA  32207
        By:  MICHAEL KEITH ROBERTS, II, ESQUIRE


    On behalf of the Defendant Mikayla Preston:
        SNIFFEN & SPELLMAN, P.A.
        123 NORTH MONROE STREET
        TALLAHASSEE, FLORIDA  32301
        By:  MATTHEW J. CARSON, ESQUIRE
             AND
           CHRISTEN PETRUZZELLI, ESQUIRE
           (Present via videoconference)

    On behalf of the Defendant Dr. Dully:
        BANKER, LOPEZ, GASSLER, PA
        1900 SOUTHEAST 18th AVENUE
        SUITE 300
        OCALA, FLORIDA 34471-8237
        By:  AMY SHEVLIN, ESQUIRE
           (Present via videoconference)

ALSO PRESENT:

        DAN BISHOP, VIDEOGRAPHER

- - -
I N D E X
- - -

WITNESS:                                                          PAGE
WILLIAM LEE LAWSHE

DIRECT EXAMINATION BY MR. CARSON                                  5
CROSS EXAMINATION BY MS. SHEVLIN                                  88
REDIRECT EXAMINATION BY MR. CARSON                               121


CERTIFICATE OF OATH                                             127
CERTIFICATE OF REPORTER                                         128

- - -
E X H I B I T S
- - -
NUMBER                      DESCRIPTION                          PAGE

DEFENDANT'S EX. 10  PLAINTIFF'S ANSWERS TO DEFENDANT    40
                    MIKAYLA PRESTON'S INTERROGATORIES
DEFENDANT'S EX. 11  PLAINTIFF'S ANSWERS TO DEFENDANT    40
                    DR. DULLY'S INTERROGATORIES

A    Yes, sir.

Q    Okay.  And how would you access these websites?

A    Just via the internet.

Q    What kind of phone did you have?

A    I don't recall.  I mean, it was -- not Iphone. It was an android.

Q    Do you know the name of the web browser that you used?

A    If I said, I wouldn't -- I'd be lying if I was truthful I knew that's what it was.  I really don't.

Q    Okay.  Is it one that came on the phone?

A    I would -- I would think so.

Q    Did you ever download onto your phone the one that you had in April 2023 any browser other than the one that came on the phone?

A    I think it had -- I think the phone had several browsers on it, but I don't recall what they were.

Q    Did you download any additional browsers?

A    I don't recall.

Q    Did you download any other program that would allow you to access, view or download photographs?

A    I honestly don't recall.

Q    Did you download anything that would conceal

your identity as you browse the internet?

A     I don't believe so, no, sir.

Q     Did you ever download a VPN?

A     No, sir.

Q     Did you ever download an anonymizer?

A     Not that I am aware of, no, sir.

Q     When you searched did you search in regular mode?

A     I'm not sure regular mode.

Q     So a lot of web browsers will have what they call an incognito mode?

A     Okay.  Um.  I don't recall.  I -- whatever the settings were if I downloaded something or whatever was there I just used what was there.

Q     Okay.  Did you ever delete your search history?

A     Not that I recall.

Q     Did you ever use a search engine or a browser that does not save your search history?

A     Didn't know that was possible.  I'm not aware that I did.

Q     You're assuming that that picture was found on your phone because I'm representing to you that it was found on your phone.  But as we sit here today you have no recollection of that photograph ever being on your

WILLIAM LAWSHE vs MIKAYLA PRESTON, et al.
Lawshe, William Lee on 03/14/2025                                      Page 46

phone; is that correct?

    A    No, sir.  Correct.

    Q    Do you have any reason to dispute the assertion that that photograph was found on your phone?

    A    No, sir.

    Q    All right.  Do you know what your -- you had Verizon at the time, correct?

    A    The provider that was provided Verizon.

    Q    Okay.  Did Verizon as part of your subscription, as part of your plan with Verizon was there any sort of cloud storage that accompanied your cellphone?

    A    I think they all come with it.

    Q    Are you familiar with what Verizon uses for its cloud storage?

    A    No, sir.

    Q    Are you aware, do you know if the photos that you downloaded to your phone were also simultaneously or later uploaded to a cloud storage site?

    A    No, sir.

    Q    Let me take that one back.

    A    Although I can say it was alleged it did go to a cloud.  I think that's what they said at some point during the lawsuit.

    Q    And I'll just tell you this for whatever it's

worth, there are a lot of questions that I might ask you that other people are better suited to answer and that's fine.  My point today is to find out what your understanding and what your knowledge is.

A    Okay.

Q    And I believe this is 8B, which if you skip ahead a couple of pages, sir -- I am going to help you find it.  This is the next image that we're going to talk about.  It's the one that ends in f6a487.

A    Okay.

Q    And we have marked that as Exhibit B -- 8B. Excuse me.  Do you recall ever seeing that image?

A    I recognize the face, but that's all I can say that I recognize.

Q    Okay.  What do you recognize the face as?

A    Just one of the models that was on a site that I guess I saw.  I can't tell you the site.

Q    Do you remember downloading that photograph?

A    No, sir.

Q    Do you remember having that phone on your phone -- I'm sorry -- that image on your phone?

A    No, sir.

Q    Do you remember -- if I represent to you that that image was at some point on your phone, would you have any reason to dispute that?

no.  I mean, I just would -- I went to one or two sites usually and that was it, because I wanted to be careful.

Q    Of what?

A    Well, there is a lot of shit on the internet. And I'm a police officer and I know I uphold and represent and I don't want to go to some website that is shady or have something that's not legal.

Q    What do you mean there is lots of shit on the internet?

A    Just that.  I mean, you turn on anything on the internet.  I mean, I've made -- what was this thing I did the other night.  On Snapchat people were just putting stuff that is not appropriate.  And on Snapchat there was a picture that obviously somebody had like monochrome to make it monochrome.  So I guess to get past their AI stuff so kids could still see it and it was obviously two people having sex.  And it's like so I reported that as an inappropriate image to them and so they could take it off.  That's just something that shouldn't be on a site like that.

Q    Was there something inappropriate about the two people having sex?

A    Well, yeah, because kids have access --

Q    To Snapchat?

A    -- to Snapchat.

Q    Okay.

A    That's only an adult should be able to see that stuff.  I mean, I would be -- go out of my mind if my five year brought something to me or 10 year old, hey, Dad, what is this?  Can you explain this?

Q    I guess my point is, you know, we're dealing with allegations of minors.

A    Okay.

Q    And I just wanted to make sure your objection to it was that it was on Snapchat, not that the video or the image itself was illegal?

A    Right.  No.  No.  No.  It was -- well, it should be illegal to have -- if somebody put something like that for a kid to see that should be illegal.

Q    Sure.

A    But, no, there was no -- this was an adult site for all intents and purposes.  It had all the USC's down at the bottom of the website.  It was all models were legal under the United States law.  I can't remember the verbiage.  But so I had nothing to assume anything in that website was legal --

Q    Was illegal?

A    Legal.

Q    You believed it was legal?

A    Correct.

Q    Because of the disclaimers?

A    Because of the disclaimers and, I mean, it was a paid site.

Q    You -- and I'm going to ask you again because you said it is a paid site.  Do you recall -- do you have any recollection if you paid?

A    I don't.  Most of those sites offer like three day trial free offers and stuff that you get like two or three days to watch it, to view the site, to see if you want to pay.  And I'm sure that's what I did, because I was cheap.

Q    Okay.  And during that two to three day trial period would you download photographs?

A    Safe to say, yes.

Q    I want to make sure I understand this.  Before you looked at any of the photographs on Med-Art.com you went to the bottom of the web page and checked that there were --

A    I didn't specifically go there for it.  But it was -- it's put on the site.  I mean, you could go to the site and look at it yourself.  It's there in a manner that you can see that it complies with all U.S., I think it even says Canadian laws.

Q    My question to you is this though, before you looked at any of the images did you look to see if it

had those disclaimers?

A   I believe so.  But I'm not 100 percent certain.  But I'm pretty sure I did, because, again, like I told you, I wanted to make sure it was a valid site, you know.  That there was -- because I was a police officer.

Q   If it didn't have the USC sites at the bottom, would you have still looked at the photographs?

A   Probably not.  I mean, I just know.  I mean, you have things that pop up on the phones sometimes, and I would just go away from that site.  I mean, I tried to stay with what I considered to be legitimate sites.

Q   Okay.  What would you be concerned about seeing, viewing on a nonvalid site or non-legitimate site?

A   I mean, I'm concerned, I guess, what some people might construe as being extreme or whatever.  I mean, I just wanted stuff like Playboy or Penthouse, I mean, that's what I grew up.  When I was in the Army I looked at Playboy and Penthouse.  And this site and the Hegre Art site was familiar with and looked just like Playboy and Penthouse.  It was what I called tasteful.

Q   But you said a couple of times you were concerned as a police officer about --

A   Right.

Q    What were you concerned about viewing?

A    I mean anything that potentially could be offensive or brought to be illegal I guess.

Q    Okay.  Was part of your concern about viewing photographs on a website that didn't have a disclaimer, didn't have the USC sites that it might contain child pornography?

A    No, because I don't think that's available on the regular internet.

Q    Okay.  So, I mean, this disclaimer USC sites or not, you can go to any website and you shouldn't be afraid as a law enforcement officer that you're going to see something illegal, correct?

A    Well, illegal and the society we live in, what might -- somebody might find offense may not be illegal but they would find offensive.  And me as a police officer I always try to draw the line on I need to be better than the average person.  I'm also a Christian. And I didn't want to look at anything that potentially would get into that realm to where, you know, I'm kind of breaking my upbringing with Christ and things like that.  I just look for tasteful pictures.  And if you go to either one of those sites these are tasteful pictures in my opinion.  They don't demoralize women or anything like that.

Q    Do you know if Med-Art is marketed towards -- marketed as having images of young girls and teenagers?

A    No.

Q    You mentioned that, and I think you answered this question in a roundabout way, you said you've only gone to one or two sites, you've mentioned the Hegre Art site, you've mentioned Med-Art.  Any other sites that you've gone to?

A    Not that I can recall.  Best of my memory those were pretty much my -- where I went.

Q    Okay.  Is it your testimony today that there is no image of child pornography available on the internet on a public website today?

A    I would say yes.  I mean, I've never come across it or never heard of another officer telling me they've come across it.  I've always heard the dark web. You know, the dark web, dark web type stuff.

Q    Do you know where you were when -- you don't remember specifically viewing the picture that's 8B, correct?

A    Correct.  But I do recognize her face.

Q    Okay.

A    And that just comes from being a law enforcement officer.

Q    What does that mean?

Case 3:24-cv-00137-MMH-LLL  Document 78-7  Filed 10/06/25  Page 15 of 17 PageID 929

WILLIAM LAWSHE vs MIKAYLA PRESTON, et al.
Lawshe, William Lee on 03/14/2025                                    Page 67

MR. ROBERTS:  Objection.

THE WITNESS:  Neither way, no, sir.

BY MR. CARSON:

Q    Did you have a practice of at some time during the months between and including October 2022 and April 2023 would you deplete photos from your phone from time to time?

A    I mean, I'm sure I did because memory would run out and stuff.  I think there were programs on my phone that would clean up memory and do stuff, I mean, yeah.

Q    Okay.  Do you remember ever going through and saying -- whether to clear up memory space or for any other reason, do you remember ever going through your phone and deleting photographs that you had downloaded from the internet?

A    Not specifically, no.

Q    Other than visiting websites and downloading photos, did you receive any photographs of naked woman or otherwise sexually explicit photographs in any other manner?

A    No.

Q    Did anyone ever text you a photograph?

A    Some officers.

Q    Okay.  Did you ever save any of those

photograph on your phone?

A    No, sir.

Q    The last photograph I'm going to show you is -- I think skip ahead a couple of pages and I will show you where it appears.

MR. ROBERTS:  The DuckDuckGo.

BY MR. CARSON:

Q    Yeah, we're going to call that the DuckDuckGo?

A    Yes, sir.

Q    And it has been marked as Exhibit 8E.  Do you recognize that photograph?

A    I don't.  But I do remember the name of that site.

Q    What site is that, sir?

A    Amour Angels.

Q    Okay.  Is that a site that you would go to?

A    I think it was a sister site that I remember to -- I forget the name of the other one.  The Med-Art that we were talking about.  I think they are all sister sites with the Petter Hegre one.

Q    If you were subscribed to Petter Hegre your understanding is that you also would have access to Med-Art and Amour Angels?

A    As best I remember I think that was the way it worked.  It was a trial, free trial thing.

a web page that had a federal age verification law certificate at the bottom, correct?

A    I've never experienced that.

Q    Okay.  Is it your experience then if you find a photograph online of a woman being demoralized, again your word, that they are not going to have federal age verification law compliance certificate at the bottom?

A    They may or may not.  It just depends on, like I said, when you look at the website you can see, again my opinion, you can tell if a website looks like a professional website or not just by looking at it, you know.  It's either going to be one that's presented professional -- presented professionally or not.  And I tried to just go to the ones that looked professional.  And all of the ones that looked professional have that age verification on it.  Because, again, they are in the business to make money.  They don't make money by not being professional and treating -- treating their models respectfully and so forth.

Q    Is it your testimony that web pages that show what you would consider demoralizing photographs of adult women will not have federal age verification law compliance?

A    Can you repeat that one more time.

Q    Sure.