United States District Court
Middle District of Florida
Jacksonville Division

WILLIAM LEE LAWSHE,

     **Plaintiff,**

**v.**                                            **No. 3:24-cv-137-MMH-LLL**

VERIZON COMMUNICATIONS, INC. AND
SYNCHRONOSS TECHNOLOGIES, INC.,

     **Defendants.**

---

### Order

Before the Court is plaintiff's Motion for Leave to Amend Complaint, doc. 59, defendant Verizon Communication Inc.'s (Verizon) response in opposition, doc. 67, and plaintiff's reply, doc. 73. Plaintiff requests leave to file a proposed second amended complaint (PSAC) reasserting his claims with respect to the October Image.[1] *See generally* doc. 59. For the reasons discussed below, plaintiff's motion, *id.*, is granted.

---

[1] In its Order, doc. 45, the Court refers to the October Image as Image One; however, the parties' various filings, including the motion to amend, refer to this image as the October Image. As such, the Court adopts this designation solely for the purposes of this Order.

**Background**[2]

On February 28, 2025, this Court granted defendants'[3] motions to dismiss in part, dismissing the claims relating to the October Image CyberTip (Counts II, IV, VI, and VIII). Doc. 45 at 28. The Court concluded that defendants were immune from civil liability for their disclosure of the October Image. *See generally* doc. 45. In reaching this conclusion, the Court examined whether the Protect Our Children Act of 2008, as amended (Protect Act),[4] imposes a duty on defendants to report violations involving child sexual abuse material (CSAM) to the National Center for Missing and Exploited Children (NCMEC) and whether such disclosures are protected from civil liability. *See generally id.*

The Court began its analysis with section 2258A of the Protect Act, which requires that a provider "shall, as soon as reasonably possible after obtaining *actual knowledge* of any facts or circumstances . . . from which there is an *apparent violation* of . . .*" CSAM laws, generate a CyberTip to NCMEC. §§ 2258A(1)(A)(i), (B)(i)-(ii), (2)(A) (emphasis added). The Court concluded that providers are required to make CyberTips when they have "'actual knowledge of . . . an apparent violation' of federal CSAM laws." *See* doc. 45 at 12.

---

[2] Given the well-established procedural history in the record, the Court begins its review with the Order granting in part and denying in part defendants' motions to dismiss, which in turn prompted plaintiff to seek leave to amend.

[3] Defendants simultaneously filed motions to dismiss, docs. 27, 28, which the Court granted in part and denied in part. Order, doc. 45.

[4] 18 U.S.C. § 2258A, et seq.

2

Under section 2258B, providers are granted immunity from civil claims "[for disclosures] arising from the performance of the reporting or preservation responsibilities . . . under . . . section [2258B], section 2258A, or section 2258C . . . ." This section further provides that immunity "shall not apply to a claim or charge if the provider . . . engaged in intentional misconduct; or acted, or failed to act-with actual malice; with reckless disregard to a substantial risk causing physical injury without legal justification; or for a purpose unrelated to the performance of any responsibility or function under sections 2258A, 2258C, 2702, or 2703." § 2558B(b)(1)-(2).

The Court concluded that section 2258B immunity extends only to CyberTips "the provider is required to make—[not] optional reports . . . ." Doc. 45 at 12 (citing § 2258B(a)). As discussed above, a provider is required to make a CyberTip when it possesses "'actual knowledge of . . . an apparent violation' of federal CSAM laws." *Id.* Thus, the Court held that 2258B immunity applies only to disclosures where providers have "actual knowledge" of an "apparent violation" of CSAM laws. *Id.*

To determine what constitutes an "apparent violation," the Court examined the plain meaning of the term "apparent." *Id.* at 12-14. Relying on Merriam-Webster's Dictionary, "apparent" can be defined narrowly as "openly or manifestly so . . ." or broadly as "seeming to be so yet perhaps not actually so." *Id.* at 13. Ultimately, the Court declined to adopt either definition, concluding that the "resolution of the [m]otions does not depend on which meaning is applied." *Id.* at 14-15.

The Court then addressed the October Image, which plaintiff alleged that NCMEC hashed as "apparent CSAM." *Id.* at 15 (citing doc. 39 ¶ 81). The Court noted

3

the parties agreement that "apparent CSAM" is a term of art that applies "to content when it is 'certain, clear, or overtly clear' that a child is depicted . . . ." *Id.* (citing docs. 28 at 5, 7; 40 at 2). Applying even the narrow definition of apparent, the Court found that a hash-match of "apparent CSAM" constituted a "circumstance in which there is an apparent violation of CSAM laws . . . ." *Id.* at 16 (internal quotation marks omitted). Accordingly, defendants were required to issue a CyberTip for the October Image and section 2258B immunity "shield[ed] them from legal claims . . . ." *Id.* at 17.

Conversely, it was alleged that the January Image[5] was hashed as "unconfirmed" CSAM by NCMEC. *Id.* at 15 (citing doc. 39 ¶ 48). Drawing all reasonable inferences in plaintiff's favor, the Court determined that a hash-match of "unconfirmed" CSAM, "revealed only that, at some unidentified point in the past, an unidentified person at NCMEC, using unknown methods, flagged [the January Image] as an image that could not be determined to be CSAM . . . ." *Id.* at 18 (citing doc. 39 ¶ 48). Therefore, a hash-match of "unconfirmed" CSAM, by itself, was insufficient to conclude that a likely violation of CSAM laws occurred. *Id.* The Court concluded disclosure of the January Image was voluntary and not protected under section 2258B immunity. *Id.* at 19. Accordingly, defendants' motion with respect to the January Image (Counts I, III, V, and VII) was denied. *Id.*

---

[5] The Court in its Order, doc. 45, refers to the January Image as "Image Two;" however, the parties' briefing and motions refer to this image as the January Image. As such the Court adopts this designation for the purposes of this Order.

On March 28, 2025, Verizon filed a motion requesting reconsideration of the dismissal order. Doc. 50. Verizon argued the Court erroneously assumed facts not pled in the amended complaint when finding that the January Image CyberTip was not shielded by section 2258B immunity. *See generally id.* The parties also proceeded with initial discovery. *See* docs. 54, 57. Several months later—and one day before the expiration of the deadline to amend pleadings, as set forth in the Court's Case Management and Scheduling Order (see doc. 49)—plaintiff filed his motion for leave to amend. Doc. 59.[6]

On July 18, 2025, before Verizon's response to plaintiff's motion for leave to amend was due, the parties moved to stay the case pending the outcome of settlement negotiations. Doc. 60. The Court granted the stay, doc. 61, and the parties were directed to file a status update on September 2, 2025. On August 18, 2025, the parties notified the Court that settlement negotiations were unsuccessful and that they intended to proceed with litigation, doc. 62; the Court lifted the stay, doc. 65. Verizon then filed its response in opposition to the motion for leave to amend, along with a motion to stay discovery pending resolution of its motion for reconsideration, both of which plaintiff opposed. Docs. 67, 71, 74. Plaintiff also filed a reply in support of its motion to amend. Doc. 73. The motion to amend, being fully briefed, is now ripe for the Court's consideration.

---

[6] On August 20, 2025, the Court issued an Amended Case Management and Scheduling Order, doc. 66, where the deadline to amend the pleadings was extended to August 29, 2025.

### Authority

At this stage of the proceedings, plaintiff may amend only with the Court's leave. *See* Fed. R. Civ. P. 15(a)(2). A court should freely grant leave to amend "when justice so requires." *Id.* Although courts enjoy broad discretion to allow amendments to the pleadings, *Pinnacle Advert. & Mktg. Grp. Inc. v. Pinnacle Advert. & Mktg. Grp., LLC*, 7 F.4th 989, 1000 (11th Cir. 2021), "a motion to amend may be denied on numerous grounds . . . [including] futility of the amendment." *Maynard v. Bd. of Regents of the Div. of Univs. of the Fla. Dep't of Educ. ex rel. Univ. of S. Fla.*, 342 F.3d 1281, 1287 (11th Cir. 2003) (internal quotation marks and citations omitted).[7]

"A proposed amendment may be denied for futility when the complaint as amended would still be properly dismissed." *Coventry First, LLC v. McCarty*, 605 F.3d 865, 870 (11th Cir. 2010) (per curiam) (internal quotation marks and citations omitted); *see also Hall v. United Ins. Co. of Am.*, 367 F.3d 1255, 1263 (11th Cir. 2004) (affirming denial of a motion for leave to amend "because the three new claims asserted, like those in [plaintiff's] first amended complaint, would have been subject to dismissal as a matter of law."); *St. Charles Foods, Inc. v. Am.'s Favorite Chicken Co.*, 198 F.3d 815, 822-23 (11th Cir. 1999) ("When a district court denies the plaintiff leave to

---

[7] A motion for leave to amend may be denied when: "(1) where there has been undue delay, bad faith, dilatory motive, or repeated failure to cure deficiencies by amendments previously allowed; (2) where allowing amendment would cause undue prejudice to the opposing party; or (3) where amendment would be futile." *Foman v. Davis*, 371 U.S. 178, 182 (1962). In its response in opposition, Verizon argues only that the PSAC is futile with respect to the October Image. *See* doc. 67. Accordingly, the Court limits its analysis to the futility of the PSAC.

amend a complaint due to futility, the court is making the legal conclusion that the complaint, as amended, would necessarily fail.").

The futility threshold is akin to that for a motion to dismiss; thus, if the amended complaint could not survive Rule 12(b)(6) scrutiny, then the amendment is futile and leave to amend is properly denied. *See, e.g.*, *Burger King Corp. v. Weaver*, 169 F.3d 1310, 1320 (11th Cir. 1999) (denial of leave to amend justified by futility when the "complaint as amended is still subject to dismissal" (internal quotation marks and citations omitted)); *Florida Power & Light Co. v. Allis Chalmers Corp.*, 85 F.3d 1514, 1520 (11th Cir. 1996) (amendment is futile if the cause of action asserted therein could not withstand motion to dismiss); *Amick v. BM & KM, Inc.,* 275 F. Supp. 2d 1378, 1381 (N.D. Ga.2003) ("In the Eleventh Circuit, a proposed amendment is futile when the allegations of the proffered complaint would be unable to withstand a motion to dismiss.").[8]

---

[8] Verizon argues that, when evaluating the futility of the PSAC, the Court is permitted to consider evidence outside of the pleadings, "adduced to date," to evaluate whether the proposed amended complaint would be "immediately subject to a successful summary judgment motion." *See* doc. 67 at 9-10. In support, Verizon cites *Cockrell v. Sparks*, 510 F.3d 1307, 1310 (11th Cir. 2007). But its reliance on this case is misplaced. In *Cockrell*, the Court found the complaint at issue, even as amended, would be subject to a motion for summary judgment that was pending before the Court. *Cockrell,* 510 F.3d at 1310. To date, Verizon has not moved for summary judgment. Moreover, discovery is on-going with a deadline of January 30, 2026. Amended Case Management and Scheduling Order, doc. 66.

## Analysis

Plaintiff argues leave should be granted because the PSAC alleges new facts indicating that defendants did not have "actual knowledge" of an apparent violation of CSAM laws with respect to the October Image CyberTip. *See generally* doc. 59.

Verizon argues leave should be denied because the PSAC is futile.[9] *See generally* doc. 67. It contends section 2258B immunity broadly applies to the disclosure of the October Image—an argument advanced in their motion for reconsideration of the dismissal order—because it had "actual knowledge" of an "apparent violation" of CSAM laws. *See generally id.* at 12-14. Verizon also argues the Protect Act does not impose a duty to investigate every hash-match. *Id.* Therefore, the argument goes, it is irrelevant what organization a hash-match originates from because the Protect Act contemplates only that "'[a]ny provider that receives elements relating to any CyberTipline report from NCMEC . . . may use such information only for the purposes described in this section, *provided that such use shall not relieve the provider from reporting under section 2258A*.'" *Id.* at 15 (emphasis in original) (citing 18 U.S.C. § 2258C (b)). Verizon's remaining arguments relate to its disclosure of the January Image and why

---

[9] Verizon also argues that certain allegations in the PSAC are made in bad faith further warranting denial of the motion to amend. See doc. 67 at 16-20. Notably, Verizon limits its "bad faith" argument to allegations regarding the January Image CyberTip. *Id.* As noted *supra*, because Verizon argues that the remainder of the PSAC is futile, the Court limits its analysis to the futility of the PSAC with respect to the allegations concerning the October Image.

the Court should reconsider its prior Order denying its motion to dismiss. *See generally* doc. 67.

While the PSAC includes a substantial number of new factual allegations, the Court considers only those relevant to the question of futility as it pertains to the October Image claims.[10] In the PSAC, plaintiff now alleges that it was PhotoDNA technology which flagged the October Image as a "near-match" to an altered version of the image depicting a minor's face. PSAC. ¶¶ 150-52. Plaintiff further asserts the October Image was never included on a CSAM hash list or database and was not classified as CSAM by any non-profit organization. *Id.* ¶ 148. According to plaintiff, PhotoDNA technology differs from traditional hash matching because it "searches [] hash database[s] for 'near matches[,]'" which results in content that is similar to but not actually CSAM being tagged by providers. *Id.* ¶¶ 43-45, 150.

Plaintiff also alleges there was no human review of the October Image by anyone acting on behalf of Verizon prior to the CyberTip. *Id.* ¶ 164. Plaintiff contends that "under the totality of the circumstances . . ." defendants knew or had reason to know that the allegations and material representations in the October Image CyberTip were false. *Id.* ¶ 174. Although neither the October Image nor the altered image were included on NCMEC's hash list, plaintiff alleges that defendants made a report to

---

[10] The PSAC also sets forth new factual allegations concerning defendants' reporting and scanning processes related to the October Image. *See generally* PSAC. Plaintiff represents that these allegations were discovered after the Court's dismissal of the October Image claims. Docs. 59 at 4-6; 73 at 3 n.2.

NCMEC for "possession, manufactur[ing,] and distribution of child pornography by [p]laintiff." *Id.* ¶¶ 153, 155.

Like when evaluating a motion to dismiss, the Court must draw all reasonable inferences in favor of the plaintiff when assessing the futility of amending his complaint. In doing so, the Court finds that amending the complaint as proposed is not futile and leave to amend should be granted. Central to plaintiff's new allegations is that the October Image was not tagged as a "hash-match" to CSAM but instead identified by PhotoDNA technology as a "near match" to an altered image. Verizon, rather than explaining how a "near match" using PhotoDNA technology provides identical information to a hash-match of "confirmed CSAM," relies heavily on its argument that disclosures of both the January and October Images are immune from civil liability—arguments it similarly raised in its motion for reconsideration—considerations that are not relevant to the Court's analysis of futility. *See* doc. 67; *see also* doc. 50.

As discussed above, the Court previously concluded that a hash-match of "unconfirmed" CSAM, with respect to the January Image, was insufficient to conclude there is a likely violation of CSAM laws. Doc. 45 at 19. While such a hash-match could have alerted defendants to a possible violation, the Court found that defendants' alleged knowledge of plaintiff being in possession of an image tagged as "unconfirmed" CSAM, by itself, did not constitute actual knowledge of an "apparent violation." *Id.* at 18-19.

With the benefit of what he claims is new information gleaned during discovery, plaintiff now seeks to plead defendants lacked "actual knowledge" of an "apparent violation" with respect to both the October and January Images. Plaintiff alleges the October Image was not tagged by a hash-match but instead tagged as a "near-match" by PhotoDNA technology to an altered image that was not contained on NCMEC's hash-list. Moreover, plaintiff now alleges the original October Image was also not included on any database or hash list. Based on these new allegations, the Court cannot conclude that amending the complaint would be futile because it is unresolved whether a PhotoDNA "near match" triggers the reporting responsibilities under Section 2258A. Drawing all reasonable inferences in favor of plaintiff, which the Court is required to do when analyzing whether amendment should be permitted, it appears that the PSAC plausibly alleges that a "near match" by PhotoDNA technology may not constitute "actual knowledge" of an apparent violation of CSAM laws.

While the Court finds that permitting the amendment is procedurally proper, this does not constitute a finding on the merits of plaintiff's claims. Rather, the Court concludes that plaintiff has met the low threshold of alleging a plausible claim for relief, thereby warranting leave to amend. *See Quality Foods de Centro Am., S.A. v. Latin Am. Agribusiness Dev. Corp., S.A.*, 711 F.2d 989, 995 (11th Cir. 1983) ([T]he threshold of sufficiency that a complaint must meet to survive a motion to dismiss for failure to state a claim is exceedingly low.").

It is **ordered**:

11

1.  Plaintiff's Motion for Leave to Amend Complaint, doc. 59, is **granted**; plaintiff shall file a verified Second Amended Complaint, on or before **November 20, 2025**. Defendants shall respond to the second amended complaint within the time frame permitted by the Federal Rules of Civil Procedure.

2.  Defendant Verizon Communications Inc.'s Motion for Reconsideration of Order Denying Rule 12(b)(6) Motions to Dismiss, doc. 50, Motion to Stay Discovery, doc. 71, and Plaintiff's Motion for Partial Summary Judgment, doc. 84, are **denied as moot**.[11]

**Ordered** in Jacksonville, Florida, on November 14, 2025.



/s/ Laura Lothman Lambert
*United States Magistrate Judge*

c:
Jeffrey Scott Nooney, Jr., Esquire
Michael Keith Roberts, II, Esquire
Nury Agudo Siekkinen, Esquire
Marc J. Zwillinger, Esquire
Andrew H. Reis, Esquire
Katherine Vanessa Ramos-Bigley, Esquire
David Scott Brecher, Esquire
Matthew Joseph Carson, Esquire

---

[11] In anticipation of plaintiff's filing of an amended pleading, the motion for reconsideration, as well as the motion for partial summary judgment, have been found moot. Because Verizon's motion for a stay of discovery was premised on the resolution of its motion for reconsideration, it is similarly denied as moot.