UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

WILLIAM LEE LAWSHE,                  Jacksonville, Florida
an individual,

                                     Case No. 3:24-cv-00137-MMH-LLL
        Plaintiff,

                                     November 17, 2025
v.

                                     2:10 p.m. - 3:43 p.m.
VERIZON COMMUNICATIONS, INC.,
a Delaware corporation, and
SYNCHRONOSS TECHNOLOGIES, INC.,
a Delaware corporation,

        Defendants.
                                     (Digitally Recorded)
_____


**DIGITALLY RECORDED MOTION HEARING/STATUS CONFERENCE**

BEFORE THE HONORABLE LAURA LOTHMAN LAMBERT
UNITED STATES MAGISTRATE JUDGE


OFFICIAL COURT REPORTER:

Katharine M. Healey, RPR, RMR, CRR, FPR-C
PO Box 56814
Jacksonville, FL 32241
(904) 301-6843
katharinehealey@bellsouth.net


(Proceedings recorded by electronic sound recording;
transcript produced by computer.)

A P P E A R A N C E S

COUNSEL FOR PLAINTIFF:

**MICHAEL K. ROBERTS, II, ESQUIRE**
Law Offices of Nooney & Roberts
1680 Emerson Street
Jacksonville, FL 322007
(904) 398-1992
mroberts@nooneyandroberts.com


COUNSEL FOR DEFENDANT VERIZON COMMUNICATIONS, INC.:

**NURY A. SIEKKINEN, ESQUIRE**
ZwillGen, PLLC
1900 M Street NW, Suite 250
Washington, DC 20036
(202) 296-3585
nury@zwillgen.com


COUNSEL FOR DEFENDANT SYNCHRONOSS TECHNOLOGIES, INC.:

**ANDREW H. REISS, ESQUIRE**
Bond, Schoeneck & King
4001 Tamiami Trail North, Suite 105
Naples, FL 34103
(239) 261-9300
areiss@bsk.com


COUNSEL FOR MOVANT/NON-PARTY ST. JOHNS COUNTY SHERIFF'S OFFICE:

**MATTHEW CARSON, ESQUIRE**
Sniffen & Spellman, PA
123 North Monroe Street
Tallahassee, FL 32301
(850) 205-1996
mcarson@sniffenlaw.com

P R O C E E D I N G S

November 17, 2025                                    2:10 p.m.

                          -   -   -

COURT SECURITY OFFICER:  The United States District Court in and for the Middle District of Florida is now in session.  The Honorable Laura Lothman Lambert is presiding.

Please be seated.

THE COURT:  Good afternoon.  We're here in the case of United -- excuse me, of *Lawshe vs. Verizon Communications, Inc. et al.*, Case No. 3:24-cv-137-MMH-LLL.

We are here today on Plaintiff's Motion to Quash Subpoena, doc 75; Non-Party St. Johns County Sheriff's Office Motion for Protective Order; and defendant Verizon Communications' response and opposition.

May I please have all the parties for the case state their appearance for the record, starting with the plaintiff.

MR. ROBERTS:  Michael Roberts for the plaintiff.

MS. SIEKKINEN:  Nury Siekkinen for defendant Verizon Communications, Inc.

THE COURT:  Could you please pronounce your name one more time, please.

MS. SIEKKINEN:  Yes, Your Honor.  Nury Siekkinen.

THE COURT:  See-eck- --

MS. SIEKKINEN:  See-eck-kuh-nen, yes.

THE COURT:  Thank you.

MS. SIEKKINEN:  Thank you.

THE COURT:  And you're here for Verizon?

MS. SIEKKINEN:  Yes, Your Honor.

THE COURT:  Okay.

MR. CARSON:  Matt Carson, Your Honor, on behalf of St. Johns County Sheriff's Office, non-party.

MR. REISS:  And Andrew Reiss on behalf of the defendant Synchronoss Technologies, Inc.

THE COURT:  Okay.  Okay.  So we are here -- I'm going to explain to you what I see as having been filed and where we are and then we'll discuss from there.  I think there's issues throughout this whole thing that are problematic and that need to be discussed, which is why I asked for a hearing on this today.

As an initial matter, it looks -- well, obviously Verizon served on St. Johns County a third-party subpoena with two requests, and I'm just going to read those quickly.  I have it at 75-1, page 3, which I think is Mr. Roberts's filing.

"Document Request No. 1:  Documents and communications concerning the forensic investigation of Lawshe's digital devices, including mobile phones, laptops, computers, tablets, and other similar device, and/or digital accounts, including email, cloud storage, social media, and other web-based platforms, in connection with the criminal action."

And then, "Document Request No. 2:  Documents sufficient to show the full and complete extraction of data from Lawshe's digital devices and/or accounts performed in connection with the criminal action, including but not limited to all files and data extracted from any of Lawshe's digital devices, including mobile phones, laptops, computers, computers, tablets, and other similar devices, and/or from Lawshe's digital accounts, including email, cloud storage, social media, and other web-based platforms."

Okay.  So Mr. Roberts, as an initial matter, I reviewed your motion as saying you don't have an issue with Request No. 1; you do have an issue with Request No. 2.  Is that correct?

MR. ROBERTS:  Correct, Your Honor.

THE COURT:  Okay.  So technically this isn't a motion to quash, it's a motion for a protective order, right?  Because you're not asking for the entire subpoena to be quashed.  You're saying, "I'm okay with part of it, I'm just not okay with all of it."

MR. ROBERTS:  Okay, Your Honor.  Yes.  I'm sorry.

THE COURT:  I mean, that matters.

MR. ROBERTS:  I'm sorry.  Yeah.

THE COURT:  No, that matters because it goes to standing; it goes to whether or not you can object.  There's a lot of issues that come up, and so I need to understand

precisely what it is you're asking.

MR. ROBERTS:  Yes, Your Honor.  So we understand Document Request No. 1 to be a request for, like, the forensic report, which has already been produced.  And so we don't have an objection to that.

THE COURT:  Okay.

MR. ROBERTS:  It's Request No. 2, which is the information contained on the phone itself.  All --

THE COURT:  You don't have an objection to all of it from what I read in your filings.

MR. ROBERTS:  Well --

THE COURT:  You have an objection to some of it.

MR. ROBERTS:  Well, Your Honor, what we -- in the meet-and-confer, the defendant agreed to narrow -- we object to the request as written, period.

In our meet-and-confer, the defendant agreed to limit the scope of the subpoena.  And so what I tried to convey in my motion is that once they agreed to narrow the scope --

THE COURT:  Yes.

MR. ROBERTS:  -- we still had a disagreement about the things that they wish to seek.

THE COURT:  Which I understand.  But again, for clarity, this matters in discovery.  I have a document in front of me that says that there is some agreement on the narrowed scope, but you still object to much of the information.  You

object to the data and documents requested in items 1, 2, 3, 4, 6, 10, and 11 of your list, correct?

MR. ROBERTS: That list was provided by the -- that was the list that the defendant agreed to narrow the scope to, Your Honor.

THE COURT: Okay. So I need to understand where we are and what we're working off of before I can even get into the weeds of all of this.

You-all are having a discovery dispute, okay. There has been a subpoena that has been served on a non-party under Rule 45. That non-party is not objecting to the subpoena in and of itself, it's requesting a protective order, okay.

The plaintiff is the one objecting to -- from where I see now, you are objecting to certain parts of the narrowed-down request. And so that is what I am trying to navigate.

I mean, just so I can telegraph where I am here, I think some of this stuff is relevant. I am concerned that some of this stuff is illegal and is CSAM. And I am -- there is zero chance that I am going to order someone to produce CSAM unless there is a specific case law that tells me "you have to order this" and there are provisions in place that tell me exactly how it needs to happen.

I am not going to get into a discussion -- I am not going to order St. Johns County to produce what it believes is

child sex abuse material in this litigation.  Nobody has given me any law that would tell me why that is something that I have to do.

So what I'm trying to do at this point is get to the crux of what the objections are.

This case has been hanging around for a while. Obviously I entered an order on Friday that is -- implicates where the case currently stands.  But based on what I have before me, there is -- there's a very broad request from Verizon to St. Johns County.  Now there's a representation that that request has been narrowed.

So if I'm working off that narrowed request -- I also have you listing 11 things, and I have Verizon listing five buckets.  So I don't even know, necessarily, the world in which I am trying to rule on what is or is not discoverable and why.

So the way I look at this is I have your motion for a protective order, in essence, Mr. Roberts.  I have Verizon's response and opposition.  I have Mr. Carson's request essentially, from where I sit, that's saying, "This is too unduly burdensome on St. Johns County.  We don't" -- "we want to produce the entire file," which would presumably include CSAM, and Verizon saying, "That's what we want," and me saying, "Where is the basis in the law for me to do that?"  So I don't know the best way to move forward here because everybody's on different pages, communicating different things.

This is obviously a very sensitive topic and sensitive content, and I want to make sure I'm making the right rulings, but I don't even know if we're all on the same page to start.

MR. ROBERTS:  Your Honor, may I?

THE COURT:  Yes.

MR. ROBERTS:  There is no child sexual abuse material on this phone.

THE COURT:  Well, all I know is what I read in Mr. Carson's response that says that he has material, that his people believe there's child sex -- that they believe that it is sex abuse material.

MR. ROBERTS:  Your Honor, that --

THE COURT:  I'll hear from him.  I don't need you to make his argument.

MR. ROBERTS:  So in the related case, Your Honor, we had sued St. Johns County.  And the images that were charged with child sexual abuse material, the plaintiff provided a document, affidavit, age-verification information, from the website where two of the three charged images were from.  And that also included age information on the third.

Those charges were immediately dropped.

There is no evidence, Your Honor, that there's anything else on this phone that represents child sexual abuse material.

As it pertains to Verizon, Your Honor, there were two images that were flagged --

THE COURT:  Okay.

MR. ROBERTS:  Okay.  Sorry.

THE COURT:  Let me -- let me direct you to the response that was -- or the motion for the protective order that was filed by Mr. Carson.

MR. ROBERTS:  I have it right here, Your Honor.

THE COURT:  You have it?  Great.  Okay.  In that motion Mr. Carson states, pretty unequivocally --

MR. ROBERTS:  Right.

THE COURT:  -- that there is -- there are thousands of images, many of which that St. Johns County Sheriff's Office believe are CSAM and that contain people of indeterminate age.

Do you see that in there?

MR. ROBERTS:  I do, Your Honor.

THE COURT:  Okay.  So I don't understand what you're saying -- there is no CSAM -- if Mr. Carson is telling me that law enforcement believes it to be CSAM.

MR. ROBERTS:  Well, I suppose that goes to the heart of the related case.  But I do not believe Mr. Carson has any basis to say that there is child sexual abuse material on this phone.

THE COURT:  Okay.  Well, I look at the criminal statutes, right.  When I start at square one and I have

somebody telling me, "I want to release all this information but there could be CSAM, so, Judge, you figure out a way to release it," the first thing I do is I go to the criminal statutes, the state of Florida statute and the federal statute, which would have carveouts for when it is legal to possess child sex abuse material.

I see no carveout in either one of those statutes, statute -- Chapter 827.071 or Chapter -- hold on one second -- or 18, United States Code, 2252, that would cre- -- that would relate to civil litigation.

MR. ROBERTS: There is none, Your Honor.

THE COURT: Correct.

MR. ROBERTS: But the --

THE COURT: But why are you arguing for the release when you don't want it to be released? I'm confused.

MR. ROBERTS: I'm not arguing for the release, Your Honor.

THE COURT: Okay.

MR. ROBERTS: I'm saying, but Mr. Carson produced it to me in the civil discovery. I --

THE COURT: Again, that's not my case. That's not what I'm doing here.

MR. ROBERTS: I mean, Your Honor, the only evidence is that a Detective Preston, who's a defendant, who has zero training in determining the age of individuals, eyeballed this

photograph and said, "I think that that's someone who's under 18."

THE COURT:  But we're talking about thousands of images, allegedly.

MR. ROBERTS:  Well, Your Honor, I --

THE COURT:  I mean, we're not talking about the heart of the case --

MR. ROBERTS:  And the heart of the case --

THE COURT:  -- we're talking about the issue that is before me today --

MR. ROBERTS:  And if I can, Your Honor.

THE COURT:  -- which is whether or not and in what capacity St. Johns County should produce evidence from your client's phone based on the criminal investigation.

MR. ROBERTS:  I do not believe that they should.

THE COURT:  Okay.  But your filing tells me -- I hear what you're saying, that you don't believe they should.

MR. ROBERTS:  Correct.

THE COURT:  Okay.  Because you believe it's not relevant.  Arguably, I -- let's just say for the sake of argument I disagree with you.

MR. ROBERTS:  Okay.

THE COURT:  I think there are some things based on Verizon's response that are relevant.  And I can say that pretty confidently based on everything I've read.

Wait.

So my next question to you would be:  Based on what you filed, which said, "We have agreed to narrow things down and this is what I object to and I don't object to" -- so presumably you have agreed with the other side to narrow down the request and you believe some are okay and some are not okay.

MR. ROBERTS:  Yes.

THE COURT:  I am okay -- my next step would be looking at the ones that you don't think are okay.  So that's what I want to talk about, the ones that you don't think are okay.

MR. ROBERTS:  Yes, Your Honor.

THE COURT:  And the ones that you don't think are okay I see as 1, 2, 3, 4, 6, 10, and 11, based on your filing, which is at page 2 of your document.  I think you say, "Plaintiff objects to the data/documents requested in 1, 2, 3, 4, 6, 10, and 11," okay.

But my fir- -- my next question is this is a list that you have provided to me that you say defendant has narrowed the scope of the request to.

So are we in the same universe and all on the same page if I make rulings based on 1 through 11?

MR. ROBERTS:  Your Honor, this was the list that I got from the defendant.  I'll have to look to them to see if

they agree that it is still the list that we agreed to.

THE COURT:  Okay.

MS. SIEKKINEN:  Yes, Your Honor.  And to the extent that you found Verizon's filing in summary of that to be confusing, we were basically summarizing the --

THE COURT:  Just stand up when you speak.  Thank you.

MS. SIEKKINEN:  Sorry.

THE COURT:  Local rules.

MS. SIEKKINEN:  We're basically summarizing the remainder of the list into those buckets --

THE COURT:  Okay.

MS. SIEKKINEN:  -- right.  But yes, that list is what we want, right.  And to be clear, when we sent that list, that was in the context specifically of the intra-party discovery dispute concerning, you know, we -- as you -- I'm sure you read, we requested the image of the device directly from plaintiff, and that's why we're here at all, but. . .

THE COURT:  Okay.  So -- thank you.

Okay.  So 1 through 11, we agree that's our universe, which is helpful to me.

MS. SIEKKINEN:  Uh-hmm.

THE COURT:  Okay.  So Mr. Roberts, you can start to talk to me about why you think that No. 1 -- why you object to the categories that you object to.

MR. ROBERTS:  Yes, Your Honor.

THE COURT:  Okay.

MR. ROBERTS:  So No. 1 is search terms used for web searches.  This is, from the plaintiff's perspective, an overbroad --

THE COURT:  Okay.

MR. ROBERTS:  -- request.  It requests documents for any and all search terms used for a two-year period by my client.  It's --

THE COURT:  I am inclined to agree with you, that it is overbroad.  I believe that there are search terms that would be relevant, but I think one that is requesting everything is overly broad.  So I am in agreement with you on No. 1.

MR. ROBERTS:  No. 2, Your Honor, is the same argument.  It's all websites visited, including subpages on those websites.  It's. . .

THE COURT:  Okay.  I do think there is an ability for defendant to articulate something that is more particularized than just "all websites visited over two years."  But I do believe, again, that I think there are some that would be relevant.  I don't believe the request in and of itself -- I think the request is overly broad, but I do not believe the request is in the world of not being relevant.

Okay.  No. 3.

MR. ROBERTS:  Images and videos depicting nudity, pornography, or sexual activity of any kind.

Your Honor, the issue -- the central issue, Your Honor, we're trying to get to in this case is a very narrow one in that there are two CyberTip reports --

THE COURT:  Right.

MR. ROBERTS:  -- that are at issue.  And attached to each CyberTip report is the single image.

THE COURT:  Correct.

MR. ROBERTS:  The plaintiff looks at relevance in terms of what would tend to prove or disprove a material fact or a defense in the case.

THE COURT:  Correct.

MR. ROBERTS:  Other pictures of other models in other time periods would not tend to prove or disprove whether or not a model -- let's say the January or the October -- was prepubescent or pubescent.  It wouldn't tend to prove anything about the images that are at issue in this case.

The defendant seems to suggest that what the plaintiff is alleging is something more akin to a generalized defamatory statement that he has viewed age-indeterminate images.  And that's simply not what the case is about.

THE COURT:  Right.  I know the case is about these two images, obviously.

MR. ROBERTS:  Right.

THE COURT:  I do see, though, that the Verizon -- you have pled defamation as a cause of action.

MR. ROBERTS:  Right.

THE COURT:  And Verizon wants to defend that cause of action.

MR. ROBERTS:  Right.

THE COURT:  And there are ways that you can defend defamation, as is articulated in their brief, that, to me, I believe some of these images would be relevant to.

MR. ROBERTS:  Well, so, Your Honor, what the defendant -- I -- Verizon -- the plaintiff believes that Verizon has done is conflate the issue of age-indeterminate with apparent child sexual abuse material.  And that is clearly not the law of this case.

And the Court, in its order denying and granting the original motion to dismiss, the (12)(b)(6), ruled that if all the defendant has is an image of an age-indeterminate model, that there has to be something more to trigger its requirement to report.

The plaintiff takes the defendant's argument as though if there is another image on Mr. Lawshe's phone that someone from Verizon determines to be age-indeterminate, that somehow that vindicates the report of the CyberTip images.

And the plaintiff -- and I -- I can -- I cannot think of a situation where if we're in trial and the plaintiff is trying to prove that these were not apparent child pornography, that the introduction of another image which a Verizon person

says is age-indeterminate would tend to prove or disprove any of the material facts of the case.

THE COURT:  But I think that's going to the reporting requirements issue and not necessarily to the defamation component.

MR. ROBERTS:  Well, the defamation component is the statements included in the CyberTips, which are that the plaintiff was in possession of a prepubescent -- an image of a prepubescent minor in January and a pubescent minor in October. Those statements are either true or not true.  Plaintiff certainly thinks that they are not true.

The introduction of another image that was not reported or -- just wouldn't tend to prove or disprove whether or not those are true statements contained within a CyberTip report.  And so, you know, that seems to be the issue.

And I tried to imagine -- we conferred -- is -- you know, there are -- unfortunately, or fortunately, any 18, 19, 20, 21-year-old is age-indeterminate.  I mean, there's no way to look at someone and say, "Oh, you're 19" or, "You're 17." There's just no way to look at someone and say that.

THE COURT:  I mean, I think in some ways that's really helpful to your opposing counsel --

MR. ROBERTS:  It may be, but --

THE COURT:  -- candidly.  I mean, you know, I think we can all agree about why we have the policy of prohibiting

the possession and the exchange of child sex abuse material, correct?

MR. ROBERTS: Absolutely.

THE COURT: Okay. And so what you're saying to me is that it's not clear whether or not it's child sex abuse material, right?

MR. ROBERTS: It's -- what I'm saying is there's no evidence to support that it is child sexual abuse material. I mean, simply -- you can go on any -- you can go onto Netflix or any sort -- and watch -- and look at someone and there could be nudity, or there could be nudity on a website. The simple fact that someone appears to be of an indeterminant age does not mean that it's child sexual abuse material.

THE COURT: Okay.

MR. ROBERTS: I mean -- and so if that's the way this case plays out and we're trying this case and we say, "Okay. This is the image in October; this is the image in January," and then Verizon's allowed to come up, say, "Well, look at this image from another time," is the plaintiff -- does the plaintiff then have to --

THE COURT: I think that's the -- that goes to -- and I'll let your colleague talk about this too. I guess my point is I see that there is a -- you know, there is a way to defend a defamation case under Florida law where you're saying that, look, this is -- that, kind of, truth, or that apparent, you

know, is a truth to defamation.

If I understand Verizon's argument correctly, they're saying, "Look, if there is this information on his device, that is true.  Therefore, that's a defense to defamation."

MR. ROBERTS:  So, Your Honor, the way Verizon -- and I'm sure you're familiar with this, is they've already scanned all of the images that we're talking about.  And the only two images that were flagged against a database are the two images that we're talking about.

Law enforcement has already gone through these images and charged the images that they believed were child sexual abuse material.

THE COURT:  Okay.

MR. ROBERTS:  So --

THE COURT:  Well -- and I'll talk to Mr. Carson about that specifically.

MR. ROBERTS:  And I -- Your Honor -- and so what I -- if -- and this is -- if there is another image on the phone that Verizon can prove is child sexual abuse material, or the defendant could prove -- but no one has ever suggested that that is the case.  And that could be the case for anyone who has ever looked at pornography.  There's no evidence or suggestion that there is anything else on his phone that is illicit or illegal.

And just the mere possibility that one of these

images -- let's say there's an image -- or what they suggest in their motion is, is that they have an expert look through it and then identify an image that they think is age-indeterminate.  Well, does the plaintiff then have to go find the website, research the website, bring a records custodian to show that that person is, in fact, an adult?  We have to prove that every image is not child sexual abuse material?

THE COURT:  No.  And again, that's not -- that's not what we're doing here.

Right now, what I am doing, to bring it back to the issue, is whether or not images and videos depicting nudity, pornography, or sexual activity of any kind is appropriate to be turned over by St. Johns County in this case.

MR. ROBERTS:  Right.

THE COURT:  And my concern is that based on Mr. Carson's representation, there are -- there are things that it's unclear whether or not it's CSAM.

And my -- I don't understand why you're fighting against me on this because you don't it released -- you don't want them to turn it over anyway --

MR. ROBERTS:  Well, it's just the truth, Your Honor.

THE COURT:  -- so why are you giving me so much pushback on this?

MR. ROBERTS:  I'm not giving Your Honor pushback.

THE COURT:  No, you are.  And I like -- like --

MR. ROBERTS:  It's just the truth.  I'm just trying to defend my client on the truth, that like I know --

THE COURT:  Okay.  Well, I need you to just --

MR. ROBERTS:  -- whatever the result is --

THE COURT:  I just need you to take a pause and realize that's not what we're doing here today.  What we're doing here today is trying to determine how and if St. Johns County needs to turn over the contents of the phone from the criminal -- from the criminal investigation.  That is what we're talking about here today.

And so I need to understand -- and again, maybe I'll -- we'll put a -- put a pause in No. 3 as to why -- arguably you don't want any images or videos depicting nudity, pornography, or other sexual activity of any kind turned over, correct?

MR. ROBERTS:  We just -- yes, Your Honor.  Yes.

THE COURT:  Okay.  And so -- and so I will take that as what you say there and then we'll go to 4, okay.

4, documents, including messages, emails, and notes, and information related to the age, or seeming age, of any individual depicted in the images or videos in Category 3.

What is your issue with that category?

MR. ROBERTS:  Your Honor, I apologize.  If there are any emails that document the age, that -- that's -- we would

not object to that.

THE COURT:  Okay.  Okay.  Number -- okay.  It appears to me that you don't have an issue with No. 5, right?  Because you said your client put that in issue in the lawsuit, correct?

MR. ROBERTS:  Correct.

THE COURT:  Okay.  Thank you.

Okay.  No. 6, documents, including messages, emails, and notes, and information related to pornography or pornographic material.  You have an objection with regard to that.  So what is your objection with regard to No. 6?

MR. ROBERTS:  It's the same as my objection to websites and the images, Your Honor, that -- that -- adult pornography, legal pornography, is protected.  It's private information.

THE COURT:  So legal pornography is protected and you -- and it -- your objections as to 1 and 2 were overly -- was being overly broad?

MR. ROBERTS:  Correct, Your Honor.  We would also, though -- on those, it -- other than the websites that are at issue in this case -- and there are two websites that are at issue in this case.  Other websites that the plaintiff went to, pornographic websites, don't bear on the issue about whether or not the statements were false or defamatory in this case.

THE COURT:  Okay.  All right.  And then No. 10, a list of all installed applications on the device.  What's the

objection?

MR. ROBERTS:  It's overly broad.  I -- all of the -- the apps that were just installed or applications on the device for a two-year period?  It's the same as with the websites and the search terms.  It's just overly broad.  It's not relevant to whether or not the defamatory statements were true or defamatory in nature.

THE COURT:  And then No. 11.

MR. ROBERTS:  Again, this is about any deleted data on his phone.  And, Your Honor, just for reference, this is prior to his arrest, because his phone was seized at the time of his arrest.

The information regarding -- I mean, we all delete things off of our phone.  Everything in our lives, you know, we can delete or not delete.  It's just not relevant to the issues in the case.

THE COURT:  Well, I mean, part of discovery, right -- the pur- -- I mean, again, you get to make relevancy arguments as to what comes in and what doesn't come in at trial.

MR. ROBERTS:  True.

THE COURT:  But the standard for discovery is going to be relevant and proportional.  And so I just need a little bit more from you --

MR. ROBERTS:  So, Your Honor --

THE COURT:  -- because I think that arguing that

something isn't relevant --

MR. ROBERTS:  Correct.

THE COURT:  -- is a trial objection.

MR. ROBERTS:  Sure.

THE COURT:  That's not a discovery objection.

MR. ROBERTS:  Sure.  It -- I think the way to put it, we think it's a fishing expedition, Your Honor.  I've litigated for 20 years; personal injury cases, defamation cases.  I've never had someone request the entire download of my client's phone.  And that's what's going -- that's what's happening today.

And it only exists because of the false allegations against my client.  I mean, people wouldn't -- don't carry around downloads of their phone.  I never -- but let's imagine that didn't happen.

THE COURT:  Well, I mean, that's right, the reason that they're requesting it is because it exists as a result of a criminal investigation.  In most civil cases you're not going to make that request because the entire download doesn't exist.

MR. ROBERTS:  Well, and -- but I -- all of my clients have phones.

THE COURT:  Sure.

MR. ROBERTS:  And I've never gotten a discovery request where a defendant said, "Download your entire phone and give it to us."

THE COURT:  Well, I think you would object as that being overly broad, and you would also object because there's not -- how would one do that?

MR. ROBERTS:  Well, I mean --

THE COURT:  It's the Cellebrite technology --

MR. ROBERTS:  Sure.

THE COURT:  -- that enables it to happen here.  It doesn't typically exist in civil cases.

MR. ROBERTS:  Well, yeah, I think that that's what -- I mean, that's the -- the gist of it, is you can hire an expert who could use Cellebrite and download that.

But yeah, I mean, that's -- and that's what we've done.  We've objected it to being overbroad.

THE COURT:  Sure.

MR. ROBERTS:  And we're trying to cut out the contours.

For example, I mean, the plaintiff has conceded that the images that Mr. Lawshe was charged with -- and I think we said this in our motion.  The images that he was charged with are clearly relevant and clearly discoverable to the other side.

THE COURT:  Well, and everybody has them.

MR. ROBERTS:  Everybody has those, Your Honor.

THE COURT:  Doesn't have them?

MR. ROBERTS:  Yeah.

MS. SIEKKINEN:  We do not.

THE COURT:  You don't have the images that he was -- the images that he was --

MS. SIEKKINEN:  (Inaudible) images.

THE COURT:  Oh, you just mean the two -- not -- oh, the two images.  We're talking about the charged images.

MS. SIEKKINEN:  Yeah, Your Honor, the -- I do not believe that we have -- have received -- and I can understand why that is the case -- the -- they're actually under seal in the related case now pursuant to the motion for summary judgment.  But the -- I believe there are three that were charged.  They are distinct from the two images that were connected to NCMEC CyberTip reports.

THE COURT:  Okay.

MR. ROBERTS:  And Your Honor, so we don't object to the production of those documents.

THE COURT:  Do you have those?

MR. ROBERTS:  I do have those, Your Honor.

THE COURT:  Have you produced those to Verizon?

MR. ROBERTS:  Well, I don't know that there was a request for those, but --

MS. SIEKKINEN:  Yeah, the entire criminal file.  I would assume that that would be within there.

MR. ROBERTS:  So, Your Honor, yes, we -- and I -- we have not argued about that.  We haven't had that conversation,

but yes, we would absolutely produce those documents.

I'm just trying to let the Court know that, like, we have attempted -- so yeah, we can certainly understand how the other charged images would be relevant, you know, in the defenses of the case. But other adult images of pornography -- my client has acknowledged that he possessed the images in question. St. Johns County has had the opportunity to look through all the images. We don't think that just any pornographic image would be -- we think that scope is just way too broad to be relevant in this case, for the scope of discovery in this case.

THE COURT: Okay. All right. So you've kind of talked me through your 11 -- your position on the 11 things. I'm going to hear from Verizon and then I'm going to talk to St. Johns County. Thank you.

Go ahead.

MS. SIEKKINEN: Thank you, Your Honor. Just a couple things to clarify. I just want to clarify that it's certainly not true that Verizon has scanned every image or video that was -- that's on the Cellebrite extraction. The Verizon cloud only scans images that are uploaded to the Verizon cloud. That is certainly not extensive and not -- not co-extensive with everything that could be screenshotted or downloaded or saved locally to the device. It's a much bigger universe, okay. And certainly -- so that the idea that we know everything that was

already there is just not correct, just to clarify.

And just another thing.  I believe Your Honor understands what our relevancy argument is with respect to the pornographic material, which I appreciate that you carefully considered our response.  But the context of the report is really important here, the context of the two reports.

Verizon is obligated to report apparent child pornography, right.  So the gist or the sting of both of those reports is that plaintiff was in possession of an image of child pornography.  So any of the images on the phone or on the extraction are apparent child pornography.  And the Court has deferred consideration of what "apparent" means, which that's fine.

If any of those images are apparent child pornography, then that's substantial truth, and that's enough to defend our defamation claim.  So certainly they are relevant.  And that's -- that's just important context for what those reports actually are.

But Your Honor, I'll -- I'll --

THE COURT:  So you're saying -- I just want to make sure I understand what you're saying.  So you're saying under the substantial truth doctrine or defense to a defamation claim is that if there are any images -- I'm trying to make sure I understand this.  If there are any images that the defendant -- or if the plaintiff possessed any images of CSAM, apparent

CSAM, on his phone, and those images were not the ones that came through Verizon or were reported by Verizon, they were any image at all, that that is a defense to essentially the defamation claim?  Is that what you're saying?

MS. SIEKKINEN:  Yes, Your Honor.  Yes, Your Honor. That would be the gist or the sting of the statement is essentially true; that he was, indeed, a person who was in possession of apparent child pornography or child sexual abuse material, CSAM.

THE COURT:  Okay.  I'm going to put a pin in that and I'm going to hear from Mr. Roberts on his response to that.

MR. ROBERTS:  We completely disagree, Your Honor. First of all, it is important what "apparent child pornography" means.  But I believe -- and this is part of our motion for partial summary judgment.  Verizon defines "apparent child pornography" as anything that may or may not be interpreted as a minor.  So one person could look at it and say, "Oh, that's an adult"; one person could say, "Oh, well, maybe she's under the age of 18."

There are very specific rules about what is criminal and not criminal.

THE COURT:  Sure.  But my question goes to the defamation defense.

MR. ROBERTS:  Right.  No, so --

THE COURT:  And so the substantial truth doctrine

says -- you know, your colleague says that if your client possessed any apparent CSAM -- whether or not it came through the Verizon cloud, whether or not Verizon reported it, if your client had any apparent CSAM in his possession, then under the substantial truth doctrine, that renders your defamation claim unsustainable.  You cannot recover on it.

MR. ROBERTS:  Your Honor --

THE COURT:  And to me, in the discovery world --

MR. ROBERTS:  Yeah.

THE COURT:  --  where you are relevant and proportional to a claim or a defense, I see that that could be something that is relevant to a defense of Verizon.

Now, I need to understand -- I don't see any -- you know, they cite law in their brief, obviously.  I don't have anything from you that tells me that that defense in that way is not applicable to them.

MR. ROBERTS:  Your Honor, the analogy that they use is the robber -- actually, the case that they cite, rather than the analogy, is a case where someone was about to be charged with a criminal indictment.  And a newspaper reported that they had been charged and it hadn't actually occurred yet, and then subsequent to the publication it occurred.

And what the Court said was, well, I mean, you know, the fact that it was defamatory in the criminal charge is substantially the sting of what you're saying.

This idea that other images in this case -- because very specific images -- image and very specific allegations contained in the CyberTip report --

THE COURT:  But let me ask you this.

MR. ROBERTS:  Yeah.

THE COURT:  Bigger picture.  Is your client possessing apparent CSAM a defense that they would be entitled to -- would him possessing apparent -- possessing apparent CSAM, whether or not it was the CSAM that Verizon reported, wouldn't that be relevant to a defense of substantial truth, an affirmative defense, a defense that they are asserting against the defamation claim?

MR. ROBERTS:  I don't think so, Your Honor.

THE COURT:  Why?

MR. ROBERTS:  Well, it gets to what apparent CSAM means, Your Honor.  But, I mean, I suppose if according to one definition my client had apparent child -- you know, according to NCMEC's definition of apparent child pornography --

THE COURT:  Yeah.

MR. ROBERTS:  -- yeah, I mean the case would never have been brought.  It would be an untenable case.  You wouldn't -- yes, I mean, if there was obviously prepubescent images on his phone --

THE COURT:  It doesn't have to be obvious, it just has to be apparent.

MR. ROBERTS:  Well, according to NCMEC, it's obvious prepubescent or a known minor.  That's the definition of "apparent" to NCMEC.

THE COURT:  For CSAM.

MR. ROBERTS:  Yeah.  And so, I mean, if that were the case, sure.  I mean, there'd be lots of other problems with the case if he did possess those sorts of things on his phone.  I don't --

THE COURT:  Your argument is that it is relevant, but there aren't any?

MR. ROBERTS:  Well --

THE COURT:  It would be relevant --

MR. ROBERTS:  -- yes, and --

THE COURT:  -- but there aren't any.

MR. ROBERTS:  And Verizon's argument is, "We don't really have any proof that there is, but there might be."

THE COURT:  Well, no, Verizon's argument is --

MR. ROBERTS:  And that's a fishing expedition.

THE COURT:  -- "We have this phone download that has thousands of pornographic images, presumably, of which St. Johns County is saying there's apparent CSAM on there" --

MR. ROBERTS:  Well --

THE COURT:  -- "and so that's why we're mak-" -- that's how I read their argument.

MR. ROBERTS:  What St. Johns County says is that they

are over -- and I think that the Cellebrite, it's maybe a decade of pictures, like it's a longer period of time than what the defendant has asked for --

THE COURT:  Okay.

MR. ROBERTS:  -- in terms of the time frame.

THE COURT:  Well, that's good.

MR. ROBERTS:  But the -- I've lost my train of thought.  But the -- gosh.  I can't remember what I was saying.

THE COURT:  So you were saying that the Cellebrite extraction, that -- you were saying that it was a very long period of time that they have images --

MR. ROBERTS:  So --

THE COURT:  -- but that the relevant time period of images --

MR. ROBERTS:  So what St. Johns County says, the way I interpret it, and I think the way Mr. Carson would say this, is there may be a lot of images of age-indeterminate pornography, which encapsulates large quantities of legal pornography, and --

THE COURT:  But it also could have illegal pornography.

MR. ROBERTS:  It's possible.

THE COURT:  Sure.

MR. ROBERTS:  I mean -- I mean, it's possible to not know -- you know, you go to a public website and something says

it's adult pornography.  I mean, sure, somebody could have lied about their age.  There are possibilities.

What they say is they believe -- the only testimony in their case is that there was a -- and I'm going to use --

THE COURT:  Well, I'm going to -- I'll let Mr. Carson talk about his basis --

MR. ROBERTS:  Right.

THE COURT:  -- rather than you, because it's really, again, very narrow to this -- I'm not talking about the other case, I'm just talking about with regard to this issue.

So what I heard you saying with regard to my question is that, yes, it would be relevant to a defense, but that there isn't any apparent CSAM on your client's phone; therefore, that would make it not relevant.

MR. ROBERTS:  Your Honor, I don't believe there's any reason to believe that there is actual or apparent child sexual abuse material on my client's phone.

THE COURT:  Okay.  I hear -- I've heard you --

MR. ROBERTS:  And so it's a fishing expedition, Your Honor.

THE COURT:  Mr. Roberts, I have heard you say that a million times, okay.

MR. ROBERTS:  Yeah, yeah.

THE COURT:  I get it.  No one is going to say after today's hearing that your client has CSAM.  Like that's not the

point of today.

MR. ROBERTS:  Okay.

THE COURT:  I just need you to like take a step back and realize I'm trying to resolve very specific issues today. I am not trying to get at the heart of whether or not your client possessed child sex abuse material, okay.

MR. ROBERTS:  Sure.

THE COURT:  What I'm trying to get at is what is relevant and proportional in the world of discovery, which is where we are.  And so there are certain things that I think are relevant and proportional.

With regard to the videos and images, Verizon says, "These are relevant and proportional because they go directly to the substantial truth defense that we are trying to assert in response to the defamation claim."

And so my question for you was, is that a valid -- is that a defense that is available to them --

MR. ROBERTS:  Right.

THE COURT:  -- in this context?

MR. ROBERTS:  And I don't think that -- if what Verizon is saying is, "Our expert's opinion that an image meets Verizon's definition of 'apparent child pornography'" --  I do not believe that that opinion or that testimony that would be elicited from this evidence would be relevant to a defense even of substantial truth.

The allegations in this case are the CyberTips in question.  That is what the discovery has been about.  That is what the case is about.  Are these true allegations or are they not true allegations?

What Verizon contemplates is having their expert look at these images and determine whether or not in that person's opinion they meet Verizon's definition --

THE COURT:  And this sounds like a *Daubert* motion to me.  This doesn't sound like necessarily a discovery objection necessarily.

MR. ROBERTS:  Other than it's just a fishing expedition, Your Honor.

THE COURT:  Okay.  But --

MR. ROBERTS:  There's just no reason to think --

THE COURT:  I hear you.  Well, and again, it may be, but it's not like Verizon has no evidence.  Verizon has St. Johns County saying, "We have this download."

Look, if she was asking your client for his phone and there was not this download that existed and you said, "We don't have anything" and she kept pressing the issue, that, to me, would be more of a fishing expedition because there's no evidence that it exists, and so then it's just trying to get information.

But we're in a bit of a different place.  And for better or for worse, we are in a world in which there is a

complete Cellebrite extraction of your client's phone.  Verizon is asking for information from that extraction because it's saying your client is alleging that they defamed him.  And they're trying to assert defenses to defamation.  And substantial truth is a defense to defamation.

And so, again, I'm not saying whether or not it's admissible.  I'm saying whether -- I'm trying to get to the point of whether or not it is even relevant and proportional in the discovery world.  This is like battle one of five.

MR. ROBERTS:  Right, Your Honor.  And we just don't think --

THE COURT:  And so -- and I get your point, but the bar here is going to be lower than it is the closer we get to trial.

MR. ROBERTS:  I just don't see, Your Honor, how any testimony about what another image -- how that shows that this image was substantially -- that that allegation that they made is substantially true as a defense.  Like it doesn't make -- the gist of what they said, that the January image was prepubescent or the October image was a pubescent minor, it doesn't mean that the gist of that allegation was true.

THE COURT:  Well, but I think --

MR. ROBERTS:  Not like the case that they cited.

THE COURT:  Okay.  And I think that is obviously -- we're way in the weeds on a very hyper-legal kind of argument

that I think will eventually be fleshed out more, I am convinced.

But the way that Verizon frames it is that substantial truth is a defense to defamation.  And the way that the law kind of, at least my initial look -- again, I have not done a super deep dive on this.  But the way that the law describes substantial truth here would be that if your client possessed other apparent CSAM that was not the subject to Verizon's tips but was still -- he was in possession of it, then the defamation claim -- that's a defense to the defamation claim.

MR. ROBERTS:  And Your Honor can think of a lot of situations where there have been defamation lawsuits and someone has said, "Hey, you said I did this on this day."

It's not a defense to say, "Oh, but on another occasion to another person you did something wrong."

And that's what Verizon is saying.  It has nothing to do with the allegations --

THE COURT:  You're framing the allegation very narrowly and Verizon is framing it more broadly, essentially.

MR. ROBERTS:  The --

THE COURT:  Arguably, right?  The defamation piece --

MR. ROBERTS:  Right.

THE COURT:  -- is that you -- your claim is that, "You defamed me when you said this image was child

pornography."

And I believe -- and I guess what Verizon is saying -- and again, I'll give your colleague a chance to answer -- is that, "You defamed me when you said I possessed child pornography."

MR. ROBERTS:  "When I possessed these images."

And in all of these defamation -- famous defamation cases, right, they're not defended on, "Oh, yeah, but you" -- "you did these other things and that was bad, and so now we can defend our defamatory comments by saying, 'yeah, maybe this isn't true, but look at the other instances when you did something wrong.'"

THE COURT:  But I think it all goes -- but again, it's all in the world of possession of apparent CSAM.  That is what we're talking about.  We're not talking about different conduct; we're talking about the same conduct.

You're arguing that it only applies to the images that are at issue, the October and January images.  And I think Verizon's arguing that it applies more broadly.  I believe that's what is happening here.

MR. ROBERTS:  I think that's correct.  And I think if this was a case where Verizon had a -- you know, a system where they were balancing these things and doing an investigation, maybe these things would be more relevant, right.  "Oh, we have a hit against a database.  Let's look at all of the images and

like let's do an investigation."  Then it may be more relevant to the accusation.

THE COURT:  But I think that's what they're asking for.  They're asking for the images so they can see more.

MR. ROBERTS:  But now it's after the fact, Your Honor.  I'm saying if they had done that before, then we can have an argument about, you know, what was relevant to an investigation or what would you have done if you found another image or things like that.

But in this case, the reporting is automated and it's based on a hash match.  And they're going to allege a human review.  But there's no contemplation of anything outside of the image and the hash match.  There's no contemplation on Verizon's part of any of the other factors that might go into this.  And so we don't think it's rel- --

THE COURT:  Well, and again, I don't want to get in the weeds on that right now because that's not what we're talking about.

MR. ROBERTS:  But we don't think that that's -- that other instances would be the substantial truth doctrine.  We're just -- Your Honor is correct, they are -- they are -- they are casting their allegations against my client as a general "you are a pedophile" or "you are" --

THE COURT:  Oh, that's not what I hear them doing.  I hear them saying, generally speaking, that "we" -- that "a

defense to our reporting the apparent CSAM" -- the images, right -- "is that he was in possession of other images that were apparent CSAM."

I don't think anybody, from what I've seen, is casting aspersions at this point on your client.

MR. ROBERTS:  Well --

THE COURT:  Again, I am only talking about the motions that have been filed and the way that we're litigating them.

And so this is obviously a very complicated issue, but, again, what I hear Verizon saying is they're not doing this because of who your client is, they're doing this because they have -- they believe they have a legal defense available to them that this information is relevant and proportional to. And that's why they are saying they should have it, I believe.

MR. ROBERTS:  I believe that's correct, Your Honor.

THE COURT:  Yeah.

MR. ROBERTS:  We just don't think that testimony --

THE COURT:  And you're --

MR. ROBERTS:  -- about another image has anything to do with the complaint and the allegations in this case.

THE COURT:  Okay.  And I hear you on that, so thank you.

Okay.  We talked about 1, 2, and 3.  So I think we're now on Ms. -- you're going to have to say your name again for

me.

MS. SIEKKINEN:  Siekkinen.  That's all right.

THE COURT:  Siekkinen.  Ms. Siekkinen.  I just don't want to say it incorrectly.

MS. SIEKKINEN:  No.  I appreciate that, Your Honor.

THE COURT:  So we've talked about 1 -- I mean, we've talked about 1, 2, I believe, and 3.  Well, maybe we haven't even gotten to the weeds on them; we were just talking very generally.  Where were we?

MS. SIEKKINEN:  Your Honor, I'm happy to continue to discuss --

THE COURT:  Yes.

MS. SIEKKINEN:  -- No. 3.

THE COURT:  Yes.

MS. SIEKKINEN:  All right.

THE COURT:  Please stand when you address the Court, though.

MS. SIEKKINEN:  Yeah, certainly, Your Honor.  As I said before, the context of the reports, right, of the two -- only two -- allegedly false statements that were made to NCMEC, the context of them are important.

The only -- the only time that Verizon has a duty to report is when there is apparent child pornography, right.  It's not just what -- what -- as you know, the definition of "apparent" was left open by the Court.  There's two different

interpretations of that.  And it doesn't need to be decided today.

But to the extent it's still a live issue, our definition of "apparent" is relevant and important to informing the issues of the case and the issues of what is proportional or not to Verizon's defense.  So certainly we take the view of "apparent" that it is -- it seems to be, but may or may not be, right, or is suspected CSAM.  Then the way we have described the -- No. 3 is certainly relevant and proportional in the instant case to our defense.

THE COURT:  Well, what do you say in response to the issue that this could create -- which Mr. Carson seems to intimate -- the actual production of child pornography?

MS. SIEKKINEN:  Yes, Your Honor.  I am very appreciative of that sensitivity, which is why Verizon has -- we research and we presented Your Honor with two cases where courts have grappled with this issue, or with potential ways to solve for this issue, including the needs of civil litigants.

And I'll direct you specifically to -- you know, we cited *MG Freesites* and the *Doe vs. Board of Education* cases. They grappled with how this can -- how we can investigate and even possibly produce this material in civil discovery.

And courts have not foreclosed the type of protocol that we have laid out, right, where a reputable third party, on site at SJSO, right, so that we're not -- we're not going far

afield from 3509, right, which requires it to be on site, and then they would -- PNG-Cyber would then review the Cellebrite extraction, okay.

They would -- to the -- they would export anything that is responsive from what Your Honor believes -- or sets out as part of the protective order.  Anything that is -- could be apparent CSAM would be redacted, right.  So that means genitals.  Anything that is -- that causes it to meet the definition of child pornography would then be redacted and so then it's no longer child pornography.

That could then be produced to Verizon without running afoul of the underlying laws.

My understanding is that the SJSO has no problem, from their perspective, with this protocol in place.

THE COURT:  But does that protocol -- the criminal statutes that allow for an exception -- well, first of all, I would want you to tell me the criminal statutes that you believe are at play here, and secondly, how this conduct would fit into an exception that would allow that information to be provided to the third party.

Essentially what you're doing is asking SJSO to provide to a third party potential child sex abuse material.

MS. SIEKKINEN:  What we are asking them to provide to a third party would be -- in terms of exporting, right, in terms of exporting --

THE COURT:  Yeah, giving it to them.

MS. SIEKKINEN:  -- to Verizon would be redacted, so it's no longer child pornography.

THE COURT:  Who's redacting it?

MS. SIEKKINEN:  PNG-Cyber.

THE COURT:  The third party?

MS. SIEKKINEN:  Okay.  Yes.

THE COURT:  So how do I get to a point where St. Johns is able to give this information a third party?  Where is the legal basis for that for me?

MS. SIEKKINEN:  Right.  From, 18, U.S.C., 3509(m).

THE COURT:  Okay.  And read it to me, please.

MS. SIEKKINEN:  Okay.  So I'll pull that up for you, Your Honor.

THE COURT:  Thank you.

MS. SIEKKINEN:  Okay.  3509(m), Prohibition on Reproduction of Child Pornography.

THE COURT:  Where are we?  3509 --

MS. SIEKKINEN:  (m).  Now, this is -- I'll represent that this is specifically in the context of a criminal proceeding.

THE COURT:  Correct.

MS. SIEKKINEN:  Okay.  But there -- the -- the cases that we cite --

THE COURT:  Yes, which are from what jurisdictions?

MS. SIEKKINEN:  They're not from this jurisdiction, you're correct.

THE COURT:  Correct.

MS. SIEKKINEN:  Correct.  But they're from the District of New Mexico, and then I've got -- actually, then I've got the Northern District of Alabama, which is the *Freesites* case, which is within the Eleventh Circuit.

THE COURT:  Sure.

MS. SIEKKINEN:  Okay.  Now, the point of those cases is that they took these principles, and understanding the need of parties in civil discovery where these issues are in play, okay -- and in those cases it was victims of CSAM, of alleged CSAM, but it applies also here, right, where we have needs for civil discovery and we're trying to balance those needs against the obvious -- Verizon is committed to protecting children online.  We don't want to revictimize children.

THE COURT:  Correct.  And my fear, right, is by doing this -- which I have, again, no binding Eleventh Circuit case that tells me this is the law.  The statute itself says it's criminal.  Doesn't say anything about civil proceedings.  These two courts have extrapolated civil proceedings from that, but I don't have any Eleventh Circuit case that tells me that's what I have to do here.

And so the way I look at this is the minimal needs for these actual photos balanced against the potential that

this is actually not legal, one.

Two, that they're -- that these -- there's a chance for these photos to be more widely disseminated.  Again, you're saying it's not that big of a chance, but. . .

And three, further victimization of children by, like, per- -- I have a very tough time with ordering -- without somebody telling me that I have to do it, for civil litigation, ordering somebody to produce what they believe is child sex abuse material.

MS. SIEKKINEN:  As an initial -- you certainly don't have any -- any precedent that's going to be preventing you from doing so in a civil litigation proceeding.

THE COURT:  Well, but I have a criminal statute.  I don't have any statute that tells me that I am permitted to do this.

MS. SIEKKINEN:  But none of the criminal statutes say you're not -- well, 2258A -- was it (g) -- yeah, 2258A (g)(2)(vii).

THE COURT:  This is law enforcement.

MS. SIEKKINEN:  This is -- yeah --

THE COURT:  Correct.

MS. SIEKKINEN:  -- for law enforcement, right.  But they would be permitted to produce, under a protective order, right --

THE COURT:  But this isn't --

MS. SIEKKINEN:  -- if ordered by the Court.

THE COURT:  Then I -- I don't think -- but I think this is for a law enforcement -- is the third party vendor law enforcement?

MS. SIEKKINEN:  No.

THE COURT:  Correct.  So it would be law enforcement producing it to a third party vendor that is not law enforcement.

MS. SIEKKINEN:  Yes, the 2258A (g)(2) is not -- that's not -- that production is not limited to some other law enforcement.  That's --

THE COURT:  Read to me what it says.

MS. SIEKKINEN:  Okay.  That -- it prohibits law enforcement agency that receives a report from disclosing any information contained in that report except in the following circumstances.

And this is number (vii) specifically, "as ordered by a court upon a showing of good cause and pursuant to any protective orders or other conditions that the Court may impose."

Okay.  So good cause would certainly be a discovery need in a civil case.  That's essentially what these -- these cases that have grappled with this, and including the *Freesites* case, which is within this circuit, that grappled with this. And that's specifically coming from the *Freesites* case.  You

know, there, there was balancing of the need for civil discovery with these obvious sensitivities. And it's clear that these courts have also struggled with this, right.

But again, we're now going to be put -- what we would like to avoid, and what we think that this protocol avoids, is putting Verizon in the position of not being able to substantiate its defense because plaintiff swears that it's not, but that -- you know, we --

THE COURT: Why wouldn't this be resolved by somebody from St. Johns County testifying about what was on the phone?

MS. SIEKKINEN: Well, that would be another way to get -- to get an additional --

THE COURT: And again, I do this in the criminal context all the time, right. I deal with child pornography cases regularly. And there are different ways that we get information about what is on images without producing images. There are reports of what the images are. There is testimony given about what was on the phone.

So what I'm trying to understand is, is having the images -- again, you -- I think you have to understand how these images are incredibly sensitive. You're -- I mean, arguably would you be asking to at some point try to show these images to a jury?

MS. SIEKKINEN: Certainly not unredacted images.

THE COURT: I'm just asking you.

Right.  So you can understand what I'm getting at.

MS. SIEKKINEN:  I do.  Your Honor, I really do.  The two images that are even the subject of this case are disturbing to view, you know, even redacted, right.  But if we were to go to a jury, I do not see a way around having to show the images.  They have to be -- they would have to be shown.

THE COURT:  Well, but the images at issue in this case have been determined to be adults.

MS. SIEKKINEN:  That's not actually correct.

THE COURT:  So it's not correct that they have been determined to be adults?

MS. SIEKKINEN:  That is not correct.  There is unsubstantiated and self-serving allegations that that January image was at least an adult at the time, now -- or just barely an adult at the time.  But that is not a hundred percent substantiated, Your Honor.

But what we have done is we've redacted, you know -- images that are redacted that are no longer child pornography, you know --

THE COURT:  Okay.

MS. SIEKKINEN:  Now we're getting out of the criminal context and in those child pornography statutes.

THE COURT:  Okay.  So that's your response to No. 3.

Did you want to say something, Mr. Roberts?

MR. ROBERTS:  Yes, Your Honor.  In response to your

suggestion, I just want to point out that the forensic detective has already testified in the related case about these specific issues -- search terms, websites -- and characterized the images as, you know, age-difficult, age-indeterminate, no illegal searches, no illegal websites.  So that evidence does exist.

That's all I wanted to say.

THE COURT:  Okay.  Thanks.  Okay.

So beyond those two courts, do you have any other cases that you want me to look at where a court has ordered the production of materials besides the two cases that you cited?

MS. SIEKKINEN:  Your Honor, we -- that was what we found, and we don't have anything else.

THE COURT:  There's not a lot out there.

MS. SIEKKINEN:  There's not a lot.  And, you know, it is a difficult topic, but, I mean, as I'm sure you know, and I can tell that you know, it is an important topic overall.  This is an important issue that we're -- that's at issue in this case, you know.

THE COURT:  Which I understand.  And I also do believe there are ways for Verizon to get its --

MS. SIEKKINEN:  Right.

THE COURT:  Beyond having the images in your possession, I do believe there are ways for you to get evidence in regarding these -- what was found on the plaintiff's phone

and the type -- the number of images, the types of images, without actually having to possess potentially redacted child sex abuse material.

MS. SIEKKINEN:  Your Honor, if I may just briefly. Like the -- the officer in the case who testified in the related case is not -- that's not at issue in this case just yet, we haven't been able to get there, but to the extent you have -- the extraction was made, you know, more than two years ago.  Memories fade.  The point is we need -- we believe, and we were -- we're aiming at getting material for our defense --

THE COURT:  Sure.

MS. SIEKKINEN:  -- not a fishing expedition.

THE COURT:  I'm not saying you're not going to get any, but I'm just saying I'm not convinced that you need to get potentially -- that I am comfortable, based on the precedent that you have provided to me today, ordering the production of potential child pornography to a third party for the purposes of a civil lawsuit.

MS. SIEKKINEN:  Your Honor, one of the issues is that SJSO has also said that it's burdensome for them to kind of cull through it.

THE COURT:  And I'm going to talk to Mr. Carson about that because that requires a very specific showing.  You can't just say it's burdensome; you have to tell me why.

MS. SIEKKINEN:  Okay.

THE COURT:  So I'm going to talk to Mr. Carson about that.

MS. SIEKKINEN:  Understood.  But like the -- the -- the -- relying on, you know, stale memory of the officer, who's probably done thousands of forensics investigations since then, I think puts us at a very distinct disadvantage.  Respectfully, Your Honor, we think that this is the most narrowly tailored way to get it at.  And thank you.

THE COURT:  Okay.  But let me make sure I've gotten your responses to all the categories --

MS. SIEKKINEN:  Oh, certainly.

THE COURT:  -- because this is just Category 3.  So documents, messages, emails, and notes, and information related to the age, or seeming age, of any individual depicted in the images or videos of Category 3.  That might fall out if you're not being asked -- if there's not a production with regard to Category 3.  Or do you believe that there would be other things that would be applicable?

MS. SIEKKINEN:  I think there would be other things that would be applicable.  For example, you know, there's -- and I have no -- I do not know, but like, for example, if it's, you know, a text message saying, like -- you know, describing what he thinks the age of this individual is, that's relevant, and that would fall under 3, right.

THE COURT:  Okay.

MS. SIEKKINEN:  Yeah.

THE COURT:  Okay.  And then documents, including messages, emails, and notes, and information related to pornography or pornographic material.  How does that -- how is that, I guess, relevant and proportional here if we're -- and what your colleague argued, that, you know, the information on his client's phone was legal, and so his argument is that because it's legal it's not relevant and proportional to discovery in this case.  What would your response be to that?

MS. SIEKKINEN:  Well, I -- it's not at all determined that all of the -- all of that material is legal, or is at least not apparent CSAM, right.

There's a wide gulf between the parties, as I'm sure you can tell, for example, you know, as to what is apparent CSAM or what is visually suspect or potential or apparent CSAM or what appears to be a minor.

For example, the redacted image that Verizon filed and that's under seal in this case, the allegations from the other side are that this is obviously an adult with the barest of review; nobody could -- nobody reasonable could think any different.  That's just preposterous, right.  And a slew of -- at least a dozen people have opined that it is -- appears to at least depict a minor.  So putting that aside, right, there is this disagreement as to what is or is not illicit here.

But documents, including messages, emails, and notes,

about pornography certainly goes to -- it -- not only does it -- would it impeach his credibility, but he has testified -- plaintiff has testified that he only looked for definitely adult material; he wasn't looking for anything else.  You know, that goes to his credibility for sure if he -- if he is engaging in messages that indicate otherwise.

THE COURT:  And was that testimony made during his deposition?

MS. SIEKKINEN:  During his deposition in the related case, right.  So if he testifies differently here, well, that's a different issue too.  But that testimony is out there, that he, you know -- so that is why that is relevant and -- for discovery purposes here.

THE COURT:  And again, this is just discovery.  I mean, clearly --

MS. SIEKKINEN:  Exactly.

THE COURT:  -- once you get your discovery, you then try to put things into evidence, and that is a different conversation --

MS. SIEKKINEN:  Certainly.

THE COURT:  -- before -- once, you know, the parties get closer to trial, if that's what happens here.

Okay.  And then a list of all installed applications on the device.  Why are you seeking installed applications?

MS. SIEKKINEN:  Installed applications goes to a

number of things:  the manner in which he used his phone.  Did he, you know, engage in incognito browsing?  Which might hide other evidence.  And we can ask about why that's there.

He also testified to there were maybe automatic deletions on his device, and so, well, okay, does he have a device that's automatically deleted things?  And why is that?

So that is why we want a list of all installed applications.

And the -- I don't know, Your Honor, if -- I just want to make sure we also get to -- I don't know that we talked about Verizon's position on 1 and 2.

THE COURT:  Right.  Which I do believe they're overly broad, so --

MS. SIEKKINEN:  Yeah, but I'd be happy to talk to you about that.

THE COURT:  Okay.

MS. SIEKKINEN:  But I think the last one is -- yeah, information about the -- that was deleted.  Yes, so deleted content.  That also goes to what we just said.

In his testimony he testified that he -- there were often deletions.  To us it means perhaps there's like a massive volume of things that is being deleted on a regular basis.  It takes a lot to get to a point where you have to start deleting things on your device.  So that is why that is relevant from our perspective; for discovery, right, as you said.

Now, going to 1 and 2, I want to address, Your Honor, why Verizon does not think this is overly broad, because, first of all, the websites' names themselves, as we noted in our response, we need a list of all the websites because we can't narrow it down to "that seem or appear to be pornographic in nature," right. Many of these websites have innocent-sounding names. "Met Art" might make one think of The Metropolitan Museum of Art. That's not at all what it means. It means Most Erotic Teens Art, okay. And so we -- that's why we wanted a list of the web searches and the specific websites.

Now, web searches, we'd be happy to -- if you believe that's overbroad, we'd be happy to narrow that to -- to "sexual in nature" or "pornographic in nature" web searches, right. But this could mean things like "teen girls," "hot teen girls," "petite teens." These are all search terms that lead to some of these websites.

THE COURT: Well, and I would think if you had a search term for "teen," that would pull up all of the sites that you just said.

MS. SIEKKINEN: Certainly, but so would other things.

THE COURT: Sure, but -- I hear what you're saying. But I think that that -- I do believe it's too broad, so I think narrowing it would be something that you need to do.

MS. SIEKKINEN: Okay. All right. But in terms of websites visited, that's why that category is broad, because we

can't say like anything with the word "sex" or "porn" or whatever. It's -- the names on the websites are -- can be deceptive.

THE COURT: They can be, but not all the time.

MS. SIEKKINEN: Not all the time.

THE COURT: So you would think that somebody -- again, you would likely get a lot of hits on different things, presumably, if you're asking for a lot of different -- I mean, clearly you know a lot of -- you have a lot of ideas about these things and you've worked in this space, so you would be able to make more specific requests based on your knowledge and experience -- excuse me -- in litigating cases like this.

MS. SIEKKINEN: Your Honor, the pornographic part of the internet is much bigger than -- than Google, TikTok, YouTube, Facebook. So the expansive sites is massive. Yes, I worked in this space, but I don't know --

THE COURT: Sure.

MS. SIEKKINEN: -- all of the websites. That's why a list of the websites visited is important, right, so we can look to it -- you know, also, sub lists, sub websites on things like TikTok, YouTube, or, you know, Instagram.

THE COURT: True. I think you can ask for --

MS. SIEKKINEN: It could be pornographic or even CSAM in nature. Even, you know, the *MG Freesites*, that was -- that's a publicly available website and was clearly involved

in --

THE COURT:  And again, I'm not telling you how you have to craft this.  That is up to you.

MS. SIEKKINEN:  Okay.

THE COURT:  I'm just saying I would like to -- I believe that as it is currently --

MS. SIEKKINEN:  You would like to see those two --

THE COURT:  -- listed, it is too -- it is overly broad.

MS. SIEKKINEN:  You would like to see those two narrowed?

THE COURT:  Narrowed, 1 and 2.

MS. SIEKKINEN:  Okay.

THE COURT:  And again, you-all can narrow that.

MS. SIEKKINEN:  Okay.

THE COURT:  Again, I do not want to be in the weeds on all of these things.  Again, we are at the discovery phase, and so I think that you-all should be able to navigate and work out certain things between the parties in order to narrow 1 and 2.  But I do think they are too broad at this point.

MS. SIEKKINEN:  Okay.

THE COURT:  Okay.  So I've heard about your response to all of these.  Now I'm going to talk to Mr. Carson.

Mr. Carson, obviously you filed a motion for protective order.  Your position is that there is child sex

abuse material images that are on the -- from the Cellebrite extraction, correct?

MR. CARSON:  Can I -- can I qualify that, Your Honor?

THE COURT:  Yes.

MR. CARSON:  Okay.  So Matt Carson representing the St. Johns County Sheriff's Office in this matter.  I represent Detective Mikayla Preston in the related case, and I represented Sheriff Hardwick in his official capacity in the related case until he was dismissed.

I take no position on any of the pictures that are on this Cellebrite extraction.

THE COURT:  Okay.

MR. CARSON:  I will say this, because I think it's important for the Court to know, I'm not going to argue the motion for summary judgment in the related case here today, but the age of the individuals in the images that Mr. Lawshe was charged with possessing is very much in dispute in this case.

The defendants in the other case -- or accurately, the defendant in the other case, has not conceded that the individuals in those images were adults when they were taken. And there is no concrete evidence establishing that they were. That's not before you today.

What's before you today is this Cellebrite extraction, which contains thousands and thousands of images, many of which contain nudity.  I'm not suggesting that all of

them or some of them or many of them are CSAM.

They do contain -- the three images that Mr. Lawshe was charged with possessing, that at least some of those continue -- we continue to maintain -- Detective Preston continues to maintain that they were under 18 at the time they were taken.

THE COURT:  Which would be CSAM?

MR. CARSON:  Which would be CSAM.  I have not looked at the other pictures, for a number of reasons, but my understanding, what I'm being told, is they are all young.  Not 17, not 10, not 5, but they're young.

And so I have had to -- I won't say "had to" -- as part of my representation of Detective Preston in the other case, spent more time looking at sexual maturity rating and the reliability of the presence or absence of this development aspect or that development aspect.

I have no idea.  I would have no idea in looking at these pictures as to whether or not they were 18, 20, 16, and so -- and neither would my client.  And so that's where the concern comes in.

THE COURT:  Well, because I see in your filing you say that there are thousands of images depicting indeterminate age and that Detective Preston and others have opined that the images for which plaintiff was criminally charged comprise CSAM.

MR. CARSON: Right.

THE COURT: And that you have an interest in not producing CSAM.

MR. CARSON: Right. So we've got a handful of pictures that we say are CSAM. The rest of the universe, it could be, it might not be. But that's where the thousands of images -- I just want to make clear, we're not saying there's thousands of pictures of 12-year-olds. There's not.

THE COURT: And I didn't hear you saying that, but what I get uncomfortable with is this Court facilitating the sharing of any child sex abuse material in a civil case, okay, and why.

And from where I sit, there is a way that this can be testified to, the -- what was on the phone or what images were there, without actually having to disclose these images in discovery.

Now, I don't know if there are images that you know definitively aren't CSAM. I don't know.

And so, again, to me, it sounds like this is pretty thorny in terms of the law and where the law and how the law mandates production of these sorts of things in these cases.

And so, I mean, again, I -- you're telling me that you're not -- that you're not saying it is CSAM, but you're telling me that you're not saying it's not CSAM.

MR. CARSON: Well, and I'll just tell you this by way

of example, Your Honor.  In the other case, these models were from the Ukraine, from Latvia.  There's no way to verify how old they were when these photographs were taken.

I don't know where these other images that were on -- as part of the Cellebrite extraction, I don't know where they came from, you know.  They don't look 30; they don't look 40.  And that's where our nervousness -- and we share the Court's reluctance to provide them.

THE COURT:  Were images disclosed in the other case, or it didn't matter because it was just with law enforcement so the case was plaintiff versus law enforcement and everyone had the relevant information?

MR. CARSON:  Well, you know, in the other case, you know -- again, not to -- not to, you know, argue the motion for summary judgment, but the State Attorney, at the end of the other case, said, "Give him the phones back."  So, you know, presumably Mr. Lawshe had this entire -- the Cellebrite extraction in his possession anyway.  But that's -- you know, that's an issue we'll have to argue in the other case.

THE COURT:  Okay.  So with regard to the production, this, kind of, what has been requested to be produced, there's essentially now 11 categories of information that are requesting to be produced.  And the concern that I had is -- well, you argued it's un- -- I read your argument, Mr. Carson, as saying, "We'll produce this information, but it's unduly

burdensome, so we just want to produce the entire file."

MR. CARSON:  And then I -- I realize it was clumsy at best.  Let me clarify.  I would like there to be -- and I think you were kind of going that way.  It needs to be better crafted, right.

THE COURT:  Yes.

MR. CARSON:  So when we get categories saying "related to his sexual health," you know, Cellebrite extraction might have 10,000 emails, might have 20,000 text messages.  To ask my client to go through each one of them and determine if they have to do with Mr. Lawshe's sexual health would be unduly burdensome.  Not the images so much, right.

THE COURT:  I feel like the images we can just carve out and not produce any images out of other things that can be produced by you from the Cellebrite extraction so long as it is crafted pretty carefully.  Again, I'm familiar with Cellebrite from when I was a prosecutor, so I understand a little bit how it works.

MR. CARSON:  You undoubtedly understand it and the way it works better than I do.  If there's a way to go in there and take out the pictures and send the rest to an ESI vendor of Verizon's choosing and let them run search terms, we would have no problem with that.

THE COURT:  Okay.  That's what I'm leaning towards at this point in time.

MR. CARSON:  I just didn't want my folks to have to make the judgment call on what relates to these things.

THE COURT:  No, this is sticky.  And to have to look through all these pictures and decide what is legal and what is not legal, that is a very -- that is a place that would be very challenging for you to be.  But presumably there are people at your office that have looked through all of these pictures, correct?  Or many of them that are more familiar with them?

MR. CARSON:  I know that they have.

THE COURT:  Detectives.

MR. CARSON:  It's been years --

THE COURT:  Yes.

MR. CARSON:  -- and they've probably handled, unfortunately, thousands of CSAM cases since then.  But if that's the Court's order, is to have somebody look at this and to testify as to what --

THE COURT:  Well, I'm not saying that that's my order.  I am just saying I am in a place right now -- again, generally the Court doesn't want to get into the super weeds on discovery.  We know the parties are in the best place to navigate what is and is not produced.

Clearly there are times that the Court needs to intervene and make decisions because the parties can't agree.  This is a particularly challenging place because of this additional wrinkle of the potential that there's child sex

abuse material images and the way that that would be, you know -- the way that that information would be provided to a third party.

And again, I'm not convinced -- I mean, I understand -- I just don't feel comfortable based on what I've seen so far -- and again, I'll go do some more research myself and read these cases, but based on what I have right now, and your representations to me, I am not comfortable with ordering that things are produced to a non-law enforcement entity for a civil case.  I'm not.

MR. CARSON:  And Your Honor, if I could, and this may be putting the cart before the horse, but redacted versions of one of the images was filed as part of document 67 in this case.  It was since sealed.  It was later sealed.

And document 93 in the other case, we moved for leave to file redacted images under seal.  The Court granted that. We did file those.  That's document 93.

To the extent it's helpful -- again, it's -- throughout this case it's become blurry to me as to -- you know, because I'm hearing from the other side, "She's obviously 24," and I'm going, "I don't know how you get there."

At this point, I don't know how old anybody is in any of these pictures.

THE COURT:  Sure.

MR. CARSON:  But to the extent looking as those

pictures is helpful to Your Honor to go --

THE COURT:  Well, I don't -- well, my point is I understand that Verizon does not have those pictures -- those images from the other case that have been produced on that file.  And they are redacted, correct?

MS. SIEKKINEN:  They're under seal.

THE COURT:  They're under seal.  Sorry, they've been filed and redacted and they're under seal, correct?

MR. CARSON:  Are you asking me, Your Honor?

THE COURT:  Yes.

MR. CARSON:  Yes, Your Honor.

THE COURT:  And you don't have those, right, Verizon?

MS. SIEKKINEN:  No, no.

THE COURT:  And Mr. Roberts, you were saying you will have no problem producing those to Verizon?

MR. ROBERTS:  None whatsoever, Your Honor.

THE COURT:  Okay.  So I do want Verizon to get those images.  And again, because they are redacted and because they -- I don't know if I need to order that those images are produced.  I don't know the best way to handle making sure that Verizon gets those images, but I would imagine you can just get them to them directly without involving the Court.  We don't need to put them on the Court docket.  Because those are, I think, relevant.  And I think at this point those images would be something, based on the way the other case has

kind of moved and the fact that everybody has this information and Verizon as Synchronoss don't have this information -- and when I say "Verizon" I mean Verizon and Synchronoss, of course.

But I think that what I'm going to do here is I am going to -- well, okay.  So big picture, I've got a motion for a protective order filed by Mr. Roberts that I think is better a motion -- I mean a motion to quash that I think is better styled as a motion for protective order that I think I will probably be granting in part.

I am going to use the list of 11 categories that were provided to me as the basis for what I'm ruling on.  I'm going to rule that 1 is too broad; that 2 is too broad.  For right now I'm going to not rule that any images and videos be produced, in part because I want to understand a little bit more about whether or not you need that motion for a protective order or whether you can do your work, Mr. Carson, in response to this subpoena without that if you're just producing documents.

Do you understand what I'm saying?

MR. CARSON:  No, Your Honor.

THE COURT:  So if you're not producing any images or videos, right, from the Cellebrite extraction, you're just producing search terms, websites, different things like that, would you still be asking for a protective order?  I thought the protective order was mainly in relation to the images.

MR. CARSON:  Any of the CSAM, and then, again, respectfully requesting that we not have to make judgment calls regarding the relevant --

THE COURT:  CSAM.

MR. CARSON:  No, whether or not things -- again, those, I guess it's categories --

MS. SIEKKINEN:  Like search terms.

MR. CARSON:  Yeah, that's fine.  6 through 9, you know, where it's asking for things related to sexual health, related to age of folks --

THE COURT:  Well, I think what you would do is just come together with search terms and produce what comes up in response to search terms.  Typically that's what happens in discovery.

So I think that you-all would agree on search terms, you would run those terms, and then you would produce what is in response to those terms.

MR. CARSON:  I would absolutely work with my client for that, Your Honor.

MS. SIEKKINEN:  Your Honor --

THE COURT:  Yeah.

MS. SIEKKINEN:  -- I just wanted to raise one thing. You know, the Cellebrite extraction was part of a live discovery request that we had directly to plaintiff, right. And when that was refused is when we went to the SJSO.

It seems to me that, you know, let's order plaintiff to produce --

THE COURT:  That isn't before me.

MS. SIEKKINEN:  I understand.  But would Your Honor have your same issue based on these representations with ordering plaintiff to produce the Cellebrite extraction to us?

THE COURT:  Mr. Roberts?

MR. ROBERTS:  Your Honor, I don't know how to run search terms, but we do have the Cellebrite.  And we had conferred about this, Your Honor, with counsel, that we were going to see how the Court ruled before we did any of those things.

THE COURT:  Okay.

MR. ROBERTS:  I can have a forensic person search terms and produce -- you know, in accordance with the Court's order, and produce the results.

MS. SIEKKINEN:  Your Honor --

MR. ROBERTS:  I don't have a problem doing that, Your Honor.

MS. SIEKKINEN:  I'm specifically curious about the images and video.

THE COURT:  But this issue is still the same.

MS. SIEKKINEN:  Okay.  That's what I wanted to know, right.

THE COURT:  The issue is still the same, so no.

MS. SIEKKINEN:  So here -- right.  So he -- he asserts a defamation claim based on representations that we made to NCMEC that there was apparent CSAM in his possession, and then he can hide behind not having to produce them?

THE COURT:  I don't think he's hiding because I'm ruling that I don't want him to produce CSAM.

MS. SIEKKINEN:  Okay.

THE COURT:  So I think what I'm saying is from where I sit, there are different ways that you can attempt to defend your -- the fact that he had other -- you're going to do search terms; you're going to do websites.  Isn't that what all this is about?  Isn't all this discovery to try and show that he was searching terms and looking for different things that would call into question the age, and that would lend veracity to your defamation claim?

MS. SIEKKINEN:  Certainly.  Also --

THE COURT:  And the pictures that I just ordered that you got in relation to the other lawsuit, the other criminal, wouldn't that also be something that would be helpful for you?

MS. SIEKKINEN:  It would also be --

THE COURT:  Yeah.

MS. SIEKKINEN:  -- but it is not -- yeah.

THE COURT:  Okay.  Yep.  Yep.  Thank you.  So this is my question, then, because this is where we're going to go.  You're going to get those three images; you are going to get

some of the discovery that you're requesting here.  Do you want to work together from his Cellebrite extraction to resolve that, or do you want that to come from St. -- I mean, I think Mr. Roberts is saying that you'll work with -- you will work with her.

MS. SIEKKINEN:  By the way, we were ready to use our provider to do that with him as well.  That was in what we -- what we submitted to Your Honor, yes.  But that was something that he was not -- that plaintiff was not inclined to do at that time.

THE COURT:  Okay.  So plaintiff, are you now telling me that in light of my ruling regarding videos depicting nudity, pornography, and sexual activity -- that's the only thing that I'm saying they don't have to produce obviously, and then they need to narrow their search terms, they need to narrow websites, but that, you know, essentially all of these other things I do think are fine.  Are you willing to engage with them to have the Cellebrite information -- to do what you were going to do prior to the Court's ruling?

MR. ROBERTS:  Absolutely, Your Honor, yeah.  And we had conferred on that issue, but we were holding off to get a ruling to help us.  Logistically where it comes from doesn't matter to the plaintiff.

THE COURT:  Okay.  So then that would essentially make it so that St. Johns would be off the hook, correct?

MR. ROBERTS:  As long as we have every- -- I'm not a technical person, Your Honor.  As long as we have everything that we need, and I believe that it was produced to us, the full -- and I'll look to Mr. Carson.  Was that the full Cellebrite --

MR. CARSON:  All -- the whole thing.

MR. ROBERTS:  Okay.  Because I don't really know how to look at it and tell that.  But assuming that that is the case and we have everything we need, we have a forensic expert who has already looked at that kind of stuff.  And so no problem putting search terms in and producing the results in -- you know, with Your Honor's order.

THE COURT:  So like I said, I believe 1 needs to -- is too broad; it needs to be narrowed.  I think 2 is too broad and needs to be narrowed.  I'm not going to -- I'm not going to require that images and videos are produced just based on the representation that most of them are of people of indeterminate age and that Mr. Carson is not sure whether or not they are CSAM.

Additionally, I have ordered that Verizon and Synchronoss get the three images that they were saying that they did not have, which were the criminally charged images. So you will get those images as a result of today.

Documents -- I'm fine with 5, 6, 7, 8, 9.  There were no objections to those.

10, I am fine with 10, a list of installed applications on the device.  I do believe that they're relevant and proportional.

And then 11 I'm also fine with information regarding data and -- that was deleted insofar as that information that is provided isn't of images or videos.  But if there is information -- like specific images or videos.  But if there is information that images and videos were deleted, that's fine.  But if there's information asking specifically for what those videos and images are, I'm not okay with that, if that makes sense.

MS. SIEKKINEN:  Yes.

THE COURT:  So the fact that things were deleted, fine, but exactly -- I mean, I don't even know if you would have access to them because they were deleted, but my point is that, I'm not -- that, I'm not asking to be produced.  And again, I think that is really clear.  I think it outlines what is and is not at this point -- the Cellebrite extraction, what is and is not required to be produced to Verizon from the Cellebrite extraction.  Okay.

Are there more questions on this?

MR. ROBERTS:  Can I ask a question, Your Honor --

THE COURT:  Yes.

MR. ROBERTS:  -- regarding narrowing of the scope?  You could narrow it on several different levels.  Is it to

pornography or is it to specific age-related search terms? That was the only thing that I would ask if Your Honor had any thoughts on.

THE COURT:  I think broadly, pornography for discovery purposes is fine for me.

MR. ROBERTS:  Okay.

THE COURT:  Again, this will -- whether or not it's admissible will come up later --

MR. ROBERTS:  Sure.

THE COURT:  -- and so -- but I think for purposes of whether it's relevant and proportional, I would not want to limit that for Verizon and Synchronoss at this time.

MR. ROBERTS:  Very well.

THE COURT:  Okay.  Any other questions?  Okay.

MS. SIEKKINEN:  Your Honor had a status -- I know that perhaps last week's order may affect it, but I just wanted to remind- -- yeah, that was part of what Your Honor had set for --

THE COURT:  Yeah, and I think that was because there was a request for a status because the parties were wanting to know the status of rulings.

And now that everything has been ruled on, I think -- if there's other status things we need to talk about, I'm happy to talk about them right now.

MS. SIEKKINEN:  I would just raise, like, shortly

before that order -- the orders were -- that order was entered last week, plaintiff had filed a partial -- a motion for partial summary judgment on the immunity.

THE COURT:  Denied as moot?

MS. SIEKKINEN:  It was denied as moot, right.  But it indicates to me that perhaps plaintiff believes that the issue of immunity is ripe for summary judgment.

And I wanted to ask the Court if, like, you know -- I know some courts have -- they desire, you know, particular permission or whatever, but -- if a summary judgment motion is made before the close of discovery, so I wanted to just ask that.

THE COURT:  Is there anything in -- I would say look at the Case Management and Scheduling Order.  Is there anything in the Case Management and Scheduling Order that speaks to that specifically?

MS. SIEKKINEN:  Not that I'm aware of, Your Honor.

THE COURT:  Yeah.  So I don't -- I mean, I don't think so.

MS. SIEKKINEN:  Okay.

THE COURT:  And again, like -- I'm not sure that I'm totally following your question.

MS. SIEKKINEN:  Just that to the extent plaintiff believes there's -- that it's -- I think you answered it.

Another issue is if we're going to be going with, you

know, kind of this discovery here with respect to -- and perhaps have a forensic provider doing that, it seems like we may need a bit of relief in terms of the expert discovery kind of deadlines.  And I --

THE COURT:  Do you want to -- if you-all want to file a motion for the extension of -- for -- a motion to modify case management deadlines -- or, excuse me, a motion to modify the Case Management and Scheduling Order, you may do that.

MS. SIEKKINEN:  Okay.

THE COURT:  And if you want -- and the Court will obviously hear that at the time it's filed.  If you're filing a joint motion, I mean, presumably you would need to come -- I think it probably operates better if you come to an agreement as to what you would like to see happening rather than asking me to make the decision.  But if you-all come to an agreement about why you would like to see the Case Management and Scheduling Order deadlines extended or changed, certainly that will be considered by the Court as soon as it's filed.

MS. SIEKKINEN:  Okay.  Thank you.

THE COURT:  And I think -- anything else?

MR. ROBERTS:  Not from the plaintiff.

THE COURT:  Nothing?

Anything else from the defendants?  Mr. Carson?

I mean, I feel like, Mr. Reiss, we didn't let you talk at all.  So is there anything you'd like to say today?

MR. REISS:  I did go to Buc-ee's for the first time last night, so --

THE COURT:  Oh, you did?  What did you think?  That place overwhelms me.  I can -- I mean, I think there's a lot happening at Buc-ee's.  I'm not sure if you've bought a Buc-ee's branded hat or a beach towel or a grill, because they sell all of those things.

MR. REISS:  Stopped on the way home to buy something for my wife, so --

THE COURT:  I'm sure she'll enjoy that.

Well, I just want to thank you all for your preparation.  I know this is a really complicated case.  And I appreciate all of your time and your argument today.  And certainly I will consider other things as they're filed.  But if there's nothing else today, then we'll be in recess.

(Proceedings concluded at 3:43 p.m.)

-    -    -

CERTIFICATE OF OFFICIAL COURT REPORTER

UNITED STATES DISTRICT COURT)

MIDDLE DISTRICT OF FLORIDA )


     I, court approved transcriber, certify that the foregoing is a correct transcript from the official electronic sound recording of the proceedings in the above-entitled matter.


     DATED this 20th day of November, 2025.


                         /s/ Katharine M. Healey
                         Katharine M. Healey, RPR, RMR, CRR, FPR-C
                         Official Court Reporter