United States District Court
Middle District of Florida
Jacksonville Division

WILLIAM LEE LAWSHE,

     **Plaintiff,**

**v.**                                    **NO. 3:24-CV-137-MMH-LLL**

VERIZON COMMUNICATIONS, INC. AND
SYNCHRONOSS TECHNOLOGIES, INC.,

     **Defendants.**

_____

### Order

Before the Court is Plaintiff's Motion to Quash Subpoena, doc. 75;[1] defendant Verizon Communication Inc.'s (Verizon) response in opposition, doc. 77; and Non-Party St. Johns County Sheriff's Office's (SJSO) Motion for Protective Order, doc. 76. This Court held a hearing on the motions and respective responses, on November 17, 2025, Michael Keith Roberts, II, Esq., appeared on behalf of plaintiff; Nury Agudo Siekkinen, Esq., appeared on behalf of Verizon; Andrew H. Reiss, Esq., appeared on behalf of Synchronoss Technologies, Inc.; and Mathew Joseph Carson, Esq., appeared on behalf of non-party SJSO. Doc. 90.

---

[1] Although titled a motion to quash, plaintiff's motion is more properly characterized as a motion for a protective order, as he challenges only request no. 2 of Verizon's subpoena and not the subpoena in its entirety. For the purposes of this order, the Court will refer to plaintiff's motion as a motion for a protective order.

## Background

Following multiple CyberTips submitted by defendants to the National Center for Missing and Exploited Children (NCMEC) alleging that plaintiff was in possession of "apparent" Child Sexual Abuse Material (CSAM), SJSO initiated a criminal investigation and subsequently arrested plaintiff for possession of CSAM. *See generally* doc. 89. As part of its investigation, SJSO conducted a forensic examination of plaintiff's digital devices, including a Cellebrite extraction[2] of his cell phone. *See id.* at 2. The examination revealed "thousands of other images depicting individuals of indeterminate ages[,]" as well as various other information related to pornographic and sexually explicit material, which was subsequently provided to plaintiff. *See* doc. 76 at 1-2. Ultimately, the criminal charges against plaintiff were dropped, and plaintiff filed a lawsuit against a SJSO sheriff and various other individuals and entities. *See Lawshe v. Hardwick, et al.*, Case No.: 3:24-CV-00044-JAR-MCR.

Verizon has served a third-party subpoena on SJSO requesting production of the material uncovered during its forensic investigation and Cellebrite extraction of plaintiff's digital devices. *See* docs. 75-1; 76-1. In response, plaintiff has filed the pending motion for protective order. Doc. 75. However, plaintiff represents that he possesses a complete copy of the forensic file and, as discussed infra, is willing to produce its contents.

---

[2] Cellebrite extraction is the process of lawfully coping and analyzing data from digital devices.

## I.  Plaintiff's Motion for Protective Order

Plaintiff seeks a protective order with respect to request no. 2[3] of Verizon's subpoena to non-party SJSO. *See generally id.* Request no. 2 of Verizon's subpoena seeks "[d]ocuments sufficient to show the full and complete extraction of data from Lawshe's digital devices and/or accounts . . . ." Doc. 75-1 at 8. At the hearing, it was established that the parties previously agreed to narrow the scope of this request to eleven subcategories of information. Doc. 75 at 1-2. The agreed upon subcategories are:

> 1) Search terms used for web searches;
>
> 2) Websites visited, including subpages on those websites;
>
> 3) Images and videos depicting nudity, pornography, or sexual activity of any kind;
>
> 4) Documents (including messages, emails, and notes) and information related to the age, or seeming age, of any individual depicted in the images or videos in Category 3;
>
> 5) Documents (including messages, emails, and notes) and information related to Plaintiff's sexual health;
>
> 6) Documents (including messages, emails, and notes) and information related to pornography or pornographic material;
>
> 7) Documents (including messages, emails, and notes) and information related to Plaintiff's alleged loss of employment or efforts to seek employment on account of Defendants' alleged actions;

---

[3] In his motion, and again at the hearing, plaintiff indicated he has no objection to the documents sought in request no. 1 of Verizon's subpoena. *See* doc. 75 at 1.

8) Documents (including messages, emails, and notes) and information related to any alleged emotional distress Plaintiff experienced on account of Defendants' alleged actions;

9) Documents (including messages, emails, and notes) and information related to any alleged reputational harm Plaintiff experienced on account of Defendants' alleged actions;

10) A list of all installed applications on the device;

11) Information regarding data in any of the preceding categories that was deleted before the forensic backup was generated, and any such deleted data to the extent available.

*Id.* at 2.

Plaintiff argues that subcategories 1-4, 6, and 10-11[4] are overly broad and not relevant to the case before the Court, specifically to the issue of whether plaintiff was in possession of "apparent CSAM." *See id.* at 4-7. Verizon opposes the motion and maintains that the disputed subcategories seek information relevant to its defense to plaintiff's defamation claims and to impeaching plaintiff. Doc. 77 at 8-21. Having reviewed the parties' briefing and the arguments raised at the hearing, the Court now takes up each challenged subcategory in turn.

**Subcategory No. 1.**

Subcategory no. 1 seeks "[s]earch terms used [by plaintiff] for web searches." Docs. 75 at 2; 77 at 16-18. At the hearing, plaintiff argued that this subcategory was overly broad insofar as it includes every search term he used for the last three years,

_____

[4] Because plaintiffs do not object to subcategories 5, 7, 8, and 9, they are not discussed in this Order.

4

whether or not it related to pornographic material. Verizon countered that a broad request for all search terms used by plaintiff is relevant and necessary, as the pornographic nature of a website is not always apparent from its name. *See* doc. 77 at 16-17 (discussing that pornographic websites often have hidden meanings).

Having considered the briefing and representations made at the hearing, I find this subcategory, as written, to be overly broad. The request encompasses a substantial number of search terms used by plaintiff that have no relevance to either plaintiff's claims or Verizon's defenses. *See* Middle District Discovery (2021) at III(A)(1). (explaining that requests for production should be clear, concise, and reasonably particularized). Accordingly, Verizon shall limit its request to search terms used by plaintiff that relate to nudity, pornography, or sexual activity.

## Subcategory No. 2.

Subcategory no. 2 requests "[w]ebsites visited, including subpages on those websites." Docs. 75 at 2; 77 at 13-16. Plaintiff argues this subcategory is also overly broad, as it would require disclosure of websites that do not relate to pornographic material. *See* doc. 75 at 5-6. Verizon presents a similar counter argument, contending that production of every website visited by plaintiff is necessary and relevant because the pornographic nature of a website cannot always be gleaned by its name. Doc. 77 at 13-16.[5]

---

[5] Verizon also argues the content of the adult websites plaintiff visited are relevant, as they may contain information related to the age of the models depicted in the January and October Images. Doc. 77 at 15-16. However, because plaintiff challenges only the breadth of

Having reviewed the parties' briefing and the arguments made at the hearing, I find this subcategory overly broad. *See* Middle District Discovery (2021) at III(A)(1). Verizon's request would require disclosure of websites unrelated to pornographic or adult material, or the images at issue in this case. Therefore, Verizon shall narrow its request to only those websites that plaintiff has visited depicting nudity, pornography, or sexual activity.

**Subcategory No. 3.**

Subcategory 3 requests "[i]mages and videos depicting nudity, pornography, or sexual activity of any kind." Docs. 75 at 2; 77 at 12-13. Plaintiff argues this subcategory requires disclosure of irrelevant documents unrelated to the issues of this case. *See* doc. 75 at 5-7. Specifically, he contends its irrelevant whether he was in possession of other pornographic or adult images, because that fact does not "tend to prove or disprove whether the [October or January] images were CSAM or apparent CSAM." *Id.* at 5.

Verizon argues production of additional sexually explicit images and videos in plaintiff's possession is relevant to its defense under Florida's substantial truth doctrine. Doc. 77 at 9-11. Verizon further contends that "[i]f [p]laintiff possessed pornographic images of teenagers or age-indeterminate individuals . . . [it] cannot have defamed [p]laintiff, because the 'gist' or 'sting' of [its] statement would be substantially true." *Id.* at 10. Verizon also maintains that this request is relevant because SJSO has

---

subcategory 2—and not whether the relevance of the information contained within these adult websites—the Court declines to address Verizon's secondary argument.

confirmed that plaintiff's devices contain "sexually explicit images and thousands of images of age indeterminate individuals . . . ." *Id.*

Verizon also argues this request bears on plaintiff's credibility because he testified during his deposition that he only downloaded sexual material from professional websites that complied with age verification requirements. *Id.* at 12-13. Verizon maintains that access to the additional sexually explicit images and videos in plaintiff's possession is necessary to test the veracity of his testimony. *Id.* at 13. In making this request, Verizon acknowledges that compliance with subcategory no. 3 may involve producing, possessing, and viewing apparent CSAM, in violation of federal CSAM laws. *Id.* at 18.

To facilitate compliance with federal law, Verizon urges the Court to adopt a specialized protocol governing the production of the requested images and videos. *Id.* at 18-20. Plaintiff cites *Doe v. Bd. of Educ. of Pecos Indep. Sch. Dist.*, 2023 WL 7299311, at *4 (D.N.M. Nov. 6, 2023) and *Doe #1 v. MG Freesites, LTD*, 2023 WL 5313081, at *2 (N.D. Ala. Aug. 17, 2023) in support for the Court's authority to promulgate protocols governing the disclosure of apparent CSAM in civil discovery. *Id.* at 18-20. However, the Court is unpersuaded.

As a threshold matter, neither case cited by Verizon constitutes binding precedent on this Court. Moreover, the cases are distinguishable. In both *Pecos* and *Doe*, the plaintiffs—each a survivor of child sex-abuse—sought the production of the images and videos documenting their abuse. The distinguishing factor in those cases

is that it was undisputed that the producing parties were in possession of images and videos documenting plaintiffs' abuse, which constituted CSAM.

Here, by contrast, Verizon hopes that a similar protocol will uncover additional apparent CSAM in plaintiff's possession—a fact plaintiff vehemently denies. Furthermore, in *Pecos* and *Doe*, the producing parties were law enforcement, and the documents were provided only to the plaintiffs or their experts. Here, by contrast, Verizon seeks to have the images and videos on plaintiff's devices reviewed by a third-party for redaction prior to being produced to Verizon.

It is unclear how Verizon's proposed protocol would avoid violating 18 U.S.C. § 2252, which makes it a federal offense to knowingly possess or receive CSAM. While section 2258A(g)(2)(A)(vii) permits a court, "pursuant to any protective orders or other conditions . . .[,]" to authorize the disclosure of CSAM, this applies only after a showing of good cause—which Verizon has failed to demonstrate.[6] At the hearing, plaintiff represented that he would produce to Verizon the three redacted images for which he was criminally charged and are the subject of his companion case. *See Lawshe v. Preston and Dully,* Case No. 3:24-cv-00044-MMH-MCR. Accordingly, Verizon must limit its request to those three redacted images.[7]

---

[6] At the hearing Verizon suggested that the Court had authority under 18 U.S.C. 3509(m) to create a protocol regarding civil discovery of CSAM. However, a reading of the statue limits its application to "any criminal proceeding," and Verizon has not provided authority to the contrary.

[7] For the remaining subcategories of request no. 2, nos. 4, 6 and 10-11, plaintiff represented that he would withdraw his objections if the Court did not require him to produce the images and videos from subcategory 3. Therefore, the remaining objections to these subcategories of request no.2 are deemed withdrawn

## II.    SJSO's Motion for Protective Order

In response to Verizon's subpoena, SJSO filed a motion for protective order. Doc. 76. SJSO represents that responding to the subpoena would require it to produce the "images for which [p]laintiff was criminally charged . . . as well as thousands of other images depicting individuals of indeterminate ages." *Id.* at 2. Accordingly, this would necessitate producing apparent or actual CSAM. To avoid such disclosures, SJSO would be required to review thousands of images and videos and redact those "depicting nudity, pornography, or sexual activity . . ." involving individuals of indeterminate age, which it argues, would be unduly burpensome. *Id.* at 3.

At the hearing, however, plaintiff indicated that he obtained a complete copy of the information being sought from SJSO during the criminal investigation and that he has no objection to producing to Verizon the information that was ordered by the Court. Thus, plaintiff—and not SJSO—will produce the information in response to Verizon's subpoena. Accordingly, SJSO's motion for protective order is due to be denied as moot.

It is **ordered**:

1. Plaintiff's Motion to Quash Subpoena, doc. 75, construed as a motion for a protective order is **granted in part and denied in part;** Verizon Communication Inc., shall on or before **December 4, 2025,** serve a renewed subpoena on **plaintiff** that complies with the directives outlined in this

Order. Plaintiff shall respond to the subpoena within the time frame required by law; and

2. Non-Party St. Johns County Sheriff's Office's Motion for Protective Order, doc. 76, is **denied as moot**.

**Ordered** in Jacksonville, Florida, on November 24, 2025.



/s/ Laura Lothman Lambert
*United States Magistrate Judge*

c:
Jeffrey Scott Nooney, Jr., Esquire
Michael Keith Roberts, II, Esquire
Nury Agudo Siekkinen, Esquire
Marc J. Zwillinger, Esquire
Andrew H. Reis, Esquire
Katherine Vanessa Ramos-Bigley, Esquire
David Scott Brecher, Esquire
Matthew Joseph Carson, Esquire