# Exhibit A

1                    UNITED STATES DISTRICT COURT
                     MIDDLE DISTRICT OF FLORIDA
2                      JACKSONVILLE DIVISION

3    WILLIAM LEE LAWSHE,              Jacksonville, Florida
     an individual,
4                                     Case No. 3:24-cv-00137-MMH-LLL
          Plaintiff,
5                                     November 17, 2025
     v.
6                                     2:10 p.m. - 3:43 p.m.
     VERIZON COMMUNICATIONS, INC.,
7    a Delaware corporation, and
     SYNCHRONOSS TECHNOLOGIES, INC.,
8    a Delaware corporation,

9         Defendants.
                                      (Digitally Recorded)
10   _____

11

12        **DIGITALLY RECORDED MOTION HEARING/STATUS CONFERENCE**

13          BEFORE THE HONORABLE LAURA LOTHMAN LAMBERT
                  UNITED STATES MAGISTRATE JUDGE

14

15

16

17

     OFFICIAL COURT REPORTER:
18
     Katharine M. Healey, RPR, RMR, CRR, FPR-C
19   PO Box 56814
     Jacksonville, FL 32241
20   (904) 301-6843
     katharinehealey@bellsouth.net
21

22

23

24            (Proceedings recorded by electronic sound recording;
                        transcript produced by computer.)
25

1                        A P P E A R A N C E S

2    COUNSEL FOR PLAINTIFF:

3    **MICHAEL K. ROBERTS, II, ESQUIRE**
     Law Offices of Nooney & Roberts
4    1680 Emerson Street
     Jacksonville, FL 322007
5    (904) 398-1992
     mroberts@nooneyandroberts.com
6

7    COUNSEL FOR DEFENDANT VERIZON COMMUNICATIONS, INC.:

8    **NURY A. SIEKKINEN, ESQUIRE**
     ZwillGen, PLLC
9    1900 M Street NW, Suite 250
     Washington, DC 20036
10   (202) 296-3585
     nury@zwillgen.com
11

12   COUNSEL FOR DEFENDANT SYNCHRONOSS TECHNOLOGIES, INC.:

13   **ANDREW H. REISS, ESQUIRE**
     Bond, Schoeneck & King
14   4001 Tamiami Trail North, Suite 105
     Naples, FL 34103
15   (239) 261-9300
     areiss@bsk.com
16

17   COUNSEL FOR MOVANT/NON-PARTY ST. JOHNS COUNTY SHERIFF'S OFFICE:

18   **MATTHEW CARSON, ESQUIRE**
     Sniffen & Spellman, PA
19   123 North Monroe Street
     Tallahassee, FL 32301
20   (850) 205-1996
     mcarson@sniffenlaw.com
21

22

23

24

25

1                    P R O C E E D I N G S

2    November 17, 2025                              2:10 p.m.

3                        -   -   -

4              COURT SECURITY OFFICER:  The United States District

5    Court in and for the Middle District of Florida is now in

6    session.  The Honorable Laura Lothman Lambert is presiding.

7              Please be seated.

8              THE COURT:  Good afternoon.  We're here in the case

9    of United -- excuse me, of *Lawshe vs. Verizon Communications,*

10   *Inc. et al.*, Case No. 3:24-cv-137-MMH-LLL.

11             We are here today on Plaintiff's Motion to Quash

12   Subpoena, doc 75; Non-Party St. Johns County Sheriff's Office

13   Motion for Protective Order; and defendant Verizon

14   Communications' response and opposition.

15             May I please have all the parties for the case state

16   their appearance for the record, starting with the plaintiff.

17             MR. ROBERTS:  Michael Roberts for the plaintiff.

18             MS. SIEKKINEN:  Nury Siekkinen for defendant Verizon

19   Communications, Inc.

20             THE COURT:  Could you please pronounce your name one

21   more time, please.

22             MS. SIEKKINEN:  Yes, Your Honor.  Nury Siekkinen.

23             THE COURT:  See-eck- --

24             MS. SIEKKINEN:  See-eck-kuh-nen, yes.

25             THE COURT:  Thank you.

1          MS. SIEKKINEN:  Thank you.

2          THE COURT:  And you're here for Verizon?

3          MS. SIEKKINEN:  Yes, Your Honor.

4          THE COURT:  Okay.

5          MR. CARSON:  Matt Carson, Your Honor, on behalf of

6    St. Johns County Sheriff's Office, non-party.

7          MR. REISS:  And Andrew Reiss on behalf of the

8    defendant Synchronoss Technologies, Inc.

9          THE COURT:  Okay.  Okay.  So we are here -- I'm going

10   to explain to you what I see as having been filed and where we

11   are and then we'll discuss from there.  I think there's issues

12   throughout this whole thing that are problematic and that need

13   to be discussed, which is why I asked for a hearing on this

14   today.

15         As an initial matter, it looks -- well, obviously

16   Verizon served on St. Johns County a third-party subpoena with

17   two requests, and I'm just going to read those quickly.  I have

18   it at 75-1, page 3, which I think is Mr. Roberts's filing.

19         "Document Request No. 1:  Documents and

20   communications concerning the forensic investigation of

21   Lawshe's digital devices, including mobile phones, laptops,

22   computers, tablets, and other similar device, and/or digital

23   accounts, including email, cloud storage, social media, and

24   other web-based platforms, in connection with the criminal

25   action."

1           And then, "Document Request No. 2:  Documents

2   sufficient to show the full and complete extraction of data

3   from Lawshe's digital devices and/or accounts performed in

4   connection with the criminal action, including but not limited

5   to all files and data extracted from any of Lawshe's digital

6   devices, including mobile phones, laptops, computers,

7   computers, tablets, and other similar devices, and/or from

8   Lawshe's digital accounts, including email, cloud storage,

9   social media, and other web-based platforms."

10          Okay.  So Mr. Roberts, as an initial matter, I

11   reviewed your motion as saying you don't have an issue with

12   Request No. 1; you do have an issue with Request No. 2.  Is

13   that correct?

14          MR. ROBERTS:  Correct, Your Honor.

15          THE COURT:  Okay.  So technically this isn't a motion

16   to quash, it's a motion for a protective order, right?  Because

17   you're not asking for the entire subpoena to be quashed.

18   You're saying, "I'm okay with part of it, I'm just not okay

19   with all of it."

20          MR. ROBERTS:  Okay, Your Honor.  Yes.  I'm sorry.

21          THE COURT:  I mean, that matters.

22          MR. ROBERTS:  I'm sorry.  Yeah.

23          THE COURT:  No, that matters because it goes to

24   standing; it goes to whether or not you can object.  There's a

25   lot of issues that come up, and so I need to understand

1  precisely what it is you're asking.

2          MR. ROBERTS:  Yes, Your Honor.  So we understand

3  Document Request No. 1 to be a request for, like, the forensic

4  report, which has already been produced.  And so we don't have

5  an objection to that.

6          THE COURT:  Okay.

7          MR. ROBERTS:  It's Request No. 2, which is the

8  information contained on the phone itself.  All --

9          THE COURT:  You don't have an objection to all of it

10  from what I read in your filings.

11          MR. ROBERTS:  Well --

12          THE COURT:  You have an objection to some of it.

13          MR. ROBERTS:  Well, Your Honor, what we -- in the

14  meet-and-confer, the defendant agreed to narrow -- we object to

15  the request as written, period.

16          In our meet-and-confer, the defendant agreed to limit

17  the scope of the subpoena.  And so what I tried to convey in my

18  motion is that once they agreed to narrow the scope --

19          THE COURT:  Yes.

20          MR. ROBERTS:  -- we still had a disagreement about

21  the things that they wish to seek.

22          THE COURT:  Which I understand.  But again, for

23  clarity, this matters in discovery.  I have a document in front

24  of me that says that there is some agreement on the narrowed

25  scope, but you still object to much of the information.  You

1    object to the data and documents requested in items 1, 2, 3, 4,

2    6, 10, and 11 of your list, correct?

3              MR. ROBERTS:  That list was provided by the -- that

4    was the list that the defendant agreed to narrow the scope to,

5    Your Honor.

6              THE COURT:  Okay.  So I need to understand where we

7    are and what we're working off of before I can even get into

8    the weeds of all of this.

9              You-all are having a discovery dispute, okay.  There

10   has been a subpoena that has been served on a non-party under

11   Rule 45.  That non-party is not objecting to the subpoena in

12   and of itself, it's requesting a protective order, okay.

13             The plaintiff is the one objecting to -- from where I

14   see now, you are objecting to certain parts of the

15   narrowed-down request.  And so that is what I am trying to

16   navigate.

17             I mean, just so I can telegraph where I am here, I

18   think some of this stuff is relevant.  I am concerned that some

19   of this stuff is illegal and is CSAM.  And I am -- there is

20   zero chance that I am going to order someone to produce CSAM

21   unless there is a specific case law that tells me "you have to

22   order this" and there are provisions in place that tell me

23   exactly how it needs to happen.

24             I am not going to get into a discussion -- I am not

25   going to order St. Johns County to produce what it believes is

1    child sex abuse material in this litigation.  Nobody has given

2    me any law that would tell me why that is something that I have

3    to do.

4        So what I'm trying to do at this point is get to the

5    crux of what the objections are.

6        This case has been hanging around for a while.

7    Obviously I entered an order on Friday that is -- implicates

8    where the case currently stands.  But based on what I have

9    before me, there is -- there's a very broad request from

10   Verizon to St. Johns County.  Now there's a representation that

11   that request has been narrowed.

12       So if I'm working off that narrowed request -- I also

13   have you listing 11 things, and I have Verizon listing five

14   buckets.  So I don't even know, necessarily, the world in which

15   I am trying to rule on what is or is not discoverable and why.

16       So the way I look at this is I have your motion for a

17   protective order, in essence, Mr. Roberts.  I have Verizon's

18   response and opposition.  I have Mr. Carson's request

19   essentially, from where I sit, that's saying, "This is too

20   unduly burdensome on St. Johns County.  We don't" -- "we want

21   to produce the entire file," which would presumably include

22   CSAM, and Verizon saying, "That's what we want," and me saying,

23   "Where is the basis in the law for me to do that?"  So I don't

24   know the best way to move forward here because everybody's on

25   different pages, communicating different things.

1        This is obviously a very sensitive topic and

2    sensitive content, and I want to make sure I'm making the right

3    rulings, but I don't even know if we're all on the same page to

4    start.

5        MR. ROBERTS:  Your Honor, may I?

6        THE COURT:  Yes.

7        MR. ROBERTS:  There is no child sexual abuse material

8    on this phone.

9        THE COURT:  Well, all I know is what I read in

10   Mr. Carson's response that says that he has material, that his

11   people believe there's child sex -- that they believe that it

12   is sex abuse material.

13       MR. ROBERTS:  Your Honor, that --

14       THE COURT:  I'll hear from him.  I don't need you to

15   make his argument.

16       MR. ROBERTS:  So in the related case, Your Honor, we

17   had sued St. Johns County.  And the images that were charged

18   with child sexual abuse material, the plaintiff provided a

19   document, affidavit, age-verification information, from the

20   website where two of the three charged images were from.  And

21   that also included age information on the third.

22       Those charges were immediately dropped.

23       There is no evidence, Your Honor, that there's

24   anything else on this phone that represents child sexual abuse

25   material.

1          As it pertains to Verizon, Your Honor, there were two

2   images that were flagged --

3          THE COURT:  Okay.

4          MR. ROBERTS:  Okay.  Sorry.

5          THE COURT:  Let me -- let me direct you to the

6   response that was -- or the motion for the protective order

7   that was filed by Mr. Carson.

8          MR. ROBERTS:  I have it right here, Your Honor.

9          THE COURT:  You have it?  Great.  Okay.  In that

10  motion Mr. Carson states, pretty unequivocally --

11         MR. ROBERTS:  Right.

12         THE COURT:  -- that there is -- there are thousands

13  of images, many of which that St. Johns County Sheriff's Office

14  believe are CSAM and that contain people of indeterminate age.

15         Do you see that in there?

16         MR. ROBERTS:  I do, Your Honor.

17         THE COURT:  Okay.  So I don't understand what you're

18  saying -- there is no CSAM -- if Mr. Carson is telling me that

19  law enforcement believes it to be CSAM.

20         MR. ROBERTS:  Well, I suppose that goes to the heart

21  of the related case.  But I do not believe Mr. Carson has any

22  basis to say that there is child sexual abuse material on this

23  phone.

24         THE COURT:  Okay.  Well, I look at the criminal

25  statutes, right.  When I start at square one and I have

1    somebody telling me, "I want to release all this information

2    but there could be CSAM, so, Judge, you figure out a way to

3    release it," the first thing I do is I go to the criminal

4    statutes, the state of Florida statute and the federal statute,

5    which would have carveouts for when it is legal to possess

6    child sex abuse material.

7            I see no carveout in either one of those statutes,

8    statute -- Chapter 827.071 or Chapter -- hold on one second --

9    or 18, United States Code, 2252, that would cre- -- that would

10   relate to civil litigation.

11           MR. ROBERTS:  There is none, Your Honor.

12           THE COURT:  Correct.

13           MR. ROBERTS:  But the --

14           THE COURT:  But why are you arguing for the release

15   when you don't want it to be released?  I'm confused.

16           MR. ROBERTS:  I'm not arguing for the release, Your

17   Honor.

18           THE COURT:  Okay.

19           MR. ROBERTS:  I'm saying, but Mr. Carson produced it

20   to me in the civil discovery.  I --

21           THE COURT:  Again, that's not my case.  That's not

22   what I'm doing here.

23           MR. ROBERTS:  I mean, Your Honor, the only evidence

24   is that a Detective Preston, who's a defendant, who has zero

25   training in determining the age of individuals, eyeballed this

1  photograph and said, "I think that that's someone who's under

2  18."

3          THE COURT:  But we're talking about thousands of

4  images, allegedly.

5          MR. ROBERTS:  Well, Your Honor, I --

6          THE COURT:  I mean, we're not talking about the heart

7  of the case --

8          MR. ROBERTS:  And the heart of the case --

9          THE COURT:  -- we're talking about the issue that is

10 before me today --

11         MR. ROBERTS:  And if I can, Your Honor.

12         THE COURT:  -- which is whether or not and in what

13 capacity St. Johns County should produce evidence from your

14 client's phone based on the criminal investigation.

15         MR. ROBERTS:  I do not believe that they should.

16         THE COURT:  Okay.  But your filing tells me -- I hear

17 what you're saying, that you don't believe they should.

18         MR. ROBERTS:  Correct.

19         THE COURT:  Okay.  Because you believe it's not

20 relevant.  Arguably, I -- let's just say for the sake of

21 argument I disagree with you.

22         MR. ROBERTS:  Okay.

23         THE COURT:  I think there are some things based on

24 Verizon's response that are relevant.  And I can say that

25 pretty confidently based on everything I've read.

1      Wait.

2          So my next question to you would be:  Based on what

3  you filed, which said, "We have agreed to narrow things down

4  and this is what I object to and I don't object to" -- so

5  presumably you have agreed with the other side to narrow down

6  the request and you believe some are okay and some are not

7  okay.

8          MR. ROBERTS:  Yes.

9          THE COURT:  I am okay -- my next step would be

10  looking at the ones that you don't think are okay.  So that's

11  what I want to talk about, the ones that you don't think are

12  okay.

13          MR. ROBERTS:  Yes, Your Honor.

14          THE COURT:  And the ones that you don't think are

15  okay I see as 1, 2, 3, 4, 6, 10, and 11, based on your filing,

16  which is at page 2 of your document.  I think you say,

17  "Plaintiff objects to the data/documents requested in 1, 2, 3,

18  4, 6, 10, and 11," okay.

19          But my fir- -- my next question is this is a list

20  that you have provided to me that you say defendant has

21  narrowed the scope of the request to.

22          So are we in the same universe and all on the same

23  page if I make rulings based on 1 through 11?

24          MR. ROBERTS:  Your Honor, this was the list that I

25  got from the defendant.  I'll have to look to them to see if

1    they agree that it is still the list that we agreed to.

2              THE COURT:  Okay.

3              MS. SIEKKINEN:  Yes, Your Honor.  And to the extent

4    that you found Verizon's filing in summary of that to be

5    confusing, we were basically summarizing the --

6              THE COURT:  Just stand up when you speak.  Thank you.

7              MS. SIEKKINEN:  Sorry.

8              THE COURT:  Local rules.

9              MS. SIEKKINEN:  We're basically summarizing the

10   remainder of the list into those buckets --

11             THE COURT:  Okay.

12             MS. SIEKKINEN:  -- right.  But yes, that list is what

13   we want, right.  And to be clear, when we sent that list, that

14   was in the context specifically of the intra-party discovery

15   dispute concerning, you know, we -- as you -- I'm sure you

16   read, we requested the image of the device directly from

17   plaintiff, and that's why we're here at all, but. . .

18             THE COURT:  Okay.  So -- thank you.

19             Okay.  So 1 through 11, we agree that's our universe,

20   which is helpful to me.

21             MS. SIEKKINEN:  Uh-hmm.

22             THE COURT:  Okay.  So Mr. Roberts, you can start to

23   talk to me about why you think that No. 1 -- why you object to

24   the categories that you object to.

25             MR. ROBERTS:  Yes, Your Honor.

1           THE COURT:  Okay.

2           MR. ROBERTS:  So No. 1 is search terms used for web

3     searches.  This is, from the plaintiff's perspective, an

4     overbroad --

5           THE COURT:  Okay.

6           MR. ROBERTS:  -- request.  It requests documents for

7     any and all search terms used for a two-year period by my

8     client.  It's --

9           THE COURT:  I am inclined to agree with you, that it

10    is overbroad.  I believe that there are search terms that would

11    be relevant, but I think one that is requesting everything is

12    overly broad.  So I am in agreement with you on No. 1.

13          MR. ROBERTS:  No. 2, Your Honor, is the same

14    argument.  It's all websites visited, including subpages on

15    those websites.  It's. . .

16          THE COURT:  Okay.  I do think there is an ability for

17    defendant to articulate something that is more particularized

18    than just "all websites visited over two years."  But I do

19    believe, again, that I think there are some that would be

20    relevant.  I don't believe the request in and of itself -- I

21    think the request is overly broad, but I do not believe the

22    request is in the world of not being relevant.

23          Okay.  No. 3.

24          MR. ROBERTS:  Images and videos depicting nudity,

25    pornography, or sexual activity of any kind.

1          Your Honor, the issue -- the central issue, Your

2    Honor, we're trying to get to in this case is a very narrow one

3    in that there are two CyberTip reports --

4          THE COURT:  Right.

5          MR. ROBERTS:  -- that are at issue.  And attached to

6    each CyberTip report is the single image.

7          THE COURT:  Correct.

8          MR. ROBERTS:  The plaintiff looks at relevance in

9    terms of what would tend to prove or disprove a material fact

10   or a defense in the case.

11         THE COURT:  Correct.

12         MR. ROBERTS:  Other pictures of other models in other

13   time periods would not tend to prove or disprove whether or not

14   a model -- let's say the January or the October -- was

15   prepubescent or pubescent.  It wouldn't tend to prove anything

16   about the images that are at issue in this case.

17         The defendant seems to suggest that what the

18   plaintiff is alleging is something more akin to a generalized

19   defamatory statement that he has viewed age-indeterminate

20   images.  And that's simply not what the case is about.

21         THE COURT:  Right.  I know the case is about these

22   two images, obviously.

23         MR. ROBERTS:  Right.

24         THE COURT:  I do see, though, that the Verizon -- you

25   have pled defamation as a cause of action.

1          MR. ROBERTS:  Right.

2          THE COURT:  And Verizon wants to defend that cause of

3     action.

4          MR. ROBERTS:  Right.

5          THE COURT:  And there are ways that you can defend

6     defamation, as is articulated in their brief, that, to me, I

7     believe some of these images would be relevant to.

8          MR. ROBERTS:  Well, so, Your Honor, what the

9     defendant -- I -- Verizon -- the plaintiff believes that

10    Verizon has done is conflate the issue of age-indeterminate

11    with apparent child sexual abuse material.  And that is clearly

12    not the law of this case.

13          And the Court, in its order denying and granting the

14    original motion to dismiss, the (12)(b)(6), ruled that if all

15    the defendant has is an image of an age-indeterminate model,

16    that there has to be something more to trigger its requirement

17    to report.

18          The plaintiff takes the defendant's argument as

19    though if there is another image on Mr. Lawshe's phone that

20    someone from Verizon determines to be age-indeterminate, that

21    somehow that vindicates the report of the CyberTip images.

22          And the plaintiff -- and I -- I can -- I cannot think

23    of a situation where if we're in trial and the plaintiff is

24    trying to prove that these were not apparent child pornography,

25    that the introduction of another image which a Verizon person

1    says is age-indeterminate would tend to prove or disprove any

2    of the material facts of the case.

3          THE COURT:  But I think that's going to the reporting

4    requirements issue and not necessarily to the defamation

5    component.

6          MR. ROBERTS:  Well, the defamation component is the

7    statements included in the CyberTips, which are that the

8    plaintiff was in possession of a prepubescent -- an image of a

9    prepubescent minor in January and a pubescent minor in October.

10   Those statements are either true or not true.  Plaintiff

11   certainly thinks that they are not true.

12         The introduction of another image that was not

13   reported or -- just wouldn't tend to prove or disprove whether

14   or not those are true statements contained within a CyberTip

15   report.  And so, you know, that seems to be the issue.

16         And I tried to imagine -- we conferred -- is -- you

17   know, there are -- unfortunately, or fortunately, any 18, 19,

18   20, 21-year-old is age-indeterminate.  I mean, there's no way

19   to look at someone and say, "Oh, you're 19" or, "You're 17."

20   There's just no way to look at someone and say that.

21         THE COURT:  I mean, I think in some ways that's

22   really helpful to your opposing counsel --

23         MR. ROBERTS:  It may be, but --

24         THE COURT:  -- candidly.  I mean, you know, I think

25   we can all agree about why we have the policy of prohibiting

1 the possession and the exchange of child sex abuse material,

2 correct?

3         MR. ROBERTS:  Absolutely.

4         THE COURT:  Okay.  And so what you're saying to me is

5 that it's not clear whether or not it's child sex abuse

6 material, right?

7         MR. ROBERTS:  It's -- what I'm saying is there's no

8 evidence to support that it is child sexual abuse material.  I

9 mean, simply -- you can go on any -- you can go onto Netflix or

10 any sort -- and watch -- and look at someone and there could be

11 nudity, or there could be nudity on a website.  The simple fact

12 that someone appears to be of an indeterminant age does not

13 mean that it's child sexual abuse material.

14         THE COURT:  Okay.

15         MR. ROBERTS:  I mean -- and so if that's the way this

16 case plays out and we're trying this case and we say, "Okay.

17 This is the image in October; this is the image in January,"

18 and then Verizon's allowed to come up, say, "Well, look at this

19 image from another time," is the plaintiff -- does the

20 plaintiff then have to --

21         THE COURT:  I think that's the -- that goes to -- and

22 I'll let your colleague talk about this too.  I guess my point

23 is I see that there is a -- you know, there is a way to defend

24 a defamation case under Florida law where you're saying that,

25 look, this is -- that, kind of, truth, or that apparent, you

1    know, is a truth to defamation.

2         If I understand Verizon's argument correctly, they're

3    saying, "Look, if there is this information on his device, that

4    is true.  Therefore, that's a defense to defamation."

5         MR. ROBERTS:  So, Your Honor, the way Verizon -- and

6    I'm sure you're familiar with this, is they've already scanned

7    all of the images that we're talking about.  And the only two

8    images that were flagged against a database are the two images

9    that we're talking about.

10        Law enforcement has already gone through these images

11   and charged the images that they believed were child sexual

12   abuse material.

13        THE COURT:  Okay.

14        MR. ROBERTS:  So --

15        THE COURT:  Well -- and I'll talk to Mr. Carson about

16   that specifically.

17        MR. ROBERTS:  And I -- Your Honor -- and so what I --

18   if -- and this is -- if there is another image on the phone

19   that Verizon can prove is child sexual abuse material, or the

20   defendant could prove -- but no one has ever suggested that

21   that is the case.  And that could be the case for anyone who

22   has ever looked at pornography.  There's no evidence or

23   suggestion that there is anything else on his phone that is

24   illicit or illegal.

25        And just the mere possibility that one of these

1    images -- let's say there's an image -- or what they suggest in

2    their motion is, is that they have an expert look through it

3    and then identify an image that they think is

4    age-indeterminate.  Well, does the plaintiff then have to go

5    find the website, research the website, bring a records

6    custodian to show that that person is, in fact, an adult?  We

7    have to prove that every image is not child sexual abuse

8    material?

9            THE COURT:  No.  And again, that's not -- that's not

10   what we're doing here.

11           Right now, what I am doing, to bring it back to the

12   issue, is whether or not images and videos depicting nudity,

13   pornography, or sexual activity of any kind is appropriate to

14   be turned over by St. Johns County in this case.

15           MR. ROBERTS:  Right.

16           THE COURT:  And my concern is that based on

17   Mr. Carson's representation, there are -- there are things that

18   it's unclear whether or not it's CSAM.

19           And my -- I don't understand why you're fighting

20   against me on this because you don't it released -- you don't

21   want them to turn it over anyway --

22           MR. ROBERTS:  Well, it's just the truth, Your Honor.

23           THE COURT:  -- so why are you giving me so much

24   pushback on this?

25           MR. ROBERTS:  I'm not giving Your Honor pushback.

```
 1              THE COURT:  No, you are.  And I like -- like --
 2              MR. ROBERTS:  It's just the truth.  I'm just trying
 3    to defend my client on the truth, that like I know --
 4              THE COURT:  Okay.  Well, I need you to just --
 5              MR. ROBERTS:  -- whatever the result is --
 6              THE COURT:  I just need you to take a pause and
 7    realize that's not what we're doing here today.  What we're
 8    doing here today is trying to determine how and if St. Johns
 9    County needs to turn over the contents of the phone from the
10    criminal -- from the criminal investigation.  That is what
11    we're talking about here today.
12              And so I need to understand -- and again, maybe
13    I'll -- we'll put a -- put a pause in No. 3 as to why --
14    arguably you don't want any images or videos depicting nudity,
15    pornography, or other sexual activity of any kind turned over,
16    correct?
17              MR. ROBERTS:  We just -- yes, Your Honor.  Yes.
18              THE COURT:  Okay.  And so -- and so I will take that
19    as what you say there and then we'll go to 4, okay.
20              4, documents, including messages, emails, and notes,
21    and information related to the age, or seeming age, of any
22    individual depicted in the images or videos in Category 3.
23              What is your issue with that category?
24              MR. ROBERTS:  Your Honor, I apologize.  If there are
25    any emails that document the age, that -- that's -- we would
```

1   not object to that.

2           THE COURT:  Okay.  Okay.  Number -- okay.  It appears

3   to me that you don't have an issue with No. 5, right?  Because

4   you said your client put that in issue in the lawsuit, correct?

5           MR. ROBERTS:  Correct.

6           THE COURT:  Okay.  Thank you.

7           Okay.  No. 6, documents, including messages, emails,

8   and notes, and information related to pornography or

9   pornographic material.  You have an objection with regard to

10  that.  So what is your objection with regard to No. 6?

11          MR. ROBERTS:  It's the same as my objection to

12  websites and the images, Your Honor, that -- that -- adult

13  pornography, legal pornography, is protected.  It's private

14  information.

15          THE COURT:  So legal pornography is protected and

16  you -- and it -- your objections as to 1 and 2 were overly --

17  was being overly broad?

18          MR. ROBERTS:  Correct, Your Honor.  We would also,

19  though -- on those, it -- other than the websites that are at

20  issue in this case -- and there are two websites that are at

21  issue in this case.  Other websites that the plaintiff went to,

22  pornographic websites, don't bear on the issue about whether or

23  not the statements were false or defamatory in this case.

24          THE COURT:  Okay.  All right.  And then No. 10, a

25  list of all installed applications on the device.  What's the

1   objection?

2           MR. ROBERTS:  It's overly broad.  I -- all of the --

3   the apps that were just installed or applications on the device

4   for a two-year period?  It's the same as with the websites and

5   the search terms.  It's just overly broad.  It's not relevant

6   to whether or not the defamatory statements were true or

7   defamatory in nature.

8           THE COURT:  And then No. 11.

9           MR. ROBERTS:  Again, this is about any deleted data

10  on his phone.  And, Your Honor, just for reference, this is

11  prior to his arrest, because his phone was seized at the time

12  of his arrest.

13          The information regarding -- I mean, we all delete

14  things off of our phone.  Everything in our lives, you know, we

15  can delete or not delete.  It's just not relevant to the issues

16  in the case.

17          THE COURT:  Well, I mean, part of discovery, right --

18  the pur- -- I mean, again, you get to make relevancy arguments

19  as to what comes in and what doesn't come in at trial.

20          MR. ROBERTS:  True.

21          THE COURT:  But the standard for discovery is going

22  to be relevant and proportional.  And so I just need a little

23  bit more from you --

24          MR. ROBERTS:  So, Your Honor --

25          THE COURT:  -- because I think that arguing that

1  something isn't relevant --

2       MR. ROBERTS:  Correct.

3       THE COURT:  -- is a trial objection.

4       MR. ROBERTS:  Sure.

5       THE COURT:  That's not a discovery objection.

6       MR. ROBERTS:  Sure.  It -- I think the way to put it,

7  we think it's a fishing expedition, Your Honor.  I've litigated

8  for 20 years; personal injury cases, defamation cases.  I've

9  never had someone request the entire download of my client's

10 phone.  And that's what's going -- that's what's happening

11 today.

12      And it only exists because of the false allegations

13 against my client.  I mean, people wouldn't -- don't carry

14 around downloads of their phone.  I never -- but let's imagine

15 that didn't happen.

16      THE COURT:  Well, I mean, that's right, the reason

17 that they're requesting it is because it exists as a result of

18 a criminal investigation.  In most civil cases you're not going

19 to make that request because the entire download doesn't exist.

20      MR. ROBERTS:  Well, and -- but I -- all of my clients

21 have phones.

22      THE COURT:  Sure.

23      MR. ROBERTS:  And I've never gotten a discovery

24 request where a defendant said, "Download your entire phone and

25 give it to us."

1          THE COURT:  Well, I think you would object as that

2    being overly broad, and you would also object because there's

3    not -- how would one do that?

4          MR. ROBERTS:  Well, I mean --

5          THE COURT:  It's the Cellebrite technology --

6          MR. ROBERTS:  Sure.

7          THE COURT:  -- that enables it to happen here.  It

8    doesn't typically exist in civil cases.

9          MR. ROBERTS:  Well, yeah, I think that that's what --

10   I mean, that's the -- the gist of it, is you can hire an expert

11   who could use Cellebrite and download that.

12         But yeah, I mean, that's -- and that's what we've

13   done.  We've objected it to being overbroad.

14         THE COURT:  Sure.

15         MR. ROBERTS:  And we're trying to cut out the

16   contours.

17         For example, I mean, the plaintiff has conceded that

18   the images that Mr. Lawshe was charged with -- and I think we

19   said this in our motion.  The images that he was charged with

20   are clearly relevant and clearly discoverable to the other

21   side.

22         THE COURT:  Well, and everybody has them.

23         MR. ROBERTS:  Everybody has those, Your Honor.

24         THE COURT:  Doesn't have them?

25         MR. ROBERTS:  Yeah.

1           MS. SIEKKINEN:  We do not.

2           THE COURT:  You don't have the images that he was --

3     the images that he was --

4           MS. SIEKKINEN:  (Inaudible) images.

5           THE COURT:  Oh, you just mean the two -- not -- oh,

6     the two images.  We're talking about the charged images.

7           MS. SIEKKINEN:  Yeah, Your Honor, the -- I do not

8     believe that we have -- have received -- and I can understand

9     why that is the case -- the -- they're actually under seal in

10    the related case now pursuant to the motion for summary

11    judgment.  But the -- I believe there are three that were

12    charged.  They are distinct from the two images that were

13    connected to NCMEC CyberTip reports.

14          THE COURT:  Okay.

15          MR. ROBERTS:  And Your Honor, so we don't object to

16    the production of those documents.

17          THE COURT:  Do you have those?

18          MR. ROBERTS:  I do have those, Your Honor.

19          THE COURT:  Have you produced those to Verizon?

20          MR. ROBERTS:  Well, I don't know that there was a

21    request for those, but --

22          MS. SIEKKINEN:  Yeah, the entire criminal file.  I

23    would assume that that would be within there.

24          MR. ROBERTS:  So, Your Honor, yes, we -- and I -- we

25    have not argued about that.  We haven't had that conversation,

1   but yes, we would absolutely produce those documents.

2           I'm just trying to let the Court know that, like, we

3   have attempted -- so yeah, we can certainly understand how the

4   other charged images would be relevant, you know, in the

5   defenses of the case.  But other adult images of pornography --

6   my client has acknowledged that he possessed the images in

7   question.  St. Johns County has had the opportunity to look

8   through all the images.  We don't think that just any

9   pornographic image would be -- we think that scope is just way

10  too broad to be relevant in this case, for the scope of

11  discovery in this case.

12          THE COURT:  Okay.  All right.  So you've kind of

13  talked me through your 11 -- your position on the 11 things.

14  I'm going to hear from Verizon and then I'm going to talk to

15  St. Johns County.  Thank you.

16          Go ahead.

17          MS. SIEKKINEN:  Thank you, Your Honor.  Just a couple

18  things to clarify.  I just want to clarify that it's certainly

19  not true that Verizon has scanned every image or video that

20  was -- that's on the Cellebrite extraction.  The Verizon cloud

21  only scans images that are uploaded to the Verizon cloud.  That

22  is certainly not extensive and not -- not co-extensive with

23  everything that could be screenshotted or downloaded or saved

24  locally to the device.  It's a much bigger universe, okay.  And

25  certainly -- so that the idea that we know everything that was

1    already there is just not correct, just to clarify.

2           And just another thing.  I believe Your Honor

3    understands what our relevancy argument is with respect to the

4    pornographic material, which I appreciate that you carefully

5    considered our response.  But the context of the report is

6    really important here, the context of the two reports.

7           Verizon is obligated to report apparent child

8    pornography, right.  So the gist or the sting of both of those

9    reports is that plaintiff was in possession of an image of

10   child pornography.  So any of the images on the phone or on the

11   extraction are apparent child pornography.  And the Court has

12   deferred consideration of what "apparent" means, which that's

13   fine.

14          If any of those images are apparent child

15   pornography, then that's substantial truth, and that's enough

16   to defend our defamation claim.  So certainly they are

17   relevant.  And that's -- that's just important context for what

18   those reports actually are.

19          But Your Honor, I'll -- I'll --

20          THE COURT:  So you're saying -- I just want to make

21   sure I understand what you're saying.  So you're saying under

22   the substantial truth doctrine or defense to a defamation claim

23   is that if there are any images -- I'm trying to make sure I

24   understand this.  If there are any images that the defendant --

25   or if the plaintiff possessed any images of CSAM, apparent

1  CSAM, on his phone, and those images were not the ones that

2  came through Verizon or were reported by Verizon, they were any

3  image at all, that that is a defense to essentially the

4  defamation claim?  Is that what you're saying?

5      MS. SIEKKINEN:  Yes, Your Honor.  Yes, Your Honor.

6  That would be the gist or the sting of the statement is

7  essentially true; that he was, indeed, a person who was in

8  possession of apparent child pornography or child sexual abuse

9  material, CSAM.

10      THE COURT:  Okay.  I'm going to put a pin in that and

11  I'm going to hear from Mr. Roberts on his response to that.

12      MR. ROBERTS:  We completely disagree, Your Honor.

13  First of all, it is important what "apparent child pornography"

14  means.  But I believe -- and this is part of our motion for

15  partial summary judgment.  Verizon defines "apparent child

16  pornography" as anything that may or may not be interpreted as

17  a minor.  So one person could look at it and say, "Oh, that's

18  an adult"; one person could say, "Oh, well, maybe she's under

19  the age of 18."

20      There are very specific rules about what is criminal

21  and not criminal.

22      THE COURT:  Sure.  But my question goes to the

23  defamation defense.

24      MR. ROBERTS:  Right.  No, so --

25      THE COURT:  And so the substantial truth doctrine

1   says -- you know, your colleague says that if your client

2   possessed any apparent CSAM -- whether or not it came through

3   the Verizon cloud, whether or not Verizon reported it, if your

4   client had any apparent CSAM in his possession, then under the

5   substantial truth doctrine, that renders your defamation claim

6   unsustainable.  You cannot recover on it.

7           MR. ROBERTS:  Your Honor --

8           THE COURT:  And to me, in the discovery world --

9           MR. ROBERTS:  Yeah.

10          THE COURT:  --  where you are relevant and

11  proportional to a claim or a defense, I see that that could be

12  something that is relevant to a defense of Verizon.

13          Now, I need to understand -- I don't see any -- you

14  know, they cite law in their brief, obviously.  I don't have

15  anything from you that tells me that that defense in that way

16  is not applicable to them.

17          MR. ROBERTS:  Your Honor, the analogy that they use

18  is the robber -- actually, the case that they cite, rather than

19  the analogy, is a case where someone was about to be charged

20  with a criminal indictment.  And a newspaper reported that they

21  had been charged and it hadn't actually occurred yet, and then

22  subsequent to the publication it occurred.

23          And what the Court said was, well, I mean, you know,

24  the fact that it was defamatory in the criminal charge is

25  substantially the sting of what you're saying.

1           This idea that other images in this case -- because

2    very specific images -- image and very specific allegations

3    contained in the CyberTip report --

4           THE COURT:  But let me ask you this.

5           MR. ROBERTS:  Yeah.

6           THE COURT:  Bigger picture.  Is your client

7    possessing apparent CSAM a defense that they would be entitled

8    to -- would him possessing apparent -- possessing apparent

9    CSAM, whether or not it was the CSAM that Verizon reported,

10   wouldn't that be relevant to a defense of substantial truth, an

11   affirmative defense, a defense that they are asserting against

12   the defamation claim?

13          MR. ROBERTS:  I don't think so, Your Honor.

14          THE COURT:  Why?

15          MR. ROBERTS:  Well, it gets to what apparent CSAM

16   means, Your Honor.  But, I mean, I suppose if according to one

17   definition my client had apparent child -- you know, according

18   to NCMEC's definition of apparent child pornography --

19          THE COURT:  Yeah.

20          MR. ROBERTS:  -- yeah, I mean the case would never

21   have been brought.  It would be an untenable case.  You

22   wouldn't -- yes, I mean, if there was obviously prepubescent

23   images on his phone --

24          THE COURT:  It doesn't have to be obvious, it just

25   has to be apparent.

```
 1              MR. ROBERTS:  Well, according to NCMEC, it's obvious
 2    prepubescent or a known minor.  That's the definition of
 3    "apparent" to NCMEC.
 4              THE COURT:  For CSAM.
 5              MR. ROBERTS:  Yeah.  And so, I mean, if that were the
 6    case, sure.  I mean, there'd be lots of other problems with the
 7    case if he did possess those sorts of things on his phone.  I
 8    don't --
 9              THE COURT:  Your argument is that it is relevant, but
10    there aren't any?
11              MR. ROBERTS:  Well --
12              THE COURT:  It would be relevant --
13              MR. ROBERTS:  -- yes, and --
14              THE COURT:  -- but there aren't any.
15              MR. ROBERTS:  And Verizon's argument is, "We don't
16    really have any proof that there is, but there might be."
17              THE COURT:  Well, no, Verizon's argument is --
18              MR. ROBERTS:  And that's a fishing expedition.
19              THE COURT:  -- "We have this phone download that has
20    thousands of pornographic images, presumably, of which
21    St. Johns County is saying there's apparent CSAM on there" --
22              MR. ROBERTS:  Well --
23              THE COURT:  -- "and so that's why we're mak-" --
24    that's how I read their argument.
25              MR. ROBERTS:  What St. Johns County says is that they
```

1  are over -- and I think that the Cellebrite, it's maybe a

2  decade of pictures, like it's a longer period of time than what

3  the defendant has asked for --

4           THE COURT:  Okay.

5           MR. ROBERTS:  -- in terms of the time frame.

6           THE COURT:  Well, that's good.

7           MR. ROBERTS:  But the -- I've lost my train of

8  thought.  But the -- gosh.  I can't remember what I was saying.

9           THE COURT:  So you were saying that the Cellebrite

10 extraction, that -- you were saying that it was a very long

11 period of time that they have images --

12          MR. ROBERTS:  So --

13          THE COURT:  -- but that the relevant time period of

14 images --

15          MR. ROBERTS:  So what St. Johns County says, the way

16 I interpret it, and I think the way Mr. Carson would say this,

17 is there may be a lot of images of age-indeterminate

18 pornography, which encapsulates large quantities of legal

19 pornography, and --

20          THE COURT:  But it also could have illegal

21 pornography.

22          MR. ROBERTS:  It's possible.

23          THE COURT:  Sure.

24          MR. ROBERTS:  I mean -- I mean, it's possible to not

25 know -- you know, you go to a public website and something says

1    it's adult pornography.  I mean, sure, somebody could have lied

2    about their age.  There are possibilities.

3         What they say is they believe -- the only testimony

4    in their case is that there was a -- and I'm going to use --

5         THE COURT:  Well, I'm going to -- I'll let Mr. Carson

6    talk about his basis --

7         MR. ROBERTS:  Right.

8         THE COURT:  -- rather than you, because it's really,

9    again, very narrow to this -- I'm not talking about the other

10   case, I'm just talking about with regard to this issue.

11        So what I heard you saying with regard to my question

12   is that, yes, it would be relevant to a defense, but that there

13   isn't any apparent CSAM on your client's phone; therefore, that

14   would make it not relevant.

15        MR. ROBERTS:  Your Honor, I don't believe there's any

16   reason to believe that there is actual or apparent child sexual

17   abuse material on my client's phone.

18        THE COURT:  Okay.  I hear -- I've heard you --

19        MR. ROBERTS:  And so it's a fishing expedition, Your

20   Honor.

21        THE COURT:  Mr. Roberts, I have heard you say that a

22   million times, okay.

23        MR. ROBERTS:  Yeah, yeah.

24        THE COURT:  I get it.  No one is going to say after

25   today's hearing that your client has CSAM.  Like that's not the

1    point of today.

2              MR. ROBERTS:  Okay.

3              THE COURT:  I just need you to like take a step back

4    and realize I'm trying to resolve very specific issues today.

5    I am not trying to get at the heart of whether or not your

6    client possessed child sex abuse material, okay.

7              MR. ROBERTS:  Sure.

8              THE COURT:  What I'm trying to get at is what is

9    relevant and proportional in the world of discovery, which is

10   where we are.  And so there are certain things that I think are

11   relevant and proportional.

12             With regard to the videos and images, Verizon says,

13   "These are relevant and proportional because they go directly

14   to the substantial truth defense that we are trying to assert

15   in response to the defamation claim."

16             And so my question for you was, is that a valid -- is

17   that a defense that is available to them --

18             MR. ROBERTS:  Right.

19             THE COURT:  -- in this context?

20             MR. ROBERTS:  And I don't think that -- if what

21   Verizon is saying is, "Our expert's opinion that an image meets

22   Verizon's definition of 'apparent child pornography'" --  I do

23   not believe that that opinion or that testimony that would be

24   elicited from this evidence would be relevant to a defense even

25   of substantial truth.

1    The allegations in this case are the CyberTips in

2    question.  That is what the discovery has been about.  That is

3    what the case is about.  Are these true allegations or are they

4    not true allegations?

5    What Verizon contemplates is having their expert look

6    at these images and determine whether or not in that person's

7    opinion they meet Verizon's definition --

8    THE COURT:  And this sounds like a *Daubert* motion to

9    me.  This doesn't sound like necessarily a discovery objection

10   necessarily.

11   MR. ROBERTS:  Other than it's just a fishing

12   expedition, Your Honor.

13   THE COURT:  Okay.  But --

14   MR. ROBERTS:  There's just no reason to think --

15   THE COURT:  I hear you.  Well, and again, it may be,

16   but it's not like Verizon has no evidence.  Verizon has

17   St. Johns County saying, "We have this download."

18   Look, if she was asking your client for his phone and

19   there was not this download that existed and you said, "We

20   don't have anything" and she kept pressing the issue, that, to

21   me, would be more of a fishing expedition because there's no

22   evidence that it exists, and so then it's just trying to get

23   information.

24   But we're in a bit of a different place.  And for

25   better or for worse, we are in a world in which there is a

1    complete Cellebrite extraction of your client's phone.  Verizon

2    is asking for information from that extraction because it's

3    saying your client is alleging that they defamed him.  And

4    they're trying to assert defenses to defamation.  And

5    substantial truth is a defense to defamation.

6              And so, again, I'm not saying whether or not it's

7    admissible.  I'm saying whether -- I'm trying to get to the

8    point of whether or not it is even relevant and proportional in

9    the discovery world.  This is like battle one of five.

10             MR. ROBERTS:  Right, Your Honor.  And we just don't

11   think --

12             THE COURT:  And so -- and I get your point, but the

13   bar here is going to be lower than it is the closer we get to

14   trial.

15             MR. ROBERTS:  I just don't see, Your Honor, how any

16   testimony about what another image -- how that shows that this

17   image was substantially -- that that allegation that they made

18   is substantially true as a defense.  Like it doesn't make --

19   the gist of what they said, that the January image was

20   prepubescent or the October image was a pubescent minor, it

21   doesn't mean that the gist of that allegation was true.

22             THE COURT:  Well, but I think --

23             MR. ROBERTS:  Not like the case that they cited.

24             THE COURT:  Okay.  And I think that is obviously --

25   we're way in the weeds on a very hyper-legal kind of argument

1    that I think will eventually be fleshed out more, I am
2    convinced.
3         But the way that Verizon frames it is that
4    substantial truth is a defense to defamation.  And the way that
5    the law kind of, at least my initial look -- again, I have not
6    done a super deep dive on this.  But the way that the law
7    describes substantial truth here would be that if your client
8    possessed other apparent CSAM that was not the subject to
9    Verizon's tips but was still -- he was in possession of it,
10   then the defamation claim -- that's a defense to the defamation
11   claim.
12        MR. ROBERTS:  And Your Honor can think of a lot of
13   situations where there have been defamation lawsuits and
14   someone has said, "Hey, you said I did this on this day."
15        It's not a defense to say, "Oh, but on another
16   occasion to another person you did something wrong."
17        And that's what Verizon is saying.  It has nothing to
18   do with the allegations --
19        THE COURT:  You're framing the allegation very
20   narrowly and Verizon is framing it more broadly, essentially.
21        MR. ROBERTS:  The --
22        THE COURT:  Arguably, right?  The defamation piece --
23        MR. ROBERTS:  Right.
24        THE COURT:  -- is that you -- your claim is that,
25   "You defamed me when you said this image was child

1    pornography."

2          And I believe -- and I guess what Verizon is

3    saying -- and again, I'll give your colleague a chance to

4    answer -- is that, "You defamed me when you said I possessed

5    child pornography."

6          MR. ROBERTS:  "When I possessed these images."

7          And in all of these defamation -- famous defamation

8    cases, right, they're not defended on, "Oh, yeah, but you" --

9    "you did these other things and that was bad, and so now we can

10   defend our defamatory comments by saying, 'yeah, maybe this

11   isn't true, but look at the other instances when you did

12   something wrong.'"

13         THE COURT:  But I think it all goes -- but again,

14   it's all in the world of possession of apparent CSAM.  That is

15   what we're talking about.  We're not talking about different

16   conduct; we're talking about the same conduct.

17         You're arguing that it only applies to the images

18   that are at issue, the October and January images.  And I think

19   Verizon's arguing that it applies more broadly.  I believe

20   that's what is happening here.

21         MR. ROBERTS:  I think that's correct.  And I think if

22   this was a case where Verizon had a -- you know, a system where

23   they were balancing these things and doing an investigation,

24   maybe these things would be more relevant, right.  "Oh, we have

25   a hit against a database.  Let's look at all of the images and

1    like let's do an investigation."  Then it may be more relevant

2    to the accusation.

3         THE COURT:  But I think that's what they're asking

4    for.  They're asking for the images so they can see more.

5         MR. ROBERTS:  But now it's after the fact, Your

6    Honor.  I'm saying if they had done that before, then we can

7    have an argument about, you know, what was relevant to an

8    investigation or what would you have done if you found another

9    image or things like that.

10        But in this case, the reporting is automated and it's

11   based on a hash match.  And they're going to allege a human

12   review.  But there's no contemplation of anything outside of

13   the image and the hash match.  There's no contemplation on

14   Verizon's part of any of the other factors that might go into

15   this.  And so we don't think it's rel- --

16        THE COURT:  Well, and again, I don't want to get in

17   the weeds on that right now because that's not what we're

18   talking about.

19        MR. ROBERTS:  But we don't think that that's -- that

20   other instances would be the substantial truth doctrine.  We're

21   just -- Your Honor is correct, they are -- they are -- they are

22   casting their allegations against my client as a general "you

23   are a pedophile" or "you are" --

24        THE COURT:  Oh, that's not what I hear them doing.  I

25   hear them saying, generally speaking, that "we" -- that "a

1  defense to our reporting the apparent CSAM" -- the images,

2  right -- "is that he was in possession of other images that

3  were apparent CSAM."

4        I don't think anybody, from what I've seen, is

5  casting aspersions at this point on your client.

6        MR. ROBERTS:  Well --

7        THE COURT:  Again, I am only talking about the

8  motions that have been filed and the way that we're litigating

9  them.

10        And so this is obviously a very complicated issue,

11  but, again, what I hear Verizon saying is they're not doing

12  this because of who your client is, they're doing this because

13  they have -- they believe they have a legal defense available

14  to them that this information is relevant and proportional to.

15  And that's why they are saying they should have it, I believe.

16        MR. ROBERTS:  I believe that's correct, Your Honor.

17        THE COURT:  Yeah.

18        MR. ROBERTS:  We just don't think that testimony --

19        THE COURT:  And you're --

20        MR. ROBERTS:  -- about another image has anything to

21  do with the complaint and the allegations in this case.

22        THE COURT:  Okay.  And I hear you on that, so thank

23  you.

24        Okay.  We talked about 1, 2, and 3.  So I think we're

25  now on Ms. -- you're going to have to say your name again for

1    me.

2            MS. SIEKKINEN:  Siekkinen.  That's all right.

3            THE COURT:  Siekkinen.  Ms. Siekkinen.  I just don't

4    want to say it incorrectly.

5            MS. SIEKKINEN:  No.  I appreciate that, Your Honor.

6            THE COURT:  So we've talked about 1 -- I mean, we've

7    talked about 1, 2, I believe, and 3.  Well, maybe we haven't

8    even gotten to the weeds on them; we were just talking very

9    generally.  Where were we?

10           MS. SIEKKINEN:  Your Honor, I'm happy to continue to

11   discuss --

12           THE COURT:  Yes.

13           MS. SIEKKINEN:  -- No. 3.

14           THE COURT:  Yes.

15           MS. SIEKKINEN:  All right.

16           THE COURT:  Please stand when you address the Court,

17   though.

18           MS. SIEKKINEN:  Yeah, certainly, Your Honor.  As I

19   said before, the context of the reports, right, of the two --

20   only two -- allegedly false statements that were made to NCMEC,

21   the context of them are important.

22           The only -- the only time that Verizon has a duty to

23   report is when there is apparent child pornography, right.

24   It's not just what -- what -- as you know, the definition of

25   "apparent" was left open by the Court.  There's two different

1  interpretations of that.  And it doesn't need to be decided

2  today.

3       But to the extent it's still a live issue, our

4  definition of "apparent" is relevant and important to informing

5  the issues of the case and the issues of what is proportional

6  or not to Verizon's defense.  So certainly we take the view of

7  "apparent" that it is -- it seems to be, but may or may not be,

8  right, or is suspected CSAM.  Then the way we have described

9  the -- No. 3 is certainly relevant and proportional in the

10 instant case to our defense.

11      THE COURT:  Well, what do you say in response to the

12 issue that this could create -- which Mr. Carson seems to

13 intimate -- the actual production of child pornography?

14      MS. SIEKKINEN:  Yes, Your Honor.  I am very

15 appreciative of that sensitivity, which is why Verizon has --

16 we research and we presented Your Honor with two cases where

17 courts have grappled with this issue, or with potential ways to

18 solve for this issue, including the needs of civil litigants.

19      And I'll direct you specifically to -- you know, we

20 cited *MG Freesites* and the *Doe vs. Board of Education* cases.

21 They grappled with how this can -- how we can investigate and

22 even possibly produce this material in civil discovery.

23      And courts have not foreclosed the type of protocol

24 that we have laid out, right, where a reputable third party, on

25 site at SJSO, right, so that we're not -- we're not going far

1    afield from 3509, right, which requires it to be on site, and

2    then they would -- PNG-Cyber would then review the Cellebrite

3    extraction, okay.

4              They would -- to the -- they would export anything

5    that is responsive from what Your Honor believes -- or sets out

6    as part of the protective order.  Anything that is -- could be

7    apparent CSAM would be redacted, right.  So that means

8    genitals.  Anything that is -- that causes it to meet the

9    definition of child pornography would then be redacted and so

10   then it's no longer child pornography.

11             That could then be produced to Verizon without

12   running afoul of the underlying laws.

13             My understanding is that the SJSO has no problem,

14   from their perspective, with this protocol in place.

15             THE COURT:  But does that protocol -- the criminal

16   statutes that allow for an exception -- well, first of all, I

17   would want you to tell me the criminal statutes that you

18   believe are at play here, and secondly, how this conduct would

19   fit into an exception that would allow that information to be

20   provided to the third party.

21             Essentially what you're doing is asking SJSO to

22   provide to a third party potential child sex abuse material.

23             MS. SIEKKINEN:  What we are asking them to provide to

24   a third party would be -- in terms of exporting, right, in

25   terms of exporting --

1          THE COURT:  Yeah, giving it to them.

2          MS. SIEKKINEN:  -- to Verizon would be redacted, so

3   it's no longer child pornography.

4          THE COURT:  Who's redacting it?

5          MS. SIEKKINEN:  PNG-Cyber.

6          THE COURT:  The third party?

7          MS. SIEKKINEN:  Okay.  Yes.

8          THE COURT:  So how do I get to a point where

9   St. Johns is able to give this information a third party?

10  Where is the legal basis for that for me?

11         MS. SIEKKINEN:  Right.  From, 18, U.S.C., 3509(m).

12         THE COURT:  Okay.  And read it to me, please.

13         MS. SIEKKINEN:  Okay.  So I'll pull that up for you,

14  Your Honor.

15         THE COURT:  Thank you.

16         MS. SIEKKINEN:  Okay.  3509(m), Prohibition on

17  Reproduction of Child Pornography.

18         THE COURT:  Where are we?  3509 --

19         MS. SIEKKINEN:  (m).  Now, this is -- I'll represent

20  that this is specifically in the context of a criminal

21  proceeding.

22         THE COURT:  Correct.

23         MS. SIEKKINEN:  Okay.  But there -- the -- the cases

24  that we cite --

25         THE COURT:  Yes, which are from what jurisdictions?

1          MS. SIEKKINEN:  They're not from this jurisdiction,

2    you're correct.

3          THE COURT:  Correct.

4          MS. SIEKKINEN:  Correct.  But they're from the

5    District of New Mexico, and then I've got -- actually, then

6    I've got the Northern District of Alabama, which is the

7    *Freesites* case, which is within the Eleventh Circuit.

8          THE COURT:  Sure.

9          MS. SIEKKINEN:  Okay.  Now, the point of those cases

10   is that they took these principles, and understanding the need

11   of parties in civil discovery where these issues are in play,

12   okay -- and in those cases it was victims of CSAM, of alleged

13   CSAM, but it applies also here, right, where we have needs for

14   civil discovery and we're trying to balance those needs against

15   the obvious -- Verizon is committed to protecting children

16   online.  We don't want to revictimize children.

17         THE COURT:  Correct.  And my fear, right, is by doing

18   this -- which I have, again, no binding Eleventh Circuit case

19   that tells me this is the law.  The statute itself says it's

20   criminal.  Doesn't say anything about civil proceedings.  These

21   two courts have extrapolated civil proceedings from that, but I

22   don't have any Eleventh Circuit case that tells me that's what

23   I have to do here.

24         And so the way I look at this is the minimal needs

25   for these actual photos balanced against the potential that

1    this is actually not legal, one.

2          Two, that they're -- that these -- there's a chance

3    for these photos to be more widely disseminated.  Again, you're

4    saying it's not that big of a chance, but. . .

5          And three, further victimization of children by,

6    like, per- -- I have a very tough time with ordering -- without

7    somebody telling me that I have to do it, for civil litigation,

8    ordering somebody to produce what they believe is child sex

9    abuse material.

10         MS. SIEKKINEN:  As an initial -- you certainly don't

11   have any -- any precedent that's going to be preventing you

12   from doing so in a civil litigation proceeding.

13         THE COURT:  Well, but I have a criminal statute.  I

14   don't have any statute that tells me that I am permitted to do

15   this.

16         MS. SIEKKINEN:  But none of the criminal statutes say

17   you're not -- well, 2258A -- was it (g) -- yeah, 2258A

18   (g)(2)(vii).

19         THE COURT:  This is law enforcement.

20         MS. SIEKKINEN:  This is -- yeah --

21         THE COURT:  Correct.

22         MS. SIEKKINEN:  -- for law enforcement, right.  But

23   they would be permitted to produce, under a protective order,

24   right --

25         THE COURT:  But this isn't --

1    MS. SIEKKINEN:  -- if ordered by the Court.

2    THE COURT:  Then I -- I don't think -- but I think

3  this is for a law enforcement -- is the third party vendor law

4  enforcement?

5    MS. SIEKKINEN:  No.

6    THE COURT:  Correct.  So it would be law enforcement

7  producing it to a third party vendor that is not law

8  enforcement.

9    MS. SIEKKINEN:  Yes, the 2258A (g)(2) is not --

10  that's not -- that production is not limited to some other law

11  enforcement.  That's --

12    THE COURT:  Read to me what it says.

13    MS. SIEKKINEN:  Okay.  That -- it prohibits law

14  enforcement agency that receives a report from disclosing any

15  information contained in that report except in the following

16  circumstances.

17    And this is number (vii) specifically, "as ordered by

18  a court upon a showing of good cause and pursuant to any

19  protective orders or other conditions that the Court may

20  impose."

21    Okay.  So good cause would certainly be a discovery

22  need in a civil case.  That's essentially what these -- these

23  cases that have grappled with this, and including the *Freesites*

24  case, which is within this circuit, that grappled with this.

25  And that's specifically coming from the *Freesites* case.  You

1   know, there, there was balancing of the need for civil

2   discovery with these obvious sensitivities.  And it's clear

3   that these courts have also struggled with this, right.

4           But again, we're now going to be put -- what we would

5   like to avoid, and what we think that this protocol avoids, is

6   putting Verizon in the position of not being able to

7   substantiate its defense because plaintiff swears that it's

8   not, but that -- you know, we --

9           THE COURT:  Why wouldn't this be resolved by somebody

10  from St. Johns County testifying about what was on the phone?

11          MS. SIEKKINEN:  Well, that would be another way to

12  get -- to get an additional --

13          THE COURT:  And again, I do this in the criminal

14  context all the time, right.  I deal with child pornography

15  cases regularly.  And there are different ways that we get

16  information about what is on images without producing images.

17  There are reports of what the images are.  There is testimony

18  given about what was on the phone.

19          So what I'm trying to understand is, is having the

20  images -- again, you -- I think you have to understand how

21  these images are incredibly sensitive.  You're -- I mean,

22  arguably would you be asking to at some point try to show these

23  images to a jury?

24          MS. SIEKKINEN:  Certainly not unredacted images.

25          THE COURT:  I'm just asking you.

1           Right.  So you can understand what I'm getting at.

2           MS. SIEKKINEN:  I do.  Your Honor, I really do.  The

3   two images that are even the subject of this case are

4   disturbing to view, you know, even redacted, right.  But if we

5   were to go to a jury, I do not see a way around having to show

6   the images.  They have to be -- they would have to be shown.

7           THE COURT:  Well, but the images at issue in this

8   case have been determined to be adults.

9           MS. SIEKKINEN:  That's not actually correct.

10          THE COURT:  So it's not correct that they have been

11  determined to be adults?

12          MS. SIEKKINEN:  That is not correct.  There is

13  unsubstantiated and self-serving allegations that that January

14  image was at least an adult at the time, now -- or just barely

15  an adult at the time.  But that is not a hundred percent

16  substantiated, Your Honor.

17          But what we have done is we've redacted, you know --

18  images that are redacted that are no longer child pornography,

19  you know --

20          THE COURT:  Okay.

21          MS. SIEKKINEN:  Now we're getting out of the criminal

22  context and in those child pornography statutes.

23          THE COURT:  Okay.  So that's your response to No. 3.

24          Did you want to say something, Mr. Roberts?

25          MR. ROBERTS:  Yes, Your Honor.  In response to your

1   suggestion, I just want to point out that the forensic

2   detective has already testified in the related case about these

3   specific issues -- search terms, websites -- and characterized

4   the images as, you know, age-difficult, age-indeterminate, no

5   illegal searches, no illegal websites.  So that evidence does

6   exist.

7               That's all I wanted to say.

8               THE COURT:  Okay.  Thanks.  Okay.

9               So beyond those two courts, do you have any other

10  cases that you want me to look at where a court has ordered the

11  production of materials besides the two cases that you cited?

12              MS. SIEKKINEN:  Your Honor, we -- that was what we

13  found, and we don't have anything else.

14              THE COURT:  There's not a lot out there.

15              MS. SIEKKINEN:  There's not a lot.  And, you know, it

16  is a difficult topic, but, I mean, as I'm sure you know, and I

17  can tell that you know, it is an important topic overall.  This

18  is an important issue that we're -- that's at issue in this

19  case, you know.

20              THE COURT:  Which I understand.  And I also do

21  believe there are ways for Verizon to get its --

22              MS. SIEKKINEN:  Right.

23              THE COURT:  Beyond having the images in your

24  possession, I do believe there are ways for you to get evidence

25  in regarding these -- what was found on the plaintiff's phone

1  and the type -- the number of images, the types of images,

2  without actually having to possess potentially redacted child

3  sex abuse material.

4         MS. SIEKKINEN:  Your Honor, if I may just briefly.

5  Like the -- the officer in the case who testified in the

6  related case is not -- that's not at issue in this case just

7  yet, we haven't been able to get there, but to the extent you

8  have -- the extraction was made, you know, more than two years

9  ago.  Memories fade.  The point is we need -- we believe, and

10 we were -- we're aiming at getting material for our defense --

11        THE COURT:  Sure.

12        MS. SIEKKINEN:  -- not a fishing expedition.

13        THE COURT:  I'm not saying you're not going to get

14 any, but I'm just saying I'm not convinced that you need to get

15 potentially -- that I am comfortable, based on the precedent

16 that you have provided to me today, ordering the production of

17 potential child pornography to a third party for the purposes

18 of a civil lawsuit.

19        MS. SIEKKINEN:  Your Honor, one of the issues is that

20 SJSO has also said that it's burdensome for them to kind of

21 cull through it.

22        THE COURT:  And I'm going to talk to Mr. Carson about

23 that because that requires a very specific showing.  You can't

24 just say it's burdensome; you have to tell me why.

25        MS. SIEKKINEN:  Okay.

 1          THE COURT:  So I'm going to talk to Mr. Carson about
 2   that.
 3          MS. SIEKKINEN:  Understood.  But like the -- the --
 4   the -- relying on, you know, stale memory of the officer, who's
 5   probably done thousands of forensics investigations since then,
 6   I think puts us at a very distinct disadvantage.  Respectfully,
 7   Your Honor, we think that this is the most narrowly tailored
 8   way to get it at.  And thank you.
 9          THE COURT:  Okay.  But let me make sure I've gotten
10   your responses to all the categories --
11          MS. SIEKKINEN:  Oh, certainly.
12          THE COURT:  -- because this is just Category 3.  So
13   documents, messages, emails, and notes, and information related
14   to the age, or seeming age, of any individual depicted in the
15   images or videos of Category 3.  That might fall out if you're
16   not being asked -- if there's not a production with regard to
17   Category 3.  Or do you believe that there would be other things
18   that would be applicable?
19          MS. SIEKKINEN:  I think there would be other things
20   that would be applicable.  For example, you know, there's --
21   and I have no -- I do not know, but like, for example, if it's,
22   you know, a text message saying, like -- you know, describing
23   what he thinks the age of this individual is, that's relevant,
24   and that would fall under 3, right.
25          THE COURT:  Okay.

1           MS. SIEKKINEN:  Yeah.

2           THE COURT:  Okay.  And then documents, including

3     messages, emails, and notes, and information related to

4     pornography or pornographic material.  How does that -- how is

5     that, I guess, relevant and proportional here if we're -- and

6     what your colleague argued, that, you know, the information on

7     his client's phone was legal, and so his argument is that

8     because it's legal it's not relevant and proportional to

9     discovery in this case.  What would your response be to that?

10          MS. SIEKKINEN:  Well, I -- it's not at all determined

11    that all of the -- all of that material is legal, or is at

12    least not apparent CSAM, right.

13          There's a wide gulf between the parties, as I'm sure

14    you can tell, for example, you know, as to what is apparent

15    CSAM or what is visually suspect or potential or apparent CSAM

16    or what appears to be a minor.

17          For example, the redacted image that Verizon filed

18    and that's under seal in this case, the allegations from the

19    other side are that this is obviously an adult with the barest

20    of review; nobody could -- nobody reasonable could think any

21    different.  That's just preposterous, right.  And a slew of --

22    at least a dozen people have opined that it is -- appears to at

23    least depict a minor.  So putting that aside, right, there is

24    this disagreement as to what is or is not illicit here.

25          But documents, including messages, emails, and notes,

1    about pornography certainly goes to -- it -- not only does

2    it -- would it impeach his credibility, but he has testified --

3    plaintiff has testified that he only looked for definitely

4    adult material; he wasn't looking for anything else.  You know,

5    that goes to his credibility for sure if he -- if he is

6    engaging in messages that indicate otherwise.

7            THE COURT:  And was that testimony made during his

8    deposition?

9            MS. SIEKKINEN:  During his deposition in the related

10   case, right.  So if he testifies differently here, well, that's

11   a different issue too.  But that testimony is out there, that

12   he, you know -- so that is why that is relevant and -- for

13   discovery purposes here.

14           THE COURT:  And again, this is just discovery.  I

15   mean, clearly --

16           MS. SIEKKINEN:  Exactly.

17           THE COURT:  -- once you get your discovery, you then

18   try to put things into evidence, and that is a different

19   conversation --

20           MS. SIEKKINEN:  Certainly.

21           THE COURT:  -- before -- once, you know, the parties

22   get closer to trial, if that's what happens here.

23           Okay.  And then a list of all installed applications

24   on the device.  Why are you seeking installed applications?

25           MS. SIEKKINEN:  Installed applications goes to a

1   number of things:  the manner in which he used his phone.  Did

2   he, you know, engage in incognito browsing?  Which might hide

3   other evidence.  And we can ask about why that's there.

4          He also testified to there were maybe automatic

5   deletions on his device, and so, well, okay, does he have a

6   device that's automatically deleted things?  And why is that?

7          So that is why we want a list of all installed

8   applications.

9          And the -- I don't know, Your Honor, if -- I just

10  want to make sure we also get to -- I don't know that we talked

11  about Verizon's position on 1 and 2.

12         THE COURT:  Right.  Which I do believe they're overly

13  broad, so --

14         MS. SIEKKINEN:  Yeah, but I'd be happy to talk to you

15  about that.

16         THE COURT:  Okay.

17         MS. SIEKKINEN:  But I think the last one is -- yeah,

18  information about the -- that was deleted.  Yes, so deleted

19  content.  That also goes to what we just said.

20         In his testimony he testified that he -- there were

21  often deletions.  To us it means perhaps there's like a massive

22  volume of things that is being deleted on a regular basis.  It

23  takes a lot to get to a point where you have to start deleting

24  things on your device.  So that is why that is relevant from

25  our perspective; for discovery, right, as you said.

1    Now, going to 1 and 2, I want to address, Your Honor,

2    why Verizon does not think this is overly broad, because, first

3    of all, the websites' names themselves, as we noted in our

4    response, we need a list of all the websites because we can't

5    narrow it down to "that seem or appear to be pornographic in

6    nature," right.  Many of these websites have innocent-sounding

7    names.  "Met Art" might make one think of The Metropolitan

8    Museum of Art.  That's not at all what it means.  It means Most

9    Erotic Teens Art, okay.  And so we -- that's why we wanted a

10   list of the web searches and the specific websites.

11   Now, web searches, we'd be happy to -- if you believe

12   that's overbroad, we'd be happy to narrow that to -- to "sexual

13   in nature" or "pornographic in nature" web searches, right.

14   But this could mean things like "teen girls," "hot teen girls,"

15   "petite teens."  These are all search terms that lead to some

16   of these websites.

17   THE COURT:  Well, and I would think if you had a

18   search term for "teen," that would pull up all of the sites

19   that you just said.

20   MS. SIEKKINEN:  Certainly, but so would other things.

21   THE COURT:  Sure, but -- I hear what you're saying.

22   But I think that that -- I do believe it's too broad, so I

23   think narrowing it would be something that you need to do.

24   MS. SIEKKINEN:  Okay.  All right.  But in terms of

25   websites visited, that's why that category is broad, because we

1   can't say like anything with the word "sex" or "porn" or

2   whatever.  It's -- the names on the websites are -- can be

3   deceptive.

4           THE COURT:  They can be, but not all the time.

5           MS. SIEKKINEN:  Not all the time.

6           THE COURT:  So you would think that somebody --

7   again, you would likely get a lot of hits on different things,

8   presumably, if you're asking for a lot of different -- I mean,

9   clearly you know a lot of -- you have a lot of ideas about

10  these things and you've worked in this space, so you would be

11  able to make more specific requests based on your knowledge and

12  experience -- excuse me -- in litigating cases like this.

13          MS. SIEKKINEN:  Your Honor, the pornographic part of

14  the internet is much bigger than -- than Google, TikTok,

15  YouTube, Facebook.  So the expansive sites is massive.  Yes, I

16  worked in this space, but I don't know --

17          THE COURT:  Sure.

18          MS. SIEKKINEN:  -- all of the websites.  That's why a

19  list of the websites visited is important, right, so we can

20  look to it -- you know, also, sub lists, sub websites on things

21  like TikTok, YouTube, or, you know, Instagram.

22          THE COURT:  True.  I think you can ask for --

23          MS. SIEKKINEN:  It could be pornographic or even CSAM

24  in nature.  Even, you know, the *MG Freesites*, that was --

25  that's a publicly available website and was clearly involved

1   in --

2           THE COURT:  And again, I'm not telling you how you

3   have to craft this.  That is up to you.

4           MS. SIEKKINEN:  Okay.

5           THE COURT:  I'm just saying I would like to -- I

6   believe that as it is currently --

7           MS. SIEKKINEN:  You would like to see those two --

8           THE COURT:  -- listed, it is too -- it is overly

9   broad.

10          MS. SIEKKINEN:  You would like to see those two

11  narrowed?

12          THE COURT:  Narrowed, 1 and 2.

13          MS. SIEKKINEN:  Okay.

14          THE COURT:  And again, you-all can narrow that.

15          MS. SIEKKINEN:  Okay.

16          THE COURT:  Again, I do not want to be in the weeds

17  on all of these things.  Again, we are at the discovery phase,

18  and so I think that you-all should be able to navigate and work

19  out certain things between the parties in order to narrow 1 and

20  2.  But I do think they are too broad at this point.

21          MS. SIEKKINEN:  Okay.

22          THE COURT:  Okay.  So I've heard about your response

23  to all of these.  Now I'm going to talk to Mr. Carson.

24          Mr. Carson, obviously you filed a motion for

25  protective order.  Your position is that there is child sex

```
 1    abuse material images that are on the -- from the Cellebrite

 2    extraction, correct?

 3              MR. CARSON:  Can I -- can I qualify that, Your Honor?

 4              THE COURT:  Yes.

 5              MR. CARSON:  Okay.  So Matt Carson representing the

 6    St. Johns County Sheriff's Office in this matter.  I represent

 7    Detective Mikayla Preston in the related case, and I

 8    represented Sheriff Hardwick in his official capacity in the

 9    related case until he was dismissed.

10              I take no position on any of the pictures that are on

11    this Cellebrite extraction.

12              THE COURT:  Okay.

13              MR. CARSON:  I will say this, because I think it's

14    important for the Court to know, I'm not going to argue the

15    motion for summary judgment in the related case here today, but

16    the age of the individuals in the images that Mr. Lawshe was

17    charged with possessing is very much in dispute in this case.

18              The defendants in the other case -- or accurately,

19    the defendant in the other case, has not conceded that the

20    individuals in those images were adults when they were taken.

21    And there is no concrete evidence establishing that they were.

22    That's not before you today.

23              What's before you today is this Cellebrite

24    extraction, which contains thousands and thousands of images,

25    many of which contain nudity.  I'm not suggesting that all of
```

1    them or some of them or many of them are CSAM.

2           They do contain -- the three images that Mr. Lawshe

3    was charged with possessing, that at least some of those

4    continue -- we continue to maintain -- Detective Preston

5    continues to maintain that they were under 18 at the time they

6    were taken.

7           THE COURT:  Which would be CSAM?

8           MR. CARSON:  Which would be CSAM.  I have not looked

9    at the other pictures, for a number of reasons, but my

10   understanding, what I'm being told, is they are all young.  Not

11   17, not 10, not 5, but they're young.

12          And so I have had to -- I won't say "had to" -- as

13   part of my representation of Detective Preston in the other

14   case, spent more time looking at sexual maturity rating and the

15   reliability of the presence or absence of this development

16   aspect or that development aspect.

17          I have no idea.  I would have no idea in looking at

18   these pictures as to whether or not they were 18, 20, 16, and

19   so -- and neither would my client.  And so that's where the

20   concern comes in.

21          THE COURT:  Well, because I see in your filing you

22   say that there are thousands of images depicting indeterminate

23   age and that Detective Preston and others have opined that the

24   images for which plaintiff was criminally charged comprise

25   CSAM.

1                MR. CARSON:  Right.

2                THE COURT:  And that you have an interest in not

3    producing CSAM.

4                MR. CARSON:  Right.  So we've got a handful of

5    pictures that we say are CSAM.  The rest of the universe, it

6    could be, it might not be.  But that's where the thousands of

7    images -- I just want to make clear, we're not saying there's

8    thousands of pictures of 12-year-olds.  There's not.

9                THE COURT:  And I didn't hear you saying that, but

10   what I get uncomfortable with is this Court facilitating

11   the sharing of any child sex abuse material in a civil case,

12   okay, and why.

13               And from where I sit, there is a way that this can be

14   testified to, the -- what was on the phone or what images were

15   there, without actually having to disclose these images in

16   discovery.

17               Now, I don't know if there are images that you know

18   definitively aren't CSAM.  I don't know.

19               And so, again, to me, it sounds like this is pretty

20   thorny in terms of the law and where the law and how the law

21   mandates production of these sorts of things in these cases.

22               And so, I mean, again, I -- you're telling me that

23   you're not -- that you're not saying it is CSAM, but you're

24   telling me that you're not saying it's not CSAM.

25               MR. CARSON:  Well, and I'll just tell you this by way

1   of example, Your Honor.  In the other case, these models were

2   from the Ukraine, from Latvia.  There's no way to verify how

3   old they were when these photographs were taken.

4        I don't know where these other images that were on --

5   as part of the Cellebrite extraction, I don't know where they

6   came from, you know.  They don't look 30; they don't look 40.

7   And that's where our nervousness -- and we share the Court's

8   reluctance to provide them.

9        THE COURT:  Were images disclosed in the other case,

10  or it didn't matter because it was just with law enforcement so

11  the case was plaintiff versus law enforcement and everyone had

12  the relevant information?

13       MR. CARSON:  Well, you know, in the other case, you

14  know -- again, not to -- not to, you know, argue the motion for

15  summary judgment, but the State Attorney, at the end of the

16  other case, said, "Give him the phones back."  So, you know,

17  presumably Mr. Lawshe had this entire -- the Cellebrite

18  extraction in his possession anyway.  But that's -- you know,

19  that's an issue we'll have to argue in the other case.

20       THE COURT:  Okay.  So with regard to the production,

21  this, kind of, what has been requested to be produced, there's

22  essentially now 11 categories of information that are

23  requesting to be produced.  And the concern that I had is --

24  well, you argued it's un- -- I read your argument, Mr. Carson,

25  as saying, "We'll produce this information, but it's unduly

1   burdensome, so we just want to produce the entire file."

2        MR. CARSON:  And then I -- I realize it was clumsy at

3   best.  Let me clarify.  I would like there to be -- and I think

4   you were kind of going that way.  It needs to be better

5   crafted, right.

6        THE COURT:  Yes.

7        MR. CARSON:  So when we get categories saying

8   "related to his sexual health," you know, Cellebrite extraction

9   might have 10,000 emails, might have 20,000 text messages.  To

10  ask my client to go through each one of them and determine if

11  they have to do with Mr. Lawshe's sexual health would be unduly

12  burdensome.  Not the images so much, right.

13       THE COURT:  I feel like the images we can just carve

14  out and not produce any images out of other things that can be

15  produced by you from the Cellebrite extraction so long as it is

16  crafted pretty carefully.  Again, I'm familiar with Cellebrite

17  from when I was a prosecutor, so I understand a little bit how

18  it works.

19       MR. CARSON:  You undoubtedly understand it and the

20  way it works better than I do.  If there's a way to go in there

21  and take out the pictures and send the rest to an ESI vendor of

22  Verizon's choosing and let them run search terms, we would have

23  no problem with that.

24       THE COURT:  Okay.  That's what I'm leaning towards at

25  this point in time.

1          MR. CARSON:  I just didn't want my folks to have to

2    make the judgment call on what relates to these things.

3          THE COURT:  No, this is sticky.  And to have to look

4    through all these pictures and decide what is legal and what is

5    not legal, that is a very -- that is a place that would be very

6    challenging for you to be.  But presumably there are people at

7    your office that have looked through all of these pictures,

8    correct?  Or many of them that are more familiar with them?

9          MR. CARSON:  I know that they have.

10         THE COURT:  Detectives.

11         MR. CARSON:  It's been years --

12         THE COURT:  Yes.

13         MR. CARSON:  -- and they've probably handled,

14    unfortunately, thousands of CSAM cases since then.  But if

15    that's the Court's order, is to have somebody look at this and

16    to testify as to what --

17         THE COURT:  Well, I'm not saying that that's my

18    order.  I am just saying I am in a place right now -- again,

19    generally the Court doesn't want to get into the super weeds on

20    discovery.  We know the parties are in the best place to

21    navigate what is and is not produced.

22         Clearly there are times that the Court needs to

23    intervene and make decisions because the parties can't agree.

24    This is a particularly challenging place because of this

25    additional wrinkle of the potential that there's child sex

1    abuse material images and the way that that would be, you

2    know -- the way that that information would be provided to a

3    third party.

4              And again, I'm not convinced -- I mean, I

5    understand -- I just don't feel comfortable based on what I've

6    seen so far -- and again, I'll go do some more research myself

7    and read these cases, but based on what I have right now, and

8    your representations to me, I am not comfortable with ordering

9    that things are produced to a non-law enforcement entity for a

10   civil case.  I'm not.

11             MR. CARSON:  And Your Honor, if I could, and this may

12   be putting the cart before the horse, but redacted versions of

13   one of the images was filed as part of document 67 in this

14   case.  It was since sealed.  It was later sealed.

15             And document 93 in the other case, we moved for leave

16   to file redacted images under seal.  The Court granted that.

17   We did file those.  That's document 93.

18             To the extent it's helpful -- again, it's --

19   throughout this case it's become blurry to me as to -- you

20   know, because I'm hearing from the other side, "She's obviously

21   24," and I'm going, "I don't know how you get there."

22             At this point, I don't know how old anybody is in any

23   of these pictures.

24             THE COURT:  Sure.

25             MR. CARSON:  But to the extent looking as those

1  pictures is helpful to Your Honor to go --

2          THE COURT:  Well, I don't -- well, my point is I

3  understand that Verizon does not have those pictures -- those

4  images from the other case that have been produced on that

5  file.  And they are redacted, correct?

6          MS. SIEKKINEN:  They're under seal.

7          THE COURT:  They're under seal.  Sorry, they've been

8  filed and redacted and they're under seal, correct?

9          MR. CARSON:  Are you asking me, Your Honor?

10         THE COURT:  Yes.

11         MR. CARSON:  Yes, Your Honor.

12         THE COURT:  And you don't have those, right, Verizon?

13         MS. SIEKKINEN:  No, no.

14         THE COURT:  And Mr. Roberts, you were saying you will

15  have no problem producing those to Verizon?

16         MR. ROBERTS:  None whatsoever, Your Honor.

17         THE COURT:  Okay.  So I do want Verizon to get those

18  images.  And again, because they are redacted and

19  because they -- I don't know if I need to order that those

20  images are produced.  I don't know the best way to handle

21  making sure that Verizon gets those images, but I would imagine

22  you can just get them to them directly without involving the

23  Court.  We don't need to put them on the Court docket.  Because

24  those are, I think, relevant.  And I think at this point those

25  images would be something, based on the way the other case has

1  kind of moved and the fact that everybody has this information

2  and Verizon as Synchronoss don't have this information -- and

3  when I say "Verizon" I mean Verizon and Synchronoss, of course.

4         But I think that what I'm going to do here is I am

5  going to -- well, okay.  So big picture, I've got a motion for

6  a protective order filed by Mr. Roberts that I think is better

7  a motion -- I mean a motion to quash that I think is better

8  styled as a motion for protective order that I think I will

9  probably be granting in part.

10        I am going to use the list of 11 categories that were

11  provided to me as the basis for what I'm ruling on.  I'm going

12  to rule that 1 is too broad; that 2 is too broad.  For right

13  now I'm going to not rule that any images and videos be

14  produced, in part because I want to understand a little bit

15  more about whether or not you need that motion for a protective

16  order or whether you can do your work, Mr. Carson, in response

17  to this subpoena without that if you're just producing

18  documents.

19        Do you understand what I'm saying?

20        MR. CARSON:  No, Your Honor.

21        THE COURT:  So if you're not producing any images or

22  videos, right, from the Cellebrite extraction, you're just

23  producing search terms, websites, different things like that,

24  would you still be asking for a protective order?  I thought

25  the protective order was mainly in relation to the images.

1      MR. CARSON:  Any of the CSAM, and then, again,

2  respectfully requesting that we not have to make judgment calls

3  regarding the relevant --

4      THE COURT:  CSAM.

5      MR. CARSON:  No, whether or not things -- again,

6  those, I guess it's categories --

7      MS. SIEKKINEN:  Like search terms.

8      MR. CARSON:  Yeah, that's fine.  6 through 9, you

9  know, where it's asking for things related to sexual health,

10  related to age of folks --

11      THE COURT:  Well, I think what you would do is just

12  come together with search terms and produce what comes up in

13  response to search terms.  Typically that's what happens in

14  discovery.

15      So I think that you-all would agree on search terms,

16  you would run those terms, and then you would produce what is

17  in response to those terms.

18      MR. CARSON:  I would absolutely work with my client

19  for that, Your Honor.

20      MS. SIEKKINEN:  Your Honor --

21      THE COURT:  Yeah.

22      MS. SIEKKINEN:  -- I just wanted to raise one thing.

23  You know, the Cellebrite extraction was part of a live

24  discovery request that we had directly to plaintiff, right.

25  And when that was refused is when we went to the SJSO.

1          It seems to me that, you know, let's order plaintiff

2   to produce --

3          THE COURT:  That isn't before me.

4          MS. SIEKKINEN:  I understand.  But would Your Honor

5   have your same issue based on these representations with

6   ordering plaintiff to produce the Cellebrite extraction to us?

7          THE COURT:  Mr. Roberts?

8          MR. ROBERTS:  Your Honor, I don't know how to run

9   search terms, but we do have the Cellebrite.  And we had

10  conferred about this, Your Honor, with counsel, that we were

11  going to see how the Court ruled before we did any of those

12  things.

13         THE COURT:  Okay.

14         MR. ROBERTS:  I can have a forensic person search

15  terms and produce -- you know, in accordance with the Court's

16  order, and produce the results.

17         MS. SIEKKINEN:  Your Honor --

18         MR. ROBERTS:  I don't have a problem doing that, Your

19  Honor.

20         MS. SIEKKINEN:  I'm specifically curious about the

21  images and video.

22         THE COURT:  But this issue is still the same.

23         MS. SIEKKINEN:  Okay.  That's what I wanted to know,

24  right.

25         THE COURT:  The issue is still the same, so no.

1      MS. SIEKKINEN:  So here -- right.  So he -- he

2    asserts a defamation claim based on representations that we

3    made to NCMEC that there was apparent CSAM in his possession,

4    and then he can hide behind not having to produce them?

5           THE COURT:  I don't think he's hiding because I'm

6    ruling that I don't want him to produce CSAM.

7           MS. SIEKKINEN:  Okay.

8           THE COURT:  So I think what I'm saying is from where

9    I sit, there are different ways that you can attempt to defend

10   your -- the fact that he had other -- you're going to do search

11   terms; you're going to do websites.  Isn't that what all this

12   is about?  Isn't all this discovery to try and show that he was

13   searching terms and looking for different things that would

14   call into question the age, and that would lend veracity to

15   your defamation claim?

16          MS. SIEKKINEN:  Certainly.  Also --

17          THE COURT:  And the pictures that I just ordered that

18   you got in relation to the other lawsuit, the other criminal,

19   wouldn't that also be something that would be helpful for you?

20          MS. SIEKKINEN:  It would also be --

21          THE COURT:  Yeah.

22          MS. SIEKKINEN:  -- but it is not -- yeah.

23          THE COURT:  Okay.  Yep.  Yep.  Thank you.  So this is

24   my question, then, because this is where we're going to go.

25   You're going to get those three images; you are going to get

1  some of the discovery that you're requesting here.  Do you want

2  to work together from his Cellebrite extraction to resolve

3  that, or do you want that to come from St. -- I mean, I think

4  Mr. Roberts is saying that you'll work with -- you will work

5  with her.

6          MS. SIEKKINEN:  By the way, we were ready to use our

7  provider to do that with him as well.  That was in what we --

8  what we submitted to Your Honor, yes.  But that was something

9  that he was not -- that plaintiff was not inclined to do at

10  that time.

11          THE COURT:  Okay.  So plaintiff, are you now telling

12  me that in light of my ruling regarding videos depicting

13  nudity, pornography, and sexual activity -- that's the only

14  thing that I'm saying they don't have to produce obviously, and

15  then they need to narrow their search terms, they need to

16  narrow websites, but that, you know, essentially all of these

17  other things I do think are fine.  Are you willing to engage

18  with them to have the Cellebrite information -- to do what you

19  were going to do prior to the Court's ruling?

20          MR. ROBERTS:  Absolutely, Your Honor, yeah.  And we

21  had conferred on that issue, but we were holding off to get a

22  ruling to help us.  Logistically where it comes from doesn't

23  matter to the plaintiff.

24          THE COURT:  Okay.  So then that would essentially

25  make it so that St. Johns would be off the hook, correct?

1       MR. ROBERTS:  As long as we have every- -- I'm not a

2   technical person, Your Honor.  As long as we have everything

3   that we need, and I believe that it was produced to us, the

4   full -- and I'll look to Mr. Carson.  Was that the full

5   Cellebrite --

6       MR. CARSON:  All -- the whole thing.

7       MR. ROBERTS:  Okay.  Because I don't really know how

8   to look at it and tell that.  But assuming that that is the

9   case and we have everything we need, we have a forensic expert

10  who has already looked at that kind of stuff.  And so no

11  problem putting search terms in and producing the results in --

12  you know, with Your Honor's order.

13      THE COURT:  So like I said, I believe 1 needs to --

14  is too broad; it needs to be narrowed.  I think 2 is too broad

15  and needs to be narrowed.  I'm not going to -- I'm not going to

16  require that images and videos are produced just based on the

17  representation that most of them are of people of indeterminate

18  age and that Mr. Carson is not sure whether or not they are

19  CSAM.

20      Additionally, I have ordered that Verizon and

21  Synchronoss get the three images that they were saying that

22  they did not have, which were the criminally charged images.

23  So you will get those images as a result of today.

24      Documents -- I'm fine with 5, 6, 7, 8, 9.  There were

25  no objections to those.

1          10, I am fine with 10, a list of installed

2   applications on the device.  I do believe that they're relevant

3   and proportional.

4          And then 11 I'm also fine with information regarding

5   data and -- that was deleted insofar as that information that

6   is provided isn't of images or videos.  But if there is

7   information -- like specific images or videos.  But if there is

8   information that images and videos were deleted, that's fine.

9   But if there's information asking specifically for what those

10  videos and images are, I'm not okay with that, if that makes

11  sense.

12          MS. SIEKKINEN:  Yes.

13          THE COURT:  So the fact that things were deleted,

14  fine, but exactly -- I mean, I don't even know if you would

15  have access to them because they were deleted, but my point is

16  that, I'm not -- that, I'm not asking to be produced.  And

17  again, I think that is really clear.  I think it outlines what

18  is and is not at this point -- the Cellebrite extraction, what

19  is and is not required to be produced to Verizon from the

20  Cellebrite extraction.  Okay.

21          Are there more questions on this?

22          MR. ROBERTS:  Can I ask a question, Your Honor --

23          THE COURT:  Yes.

24          MR. ROBERTS:  -- regarding narrowing of the scope?

25  You could narrow it on several different levels.  Is it to

1  pornography or is it to specific age-related search terms?

2  That was the only thing that I would ask if Your Honor had any

3  thoughts on.

4          THE COURT:  I think broadly, pornography for

5  discovery purposes is fine for me.

6          MR. ROBERTS:  Okay.

7          THE COURT:  Again, this will -- whether or not it's

8  admissible will come up later --

9          MR. ROBERTS:  Sure.

10          THE COURT:  -- and so -- but I think for purposes of

11  whether it's relevant and proportional, I would not want to

12  limit that for Verizon and Synchronoss at this time.

13          MR. ROBERTS:  Very well.

14          THE COURT:  Okay.  Any other questions?  Okay.

15          MS. SIEKKINEN:  Your Honor had a status -- I know

16  that perhaps last week's order may affect it, but I just wanted

17  to remind- -- yeah, that was part of what Your Honor had set

18  for --

19          THE COURT:  Yeah, and I think that was because there

20  was a request for a status because the parties were wanting to

21  know the status of rulings.

22          And now that everything has been ruled on, I think --

23  if there's other status things we need to talk about, I'm happy

24  to talk about them right now.

25          MS. SIEKKINEN:  I would just raise, like, shortly

1    before that order -- the orders were -- that order was entered

2    last week, plaintiff had filed a partial -- a motion for

3    partial summary judgment on the immunity.

4         THE COURT:  Denied as moot?

5         MS. SIEKKINEN:  It was denied as moot, right.  But it

6    indicates to me that perhaps plaintiff believes that the issue

7    of immunity is ripe for summary judgment.

8         And I wanted to ask the Court if, like, you know -- I

9    know some courts have -- they desire, you know, particular

10   permission or whatever, but -- if a summary judgment motion is

11   made before the close of discovery, so I wanted to just ask

12   that.

13        THE COURT:  Is there anything in -- I would say look

14   at the Case Management and Scheduling Order.  Is there anything

15   in the Case Management and Scheduling Order that speaks to that

16   specifically?

17        MS. SIEKKINEN:  Not that I'm aware of, Your Honor.

18        THE COURT:  Yeah.  So I don't -- I mean, I don't

19   think so.

20        MS. SIEKKINEN:  Okay.

21        THE COURT:  And again, like -- I'm not sure that I'm

22   totally following your question.

23        MS. SIEKKINEN:  Just that to the extent plaintiff

24   believes there's -- that it's -- I think you answered it.

25        Another issue is if we're going to be going with, you

```
 1   know, kind of this discovery here with respect to -- and
 2   perhaps have a forensic provider doing that, it seems like we
 3   may need a bit of relief in terms of the expert discovery kind
 4   of deadlines.  And I --
 5            THE COURT:  Do you want to -- if you-all want to file
 6   a motion for the extension of -- for -- a motion to modify case
 7   management deadlines -- or, excuse me, a motion to modify the
 8   Case Management and Scheduling Order, you may do that.
 9            MS. SIEKKINEN:  Okay.
10            THE COURT:  And if you want -- and the Court will
11   obviously hear that at the time it's filed.  If you're filing a
12   joint motion, I mean, presumably you would need to come -- I
13   think it probably operates better if you come to an agreement
14   as to what you would like to see happening rather than asking
15   me to make the decision.  But if you-all come to an agreement
16   about why you would like to see the Case Management and
17   Scheduling Order deadlines extended or changed, certainly that
18   will be considered by the Court as soon as it's filed.
19            MS. SIEKKINEN:  Okay.  Thank you.
20            THE COURT:  And I think -- anything else?
21            MR. ROBERTS:  Not from the plaintiff.
22            THE COURT:  Nothing?
23            Anything else from the defendants?  Mr. Carson?
24            I mean, I feel like, Mr. Reiss, we didn't let you
25   talk at all.  So is there anything you'd like to say today?
```

1          MR. REISS:  I did go to Buc-ee's for the first time

2    last night, so --

3          THE COURT:  Oh, you did?  What did you think?  That

4    place overwhelms me.  I can -- I mean, I think there's a lot

5    happening at Buc-ee's.  I'm not sure if you've bought a

6    Buc-ee's branded hat or a beach towel or a grill, because they

7    sell all of those things.

8          MR. REISS:  Stopped on the way home to buy something

9    for my wife, so --

10          THE COURT:  I'm sure she'll enjoy that.

11          Well, I just want to thank you all for your

12    preparation.  I know this is a really complicated case.  And I

13    appreciate all of your time and your argument today.  And

14    certainly I will consider other things as they're filed.  But

15    if there's nothing else today, then we'll be in recess.

16          (Proceedings concluded at 3:43 p.m.)

17                         -     -     -

```
 1              CERTIFICATE OF OFFICIAL COURT REPORTER

 2    UNITED STATES DISTRICT COURT)

 3    MIDDLE DISTRICT OF FLORIDA )

 4

 5         I, court approved transcriber, certify that the

 6    foregoing is a correct transcript from the official electronic

 7    sound recording of the proceedings in the above-entitled

 8    matter.

 9

10         DATED this 20th day of November, 2025.

11

12                         /s/ Katharine M. Healey
                           Katharine M. Healey, RPR, RMR, CRR, FPR-C
13                         Official Court Reporter

14

15

16

17

18

19

20

21

22

23

24

25
```