## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## JACKSONVILLE DIVISION

WILLIAM LEE LAWSHE,
an individual,

       Plaintiff,

v.                               Case No. 3:24-cv-00137-MMH-LLL

VERIZON COMMUNICATIONS, INC.,
a Delaware Corporation, and
SYNCHRONOSS TECHNOLOGIES, INC.,
a Delaware Corporation

       Defendants.

_____/

### SECOND MOTION FOR PARTIAL SUMMARY JUDGMENT REGARDING VERIZON COMMUNICATION'S SECOND AFFIRMATIVE DEFENSE

Plaintiff hereby moves this honorable Court, pursuant to Federal Rule of Civil Procedure 56, for partial summary judgment on the matter of the Second Affirmative Defense raised by Verizon in their Answer and Affirmative Defenses to Plaintiff's Second Amended Complaint (ECF 97 P.26). In this affirmative defense, Verizon claims that "Plaintiff's claims are barred by the statutory immunity of Section 2258B." *Id.* The limitation of liability described in Section 2258B only extends to disclosures required to be made under Section 2258A(a). Because the undisputed facts show that the subject reporting was voluntary and entirely

1

optional, the provisions of Section 2258B do not apply. Therefore, Plaintiff is entitled to summary judgment on this affirmative defense.

## UNDISPUTED MATERIAL FACTS

Prior to October 29, 2022, Defendant Verizon implemented a voluntary scheme to scan and report child sexual abuse material (CSAM) uploaded by customers who subscribed to their cloud storage service. (Verizon FAQ, Exhibit A) Verizon published, on its website, its policies and procedures for detecting and reporting CSAM. The website communicated to customers and the public that:

> *Verizon uses PhotoDNA technology, which is capable of matching the digital signature of an uploaded image to large databases of known CSAM maintained by the National Center for Missing and Exploited Children (NCMEC);*

> *We also make extensive use of human reviewers, who evaluate the images detected through automated scanning and ensure that all confirmed CSAM is reported to NCMEC.*

Defendant Synchronoss provides Verizon with cloud storage services. As part of those services, Verizon contracted with Synchronoss to implement the scanning of customer content to detect CSAM. (Blaszka Deposition P.13-22, Exhibit B)

Consistent with its public facing pronouncements on its scanning and reporting activities, Verizon, through Synchronoss, published law enforcement guidelines. These guidelines, entitled "Legal Process of Service," (Law Enforcement Guide, EXHIBIT C) also make affirmative representations about the veracity and accuracy of its reporting. Specifically, Verizon - through Synchronoss, states that it scans and matches customer's uploaded content against a database of "known"

2

CSAM and affirms that only "after a photo is confirmed as child pornography" do they send a report to the National Center for Missing and Exploited Children. *Id.*

These representations to the public and law enforcement were false. Neither the FAQs nor Legal Service of Process reflected Verizon's true practices regarding the reporting of child sexual abuse material.

This fact is confirmed by Cara Blaszka. Cara Blaszka is an attorney employed by Synchronoss. She is the head of Synchronoss's scanning and reporting program as it pertains to CSAM. (Blaszka Deposition P.10-11, Exhibit B) Blaszka testifies that the published policies and procedures were "wrong" and establishes that Defendants were not "confirming" the content as CSAM prior to reporting. When questioned specifically about the law enforcement guidelines, Blaska testifies:

> Q. Okay. "The images identified during Step 1 are put through human review for confirmation that such image is illicit."
> A. Okay.
> Q. Okay?
> A. I wouldn't have written that. So let's not focus on the words.
> Q. If it says, "If you have any questions, you may contact Cara Blaszka." So that's what we're doing right now.
> A. Well, yeah, and I'm telling you it's wrong. Feel free to ask.
> Q. That's an inaccurate description. Tell me what -- make that accurate for me.
> A. It's not sent for confirmation, it's sent for review for a determination of whether it is in fact a report of -- well, apparent -- I keep saying the term, but apparent CSAM.

(Blaszka Deposition P.96 Ln. 7-22, Exhibit B) The word or description of "apparent" does not appear in either the FAQs documents or the published law enforcement guidelines.

Additionally, contrary to these published policies, the undisputed evidence shows that Verizon knew that the database it used to scan customer content was not composed of "known" CSAM. Rather, as described in more detail below, the evidence will show that Verizon knew that the database contained errors, including adult content. Furthermore, Defendants had only been granted access to the database after acknowledging that there were no warranties as to the accuracy of the information contained in the database. In fact, Defendants had agreed to accept all risk associated with using the information included in the database. The undisputed facts will show that representations that Verizon was scanning against a database of "known" CSAM was a material misrepresentation.

### A. The Non-Profit Hash Sharing Database

At the behest of Verizon, Synchronoss entered into an agreement with the National Center for Missing and Exploited Children to access a database referred to as the "Non-Profit Hash Sharing Database." (NPO Access Agreement, Exhibit D) This database has been referred to as the "NPO" or "NGO" database.   Verizon has repeatedly referred to this database, incorrectly, as the "NCMEC database." (e.g. Motion for Reconsideration, P.2, footnote 3)

The NPO database is composed of multiple hash lists, contributed by multiple international non-profit organizations. (NPO Access Agreement, Exhibit D) NCMEC has no control over or visibility into the contributions to this database made by the various other organizations. Id.

Verizon is still unaware of the basic structure and composition of the NPO database at the time of the events described in the operative Complaint. Verizon's

4

Corporate Representative for policy, procedures and practice of scanning and reporting CSAM testified on October 22, 2025 that Verizon trusted the NPO list because NCMEC is an industry leader:

> Q.  Okay.  All right.  So in Verizon's policy,
>     they indicate that this large database and it says,
>     quote, of known CSAM.
>     What makes Verizon believe that that database
>     is only composed of known child sexual abuse material?
>
> THE WITNESS:  We put trust in NCMEC and that
>     they've gone through and vetted the information
>     that's in there.
>
> Q.  Verizon believes that NCMEC has vetted the
>     information in the non-profit CSAM hash database?
>
> THE WITNESS:  Yes.
>
> Q.  Why do you think that they have vetted the
>     information in the non-profit CSAM database?
>
> THE WITNESS:  They're considered to be a
>     leading industry resource for that. (Verizon Corp. Rep.
>     Deposition P. 50 Ln.22 – P.51 Ln.17, Exhibit F) (Objections
>     omitted)

After litigating this case for well over a year, Verizon has testified, under oath, that the content submitted to the NPO database is vetted by NCMEC. It is not.

This fact is made explicit in the Access Agreement: *"NCMEC does not submit and is not responsible for information submitted to the Non-Profit Database by Participating Nonprofits. NCMEC does not categorize, solicit, remove, review, approve, create, vet or make any recommendations regarding any PhotoDNA Signatures and/or Hashes submitted to the Nonprofit Database by Participating*

*Nonprofits."* (Exhibit C)   NCMEC has no visibility into the contributions of other organizations to the NPO database. (NCMEC Corp. Rep. Deposition P. 35 ln.5-23)

Defendants expressly agreed to accept the information contained in the NPO database "AS IS" without warranty of any kind and assumed "*all risk and liability associated with using the information contained in the Nonprofit Database.*" Furthermore, the agreement instructed the registrant (Verizon/Synchronoss) to direct all questions regarding information in the database "to the Participating Nonprofit identified as having submitted the information to the Nonprofit Database, including but not limited to circumstances in which the Participating Nonprofit is informed that information they have submitted may be corrupt, incorrectly categorized or otherwise mistakenly submitted." Id.

Synchronoss, at Verizon's direction, used this database to scan all customer content which was uploaded to cloud storage.  If particular content was flagged by the computer scanning system, the file would not be uploaded to the cloud storage, but rather, would be automatically quarantined and placed in a "human review tool" by the scanning system. (Blaszka Deposition P.19-20, Exhibit B)

Verizon Knew that its scanning program would generate false positives. As confirmed by Cara Blaszka:

> I get a quarterly list from NCMEC that lists our cyber tips and whether there's been action taken. For example, an arrest, things like that. That list, after the images get sent to law enforcement, that's the feedback from law enforcement. So that list includes some line items that will say, not prosecuted adult image or something like that, or not. Or sometimes just as basic as not CSAM, we don't know why. (Blaszka Deposition P.152 Ln.5-15, Exhibit B)

Due to the knowledge that adult material was included in the NPO hash database, Verizon created a "block list" to manage false reports of CSAM generated by its scanning and reporting system. (Blaszka Deposition P.38 Ln.18 – P.39 Ln.7, Exhibit B) (see also Answer ECF 97 at ph. 57)

## B. Human Review

As part of its policies and procedures, Verizon contracted with WebFurther India Ltd, located in Hyderabad, India, to perform human review of flagged images. (Verizon Corp. Rep. Deposition P. 107 Ln.17 – P.108 Ln.12, Exhibit F) Although there is a dispute about whether the entire contents of the file in question was, in fact, viewed by the third-party content moderator, for purposes of the current motion, the Court should assume that a content moderator did view the images in question.[1]

## C. Reporting Process

Under Verizon's policy and procedures, WebFuther India determines whether the particular content should be reported to NCMEC. (Verizon Corp Rep. Deposition P.41 Ln. 21 – P.42 Ln.7, Exhibit F) Once categorized as reportable CSAM by WebFuther India, the reporting system automatically generates and submits a CyberTip report:

> If they [WebFurther India Ltd.] do determine it is, or potentially could be apparent CSAM, looks like CSAM, then it is classified in a certain way. The classifications -- I don't recall if they're statutory, but they're A1, B1, A2, B2, with A and B being --which I always get

---

[1] Plaintiff alleges that human review was not, in fact, completed on either the January or October images. This position is based on multiple factual errors in the description of the images in the CyberTip reports. Additionally, there are circumstantial facts which suggests that contractual protocol was not being followed at the time of the subject reports.  However, whether the image was reviewed by content moderators is not determinative of the present motion.

mixed up, prepubescent, postpubescent.· And then -- and I always
get this word wrong -- one being lascivious, I think I said it,
lascivious. And one being -- I say it all the time that's the irony.·
And the other being exhibitions. So after there is a determination
that, yes, there is, it is apparent CSAM and it's classified as part of
our automated process, a data feed is then created in our system
and automatically sent to NCMEC. I always say that human review
is almost like clicking a button just to decide which path it goes
on. It is or it is not. (Blaszka Deposition P.20 Ln.12 – P. 21 Ln.2,
Exhibit B)

No human sees or reviews a CyberTip report for accuracy prior to its being

reported.  Id.

### D. Standard for Reporting Content

Verizon's policy is to report any content that *could possibly* be characterized

CSAM, or as Ms. Blazska testifies, "potentially could be apparent CSAM." *Id*.  This is

not mere semantics. Reportable material, under Verizon's practices, specifically

includes images which appear age-difficult or age-indeterminate.

After being properly noticed, Verizon produced a corporate representative

pursuant to Rule 30(b)(6). This notice requested testimony from the individual with

"most knowledge" of Verizon's "policies, procedure and practices of scanning and

reporting CSAM."[2] (Notice, Exhibit G) Verizon's corporate representative testified

that Verizon reports age indeterminate content, based on appearance alone:

Q.  So, but my question is, if there's an image
    that's been flagged in human review and the human

---

[2] Pursuant to *Federal Rule of Civil Procedure* 30(b)(6), a corporate party noticed for a deposition "must
designate one or more officers, directors, or managing agents, or designate other persons who consent to
testify on its behalf; . . . The persons designated must testify about information known or reasonably
available to the organization." The deposition testimony of a *Rule* 30(b)(6) corporate representative is
binding on the corporation and the corporate representative. *Green*, 2014 U.S. Dist. LEXIS 87911, at
*24 ("[T]he deposition binds the 30(b)(6) deponent as a [*7] representative of the party[.]"); *Waters v. Hall*,
2021 U.S. Dist. LEXIS 59980, 2021 WL 1168695, at *4 (S.D. Ala. Mar. 26, 2021) ("'[E]leventh hour alteration'
of a corporate representative's testimony is disallowed.")

> reviewer looks it and says this person, they could be 18
> or they could be 16, is that apparent child pornography
> or reportable under Verizon policies and procedures?
>
> A.  Yes, it would get reported.
>
> Q.  Okay.  So Verizon includes in apparent child
> pornography images that they know could be adult images,
> correct?
>
> A.  *Well, that's the whole point.*
> ***We don't know****. That's why we report it.* (emphasis added)
>
> Q.  You don't know because they could be adults or
> they could be minors, correct?
>
> A.  It gets -- we don't make that determination.
>
> Q.  Is that correct, you report it if they could
> be a minor, even though they could be an adult?
>
> A.  If it meets the condition of
> apparent, then yes.
>
> Q.  And does that meet the condition of apparent?
> Someone that could be 18 but they could be 16?
>
> A.  Yes, it would get reported.
>
> Q.  Okay.  So when Verizon reports an image to the
> National Center for Missing and Exploited Children as
> apparent child pornography, they are not actually saying
> that it is a minor; is that correct?
>
> A.  Right.  We're not making -- yes.
>
> Q.  It could be an adult or it could be a minor,
> correct?
>
> A.  Yes. (Verizon Corp. Rep. Deposition P. 100-101, Exhibit F) (Objections
> omitted)

This testimony is consistent with Verizon's stated positions in this case. ("Such is the very purpose of a tipline—to allow providers and the public to give a tip to the relevant authorities that may ***or may not*** lead to evidence of criminal activity." Verizon Motion to Dismiss ECF 26 P. 19); ("An image may appear to be CSAM but not actually be CSAM in fact, such as when the image involves an 18-year-old who may appear to be 17 years old or younger. Verizon Motion to Dismiss ECF 26 P.12) This policy is confirmed by the facts and circumstances of the content reported to NCMEC on both January 25, 2023 and October 29, 2022.

### E. The Subject October CyberTip Report

In the October CyberTip report, Verizon described image possessed by Plaintiff as "child pornography," depicting a "sex act" of a "pubescent minor." (October CyberTip, Exhibit H)[3] Verizon reported that (1) the "entire contents of the file" were not "publicly available" (2) that the "incident time" was "01-25-2023 21:28:58 UTC." and (3) that the "reporting ESP" viewed the "entire contents of the uploaded file" *Id.*

Contrary to the statements in the report, (1) the entire contents of the file were publicly available, as it is undisputed that the October image contained a watermark from a ".com" public website[4] (2) the "incident" did not occur at the reported incident time[5] (Blaszka Deposition P.101 Ln. 20-24; P.104 Ln. 2-6, Exhibit B) and (3) Verizon cannot identify the individual who viewed the "entire contents of the uploaded file." (Verizon Answer to Interrogatories, Exhibit J)

### F. Hash/PhotoDNA match – October Image

The hash value or PhotoDNA signature which matched with the October image was not contributed by NCMEC to the NPO database and NCMEC has never included this content on any of the CSAM lists it shares with industry participants. (NCMEC Corp Rep. Deposition P. 83-84, 88 Exhibit E) This image was presumably included in the NPO database by an unknown participating NPO.

---

[3] Although NCMEC produces the CyberTip report, "Section A" reports and reproduces all of the information and statements communicated by Defendants to NCMEC.

[4] Verizon's corporate representative agrees that if the image was downloaded from a public website, then it would be "publicly available." (Verizon Corp. Rep. Deposition P. 137 Ln.19 – P.138 Ln.7, Exhibit F) He further testified that Verizon has no alternative interpretation of what "publicly available" means.

[5] It should be noted that Verizon does record the upload time. However, for some unknown reason, this time is not reported. (Blaszka Deposition P.106 Ln.19-25, Exhibit B)

Because the organizations contributing to the NPO are international, there is material uncertainty about the relevance of the submitted content to jurisdictions within the United States. As acknowledged by NCMEC: "certainly there are a lot of different laws, a lot of different things that law enforcement may find actionable in one area of the world that might not be true in another area of the world." (NCMEC Corp Rep. Deposition P. 45 Ln.9-16, Exhibit E)

Verizon cannot produce any evidence that they knew, at the time the subject CyberTip was reported: (1) what organization submitted the relevant hash/PhotoDNA to the NPO database or (2) what criteria was used to determine whether this content should be submitted to the NPO hash list.

### G. The Subject October Image

This image clearly depicts an adult.[6] (Blaszka Deposition P.90 Ln.20 – P.91 Ln.19, Exhibit B) (NCMEC Corp Rep. Deposition P. 84 Ln. 17-21, Exhibit E) In fact, NCMEC has now classified the model as adult.[7] Id.  When testifying about the October image, Cara Blaszka recalls:

> What did I think when I saw the image?  Number one, I thought -- initially I thought it could have been CSAM.  There's no hair and she's laying flat, so her breasts are very, very flat. Looking closer, I could see that it was an adult, but it was still questionable as to age.

---

[6] This image was included in the NPO database by an unknown participating NPO.  This image was known have been digitally altered at some point, to include the face of a minor, superimposed over the adult's face. (NCMEC Corp Rep. Deposition P. 83-84, Exhibit E)

[7] It should be noted that despite this classification, there is no reason to believe that any action has been taken to remove the content from the NPO database.  Again, NCMEC has no control over other organizations submissions to that database.

(Blaszka Deposition P.91 Ln.9-14, Exhibit B) Blaszka confirms that her initial impression was the model could appear age-difficult (not a minor). (Blaszka Deposition P.91 Ln.15-19, Exhibit B)

This image first began appearing CyberTip reports in 2017 when an adult image was digitally modified. According to NCMEC, an adult pornographic image was "either photoshopped or digitally altered to depict a child's face superimposed over the body of the individual." (NCMEC Corp Rep. Deposition P. 84 ln.5-8 Exhibit E). Subsequently, the image was placed on an unknown hash list for suspected CSAM.

Assuming for the purposes of this argument that Verizon's content moderator in India actually looked at the October image, the fact that it was reported as "child pornography" confirms the undisputed evidence that Verizon's policy is to report any image which could *possibly* be interpreted as age-difficult or indeterminate by a content moderator.

### H. The Subject January CyberTip Report

On January 25, 2023, Verizon, through Synchronoss, submitted another CyberTip report accusing Plaintiff, a customer, of violating crimes involving "child pornography." (see *CyberTipline Report #153739160*, Exhibit I)  The accusations of this CyberTip involved the upload of a single image described by the provider as the "lascivious exhibition" of a "prepubescent minor." Id.   Verizon reported that (1) the "entire contents of the file" were not "publicly available" (2) that the "reporting ESP" viewed the "entire contents of the uploaded file" and (3) that the "incident time" was "01-25-2023 21:18:12 UTC." *Id*.

Contrary to the statements in the report, the entire contents of the file were publicly available[8]. The "incident" did not occur at 01-25-2023 21:18:12 UTC[9] (Blaszka Deposition P.101 Ln. 20-24; P.104 Ln. 2-6, Exhibit B), and, finally, Verizon cannot identify the individual who viewed the "entire contents of the uploaded file." (Verizon Answer to Interrogatories, Exhibit J)

## I.  Hash/PhotoDNA match – January Image

The hash value or PhotoDNA signature which matched with the subject image was not contributed by NCMEC to the NPO database and NCMEC has never included this content on any of the CSAM lists it shares with industry participants. (NCMEC Corp Rep. Deposition P. 10 Ln.17-22, Exhibit E) Therefore, the "match" of the subject content was with content contributed by some other international non-profit organization.[10]

Verizon cannot produce any evidence that they knew, at the time the subject CyberTip was reported: (1) what organization submitted the relevant hash/PhotoDNA to the NPO database or (2) what criteria was used to determine whether this content should be submitted to the NPO hash list.

## J.  Age Indeterminate (Unconfirmed CP)  - January Image

---

[8] Verizon admitted in its Answer to the Amended Complaint that the January image contained a watermark from a public website. (ECF 46) The operative answer does not admit this fact but it remains not in dispute. (*Preston Deposition, March 13th 2025*, P.29-32, K) (The issue is not central to the present motion. However, the affidavit of Jeffery Douglas establishes that the content was published on that website.)
[9] It should be noted that Verizon does record the upload time. However, this time is not reported. (Blaszka Deposition P.106 Ln.19-25, Exhibit B)
[10] The NPO database includes information identifying the submitting NPO for each hash/PhotoDNA signature. (NPO Access Agreement, Exhibit D) However, Verizon's scanning system did not query or record that information from the database when a match occurred.

The female model depicted in the subject image was not "prepubescent." Whether an individual is "pre-pubescent" is not a matter of opinion, but rather, a matter of fact. By all definitions, the development of pubic hair represents, at the very least, the onset of puberty.[11] (Blaszka Deposition P.139 Ln. 18-20, Exhibit B)

The model depicted in the January image has pubic hair. This can be seen from inspection of the image itself. (ECF 72). Cara Blaszka admits this fact (Blaszka Deposition P.140 Ln. 7-9, Exhibit B) This is not in dispute.

In a light most favorable to Verizon, the subject model appears of an indeterminate age.[12] NCMEC had previously viewed the subject image and determined that the image was not apparent child pornography and, as such, refused to include it on their "triple verified" hash list[13]. (NCMEC Corp. Rep. Deposition P.23 Ln.2-11, Exhibit E) NCMEC does not consider age indeterminate images to be apparent CSAM without identification of the individual depicted as an actual minor. Rather, NCMEC categorized the content as "unconfirmed" child pornography and forwarded to law enforcement, consistent with NCMEC policy. (NCMEC Corp. Rep. Deposition P.38 Ln.8-15, Exhibit E)

---

[11] The industry classifications detailed on the NPO Hash Database Access Agreement state: *"As a general guideline prepubescent is appropriate when the subject of the image lacks breast/hip development, has no pubic/facial /underarm hair…"* (Exhibit C)

[12] Despite the age indeterminate *appearance* of the model, the most basic review or investigation of the image would have led a reasonable person to believe that the image depicted was an adult – or at the very least seriously question whether the model was an actual a minor. The image itself contained a watermark of a public ".com" website. Although there have been instances of CSAM published on a public website, the fact that an image is published on a public website makes it likely that the image is portrayed as and is in fact legal adult content. (*Preston Deposition, March 13th 2025*, P.67-68,141 Ex. K)

[13] NCMEC's external hash list which is only one portion of the NPO database only includes confirmed or what NCMEC defines as "apparent" CSAM. According to NCMEC, "apparent" child pornography "means that the file depicts either a sex act, or lewd and lascivious exhibition, and that it is clearly either a prepubescent child, or if it's a pubescent child, it's a child that NCMEC knows to have been identified by law enforcement as being an individual under the age of eighteen." (NCMEC Corp. Rep. Deposition P.23 ln2-11, Exhibit E)

*Unconfirmed* indicated that when this file was being reviewed and categorized, "it depicted either a sex act or lewd and/or lascivious exhibition, but that NCMEC was not able to confirm the age of the individual depicted." [14](NCMEC Corp. Rep. Deposition p. 22 ln.18-24, Exhibit E) According to NCMEC, the image was "age difficult." (NCMEC Corp. Rep. Depo.P.28 Ln18-22, Exhibit E)

The model was not portrayed as a minor. (*Preston Depo., March 13th 2025*, P.62, ln.7-25, K) and even Det. Preston, the arresting officer, admits that some people, including other detectives, could have reasonably interpreted the individual depicted in the subject image as at least 18 years old. (*Preston Deposition, March 13th 2025*, P.93, ln. 6-23 Ex. K)

Differing interpretations establish the indeterminate nature of the appearance of the model's age. In other words, the fact that one person interprets the image as a minor does not mean that the image is not age-difficult. While Verizon could certainly produce evidence that some people may view the image as depicting a minor, they cannot produce evidence that reasonable people could not view the image as portraying an adult. Put another way, Verizon cannot produce evidence to dispute the fact that the model is age-indeterminate.

The science, in this respect, is not in dispute. It is virtually impossible to distinguish between an adult and minor when dealing with pornographic images of

---

[14] Cybertips by ESP's represent 99% of all CyberTips. (NCMEC Corp. Rep. Deposition P.64 Ln3-8, Exhibit E) Of all Cybertips, a "large portion" are labeled as unconfirmed by NCMEC and received on a daily basis. (NCMEC Corp. Rep. Deposition P.64 Ln9-20, Exhibit E) Because NCMEC refuses to include unconfirmed CSAM on their external has sharing lists, all of the unconfirmed reports matched using hashing technology are submitted by organizations other than NCMEC. As a result, nearly half of all CyberTips reported to St Johns County Sherriff's officer are not actionable by simply looking at the image. (*Tolbert Deposition* p.35 ln.7-19, Exhibit Q)

age indeterminate models. (Report of Scott Krugman, including peer reviewed study, Exhibit N). This is true for both trained medical professionals and laypersons alike. (see "The difficult issue of age assessment on pedo-pornographic material" Forensic Science International 183 (2009) e21−e24, Exhibit N) Even Dr. Dully has admitted that her opinions as to age estimation are not supported by reliable scientific methods.[15] To submit such a question to a jury (whether the model appears above or below the age of 18), is not supported by the undisputed evidence. After all, the fact is that the model was over the age of 18 at the time of the photograph in question.

### K. Age Verification  - January Image

The undisputed fact is that the model depicted in the January image was an adult at the time the photograph was taken. Plaintiff has filed the affidavit of Jeffery Douglas, the records custodian of metart.com. (Exhibit P) His testimony establishes that the model was an adult (over the age of 18) at the time of the subject photograph. There is no admissible, reliable evidence which disputes this fact.

---

[15]  Q.    Do you agree that it is not scientifically
             reliable to use SMR ratings to determine the actual
             chronological age of a model depicted in a
             pornographic image on the internet?
      A.    Yes. (*Dully Deposition, April 28, 2025 p.*46 ln.13-18, attached as Exhibit O)
      Q.    If I was someone who was being
             asked to make a factual determination about whether
             or not a model depicted in a pornographic image on
             the internet was a minor; in fact, a minor, would
             your opinion about the appearance be a reliable
             opinion for me to base that decision on?
      A.    No, that's what the investigation is for. (*Dully Deposition, April 28,2025* p.30 ln.9-19, Exhibit O)

## MEMORANDUM OF LAW AND INCORPORATED ARGUMENT

### <u>Summary Judgment Standard</u>

In seeking summary judgement on any issue, the moving party bears the burden of establishing there is no genuine dispute as to any material fact and he is entitled to judgment as a matter of law. See *Williamson Oil Co., Inc. v. Philip Morris USA*, 346 F.3d 1287, 1298 (11th Cir. 2003); see also *Celotex Corp. v. Catrett* 477 U.S. 317, 323, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986)). The moving party's burden is discharged merely by "'showing'—that is, pointing out to the district court—that there is an absence of evidence to support [an essential element of] the nonmoving party's case." Celotex Corp., 477 U.S. at 325. In determining whether the moving party has met this burden, the district court must view the evidence and all factual inferences in the light most favorable to the party opposing the motion. *Johnson v. Clifton*, 74 F.3d 1087, 1090 (11th Cir. 1996).

Once the party moving for summary judgment satisfies its initial burden, the burden shifts to the non-moving party to come forward with specific facts showing a genuine dispute for trial. *Hinson v. Bias*, 927 F.3d 1103, 1115 (11th Cir. 2019). In determining whether a summary judgment motion should be granted, a court must view the record and all reasonable inferences that can be drawn from the record in the light most favorable to the non-moving party. *Peek-A-Boo Lounge of Bradenton, Inc. v. Manatee County*, 630 F.3d 1346, 1353 (11th Cir. 2011).

Summary judgment "shall" be granted if "the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  There must exist a conflict in substantial

evidence to pose a jury question." *Hall v. Sunjoy Indus. Grp., Inc.*, 764 F. Supp. 2d 1297, 1301 (M.D. Fla. 2011) If the evidence produced by the nonmoving party is merely colorable or is not significantly probative summary judgment must be granted. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 at 249, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986) As such, "speculation [is] insufficient to create a genuine issue of material fact." *Valderrama v. Rousseau*, 780 F.3d 1108, 1112 (11th Cir. 2015)

## **Burden of Proof - Section 2258B limitation of liability**

The defendant bears the burden of proof on its affirmative defenses. *Office of Thrift Supervision v. Paul*, 985 F. Supp. 1465, 1470 (S.D.Fla.1997) (citing *Blue Cross and Blue Shield v. Weitz*, 913 F.2d 1544, 1552 (11th Cir.1990) Therefore, Verizon must come forward with evidence that establishes that it possessed "actual knowledge of any facts and circumstances" of an "apparent violation" of the law regarding child sexual abuse material. *18 U.S.C. § 2258*. Furthermore, they must present evidence that this "actual knowledge" caused the subject report to be made.

## **Section 2258B immunity and optional reports to NCMEC**

In denying, in part, Defendant Verizon's Motion to Dismiss (Doc. 45), this Court ruled that electronic service providers who submit optional reports are not afforded the limitations of liability found in Section 2258B:

> As a preliminary matter, the Court concludes that, as relevant to immunity based on § 2258A(a) disclosures, immunity extends only to those disclosures which a provider is required to make— optional reports do not "aris[e] from the performance" of "reporting responsibilities." See id. As discussed above, the § 2258A(a) reporting responsibilities of a provider such as Verizon or Synchronoss require the submission of CyberTips to NCMEC when the provider has "actual knowledge of any facts or

circumstances ... from which there is an apparent violation" of federal CSAM laws. See 18 U.S.C. § 2258A(a) (Order ECF 45 P. 12)

Therefore, the determination that the subject report was optional would be dispositive of the defense raised in Defendant's Second Affirmative Defense, more specifically, Section 2258B.

In drawing the line between optional and mandatory reporting, the Court held that "when all a provider knows about a customer's image is that it depicts an individual of indeterminate age, some level of further investigation is appropriate before a provider is shielded from liability for reporting its customer's private information to the government." (Order ECF 45 P. 22)

Although the Court did not decide whether "apparent" was intended to be interpreted broadly or narrowly, the Court pointed out that such a determination was not necessary. In ruling, the Court found that if a match only revealed "a possible violation of CSAM laws" it would not be "enough information for Defendants to conclude that a violation of CSAM laws "appear[ed] likely." (Order ECF 45 P. 18) Because Verizon was scanning customer content using data from an unknown and unreliable source, and was utilizing human review to report content which appeared merely to be of *an indeterminate age*, their reporting was optional and therefore, not protected by the limitations of liability in Section 2258B.

## Facts and Circumstances

There was never "actual knowledge of any facts or circumstances" which could reasonably support a belief that a violation of CSAM laws appeared likely. In fact, the scanning and reporting system, implemented by Verizon was not designed

to detect content which *appeared likely* to be CSAM. To the contrary, it was

Verizon's policy to report any pornographic content which might possibly be CSAM.

As confirmed by Verizon's corporate representative, the "entire point" was to report

content that Verizon *could not* determine was a depiction of a minor or of an adult.

As Mr. Runyon expresses it, Verizon reports the content *because* "we don't know."

This *kick-the-can-down-the-road* approach is not the type of conduct envisioned by

Section 2258A(a), especially in light of the acknowledged "protection of privacy" in

Section 2258A(f).

At the time of the subject report, the only basis for reporting was (1) a match

or near match against the NPO database and (2) content moderation by

WebFurther India Ltd. Neither basis required Verizon to report the January image.

Verizon suggests that the subject hash match, alone, would represent "facts

and circumstances" of an apparent violation of the law requiring them to report the

image to NCMEC: "A hash match between a Verizon customer's image and the Hash

Database indicates that the customer's image is identical to an image that has been

previously flagged as potential CSAM. As such, a hash match is a fact or

circumstance indicating an apparent violation of law involving child pornography."

(Verizon Motion to Dismiss ECF 27, P.10). However, the fact that content may

*potentially* be CSAM does not satisfy any definition of "apparent" CSAM (whether

broad or narrow). Congress clearly meant something more than a possibility when it

mandated the reporting of "apparent" CSAM.

The Access Agreement to the NPO hash database, makes it clear that the

information contained in the database was being offered "AS IS" without any

warranty as to its accuracy. By the plain language of the agreement, Verizon (through Synchronoss) accepted all risk and liability associated with using the information in the database.  Verizon cannot credibly suggest that Federal law would require it to report content flagged in a database which disclaimed all representations about its accuracy.

Verizon argues that, at worst, it "reported an image mistakenly categorized as CSAM in the NCMEC database." (P.2, footnote 3) Attempting to bolster the credibility of that statement, Verizon cites to information published on NCMEC's website regarding the "triple-vetted" nature of the NCMEC CSAM hash list. (Verizon's Motion for Reconsideration ECF 50)

However, under these undisputed facts, Verizon cannot claim that they reasonably relied on representations on the internet about the accuracy of the "NCMEC" database, especially when they were not using the "NCMEC" database. Reliance on such information, in light of a contractual disclaimer is unreasonable *as a matter of law*. Even in circumstances where a fraudulent misrepresentation is alleged, when a party relies on statements that are contradicted by the express terms of an agreement, such reliance is unreasonable as a matter of law. *Bluewater Trading LLC v. Pajot*, 2008 U.S. Dist. LEXIS 26513, *13-14 (S.D. Fla 2008); White Const. Co., Inc. v. Martin Marietta Materials, Inc., 633 F. Supp. 2d 1302 (M.D. Fla. 2009); Topp, Inc. v. Uniden America Corp., 513 F. Supp. 2d 1345 (S.D. Fla. 2007).

The Access Agreement to the NPO database makes it clear that NCMEC did not control, manage or vet the submissions of other organizations to the NPO database. Verizon cannot produce any evidence that they knew, at the time of the

21

subject CyberTip, the name of the organization which submitted the content to the
NPO database. Furthermore, it cannot produce any evidence that it knew what
standards or criteria were used to submit content to the database at the time of the
subject report. As stated by NCMEC's corporate representative, other countries
have different definitions of actionable illicit content and different privacy laws
which may afford less protection to its citizen's speech.

Verizon knew the NPO database contained erroneously submitted content:
content that depicted legal adult material, age difficult material or content which
was otherwise unconfirmed.   When customer content matched with the NPO
database, there was no indication from the match as to whether that content was
confirmed or unconfirmed.  But even the term "match" was ambiguous. This could
be an identical match or a "near match", indicating that the image was only similar
to the content contained within the NPO database. The fact that a match could be
made against content which was substantively altered further dilutes any probative
value of a "match" – a point illustrated by the "match" of the October image with a
digitally altered version of that same photograph.

Matches or Near Matches to an explicitly unreliable database does not
constitute "actual knowledge" of a fact or circumstance of a likely violation of CSAM
laws.  While the NPO database certainly contained confirmed, apparent child
pornography (as NCMEC defined the term), it just as certainly contained perfectly
legal adult material, such as the images reported in Mr. Lawshe's case.

When Verizon assumed all risk and liability for use of the information
contained in the NPO database, this was the risk it assumed. Verizon acknowledged

that by using the information in the NPO database, it could falsely match customer content with legal content erroneously submitted to the NPO database. Furthermore, it knew that such false positives could result in unfounded CyberTip reports. In agreeing to accept that risk, they cannot now take the position that a match, in-and-of-itself, required them to report the content to NCMEC under Section 2258A(a) and thereby, are shielded from responsibility by Section 2258B.

## **Human Review**

Verizon cannot produce any individual who viewed the image prior to reporting. Assuming, for the purposes of this argument, that human review occurred, it did not provide actual knowledge of any facts or circumstances of an "apparent" violation of the laws regarding CSAM.

Verizon will argue that the fact that the content was reviewed by a human content moderator makes the unreliability of the NPO database moot. What Verizon has told the public, customers and law enforcement is that human reviewers "confirm" that the content is CSAM prior to reporting the content to NCMEC. If this were true, Verizon would be correct. However, the undisputed evidence is that this was not true and Verizon has misrepresented its policies and procedures to both the public and law enforcement.

Verizon has admitted that, in practice, it was doing almost the opposite of what they claimed to be doing. As opposed to "confirming" that flagged content was CSAM, Verizon's corporate representative has acknowledged that Verizon made no determination on whether the individual depicted was a minor or an adult. In fact, if there was any question as to whether the content could be interpreted as a minor,

even if it could also be interpreted as an adult, the content would be reported to NCMEC *as "child pornography*."

In this case, if the content moderator looked at the January image at all, he/she saw the image which was the subject of the January Report. In a light most favorable to Verizon, this image depicted a pubertal female model of an indeterminate age. Furthermore, there is no dispute that the image had a watermark from a public domain website.

Knowledge that a customer is in possession of a pornographic image depicting a model of indeterminate age, watermarked with a public website's name, cannot trigger a mandatory reporting obligation under Section 2258A(a). Such content cannot be said to appear likely to be CSAM.

The same is true of the October image.  If the content moderator viewed the entire contents of the image, as claimed, he/she would have seen the depiction of an adult model. In a light most favorable to Verizon, there was an age difficult model depicted in an image watermarked with a public website. This information cannot trigger a mandatory reporting requirement.

The Court in making its ruling on this issue, distinguished between "mistaken" and "unfounded" reports. (Order ECF 45, P. 22) Although Verizon may suggest (only through argument) that the unknown content moderator *mistakenly* missed both watermarks and *mistakenly* thought both models were minors, such mistakes did not cause the CyberTip reports to be made. The policy of Verizon was to report age-indeterminate images, without any further or additional information. Under this scheme, even if the moderator had correctly identified the January

image as age indeterminate, the content would still have been reported (just as the October image had been reported). Therefore, such mistakes would be immaterial to the present analysis. As such, the subject CyberTip reports were optional.

## **Conclusion**

Verizon cannot meet its burden of proof to establish the applicability of Section 2258B. In order meet this burden, Verizon must offer evidence to show that the content it reported was an "apparent" violation of CSAM laws. Verizon can only establish that it reported content which *might* or *possibly* could violate laws regarding CSAM. Its reporting was speculative. Reliance on a database which is offered "AS IS" with a disclaimer as to any warranty as to its accuracy, is unfounded. Reliance on information submitted by an unknown organization, applying unknown standards, is unfounded. Reporting images which are watermarked with a public website and depict individuals of an indeterminate age, without more information, is unfounded and falls short of any definition of the term "apparent" as used in 2258A(a). The subject CyberTip report was optional. Therefore, Plaintiff is entitled to summary judgment on Defendant Verizon's Second Affirmative Defense.

Dated: December 15, 2025

**LAW OFFICES OF NOONEY, ROBERTS, HEWETT, AND NOWICKI**

*/s/ Michael K. Roberts*

**Michael K. Roberts, Esquire**
Florida Bar No. 00779741
1680 Emerson Street
Jacksonville, FL 32207
(904) 398-1992
mroberts@nrhnlaw.com
Attorney for Plaintiff